KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
MAXWELL E. ALDERMAN - # 318548
malderman@keker.com
SPENCER MCMANUS - # 322824
smcmanus@keker.com
ROBYN PARISER - # 335017
rpariser@keker.com
JONHATAN A. ARAGON - # 338756
jaragon@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendant LINKEDIN CORPORATION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

J.S.,

Plaintiff,

v.

SPRING FERTILITY HOLDINGS, LLC, et al.,

Defendants.

Case No. 5:24-cv-07374-EJD

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**Pursuant to Fed. R. Evid. 201**

Date: April 3, 2025
Time: 9:00 a.m.
Dept.: Courtroom 4, 5th Floor
Judge: Hon. Edward J. Davila

Date Filed: October 22, 2024

Trial Date: None Set

# LINKEDIN'S REQUEST FOR JUDICIAL NOTICE

## I. INTRODUCTION

Plaintiff J.S. ("Plaintiff") alleges that Spring Fertility Holdings, LLC ("Spring"), a company that offers fertility services, installed LinkedIn Corporation's ("LinkedIn") Insight Tag on its website. Compl. ¶ 13. She alleges that, unbeknownst to her, Spring used the Insight Tag to collect and transmit "information related to the specific fertility treatment she received with Spring" to LinkedIn, in violation of federal and California law. Compl. ¶¶ 10, 13. LinkedIn has moved to dismiss Plaintiff's complaint for failing to state a claim. In support, LinkedIn respectfully requests that the Court consider several documents that are referenced, relied upon, cited, and/or quoted in Plaintiff's complaint. These documents—which include Spring's Legal & Terms; pages from Spring's website; LinkedIn's User Agreement, Privacy Policy, Cookie Policy, Cookie Table, Ads Agreement, and incorporated terms; and pages from LinkedIn's website—are incorporated by reference into Plaintiff's complaint and/or subject to judicial notice for the reasons below.

## II. LEGAL STANDARD

Federal Rule of Evidence 201(b) governs the taking of judicial notice in the motion-to-dismiss context, permitting judicial notice of facts "not subject to reasonable dispute." Fed. R. Evid. 201(b); *see Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021). A fact is not subject to reasonable dispute when it either "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." *Id.* 201(c)(2). It is well-established that "publicly accessible websites" are "[p]roper subjects of judicial notice." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1222, 1241 (N.D. Cal. 2014) (citing *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002), and *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010)).

Under the incorporation-by-reference doctrine, which is distinct from the doctrine of

judicial notice, a court may consider a document extrinsic to the complaint when addressing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) if the document's "authenticity is not contested[,] and the plaintiff's complaint necessarily relies on [it]." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). A plaintiff's complaint necessarily relies on an extrinsic document "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted). The Ninth Circuit has also held that quoting from a document is sufficient to incorporate a document by reference. *Daniels-Hall*, 629 F.3d at 998. "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). The Ninth Circuit has further extended this doctrine to situations in which "plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). When a document is incorporated by reference, a district court treats that document as part of the complaint and "thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.

## III. DOCUMENTS SUBJECT TO THIS REQUEST

Attached to the Declaration of Max Alderman filed concurrently herewith ("Alderman Declaration" or "Alderman Dec.") are true and correct copies of the following documents:

**Exhibit A: LinkedIn User Agreement**, publicly available at: https://www.linkedin.com/legal/user-agreement, and **Exhibit A1**: **LinkedIn User Agreement,** publicly available on October 22, 2024, when Plaintiff filed her Complaint, available at: https://web.archive.org/web/20241025193340/https://www.linkedin.com/legal/user-agreement. Plaintiff cites this document in her Complaint. *See* Compl. ¶ 56 & accompanying footnote.

**Exhibit B: LinkedIn Privacy Policy**, publicly available at: https://www.linkedin.com/legal/privacy-policy. Plaintiff quotes from, characterizes, and cites this

document in her Complaint. *See* Compl. ¶¶ 45, 56, 57–58, & accompanying footnotes.

**Exhibit C: LinkedIn Cookie Policy,** publicly available at: https://www.linkedin.com/legal/cookie-policy. Plaintiff quotes from and cites this document in her Complaint. *See* Compl. ¶ 56 & accompanying footnote.

**Exhibit D: LinkedIn Cookie Table,** publicly available at: https://www.linkedin.com/legal/l/cookie-table. Plaintiff quotes from and cites this document in her Complaint. *See* Compl. ¶¶ 52, 53, & accompanying footnotes.

