1  TIMOTHY K. BRANSON (SBN: 187242)
   tbranson@grsm.com
2  GORDON REES SCULLY MANSUKHANI, LLP
   101 W. Broadway Suite 2000
3  San Diego, CA 92101
   Telephone: (619) 230-7441
4  Facsimile: (619) 696-7124

5  SARA ANDERSON FREY (pro hac vice pending)
   sfrey@grsm.com
6  GORDON REES SCULLY MANSUKHANI, LLP
   1717 Arch Street, Suite 610
7  Philadelphia, PA 19103
   Telephone: (215) 717-4009
8  Facsimile: (215) 693-6650

9  Attorneys for Defendant
   SPRING FERTILITY HOLDINGS, LLC
10

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13  J.S., individually and on behalf of all others        CASE NO.  5:24-cv-07374-EJD
    similarly situated,
14                                                         Assigned to: Hon. Edward J. Davila
15                         Plaintiff,                      **DEFENDANT SPRING FERTILITY**
16           vs.                                           **HOLDINGS, LLC'S NOTICE OF**
                                                           **MOTION AND MOTION TO DISMISS;**
17  SPRING FERTILITY HOLDINGS, LLC,                        **MEMORANDUM OF POINTS AND**
    META PLATFORMS, INC., AND LINKEDIN                     **AUTHORITIES IN SUPPORT THEREOF**
    CORPORATION,
18                                                         Date: April 3, 2025
                           Defendants.                     Time:  9:00 a.m.
19                                                         Place:  Courtroom 4
20                                                         Action Filed: October 22, 2024
21
22
23
24
25
26
27
28

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS                                          Case No. 5:24-cv-03888-EJD

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................... 1

II.     STATEMENT OF ISSUES ..................................................................... 2

III.    STATEMENT OF FACTS ....................................................................... 3

        A.      Plaintiff's Allegations ................................................................. 3

        B.      Spring Fertility's Privacy Policy ............................................... 4

IV.     LEGAL STANDARD GOVERNING RULE 12(b)(6) MOTION TO DISMISS .............. 5

V.      LEGAL ARGUMENT ............................................................................. 6

        A.      Plaintiff's Claims Should Be Dismissed Because She Consented to Disclosure of "Personal Information" ................................................................. 6

        B.      Plaintiff Fails to State a Federal Wiretap Claim (Count I) ..................... 8

        C.      Plaintiff Fails to State a CIPA Claim (Count III) ................................ 10

                1.      Spring Fertility Cannot Be Subject to Derivative CIPA Liability Because the Complaint Fails to Adequately Allege Predicate/Direct Liability. ....................... 11

                2.      CIPA's Party Exception Applies to Spring Fertility's Vendors ............... 13

                3.      Plaintiff Does Not Plausibly Allege the Requisite Interception "While In Transit" ........................................... 14

        D.      Plaintiff Fails to State a CMIA Claim (Count II) ................................ 16

        E.      Plaintiff Fails to State an Invasion of Privacy Claim under the California Constitution (Count V) ..................................................... 18

VI.     CONCLUSION ..................................................................................... 21

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Cnty. of Sonoma*,
No. 17-CV-0048, 2017 WL 3593340 (N.D. Cal. Aug. 18, 2017) ...........................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................5, 6

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......................................8, 18, 19, 20

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) ...............................................................................5

*Barbour v. John Muir Health*,
No. C22-01693, 2023 WL 2618967 (Cal. Super. Jan. 5, 2023) ...............15, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2006)...............................................................................................5

*Blanco v. Cnty. of Kings*,
142 F. Supp. 3d 986 (E.D. Cal. 2015).............................................................20, 21

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) ...........................................................11

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .................................................................6

*Clausing v. San Francisco Unified Sch. Dist.*,
221 Cal.App.3d 1224 (1990) .............................................................................21

*Doe I v. Google LLC*,
No. 23-CV-02431, 2023 WL 6882766 (N.D. Cal. Oct. 18, 2023) .................8, 9

*Doe v. Kaiser Foundation Health Plan, Inc.*,
23-cv-02865, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024).........................9, 10

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ...............................................................8

*Doe v. MKS Instruments, Inc.*,
No. SACV2300868, 2023 WL 9421115 (C.D. Cal. Nov. 3, 2023) .....................18

*Eisenhower Med. Ctr. v. Super. Ct.*,
226 Cal. App. 4th 430 (2014) .......................................................................17, 18

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS                           Case No. 5:24-cv-03888-EJD

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Esparza v. UAG Escondido A1 Inc.*,
  Case No. 23cv0102, 2024 WL 559241 (S.D. Cal. Feb. 12, 2024)..........................................12

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) .......................................................................................13, 19

*Garcia v. Build.com, Inc.*,
  Case No. 22-cv-01985, 2023 WL 4535531 (S.D. Cal. July 13, 2023) ...................................11

*Garcia v. Enter. Holdings, Inc.*,
  78 F. Supp. 3d 1125 (N.D. Cal. 2015) ..................................................................................7

*In re Google Assistant Privacy Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) ..................................................................................7

*In re Google, Inc. Privacy Policy Litig.*,
  58 F. Supp. 3d 968 (N.D. Cal. 2014) ..................................................................................19

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) ................................................................................13

*Gutierrez v. Converse Inc.*,
  No. CV 23-6547, 2024 WL 3511648 (C.D. Cal. July 12, 2024)...........................................11

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022), *aff'd* No. 22-17024, 2024 WL 937247
  (9th Cir. Mar. 5, 2024) .................................................................................................19, 20

*Heiting v. athenahealth, Inc.*,
  No. 2:23-CV-10338, 2024 WL 3761294 (C.D. Cal. July 29, 2024)......................................14

*Heiting v. Taro Pharms. USA, Inc.* (*Heiting I*),
  709 F. Supp. 3d 1007 (C.D. Cal. 2023) .........................................................................12, 14

*Hernandez v. Hillsides, Inc.*,
  47 Cal. 4th 272 (2009) ........................................................................................................18

*Hill v. Nat'l Collegiate Athletic Assn.*,
  865 P.2d 633 (Cal. 1994) ....................................................................................................19

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...............................................................................19

*Katz-Lacabe v. Oracle Am., Inc.*,
  No. 22-CV-04792, 2024 WL 1471299 (N.D. Cal. Apr. 3, 2024) .........................................10

*Licea v. Am. Eagle Outfitters, Inc.* (*Licea II*),
  659 F. Supp. 3d 1072 (C.D. Cal. 2023) ...............................................................................15

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS                                    Case No. 5:24-cv-03888-EJD

*Licea v. Cinmar, LLC (Licea I)*,
   659 F. Supp. 3d 1096 (C.D. Cal. 2023) ...................................................................15

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..................................................................20

*Martin v. Sephora USA, Inc.*,
   Case No. 1:22-cv-01355, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) .............10, 11, 12, 13