**Exhibit E: LinkedIn Ads Agreement,** publicly available on October 22, 2024, when Plaintiff filed her Complaint, at https://web.archive.org/web/20241127054735/https://www.linkedin.com/legal/sas-terms.

**Exhibit F: "What is LinkedIn and how can I use it?" webpage**, publicly available at: https://www.linkedin.com/help/linkedin/answer/a548441. Plaintiff quotes from and cites this page in her Complaint. Compl. ¶ 41 & accompanying footnote.

**Exhibit G: "Insight Tag" webpage**, publicly available at: https://business.linkedin.com/marketing-solutions/insight-tag. Plaintiff quotes from and cites this page in her Complaint. Compl. ¶¶ 48, 49, & accompanying footnotes.

**Exhibit H: "LinkedIn Insight Tag FAQs" webpage**, publicly available at: https://www.linkedin.com/help/lms/answer/a427660, and **Exhibit H1: "LinkedIn Insight Tag FAQs" webpage**, publicly available on October 22, 2024, when Plaintiff filed her Complaint, available at: https://web.archive.org/web/20241122175733/https://www.linkedin.com/help/lms/answer/a427660. Plaintiff quotes from and cites this page in her Complaint. Compl. ¶ 48 & accompanying footnote.

**Exhibit I: Spring Legal & Terms,** publicly available at: https://springfertility.com/legal-terms/. Plaintiff characterizes, quotes from, and cites this document in her Complaint. Compl. ¶¶ 100, 102, 147.

**Exhibit J: "Cookie Banner,"** publicly available at: https://springfertility.com/. Plaintiff provides a snippet of this Banner in her Complaint, characterizes it, and quotes its language in

support of her claims. Compl. ¶¶ 98, 100, 102.

## IV. ARGUMENT

### A. Plaintiff incorporated by reference Exhibits A–J to allege that LinkedIn and Spring violated her privacy rights.

Plaintiff incorporates LinkedIn's User Agreement (Ex. A), Privacy Policy (Ex. B), and Cookie Policy (Ex. C) into her Complaint, asserting that "a user agrees" to those three policies "when first signing up" for LinkedIn and by "using or continuing to use LinkedIn's Services," and she provides hyperlinks to all three policies in her Complaint. Compl. ¶ 56. Plaintiff concedes that she is a LinkedIn member, then quotes directly from the Privacy Policy, alleging baldly that LinkedIn contradicts its own "express representations" about its advertising practices and policies, and asserting conclusorily that LinkedIn "never receives consent from users" to receive data from the Insight Tag. Compl. ¶¶ 9, 55–60. Although Plaintiff does not allege when she joined LinkedIn's platform, she provides hyperlinks to LinkedIn's User Agreement, Privacy Policy, and Cookie Policy, available on the date Plaintiff filed her complaint, October 22 2024. *See* Compl. ¶ 56 & accompanying footnotes. Plaintiff does the same with Spring's Legal & Terms (Ex. I), quoting language from the policy about Spring's use of "Targeting Cookies," while simultaneously characterizing Spring's policies as "expressly warrant[ing] that [Spring] will not assist a third party with intercepting communications." Compl. ¶ 100. And while Plaintiff does not allege when she interacted with Spring's website, she provides a hyperlink to Spring's Legal & Terms, available as of October 22, 2024. Compl. ¶ 100. Plaintiff then relies on both sets of policies to claim that Spring and LinkedIn "unlawfully intercept[ed] [Plaintiff's] private information for targeted advertising purposes," and that "Plaintiff never consented, agreed, authorized, or otherwise permitted Defendants to disclose her PII or PHI." Compl. ¶ 92. Because Plaintiff references, relies upon, and quotes from these agreements to state her claims against LinkedIn and Spring, they are incorporated by reference. *See Lee*, 250 F.3d at 688; *Ritchie*, 342 F.3d at 908.

Plaintiff also incorporates LinkedIn's Cookie Table (Ex. D) and certain of LinkedIn's webpages (Exs. F–H), as well as Spring's "Cookie Banner" (Ex. J) into her Complaint, cherry-