*Mastel v. Miniclip SA*,
   549 F. Supp. 3d 1129 (E.D. Cal. 2021)..............................................................10, 14

*In re Meta Pixel Healthcare Litig.*,
   647 F. Supp. 3d 778 (N.D. Cal. 2022) ...................................................................10

*Novel Poster v. Javith Canfield Grp.*,
   140 F. Supp. 3d 938 (N.D. Cal. 2014) ...................................................................15

*Perkins v. LinkedIn Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal. 2014) ..................................................................6, 7

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
   51 F.4th 1125 (9th Cir. 2022) ................................................................................9

*Powell v. Union Pac. R.R. Co.*,
   864 F. Supp. 2d 949 (E.D. Cal. 2012)...................................................................13

*Ribas v. Clark*,
   38 Cal. 3d 355 (1985) ...........................................................................................13

*Rodriguez v. Google LLC*,
   No. 20-cv-04688, 2021 WL 2026726 (N.D. Cal. Aug. 7, 2023) ...............10, 15, 16

*Roe v. Amgen Inc.*,
   No. 2:23-cv-07448, 2024 WL 2873482 (C.D. Cal. June 5, 2024)........................8, 9

*Rogers v. Ulrich*,
   52 Cal. App. 3d 894 (Ct. App. 1975) ....................................................................13

*Silver v. Stripe Inc.*,
   No. 4:20-cv-08196, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ..........................7

*Smith v. Facebook, Inc.*,
   262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd* 745 F. Appx. 8 (9th Cir. 2018) ...................6, 7, 8

*Smith v. YETI Coolers, LLC*,
   Case No. 24-cv-01703, 2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) ............12, 13

*Sussman v. American Broadcasting Co., Inc.*,
   186 F.3d 1200 (9th Cir. 1999) ................................................................................9

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-iv-

1

*Valenzuela v. Keurig Green Mountain, Inc.*,
    674 F. Supp. 3d 751 (N.D. Cal. 2023) .................................................................14

*Wilson v. Rater8, LLC*,
    Case No.: 20-cv-1515, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) .............................17, 18

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) .................................................................6, 10

**Statutes**

18 U.S.C. § 2511 ...................................................................................3, 6, 8, 9

Cal. Civ. Code § 56.05 ...............................................................................17

Cal. Civ. Code § 56.10 .............................................................................3, 6, 16

Cal. Pen. Code § 631 ......................................................................... *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6) ..............................................................................5

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS                                          Case No. 5:24-cv-03888-EJD

1

2  **TO THE HONORABLE COURT, TO ALL PARTIES AND TO THEIR RESPECTIVE**

3  **ATTORNEYS OF RECORD:**

4          PLEASE TAKE NOTICE THAT on April 3, 2025 at 9:00 a.m. in Courtroom 4 of the

5  United States District Court, Northern District of California, located at 280 South 1st Street, San

6  Jose, California 95113, Defendant SPRING FERTILITY HOLDINGS, LLC ("Defendant" or

7  "Spring Fertility") will and hereby does move this Court for an Order dismissing with prejudice

8  all counts against Spring Fertility in the Complaint filed by Plaintiff J.S. ("Plaintiff" or "J.S.").

9  This Motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

10         This Motion is based on this Notice of Motion, the attached Memorandum of Points and

11  Authorities, the Request for Judicial Notice, and upon the papers, records, and pleadings on file

12  herein.

13

14                                              Respectfully submitted,

15  Dated:  January 10, 2025                    GORDON REES SCULLY MANSUKHANI

16

17                              By:   /s/ Timothy K. Branson

                                      Timothy K. Branson
18                                    Sara Anderson Frey (pro hac pending)

19                                    Attorneys for Defendant
                                      SPRING FERTILITY HOLDINGS,
20                                    LLC

21

22

23

24

25

26

27

28

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-vi-

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS                                    Case No. 5:24-cv-03888-EJD

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This lawsuit is one of many similar actions flooding California courts targeting a wide array of companies that own and operate websites that use technology to track consumers' interfaces on those websites.  Here, Plaintiff alleges that Spring Fertility's purported use of tracking pixels, which are commonplace website enhancement tools embedded on the publicly available pages of Spring Fertility's website, violates the wiretapping provision of the California Invasion of Privacy Act ("CIPA") found in the state's Penal Code, the Electronic Communications Privacy Act ("ECPA") found in the United States Penal Code, the Confidentiality of Medical Information Act ("CMIA"), and the California Constitution's right to privacy.  Plaintiff's claims lack merit for several reasons.

First, Plaintiff consented to disclosure of her information.  When she visited the Spring Fertility website, she was advised that the website uses cookies and was directed to Spring Fertility's Privacy Notice, Cookie Policy, and Privacy Policy.  Those policies clearly advised Plaintiff that Spring Fertility collects and discloses certain personal information including medical conditions and sexual orientation, and that it utilizes targeting cookies from third parties.

Second, Spring Fertility is a party to the communications which Plaintiff claims were wiretapped.  It is well-established that a party cannot eavesdrop with itself and thus, there can be no direct liability against Spring Fertility.  Indeed, recognizing such, Plaintiff instead seeks to impose derivative liability on Spring Fertility by claiming Spring Fertility aided and permitted various third-party social media websites to receive its patients' medical information.  The fatal flaw in Plaintiff's theory, however, is the Complaint's failure to adequately allege any third-party violations of CIPA for which Spring Fertility could be derivatively liable. To the extent Plaintiff intends to rely on any third-party software vendor utilized by Spring Fertility, courts have routinely held that such vendors function as an extension of the website owners.  Plaintiff has also failed to adequately allege that any communications were intercepted "in transit."  For these reasons, she cannot recover under either CIPA or ECPA.

Third, Plaintiff's CMIA claim likewise fails.  The Complaint is devoid of any facts

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS                                    Case No. 5:24-cv-03888-EJD

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

showing substantive "medical information" was transmitted.  Indeed, Plaintiff's Complaint is purposefully vague on the alleged information disclosed.  Plaintiff's conclusory allegations regarding a consultation she booked on a public website are simply insufficient to establish a CMIA violation.

Finally, the Complaint is completely devoid of any facts which would satisfy the high bar required to establish a violation of the California Constitution.  Plaintiff could not have had a reasonable expectation of privacy based on her agreement to the Spring Fertility Privacy Policy.  And, even if she did, the use of boilerplate terms such as "medical information," "medical communications," and "health information" does not meet required pleading standards.  Courts have routinely held that the fact someone makes a medical appointment or is a patient is not the type of information the disclosure of which constitutes an egregious breach of social norms.

Plaintiff's Complaint fails to state any claims against Spring Fertility upon which relief may be granted and dismissal of all claims against Spring Fertility is warranted.