picking their language in an attempt to bolster her allegations of how the Insight Tag operates and how Spring uses cookies to allegedly collect information about website visitors. *Khoja*, 899 F.3d at 1002 ("The doctrine [of incorporation by reference] prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."). For example, Plaintiff selectively quotes from and provides the hyperlink to LinkedIn's Cookie Table to explain how the li_sugr and lms_ads cookies operate, Compl. ¶ 52, while ignoring that the Cookie Table provides "information about the cookies that LinkedIn uses on third party sites including when LinkedIn's Insight Tag is installed on our customers sites," Ex. D, Alderman Dec. Plaintiff also partially quotes from and provides hyperlinks to LinkedIn's "Insight Tag" webpage and certain FAQs webpages, Compl. ¶¶ 41, 46, 48–49, although she fails to include LinkedIn's admonition to marketers that they "never add" the Insight Tag to "pages that collect or otherwise handle health, financial, or other sensitive data of individual users," Exs. G, H, H1, Alderman Dec. These product descriptions are essential to Plaintiff's claims because Plaintiff wields them to try to establish various elements of her claims and to preemptively address LinkedIn's defenses. Plaintiff further provides a screen capture of Spring's "Cookie Banner," which she characterizes as a "browsewrap" agreement that provides insufficient notice of terms, Compl. ¶¶ 98–100, while failing to include any details about how that banner appears or whether it provides effective notice to website visitors, Ex. J, Alderman Dec. Because Plaintiff references, necessarily relies upon, and quotes from these materials to state her claims against LinkedIn and Spring, they too are incorporated by reference. *See Lee*, 250 F.3d at 688; *Ritchie*, 342 F.3d at 908; *Della v. Colgate-Palmolive Co*., 2024 WL 457798, at *16 (N.D. Cal. Feb. 6, 2024) ("Plaintiffs sufficiently rely on the Product websites to justify applying the doctrine of incorporation by reference to the websites as a whole, even if the specific webpages offered by Colgate are not expressly referenced in the FAC."); *Libman v. Apple, Inc.*, 2024 WL 4314791, at *4 (N.D. Cal. Sept. 26, 2024) (incorporating by reference "welcome screens" that are "not referred to extensively in the complaint" because "whether Apple disclosed its collection practices and whether Plaintiffs consented to those collection practices" through those screens "relate" to plaintiff's claims).

Plaintiff further incorporates LinkedIn's Ads Agreement (Ex. E) into her Complaint. Although Plaintiff "does not explicitly allege the contents of" LinkedIn's Ads Agreement, her claims necessarily "depend[] on the contents of" that Agreement, which governs advertisers' use of LinkedIn's advertising services (including the Insight Tag) and the business relationship between LinkedIn and Spring—in other words, issues that are central to Plaintiff's case. *Knievel*, 393 F.3d at 1076. Throughout her Complaint, Plaintiff characterizes LinkedIn's "Marketing Solutions services," noting that, by contracting with LinkedIn and using its services (including the Insight Tag), advertisers like Spring can target audiences for advertisements. Compl. ¶¶ 41–44, 48. She further notes that LinkedIn, through its Marketing Solutions services, "allow[s] potential advertisers" to take specific actions, like building advertising campaigns, selecting characteristics to reach target audiences; and placing the Insight Tag on their websites. Compl. ¶¶ 42–45, 49; *see also* Compl. ¶ 58 (noting that LinkedIn states, in its Privacy Policy that "[w]e also allow some others to use cookies as described in our Cookie Policy"). Plaintiff also alleges that Spring worked with LinkedIn, and "utilized" the Insight Tag on its webpage, thus allegedly sharing "its patients' identities and online activity." Compl. ¶¶ 64–65. Thus, Spring's contractual relationship with LinkedIn for its Marketing Solutions services is at the core of this dispute. And by baldly alleging that Spring's purported sharing of her data occurred "intentionally" and "for targeted advertising purposes," Plaintiff places into contention LinkedIn's intent in contracting with advertisers like Spring, the contours of the business relationship between Spring and LinkedIn, and what LinkedIn allows or prohibits advertisers like Spring to do with the Insight Tag and its suite of advertising services. Compl. ¶¶ 41, 60, 65. Accordingly, the terms and conditions that LinkedIn imposes on advertisers like Spring go to the heart of Plaintiff's claims. The Ads Agreement is thus ripe for incorporation by reference under Ninth Circuit precedent. *Knievel*, 393 F.3d at 1076; *Swartz*, 476 F.3d at 763.