## II.    STATEMENT OF ISSUES

1.    Whether Plaintiff's claims are barred by her consent to Spring Fertility's Privacy Policy?

2.    Whether Plaintiff has stated a claim under the ECPA where Spring Fertility was a party to the communications?

3.    Whether Plaintiff has stated a claim under the CIPA where there is no showing of predicate liability by a third party, the party exception does not apply to software vendors, and where the Complaint fails to plead sufficient facts establishing an interception while in transit?

4.    Whether Plaintiff has stated a claim under the CMIA where she has failed to plead the disclosure of the requisite medical information?

5.    Whether Plaintiff has stated a claim for invasion of privacy where she has failed to sufficiently allege a violation of a reasonable expectation of privacy or an intrusion that was highly offensive to a reasonable person?

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-2-

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

## IV.    STATEMENT OF FACTS

### A.    Plaintiff's Allegations

Plaintiff, a resident of California, commenced this action against Spring Fertility, Meta Platforms, Inc. ("Facebook"), and LinkedIn Corporation ("LinkedIn") on October 22, 2024, on behalf of herself and "all patients who accessed and used www.springfertility.com (the "Website") to book a consultation for fertility services." Compl. at ¶ 1, Doc. 1. Spring Fertility "provides fertility services and treatments for consumers" and "owns and operates the Website www.springfertility.com." *Id.* at ¶ 13, Doc. 1. Plaintiff alleges that "Spring Fertility aided, employed, agreed, and conspired with social media websites Facebook and LinkedIn to intercept sensitive and confidential personal and medical communications sent by patients seeking to book services with Spring Fertility through its website." *Id.* at ¶ 5, Doc. 1.

According to the Complaint, both the Facebook Tracking Pixel and LinkedIn Insight Tag are embedded on websites to track people and the types of actions they take on websites. *Id.* at ¶¶ 31, 43, Doc. 1. Plaintiff asserts that Spring Fertility utilized the Facebook Tracking Pixel and LinkedIn Insight Tag on its website. *Id.* at ¶ 5, Doc. 64. Plaintiff claims that through use of the Facebook Tracking Pixel and LinkedIn Insight Tag, Spring Fertility "shared its patients' identities and online activity, including information related to consumers seeking to procure fertility treatment." *Id.* at ¶ 65, Doc. 64

Plaintiff alleges that she used the Spring Fertility website to book a consultation for fertility services and thereafter, attended her consultation and received fertility services related to In-Vitro Fertilization ("IVF") from Spring Fertility. *Id.* at ¶¶ 7, 8, Doc. 1. At the time she used the Spring Fertility website, Plaintiff alleges she also maintained social media accounts with Facebook and LinkedIn. *Id.* at ¶ 9, Doc. 1. Plaintiff alleges she used the same device to access the Spring Fertility website, Facebook, and LinkedIn. *Id.* Plaintiff claims that she subsequently received targeted advertisements on Facebook and LinkedIn related to fertility services. *Id.*

The Complaint asserts four counts against Spring Fertility: Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1) (Count I); Violation of California Confidentiality of Medical Information Act, Cal. Civ. Code § 56.10 (Count II); Violation of the

-3-

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

California Invasion of Privacy Act, Cal. Penal Code § 631 (Count III), and Invasion of Privacy under California's Constitution (Count V).  Compl., Doc. 1.  Plaintiff seeks declaratory relief, injunctive relief, compensatory damages, punitive damages, and attorneys' fees.  *Id.*

**B.    Spring Fertility's Privacy Policy**

When individuals such as Plaintiff visit the Spring Fertility website, they are presented with a pop-up banner ("Cookie Banner") advising that the website uses cookies and that by continuing to use the site, individuals agree to Spring Fertility's Cookies Policy.  Compl. at ¶ 98, Doc. 1; Request for Judicial Notice ("RJN"), Ex. 1. The Cookie Banner appears automatically on the right side of the screen until a visitor clicks "ACCEPT" and acknowledges "Our Website uses Cookies.  By continuing to use our site, you are agreeing to our Cookie Policy."  Compl. at ¶ 100; RJN, Ex. 1.   A hyperlink leads to Spring Fertility's "Legal & Terms," which includes its Privacy Notice, Cookie Policy, and Privacy Policy.  RJN, Ex. 1, 2.  The Privacy Notice advises that Spring Fertility "collect[s] information that identifies, relates to describes, references, is capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or device."  RJN, Ex. 2.  This "personal information" includes identifiers (e.g., name, IP address, email address), personal information listed in the California Customer Records Statute (e.g., age, race, marital status, **medical condition**, gender identity, **sexual orientation**), biometric information (e.g., genetic, psychological, behavioral, and biological characteristics), internet and network activity (e.g. **browsing and search history**), professional or employment-related information, non-public education information, and inferences from other personal information (e.g., person's preferences, behavior, aptitudes).  RJN, Ex. 2 (emphasis added).  The Privacy Notice further advises that personal information may be used to fulfill or meet the reason the information is provided and to personalize website experiences.  RJN, Ex. 2. Spring Fertility notifies that personal information may be disclosed "to a third party for a business purpose."  RJN, Ex. 2.

Spring Fertility's Cookie Policy informs Plaintiff and other users that Spring Fertility "use[s] cookies and similar technologies to help provide, protect, and improve the springfertility.com website."  RJN, Ex. 2.  The Cookie Policy explains how and why Spring

-4-

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS                                    Case No. 5:24-cv-03888-EJD

Fertility uses cookies, the types of cookies used, and the choices users have with respect to cookies.  One type of cookie used by Spring Fertility are "Targeting Cookies," which may be set on the Spring Fertility website by its advertising partners.  *Id.*  Targeting Cookies are "used by those companies to build a profile of your interests and **show you relevant adverts on other sites**."  *Id.* (emphasis added). Users are advised they will experience less targeted advertising if they do not allow these cookies.  *Id.*

Spring Fertility's Privacy Policy details the information collected through use of the website which may include information about interactions with the website, content posted to the website via web forms, and technical data.  RJN, Ex. 2.  Spring Fertility discloses that its website uses cookies "to collect information about the pages you view, our website functions that you access, the buttons and icons you click, and to remember your login information and website settings to make it easier and more efficient for you to use our website, and to provide advertising content that we think may be of interest to you."  RJN, Ex. 2.  Users are provided with information on how to opt-out of having cookies and other data collection technologies.  RNJ, Ex. 2.

## V.    LEGAL STANDARD GOVERNING RULE 12(b)(6) MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff must state "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2006).  A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Federal courts follow a two-pronged approach when deciding a motion to dismiss.  First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Courts need not "accept as true a legal conclusion couched as a

-5-

factual allegation." *Id.* at 678-79. Second, while the court must accept well-pleaded factual allegations as true, courts must also "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" there is no plausible claims for relief. *Id.*

## VI. LEGAL ARGUMENT

### A. Plaintiff's Claims Should Be Dismissed Because She Consented to Disclosure of "Personal Information"

Plaintiff cannot state any claim for invasion of privacy—whether under the ECPA, CIPA, CMIA, or California Constitution—because she consented to disclosure of her personal information.