**B. Exhibit A incorporates by reference Exhibits B–D.**

LinkedIn's User Agreement (Exs. A, A1), discussed *supra* and referred to throughout Plaintiff's Complaint, *see, e.g.*, Compl. ¶ 56, also incorporates by reference LinkedIn's Privacy Policy, Cookie Policy, and Cookie Table (Exs. B–D). Under California law, which governs

LinkedIn's User Agreement, Ex. A [§ 6], Alderman Dec., "incorporating by reference requires: (1) the reference to the incorporated writing must be clear and unequivocal, (2) the reference must be called to the attention of the other party, and (3) the terms of the incorporated writing must be known or easily available to the parties," *Am. Metal & Iron, Inc. v. Am. Emps.Grp., Inc.*, 2007 WL 9728887, at *2 (N.D. Cal. Mar. 29, 2007). *First*, LinkedIn's User Agreement provides hyperlinks to the Privacy Policy and Cookie Policy in a persistent, large-print, bolded header. Exs. A, A1 Alderman Dec. *Second*, the User Agreement also states that "the collection, use, and sharing of your personal data is subject to our Privacy Policy, our Cookie Policy and other documents referenced in our Privacy Policy, and updates. You acknowledge that you have read our Privacy Policy." Exs. A, A1 at § 1.1, Alderman Dec. The blue language is a hyperlink, which leads to each of those policies. Likewise, LinkedIn's Cookie Policy (Ex. C) contains a similar, easily accessible hyperlink to the "cookie tables," which leads to LinkedIn's Cookie Table (Ex. D) and "lists cookies and similar technologies that are used as part of our Services." Ex. C, Alderman Dec. Where, as here, one policy "clearly references" another and the policy "was easily accessible to any user signing up for [Defendant's] services," incorporation by reference is appropriate. *Alfia v. Coinbase Global, Inc.*, 2022 WL 3205036, at *3 (N.D. Cal. Jul. 22, 2022); *Miguel v. JPMorgan Chase Bank, N.A.*, 2013 WL 452418, at *5 (C.D. Cal. Feb. 5, 2013).

**C. Exhibits A–J are publicly available websites and judicially noticeable.**

In addition to being incorporated by reference, Exhibits A–J are judicially noticeable as publicly available webpages and are not subject to reasonable dispute. *See* Fed. R. Evid. 201(b). "In general, websites and their contents may be judicially noticed." *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020); *In re Intel Corp. Sec. Litig.*, 2023 WL 2767779, at *9 (N.D. Cal. Mar. 31, 2023), a*ff'd*, 2024 WL 1693340 (9th Cir. Apr. 19, 2024) ("[E]xhibits are . . . judicially noticeable as publicly available articles.") (citing *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999)); *Hammerling v. Google LLC*, 2022 WL 17365255, at *4 (N.D. Cal. Dec. 1, 2022) ("[W]ebpages . . . are regularly the subject of judicial notice in this circuit."). For that reason, courts in this District regularly take

judicial notice of publicly available websites and their contents, including "privacy policies" and "terms of service." *E.g.*, *Zhang v. Twitter Inc.*, No. 23-CV-00980-JSC, 2023 WL 5493823, at *3 (N.D. Cal. Aug. 23, 2023); *see also, e.g.*, *In re Google, Inc. Privacy Policy Litig.*, 2012 WL 6738343, at *3–4 (N.D. Cal. Dec. 28, 2012) (Google's "past and present" Privacy Policies); *Yuksel v. Twitter, Inc.*, 2022 WL 16748612, at *2 (N.D. Cal. Nov. 7, 2022) (Twitter's Terms of Service); *Datel Holdings, Ltd. v. Microsoft Corp.*, 712 F.Supp.2d 974, 983–84 (N.D. Cal. 2010) (Microsoft's Xbox Terms of Use); *Pica v. Delta Air Lines, Inc.*, 2018 WL 5861362, at *5 (C.D. Cal. Sept. 18, 2018) ("[T]he Court takes judicial notice of the Privacy Policy as "matters of public record outside the pleadings that are not subject to reasonable dispute."); *Erickson v. Neb. Machinery Co.*, 2015 WL 4089849, at *1, n.1 (N.D. Cal. Jul. 6, 2015) ("Courts have taken judicial notice of the contents of web pages available through the Wayback Machine has facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Parziale v. HP, Inc.*, 2020 WL 5798274, at *3 (N.D. Cal. Sept. 29, 2020) (taking judicial notice of webpages from the Wayback Machine in order to grant defendant's motion to dismiss). Exhibits A–J are thus judicially noticeable.

Dated: January 10, 2025

KEKER, VAN NEST & PETERS LLP

By: */s/ Maxwell E. Alderman*
BENJAMIN BERKOWITZ
MATAN SHACHAM
CHRISTINA LEE
MAXWELL E. ALDERMAN
SPENCER MCMANUS
ROBYN PARISER
JONHATAN A. ARAGON

Attorneys for Defendant LINKEDIN CORPORATION