Lack of consent is an element of Plaintiff's ECPA, CMIA, and CIPA claims and a defense to her state common law claims.[1] *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 619 (N.D. Cal. 2021) (collecting cases showing that consent defeats claims for common-law privacy violations and wiretapping under ECPA and CIPA). While there may be "subtle differences" among consent doctrines, "the question under [each] is essentially the same: Would a reasonable user who viewed [the defendant's] disclosures have understood that [it] was collecting [the information at issue]?" *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014).

In *Smith v. Facebook, Inc.,* 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017), *aff'd* 745 F. Appx. 8 (9th Cir. 2018), the court granted a motion to dismiss privacy claims arising from Facebook's collection of web browsing activity on several healthcare websites using Facebook's Business Tools, such as pixels and cookies. This Court dismissed the complaint, finding that the plaintiff's

---

[1] *See* Cal. Pen. Code § 631(a) (imposing liability for willful disclosure "without the consent of all parties to the communication); 18 U.S.C. § 2511(2)(d) (no liability where "one of the parties to the communication has given prior consent"); Cal. Civ. Code § 56.10(a) (prohibiting disclosure of medical information "without first obtaining an authorization"); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1037-38 (N.D. Cal. 2014) (plaintiff asserting invasion of privacy claim "must not have manifested by his or her conduct a voluntary consent").

-6-

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS                                    Case No. 5:24-cv-03888-EJD

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

consented to Facebook's Cookies Policy and Privacy Policy which disclosed the conduct at issue. *Id.* at 953-955. Other "[c]ourts consistently hold that terms of service and privacy policies . . . can establish consent to the alleged conduct challenged under various states wiretapping statutes and related claims," including CIPA. *Silver v. Stripe Inc.,* No. 4:20-cv-08196, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (dismissing ECPA and CIPA claims because plaintiffs agreed to a privacy policy that "explicitly state[d] that a consumer's information may be provided to [the defendant's] 'partners'"); *Garcia v. Enter. Holdings, Inc.,* 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (finding plaintiff consented to sharing of personal data by virtue of agreeing to defendant's privacy policy); *Perkins,* 53 F. Supp. 3d at 1213 (dismissing ECPA claim and finding plaintiffs consented to collection of information "[i]n light of the clarity of the disclosure, the proximity of the disclosure to the wrongful conduct, and the ability to opt out").

Here, Plaintiff alleges that she visited the Spring Fertility website and that the website provides a Cookie Banner advising the website utilizes cookies and that by using the website, Plaintiff agrees to the hyperlinked Legal & Terms which include a Privacy Notice, Cookie Policy, and Privacy Policy. Compl. at ¶ 100; RJN, Ex. 1, 2. Those policies clearly disclosed to Plaintiff that her personal information—including, among other things, her medical condition, sexual orientation, and browsing and search history—was collected by Spring Fertility and may be disclosed to third parties. RJN, Ex. 2. Those policies further informed Plaintiff that Spring Fertility utilizes Targeting Cookies which are used by advertising partners to build a profile of Plaintiff's interests and show her relevant advertisements on other websites. *Id.* (emphasis added). Finally, the policies provided guidance to Plaintiff on the opt-out process. *Id.*

Plaintiff's allegations that she "never consented, agreed, authorized, or otherwise permitted" Spring Fertility to collect and disclose her information are nothing more than a formulaic recitation of the lack of consent elements of a CIPA and CMIA claim, which is insufficient to state a plausible claim for relief. *In re Google Assistant Privacy Litig.,* 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) (dismissing CIPA claim and noting that "allegation that the recordings 'were made without Plaintiffs' consent' is conclusory"). Those allegations are further belied by the broad disclosures about data collection and the use of third-party cookies in the

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS                                    Case No. 5:24-cv-03888-EJD

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1    Spring Fertility Legal & Terms.

2         A reasonable user who read Spring Fertility's privacy policies would have understood

3    Spring Fertility collected and disclosed the personal information at issue here.  The Complaint

4    fails to plausibly allege the requisite lack of consent and dismissal is warranted.

5         **B.      Plaintiff Fails to State a Federal Wiretap Claim (Count I)**

6         Count I asserts a violation of the Electronic Communications Privacy Act, 18 U.S.C. §

7    2511, commonly known as the Federal Wiretap Act.  The ECPA prohibits the unauthorized

8    interception of electronic communications.  18 U.S.C. § 2511(1)(a)-(e).  To state a claim under

9    the ECPA, a plaintiff must plausibly allege the defendant "(1) intentionally (2) intercepted (3)

10   the contents of (4) plaintiffs' electronic communications (5) using a device."  *Doe v. Meta*

11   *Platforms, Inc.*, 690 F. Supp. 3d 1064, 1075 (N.D. Cal. 2023).  Plaintiff's claim fails because she

12   has not establish that any communication has been unlawfully intercepted by Spring Fertility.

13        The ECPA is a one-party consent statute, meaning that there is no liability where "one of

14   the parties to the communication has given prior consent" to the interception.  18 U.S.C. §

15   2511(2)(d); *see also Smith*, 262 F. Supp. 3d at 955 (ECPA "only requires one party to the

16   communication to consent to an interception").  Courts have not hesitated to dismiss ECPA

17   claims in similar cases, including suits involving the use of pixels by healthcare providers.  *See,*

18   *e.g., Roe v. Amgen Inc.*, No. 2:23-cv-07448, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024)

19   (dismissing ECPA claim because biopharmaceutical company "as the creator and operator of its

20   website, consented to the use of data collection tools it installed on its website"); *B.K. v.*

21   *Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (dismissing ECPA claim

22   where hospital "was the party that was meant to, and did, receive Plaintiffs' communications");

23   *Doe I v. Google LLC*, No. 23-CV-02431, 2023 WL 6882766, at *2 (N.D. Cal. Oct. 18, 2023)

24   (health care provider consented to use of tracker and thus, plaintiff was unlikely to succeed on

25   merits of ECPA claim).

26        Here, Plaintiff alleges that Spring Fertility utilized the Facebook Tracking Pixel and

27   LinkedIn Insight Tag on its website, giving rise to the inference that Spring Fertility, as owner

28   and operator of its website consented to the use of the data collection tools it installed on the

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-8-

website.  Compl. at ¶¶ 13, 64, Doc. 1.  Moreover, Plaintiff alleges that the communications were "between Plaintiff and Class Members and Defendant's Website."  *Id.* at ¶ 120, Doc. 1.  These allegations are "self-defeating."  *Roe*, 2024 WL 2873482, at *6 (finding similar allegations defeated ECPA claims).  Because Spring Fertility was a party to the communications, Plaintiff cannot recover under the ECPA.

Apparently cognizant of this fatal flaw, Plaintiff tries to invoke the crime-tort exception to the ECPA by alleging Spring Fertility intercepted contents "for the purpose of committing a criminal or tortious act in violation of the Constitution or laws of the United States or of any state, namely, invasion of privacy, among others."  Compl. at ¶ 131, Doc. 1.  The crime-tort exception operates as an exception to the one-party consent rule where a "communication is intercepted for the purpose of committing any criminal or tortious act."  18 U.S.C. § 2511(2)(d).  The exception applies only where there is "sufficient evidence to show 'the *purpose* for the interception—its intended use—was criminal or tortious.'"  *Doe I*, 2023 WL 6882766, at *2 (quoting *Sussman v. American Broadcasting Co., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)) (emphasis in original).  "It is not enough for the interception itself to have violated the law, the interception must be 'done for the purpose of facilitating some further impropriety'" for the crime-tort exception to apply.  *Id.*

Plaintiff alleges that by using the Facebook Tracking Pixel and LinkedIn Insight Tag, Spring Fertility violated the Heath Insurance Portability and Accountability Act ("HIPAA") and invaded users' privacy.  Compl. at ¶¶ 131, 132, Doc. 1.  Neither of these acts, however, is "separate and independent from the act of recording."  *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (criminal or tortious purpose must be "separate and independent from the act of recording").  Rather, those supposed violations occur through the act of interception itself and therefore, do not fall within the statutory exception.  *Id.*

This Court's decision in *Doe v. Kaiser Foundation Health Plan, Inc.*, 23-cv-02865, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) is particularly instructive.  Like Plaintiff here, the plaintiffs in *Kaiser* argued that allegations asserting the defendant violated HIPAA and tortiously collected information without consent were sufficient to invoke the crime-tort exception.  *Id.* at

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-9-

*10. This Court disagreed, finding that any alleged violation of HIPAA "was not the purpose of the alleged interception." *Id.* Because "the act of interception cannot be the crime or the tort," the crime-tort exception did not save the plaintiff's claims from dismissal. *Id.* The same result should be reached here.

Plaintiff further alleges that Spring Fertility intercepted communications "for financial gain" and to "increase [its] profit margins." Compl. at ¶ 133, Doc. 1. Acting for a commercial gain, however, is not a criminal or tortious purpose. "Multiple courts in this district have found that the crime-tort exception to the [ECPA] is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022); *see also Katz-Lacabe v. Oracle Am., Inc.*, No. 22-CV-04792, 2024 WL 1471299, at *3 (N.D. Cal. Apr. 3, 2024) (allegations that defendant collected data to generate revenue were insufficient to invoke crime-tort exception).

The Complaint fails to sufficiently plead the crime-tort exception. Spring Fertility's consent to the use of the Facebook Tracking Pixel and LinkedIn Insight Tag on its website, therefore, bars Plaintiff's ECPA claim. *Rodriguez v. Google LLC*, No. 20-cv-04688, 2021 WL 2026726, at *6 (N.D. Cal. Aug. 7, 2023) ("'consent of one party is a complete defense'" to ECPA claim) (quoting *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1026. Count I must be dismissed.

### C.    Plaintiff Fails to State a CIPA Claim (Count III)

Count III asserts a violation of Section 631(a) of CIPA, California's wiretap statute. To plead a claim under Section 631(a), a plaintiff must allege facts showing someone "willfully" intercepted the contents of his or her communications while "in transit." Cal. Pen. Code § 631(a). Section 631(a) contains three operative clauses, each of which cover distinct and mutually independent patterns of conduct: (1) intentional wiretapping; (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire; and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities. *Martin v. Sephora USA, Inc.*, Case No. 1:22-cv-01355, 2023 WL 2717636, at *6 (E.D. Cal. Mar. 30, 2023) (citing *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021)). There is a fourth basis for liability for anyone "'who aids, agrees with, employs, or

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-10-

1   conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the'

2   other three bases for liability."  *Id.* (quoting Cal. Penal Code § 631(a)).  It is this fourth category

3   which Plaintiff alleges Spring Fertility violated, by "aid[ing], agree[ing] with, and conspir[ing]

4   with Facebook and LinkedIn to track and intercept Plaintiff's and Class Members' internet

5   communications while using www.springfertility.com to book fertility consultation."  Compl. at

6   ¶ 155, Doc. 1.  Plaintiff's claims fail for several reasons.

7           **1.      Spring Fertility Cannot Be Subject to Derivative CIPA Liability**

8                     **Because the Complaint Fails to Adequately Allege Predicate/Direct**

9                     **Liability.**

10          A party will be subject to derivative liability under the fourth clause of Section 631(a)

11  only "where [a] third party is directly liable for recording the communications in violation of the

12  first, second, or third clauses of § 631(a)."  *Martin*, 2023 WL 2717636, at *12.  In other words,

13  "a defendant cannot be liable for aiding and abetting another party in violation of this clause

14  absent a predicate violation of Section 631(a)'s first three clauses."  *Gutierrez v. Converse Inc.*,

15  No. CV 23-6547, 2024 WL 3511648, at *8 (C.D. Cal. July 12, 2024); *see also Byars v. Hot*

16  *Topic, Inc.*, 656 F. Supp. 3d 1051, 1066-67 (C.D. Cal. 2023) (under aiding and abetting theory,

17  "liability must be 'based entirely' on whether the" a third-party violated Section 631 in some

18  way).  Here, Plaintiff alleges that Spring Fertility only violated the "aiding and permitting"

19  portion of Section 631(a).  Compl. at ¶ 155, Doc. 1.  Plaintiff, however, fails to sufficient allege

20  predicate violations of Section 631 by a third party.  This precludes Plaintiff's claim.

21          Plaintiff repeatedly alleges that it was Spring Fertility who "chose to include the

22  Facebook Tracking Pixel on its Website." Compl. at ¶ 32 and that Spring Fertility "utilized the

23  Facebook Tracking Pixel and LinkedIn Insight Tag," *Id.* at ¶ 64.  These allegations relate to

24  Spring Fertility's *own conduct*, not the conduct of a third party and they "cannot be a basis for

25  liability because a participant to a conversation cannot eavesdrop on their own conversation."

26  *Garcia v. Build.com, Inc.*, Case No. 22-cv-01985, 2023 WL 4535531, at *5 (S.D. Cal. July 13,

27  2023) (dismissing CIPA claim).

28          In *Martin*, the court dismissed the plaintiff's CIPA claim which failed to allege that a

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-11-

third party had violated the first, second, or third clauses of Section 631(a). Because all of the plaintiff's allegations pertained to the defendant, and no actions were attributed to the alleged third-party eavesdropper, the plaintiff failed to state a claim under CIPA. *Id.* So too, here. No derivative liability can attach because the Complaint fails to allege sufficient facts alleging a violation by a third-party.

Furthermore, even if Plaintiff had alleged facts sufficient to make it plausible that Facebook or LinkedIn is a third party under Section 631(a), liability under clause four "only arise[s] if the defendant *knew* the perpetrator intended to commit the crime and *intended* to aid and abet the perpetrator in the crime." *Esparza v. UAG Escondido A1 Inc.*, Case No. 23cv0102, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (emphasis in original). The fact that a defendant paid a vendor to intercept messages is insufficient to establish the necessary scienter for a Section 631 aiding and abetting claim. *Heiting v. Taro Pharms. USA, Inc.*, (*Heiting I*), 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023).

This Court recently confirmed the need to show knowledge and intent for an aiding and abetting claim under the fourth clause of Section 631. In *Smith v. YETI Coolers, LLC*, Case No. 24-cv-01703, 2024 WL 4539578 (N.D. Cal. Oct. 21, 2024), the plaintiff alleged that the defendant aided, agreed with, and conspired with a third party payment processor to track and intercept the plaintiff's internet communications. This Court noted that while Section 631(a) "does not necessarily incorporate the common law requirement for aiding and abetting simply because it contemplates liability where an individual or entity provides 'aid,'" there is other language in the fourth clause that "does require some level of knowledge and intent." *Id.* at *4.

Specifically, this Court held that the clause prohibiting "a defendant from aiding, agreeing with, or employing a third party '*to* unlawfully do, or permit, or cause' the third party to act in violation of the wiretapping statute . . . indicates that the defendant must be acting with a third party *in order to* have the third party perform acts that violate the statute." *Id.* (emphasis in original). This language, "at the very least . . . requires both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Id.* This Court held that the plaintiff's allegations that the defendant was aware that

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-12-

1    the third party collected consumers' information and assisted the third party in doing so did "not

2    contain sufficient facts for the Court to draw a plausible inference that Defendant knowingly

3    agreed with or employed [the third party] to engage in conduct that violated the wiretapping

4    statute." *Id.* at *5.

5          Similarly, Plaintiff's Complaint is devoid of allegations sufficient to establish the

6    requisite knowledge and intent for her aiding and abetting claim.  There are no facts showing

7    Spring Fertility knew about any allegedly unlawful intent to intercept Plaintiff's

8    communications, that Spring Fertility possessed any intent to help Facebook or LinkedIn

9    intercept any alleged communications, or that Spring Fertility engaged in conduct that assisted

10   the achievement of the alleged crime.  As such, she has failed to state a claim under Clause 4 of

11   Section 631(a).

12          **2.    CIPA's Party Exception Applies to Spring Fertility's Vendors**

13          It is well-established that "only a third party can listen secretly to a private conversation."

14   *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (Ct. App. 1975).  CIPA's wiretapping provision is

15   "aimed at . . . eavesdropping, or the secret monitoring of conversations by third parties." *Ribas v.*

16   *Clark*, 38 Cal. 3d 355, 359 (1985); *Powell v. Union Pac. R.R. Co.*, 864 F. Supp. 2d 949, 955

17   (E.D. Cal. 2012) (noting Section 631 "applies only to third parties and not participants").    For

18   this reason, CIPA contains an "exemption from liability for a person who is a 'party' to the

19   communication."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir.

20   2020).

21          This exemption has been routinely extended to software vendors.  *See, e.g., Martin*, 2023

22   WL 2717636, at *13 (holding third-party vendor is "an extension of the company").  This Court

23   explained in *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021) that "a vendor

24   provides a software service that captures its clients' data, hosts it on [the vendor's] servers, and

25   allows the clients to analyze their data" is simply "an extension" of the client" and therefore "not

26   a third-party eavesdropper" subject to liability under the CIPA.  In other words, a company's use

27   of a website vendor does not constitute eavesdropping under Section 631 where the vendor is a

28   tool, agent, or extension of the company.  *Id.* at 832.

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-13-

*Heiting v. athenahealth, Inc.*, No. 2:23-CV-10338, 2024 WL 3761294 (C.D. Cal. July 29, 2024), is instructive. There, the court adopted the capability approach and stated that "[w]hen a third-party possesses only the capability to record and store the contents of an online chat for the website owner, its technical function is akin to that of a tape recorder." *Id.* at *4. However, if a "software provider could put that information to other uses on its own accord, it functions more like a person, listening in on a conversation." *Id.* The court held that "[a]t the pleading stage, a plaintiff must allege, in non-conclusory fashion, facts demonstrating that the third-party software company possesses the ability to act as an independent entity capable of using the recorded information for some other means." *Id.* The court found that the plaintiff's conclusory allegations that the third party could use communications to collect information about a specific user and create a transcript to enhance its own business were "too general and conclusory to support a reasonable inference that [the third party] had the capability to use the communications for any purpose beyond providing it to" the defendant. *Id.*

Similarly, Plaintiff's vague allegations that Facebook or LinkedIn could use data for targeted marketing are too general to find that Facebook or LinkedIn are third-party wiretappers. As such, Plaintiff's CIPA claim should be dismissed.

### 3.    Plaintiff Does Not Plausibly Allege the Requisite Interception "While In Transit"

Section 631(a) is the "wiretap" section of CIPA and therefore only applies where the "contents or meaning" of a communication is intercepted "in transit." Cal. Penal Code § 631(a). To state a claim under this provision, a plaintiff must plausibly allege a third party "read one of his communications while it was still in transit, i.e., *before it reached its intended recipient*." *Mastel*, 549 F. Supp. 3d at 1137 (emphasis added). Because Plaintiff's Complaint fails to allege sufficient facts establishing a third party intercepted communications "in transit," Count III must be dismissed for this additional reason.

Section 631(a) requires proof that a third party listened to a communication "*while* the same is in transit or passing over any wire, line, or cable." *Heiting I*, 2024 WL 1626114, at *8; *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (noting

Section 631(a) requires "real time interception").  Courts within the Ninth Circuit have interpreted the "in transit" requirement of Section 631(a) "narrowly."  *Licea v. Cinmar, LLC*, ("*Licea I*") 659 F. Supp. 3d 1096, 1109 (C.D. Cal. 2023).  In *Licea I*, the court dismissed a CIPA claim on grounds the complaint's allegations regarding interception were insufficiently conclusory.  Specifically, the court held that allegations that "the third party . . . secretly intercept[s] in real time, eavesdrop[s] upon, and store[s] transcripts" and that the defendant "automatically records and creates transcripts of all such private conversations" as bare allegations that "do not specifically allege that Plaintiff's messages were intercepted ***while in transit***."  *Id.* at 1110 (emphasis added); *see also Licea v. Am. Eagle Outfitters, Inc.*, ("*Licea II*"), 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) (rejecting allegation that "the third party . . . secretly intercept[s] (during transmission and in real time)" as conclusory and "does not allege specific facts as to how or when the interception takes place").

In the context of "modern internet communications," courts have recognized that the speed in which those communications are sent and held liability for same under wiretapping status is "undoubtedly limited."  *Novel Poster v. Javith Canfield Grp.*, 140 F. Supp. 3d 938, 951 (N.D. Cal. 2014).  Internet communications travel so quickly that there is only an incredibly narrow window during which an interception could occur.  *Id.* at 951-52.

Here, while Plaintiff uses the word "intercept" repeatedly throughout the Complaint, stating the word over and over "is simply not enough without the addition of specific facts that make it plausible" that her data was intercepted in transit.  *Rodriguez*, 2022 WL 214552, at *2.  Plaintiff alleges "[w]hen a user accesses a website hosting the Facebook Tracking Pixel, Facebook's software script surreptitiously directs the user's browser to contemporaneously send a separate message to Facebook's servers." Compl. at ¶ 31, Doc. 1.  "This second secret and contemporaneous transmission" is then "sent to the host website" and "two sets of code [are] thus run as part of the browser's attempt to load and read" Spring Fertility's website.  *Id.*

Nearly identical allegations were found insufficient to establish an interception in *Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967 (Cal. Super. Jan. 5, 2023).  The plaintiff there likewise alleged that Facebook Pixel "surreptitiously direct[ed] the user's

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

browsers to send a separate message to Facebook's servers." *Id.* at *5.  The plaintiff also alleged that "Facebook instruct[ed] the browsers to secretly duplicate the unwitting individual's communication" with the website, "transmitting it to Facebook's servers, alongside additional information that transcribes the communication's content and the individual's identity." *Id.*  The court found that "the duplication and sending of Facebook's secret code happens *after* the requests reach it destination," i.e., the website owner's server.  *Id.*  Because the plaintiff failed to allege an interception in transit or that the defended attempted to learn of the information while in transit, the court dismiss the plaintiff's CIPA claim.[2]

The same result should be reached here.  Plaintiff's theory is really "one of recording and then transmission, not interception." *Rodriguez*, 2022 WL 214552 at *1.  Such a theory does not support liability under Section 631(a) and consequently, Count I must be dismissed.

### D.     Plaintiff Fails to State a CMIA Claim (Count II)

Plaintiff alleges that Spring Fertility, as a provider of health care, violated Section 56.10 of the CMIA by disclosing "several pieces of information regarding its patients' use of the Spring Fertility Website, which included but was not limited to: treatments patients were seeking, such as booking consultations for fertility services," to Facebook and LinkedIn.  Compl. at ¶¶ 143, 144, Doc. 1.  Section 56.10 states, in relevant part, that "[n]o provider of health care . . . shall disclose ***medical information*** regarding a patient of the provider of health care . . . without first obtaining an authorization." Cal. Civ. § 56.10 (emphasis added).  Here, Plaintiff's CMIA claim must be dismissed because she has failed to allege facts showing "medical information" has been transmitted.

The CMIA defines "medical information" as "any individually identifiable information,

---

[2] In a subsequent opinion, the Barbour court overruled the defendant's demurrer to the plaintiff's amended complaint.  The plaintiffs in *Barbour*, however, were only able to rescue their CIPA claim as a result of specific, detailed allegations that directly responded to the deficiencies identified in the court's earlier dismissal, allegations that were much more specific than the conclusory allegations relied upon by Plaintiff.

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-16-

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1  in electronic or physical form, in possession of or derived from a provider of health care, health

2  care service plan, pharmaceutical company, or contractor regarding a patient's medical history,

3  mental or physical condition, or treatment." *Id.* at § 56.05(j).  Medical information is

4  "individually identifiable" if it "includes or contains any element of personal identifying

5  information sufficient to allow identification of the individual, such as the patient's name,

6  address, electronic mail address, telephone number, or social security number, or other

7  information that, alone or in combination with other publicly available information, reveals the

8  identity of the individual." *Id.*  In other words, "medical information" under the CMIA is

9  "***substantive information*** regarding a patient's medical condition or history that is combined

10  with individually identifiable information." *Eisenhower Med. Ctr. v. Super. Ct.*, 226 Cal. App.

11  4th 430, 434 (2014) (emphasis added).

12      In *Eisenhower*, the plaintiffs brought suit alleging that information including patient

13  name, medical record number, age, date of birth, and last four digits of their social security

14  number was improperly disclosed by a hospital in violation of the CMIA. *Id.* at 432.  The court

15  disagreed, holding that while such information may be individually identifiable, it was not

16  medical information under the CMIA because it did "not reveal medical history, diagnosis, or

17  care." *Id.* at 435.  The court further held that "[c]onfirmation that a person's medical record

18  exists somewhere is not medical information as defined under the CMIA," nor is "the mere fact

19  that a person may have been a patient." *Id.* at 435-36.  ("mere fact that a person is or was a

20  patient is not accorded the same level of privacy as more specific information about his medical

21  history").

22      Here, Plaintiff alleges that information related to treatments sought and booking

23  consultations constitute "medical information" under the CMIA.  Compl. at ¶¶ 143-145, Doc.

24  No. 1.  Similar allegations, however, were found insufficient in *Wilson v. Rater8, LLC*, Case No.:

25  20-cv-1515, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021).  There, the plaintiff brought suit after

26  receiving a text survey following an independent medical examination.  The plaintiff alleged that

27  the medical provider disclosed his name, cell phone number, physician name, appointment

28  information, discharge date, and discharge time to the survey company, in violation of the

-17-

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1  CMIA. *Id.* at *1.  The district court held that this information did not constitute "medical

2  information" under the CMIA.  *Id.* at *5.  Because the complaint did not contain "specific

3  allegations" about what information was disclosed, the court dismissed the plaintiff's CMIA

4  claim. *Id.*

5          Like the plaintiff in *Wilson*, Plaintiff here fails to allege any specific "medical history,

6  diagnosis, or care" that was disclosed.  *Eisenhower*, 226 Cal. App. 4th at 435.  Conclusory

7  allegations that appointment information was disclosed is simply insufficient to establish a

8  CMIA violation and thus, Count II must be dismissed. S*ee also Doe v. MKS Instruments, Inc.*,

9  No. SACV2300868, 2023 WL 9421115, at *1 (C.D. Cal. Nov. 3, 2023) (holding allegation that

10 "information about disabilities, health and medical conditions" was disclosed was conclusory

11 and did not constitute "medical information" under CMIA); *B.K.*, 721 F. Supp. 3d at 1064

12 (dismissing CMIA claim where plaintiff failed to allege "any specificity as to what medical

13 information was allegedly disclosed or when it was disclosed").

14 **E.      Plaintiff Fails to State an Invasion of Privacy Claim under the California**

15 **Constitution (Count V)**

16         Count V of the Complaint asserts a claim for violation of the right to privacy under

17 California's Constitution.  Plaintiff alleges that Spring Fertility intentionally invaded her privacy

18 by using the Facebook Tracking Pixel and LinkedIn Insight tag "to record and communicate

19 patients' personal identifiers alongside their confidential medical communications."  Compl. at ¶

20 178, Doc. 1.  Plaintiff asserts that she had a reasonable expectation of privacy that her

21 "communications, identities, health information, and other data would remain confidential."  *Id.*

22 at ¶ 179, Doc. 1.  A privacy claim under the California Constitution requires a showing of (1) a

23 legally protected privacy interest; (2) a reasonable expectation of privacy under the

24 circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the

25 protected privacy interest.  *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009).  Even

26 assuming, for purposes of this motion only, that Plaintiff could satisfy the first element, she has

27 failed to plead facts establishing she had a reasonable expectation of privacy or that any action

28 by Spring Fertility constituted a serious invasion of privacy.

-18-

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS                                    Case No. 5:24-cv-03888-EJD

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1    At the outset, because Plaintiff agreed to a Privacy Policy that allowed Spring Fertility to

2    collect certain personal information—including medical condition and gender identity, RJN Ex.

3    2—she cannot establish that she had a reasonable expectation of privacy under the

4    circumstances.  In other words, she cannot claim that Spring Fertility invaded her privacy by

5    collecting information *she already agreed to share.*

6    The California Constitution sets "a high bar for an invasion of privacy claim."  *Low v.*

7    *LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).  As the California Supreme Court

8    has noted "[n]o community could function if ever intrusion into the realm of private action, no

9    matter how slight or trivial, gave rise to a cause of action for invasion of privacy."  *Hill v. Nat'l*

10    *Collegiate Athletic Assn.*, 865 P.2d 633, 655 (Cal. 1994).  Thus, "[a]actionable invasions of

11    privacy must be sufficiently serious in their nature, scope, and actual or potential impact to

12    constitute an *egregious breach* of the social norms underlying the privacy right."  *Id.* (emphasis

13    added).  In examining whether a defendant's actions were "highly offensive," courts look at

14    "'factors such as the likelihood of serious harm to the victim, the degree and setting of the

15    intrusion, the intruder's motives and objections, and whether countervailing interests of social

16    norms render the intrusion inoffensive.'"  *B.K.*, 721 F. Supp. 3d at 1067 (quoting *In re Facebook,*

17    *Inc. Internet Tracking Litig.*, 956 F.3d 589.

18    Courts in the Northern District have consistently held that "data collection and disclosure

19    to third parties that is 'routine commercial behavior' is not a 'highly offensive' invasion of

20    privacy.  *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022), *aff'd* No.

21    22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) (collection of sensitive personal data from

22    applications on smartphones not highly offensive); *see also In re Google, Inc. Privacy Policy*

23    *Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (disclosure of browser history to third parties

24    not highly offensive); *Low*, 900 F. Supp. 2d at 1025 ("The information disclosed to third parties

25    by LinkedIn, including a numeric code associated with a user and the URL of the profile page

26    viewed, does not meet the standard set by California courts."); *In re iPhone Application Litig.*,

27    844 F. Supp. 2d 1040, 1060 (N.D. Cal. 2012) (disclosures of unique device identification

28    number, personal data, and geolocation information without consent not an egregious breach of

social norms). Even disclosure of highly personal information such as social security numbers has been found to not be so highly offensive to constitute an egregious breach of social norms. *Low*, 900 F. Supp. 2d at 1025.

Here, Plaintiff's Complaint is purposefully vague as to what information was collected that allegedly violated her privacy. Plaintiff uses boilerplate terms such as "medical information," "medical communications," and "health information." Compl. at ¶¶ 177-180, Doc. 1. Elsewhere in the Complaint, Plaintiff makes reference to the type of consultation and services sought and sexual orientation. *Id.* at ¶ 5, Doc. 1. The disclosure of any of this information— assuming for purposes of this motion it occurred—does not meet the high bar required to establish a constitutional violation.

In *B.K.*, the plaintiffs brought similar claims alleging that the defendant used Meta Pixel to collect users' confidential and private information including details about medical conditions, providers sought, and appointments and that disclosing this information to Meta invaded their privacy. 721 F. Supp. 3d at 1061. The district court disagreed, finding that, at best, the information constituted routine medical searches and inquiries. *Id.* at 1067. In *Hammerling*, the plaintiffs alleged that Google collected information from a fertility tracker app. 615 F. Supp. 3d at 1091. While the court conceded information about a user's menstrual cycle was "extremely intimate," it did not rise to the level of an invasion of privacy. *Id.* (also finding allegation that Google collected "general information about a user's religion, political affiliation, or sexual preference" was insufficient).

As a matter of law, the Complaint fails to state sufficient facts demonstrating the disclosure of information which would result in "serious harm" to Plaintiff or that would constitute an egregious breach of social norms. As such, Count V should be dismissed.

Separately, and alternatively, Plaintiff seeks "all relief available" for her invasion of privacy claim. Compl. at ¶ 182, Doc. 1. Her Prayer for Relief lists a litany of requests including declaratory relief, injunctive relief, and monetary damages. *Id.* at p. 43, Doc. 1. The provision of the California Constitution granting a right to privacy, however, does not provide a private right of action for money damages. *Blanco v. Cnty. of Kings*, 142 F. Supp. 3d 986, 1000 (E.D.

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-20-

1   Cal. 2015) (citing *Clausing v. San Francisco Unified Sch. Dist.*, 221 Cal.App.3d 1224, 1238

2   (1990)); *see also Allen v. Cnty. of Sonoma*, No. 17-CV-0048, 2017 WL 3593340, at *5 (N.D.

3   Cal. Aug. 18, 2017) (holding privacy provision of California Constitute only affords right to

4   injunctive relief, not monetary damages).  Thus, to the extent Plaintiff seek monetary damages

5   with respect to Count V, she is not entitled to same and such claim must be dismissed.

6   **VII.    CONCLUSION**

7           For all the reasons set forth above, Defendant Spring Fertility Holdings, LLC respectfully

8   requests that this Honorable Court grant its Motion to Dismiss and enter an order dismissing all

9   claims against Spring Fertility Holdings, LLC with prejudice.

10

                                          Respectfully submitted,

11

    Dated:  January 10, 2025              GORDON REES SCULLY

12                                        MANSUKHANI, LLP

13

                                          By:   /s/ Timothy K. Branson

14                                              Timothy K. Branson
                                                Sara Anderson Frey (pro hac pending)
15                                              Attorneys for Defendant
                                                SPRING FERTILITY HOLDINGS,
16                                              LLC

17

18

19

20

21

22

23

24

25

26

27

28

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-21-