**LATHAM & WATKINS LLP**
MELANIE M. BLUNSCHI
melanie.blunschi@lw.com
KRISTIN I. SHEFFIELD-WHITEHEAD
kristin.whitehead@lw.com
CATHERINE A. RIZZONI
cat.rizzoni@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 395-0600
Facsimile: (415) 395-8095

**GIBSON, DUNN & CRUTCHER LLP**
ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

*Attorneys for Defendant Meta Platforms, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

J.S., individually and on behalf of all others similarly situated,

Plaintiff,

v.

SPRING FERTILITY HOLDINGS, LLC, META PLATFORMS, INC., AND LINKEDIN CORPORATION,

Defendants.

Case No. 5:24-cv-07374-EJD

**NOTICE OF MOTION AND MOTION TO SEVER CLAIMS AGAINST DEFENDANT META PLATFORMS, INC.**

[*Declaration of Elizabeth K. McCloskey and [Proposed] Order filed concurrently herewith*]

Action Filed: October 22, 2024

Honorable Edward J. Davila

Date: April 3, 2025
Time: 9:00 a.m.
Courtroom: 4, 5th Floor

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 3, 2025, at 9:00 a.m., or as soon as the matter may be heard before the Honorable Edward J. Davila of the United States District Court for the Northern District of California in the San Jose Courthouse, 280 South First Street, San Jose, California 95113, Defendant Meta Platforms, Inc. ("Meta") will and does move this Court for an order severing the claims against Meta in this action. This motion is brought under Federal Rule of Civil Procedure 21, on the basis that the claims against Meta are related to the claims in *In re Meta Pixel Healthcare Litigation*, Case No. 3:22-cv-3580-WHO (N.D. Cal. June 17, 2022), and should be related to and consolidated with that action.

Meta's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Elizabeth K. McCloskey, any other matters of which the Court may take judicial notice, other documents on file in this action, any oral argument of counsel, and any other matters properly before the Court.

Dated: January 13, 2025

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Elizabeth K. McCloskey*
Elizabeth K. McCloskey

**LATHAM & WATKINS LLP**

By: */s/ Melanie M. Blunschi*
Melanie M. Blunschi

*Attorneys for Meta Platforms, Inc.*

**INTRODUCTION**

Defendant Meta Platforms, Inc. ("Meta") seeks to sever the claims against it in this case because they are duplicative of—and encompassed within—those asserted against it in the earlier-filed consolidated action *In re Meta Pixel Healthcare Litigation*, Case No. 3:22-cv-03580-WHO (N.D. Cal. June 17, 2022) (the "Consolidated Healthcare Action"). Under Civil Rule 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. Severance is proper where "it will serve the ends of justice and further the prompt and efficient disposition of litigation." *Khanna v. State Bar of Cal.*, 2007 WL 2288116, at *2 (N.D. Cal. Aug. 7, 2007). Courts weigh five factors to assess whether to sever: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *SEC v. Leslie*, 2010 WL 2991038, at *4 (N.D. Cal. July 29, 2010). The balance of these factors support severance.

Because plaintiff's claims against Meta are wholly subsumed within the Consolidated Healthcare Action, it would conserve judicial and party resources and avoid conflicting results to sever those claims and consolidate them with the Consolidated Healthcare Action. Plaintiff's allegations establish that she is a member of the putative class in the Consolidated Healthcare Action. The claims in both cases are based on allegations that healthcare providers transmitted personally identifiable information and health data to Meta via the Meta Pixel—a ubiquitous, publicly available tool that website owners can install on their websites to measure certain user activities on the websites, such as online purchases. All causes of action plaintiff purports to bring against Meta—including claims under the Electronic Communications Privacy Act ("ECPA"), the California Invasion of Privacy Act ("CIPA"), and the California constitution (invasion of privacy)—are brought in the Consolidated Healthcare Action. Particularly given that the Consolidated Healthcare Action is already being actively litigated, there is no reason to allow a later-filed, wholly duplicative, competing putative class action to proceed separately, wasting party and judicial resources and risking prejudicial, inconsistent rulings. And plaintiff's claims against Meta here are sufficiently distinct from the claims she brings against the

other defendants: they predominantly arise out of different transactions or occurrences, give rise to different questions of law and fact, and require different proof. Accordingly, Meta moves to sever plaintiff's claims against Meta so that they may be related to and consolidated with the Consolidated Healthcare Action.

**BACKGROUND AND PROCEDURAL FACTS**

***The Consolidated Healthcare Action.*** On June 17, 2022, a "John Doe" Facebook user filed an action against Meta, alleging that his healthcare provider installed tracking and collection tools, including the Meta Pixel, on the patient portal website that he used to access his healthcare provider's services. Dkt. 1 ¶ 1, Case No. 3:22-cv-3580-WHO. After that action was filed, four other lawsuits alleging similar facts and bringing the same or similar claims were filed. *See id.*, Dkt. 73. On October 12, 2022, the court granted a motion to consolidate those cases and established a process for the parties to consolidate any additional related claims into the Consolidated Healthcare Action. *Id.* ¶ 4. Since that order, Meta and the Facebook-user plaintiffs in the Consolidated Healthcare Action have successfully moved to sever, relate, and consolidate into that action similar claims filed against Meta in sixteen lawsuits across the country. *Id.*, Dkt. 191 at 45 (listing cases related to and consolidated into the Consolidated Healthcare Action as of March 7, 2023); Dkt. 384 (listing additional cases related to and consolidated into the Consolidated Healthcare Action).

On October 10, 2023, the plaintiffs in the Consolidated Healthcare Action filed their First Amended Consolidated Class Action Complaint ("FAC") alleging that Meta used its Business Tools, including the Meta Pixel, "to intercept individually identifiable health information from Meta health care 'Partner' websites." *Id.*, Dkt. 335 ¶ 1. The FAC alleged that because numerous "covered entities" had installed Meta's tracking tools, including the Pixel, on their patient portals, Meta received individually identifiable, confidential, and otherwise sensitive health information about plaintiffs, including information shared with covered entities when setting up appointments and communications with providers regarding conditions or treatments. *Id.* ¶ 84. The FAC defined "covered entities" to include "healthcare providers, health insurers, healthcare clearinghouses, patient portal providers, pharmacies, pharmaceutical companies, and any other entity, business associate, or contractor for which health or medical information is protected by HIPAA or the CMIA." *Id.* ¶ 21.

The FAC asserts several common law and statutory privacy-related causes of action, including: (1) breach of contract; (2) breach of the duty of good faith and fair dealing; (3) violation of the ECPA; (4) violation of CIPA sections 631 and 632; (5) intrusion upon seclusion; (6) violation of the California constitution (invasion of privacy); (7) trespass to chattel; (8) violation of the California Consumer Legal Remedies Act; (9) violation of the California Comprehensive Data Access and Fraud Act; and (10) unjust enrichment. *Id.*, Dkt. 335 ¶¶ 368–547. It seeks to certify a nationwide putative class of "[a]ll Facebook users whose health information was obtained by Meta from their health care provider or covered entity through Meta Collection Tools." *Id.* ¶ 353. Meta Collection Tools are defined as "the Meta Pixel, Meta SDK, Meta Conversions API, customer list uploads, social plug-ins, Meta Graph API, server-to-server transmissions, and any other similar collection tools." *Id.* ¶ 354.

***This action.*** On October 22, 2024, plaintiff J.S. filed this putative class action in the Northern District of California against Spring Fertility, Meta, and LinkedIn Corporation ("LinkedIn"). Dkt. 1 ¶ 1. Plaintiff alleges that Spring Fertility, a healthcare provider that offers fertility services, embedded the Meta Pixel and data analytics technology from LinkedIn on its website. *Id.* ¶ 13. She further alleges that, as a result, Meta and LinkedIn "intercepted each of a users' interactions," including health information and other sensitive data, "on the [w]ebsite that incorporated its technology." *Id.* ¶¶ 14–15. Based on these allegations, plaintiff asserts the following claims against Meta: (1) violation of the ECPA; (2) violation of CIPA sections 631 and 632; and (3) violation of the California constitution (invasion of privacy). *Id.* ¶¶ 115–82. Plaintiff also seeks certification of a putative class of "[a]ll natural persons in the State of California who, during the class period, had a Facebook or LinkedIn account and booked a consultation on www.springfertility.com." *Id.* ¶ 106.

***Other LinkedIn actions.*** On December 20, 2024, this Court asked counsel in *L.B. v. LinkedIn Corporation*, Case No. 5:24-cv-06832-EJD (N.D. Cal.) ("*L.B.*") to meet and confer on whether this case and three other cases filed against LinkedIn should be related to and consolidated with *L.B.*: *V.R. v. LinkedIn Corporation*, Case No. 5:24-cv-07399-PCP (N.D. Cal.); *J.P. v. LinkedIn Corporation*, Case No. 5:24-cv-07586-EJD (N.D. Cal.); and *L.W.A. v. LinkedIn Corporation*, Case No. 5:24-cv-08436-EKL (N.D. Cal.) (together, the "Referred Actions"). Dkt. 28 ("*L.B.* Order"), Case No. 5:24-cv-06832-EJD (N.D. Cal.). Besides this case, Meta is not a defendant in any of the other Referred Actions (or in

*L.B.*), which bring claims solely against LinkedIn related to the installation of LinkedIn's Insight Tag on third-party websites www.reflexmd.com (*L.B.*), www.citymd.com (*V.R.*), www.headway.co (*J.P.*), and www.noom.com (*L.W.A.*). Plaintiff J.S.'s complaint in this action does not suggest that she would be a putative class member in these other actions.

On January 2, 2025, Judge Lee issued a Referral for Purpose of Determining Relationship between this case and *L.B.* Dkt. 36, Case No. 5:24-cv-07374-EJD (N.D. Cal.), and this Court related the cases the next day, Dkt. 32, Case No. 5:24-cv-06832-EJD (N.D. Cal.).

**ARGUMENT**

"On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. District courts have "broad discretion in determining whether to order severance under Rule 21." *Bodri v. Gopro, Inc.*, 2016 WL 1718217, at *1 (N.D. Cal. Apr. 28, 2016). And "Rule 21 allows the Court to sever [] claims against [a defendant] even though it was properly joined as a defendant." *Bradford Techs., Inc. v. Biggers*, 2014 WL 12641953, at *5 (N.D. Cal. May 27, 2014). "[A] court may sever claims that are discrete and separate." *Burden v. Serafin*, 2022 WL 20113300, at *3 (N.D. Cal. Nov. 14, 2022) (citation omitted). Severance is proper where it "will serve the ends of justice and further the prompt and efficient disposition of litigation." *Khanna*, 2007 WL 2288116, at *2.

In considering whether to sever a claim under Rule 21, courts consider the following factors: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Leslie*, 2010 WL 2991038, at *4. These factors "do not operate as a mechanical test, but rather, serve as a guide to courts in exercising discretion over severance motions." *Burden*, 2022 WL 20113300, at *3.

**A. Severing The Claims Against Meta Would Promote Judicial Economy Because They Are Duplicative Of Those In The Consolidated Healthcare Action**

Severance of the claims against Meta would promote judicial economy and the efficient adjudication of the claims because they are duplicative of, and subsumed within, those in the

Consolidated Healthcare Action. Both cases allege that Meta received sensitive health information because of healthcare providers' installation of Meta's Pixel on their websites. *See* Dkt. 1 ¶¶ 13–15; Dkt. 335 ¶ 1, Case No. 3:22-cv-03580-WHO. Both cases bring claims for violations of ECPA, violations of CIPA sections 631 and 632, and invasion of privacy. *See* Dkt. 1 ¶¶ 115–82; Dkt. 335 ¶¶ 413–486, Case No. 3:22-cv-03580-WHO. And plaintiff J.S. falls within the putative class in the Consolidated Healthcare Action, which includes "[a]ll Facebook users whose health information was obtained by Meta from their health care provider or covered entity." Dkt. 185 ¶ 274, Case No. 3:22-cv-03580-WHO. Accordingly, any allegedly sensitive data transmitted from Spring Fertility to Meta using Meta's Pixel—which forms the basis of plaintiff's claims here—is already the subject of the Consolidated Healthcare Action. *See supra* 2.

The similarities between the claims and allegations in this case and those in the Consolidated Healthcare Action make this case like *Newton v. Kaiser Foundation Health Plan, Inc.*, in which Judge Chen recently severed "large[ly] overlap[ping]" claims against Meta so that they could be related to and consolidated with the Consolidated Healthcare Action. Dkt. 58 at 19:15–20, Case No. 3:24-cv-03625-EMC (N.D. Cal.); *see also id.*, Dkt. 54 (granting Meta's motion to sever). That case, like this one, involves allegations that a patient's health data was unlawfully intercepted when a healthcare provider—there, Kaiser Permanente ("Kaiser")—installed Meta's Pixel and allegedly shared sensitive data with Meta through it. *See id.*, Dkt. 1-4 ¶¶ 6–9. The plaintiff in Kaiser, like J.S., fell within the putative class definition in the Consolidated Healthcare Action, meaning that Meta's alleged interception of data sent by the plaintiff to Kaiser was subsumed within the claims already being litigated against Meta in the Consolidated Healthcare Action. The plaintiff there opposed severance based on two decisions denying motions to sever that sought consolidation with the Consolidated Healthcare Action, *see id.*, Dkt. 47 at 5, but in those cases, the claims involved alleged interceptions of data on healthcare *apps* through the app owner's installation of a different Meta technology, the SDK, *see Doe v. Hey Favor, Inc.*, Case No. 3:23-cv-00059-WHO (N.D. Cal. May 24, 2023), Dkt. 75 at 1; *Doe v. GoodRx Holdings, Inc.*, Case No. 23-cv-00501-AMO (N.D. Cal. Jul. 31, 2024), Dkt. 207 at 2. Those claims also focused on *telemedicine*, which Judge Orrick—who presides over the Consolidated Healthcare Action—suggested is "different to some degree" from the in-person, hospital-based claims

in the Consolidated Healthcare Action. Dkt. 78, Case No. 3:23-cv-00059-WHO (distinguishing the hospital-based Consolidated Healthcare Action from "the telemed cases"). Judge Chen granted Meta's motion to sever in *Kaiser*, rejecting the plaintiff's attempt to draw parallels to the *Hey Favor* and *GoodRx* decisions. This Court should do the same here because the website and Pixel-based allegations and claims in this action are more like *Kaiser* and the Consolidated Healthcare Action than like *Hey Favor* and *GoodRx*.

Given this duplication of allegations and claims, it would "promote[] judicial economy" to sever plaintiff's claims against Meta in this case so that they can be related to, and consolidated with, the Consolidated Healthcare Action, instead of requiring Meta to defend against the same issues on two separate fronts. *See Netlist, Inc. v. Smart Modular, Inc.*, 2013 WL 12128691, at *7 (C.D. Cal. Nov. 26, 2013) (severing claims so that they could be consolidated with related pending actions in the Northern District of California). To that end, plaintiffs in the Consolidated Healthcare Action agree that the claims here are duplicative of the ones they have asserted in the Consolidated Healthcare Action. McCloskey Decl. ¶ 2. Therefore, if this Court grants Meta's motion to sever, Meta and the plaintiffs in the Consolidated Healthcare Action will seek relation and consolidation of plaintiff's claims against Meta with the Consolidated Healthcare Action.[1] *See XpandOrtho, Inc. v. Zimmer Biomet Holdings, Inc.*, 2022 WL 18110171, at *5 (S.D. Cal. Nov. 22, 2022) (severing claims so that they could be transferred to another district, where "related" litigation was pending).

Because of the overlapping issues of fact and law, severance and consolidation would also promote judicial economy by reducing the significant and unnecessary burden on Meta and the judicial system associated with simultaneous, largely duplicative discovery processes proceeding in parallel in different cases. *Colors of India v. Nielsen*, 2018 WL 6430118, at *5 (C.D. Cal. Oct. 19, 2018) ("Indeed, severing the claims would likely avoid lengthy delays associated with duplicative, unnecessary discovery requests."). Given the overlapping factual issues between the cases, discovery related to plaintiff's claims against Meta in this case will be duplicative of the discovery sought and exchanged

[1] The motion to sever the claims against Meta must be made in this case, while the motion to relate and consolidate the severed claims must be made in the Consolidated Healthcare Action, the case with the lowest docket number. *See* Civil L.R. 3-12(b). Accordingly, each motion will be conditioned on the other being granted.

in the Consolidated Healthcare Action. For example, both cases will require discovery into the technical intricacies of Meta's Pixel and the steps Meta takes to avoid receiving health data from website owners who install its Pixel. In addition to the unnecessary burden and expense of requiring Meta to engage in duplicative discovery negotiations and make duplicative productions, requiring the claims against Meta in this case to proceed separately from the Consolidated Healthcare Action would unnecessarily require the Court to hear, and Meta to litigate, the same discovery disputes multiple times, unduly burdening the judicial system and Meta and increasing the risk of inconsistent discovery rulings. *See Trazo v. Nestle USA, Inc.*, 2013 WL 12214042, at *3 (N.D. Cal. Dec. 4, 2013) ("Severing Plaintiffs' case . . . will help streamline discovery and allow the parties to focus on the distinct evidence required to support each separate claim.").

### B. Severance Would Avoid Prejudice To Meta By Avoiding Inconsistent Rulings On Key Factual And Legal Questions, And Will Not Prejudice Plaintiff

Severing will also avoid prejudice to Meta by avoiding the risk of inconsistent results that may come from litigating the same issues in multiple cases. *See XpandOrtho*, 2022 WL 18110171, at *9. The claims here are already being litigated in the Consolidated Healthcare Action. If litigated in two separate cases, Meta may face inconsistent rulings on key issues of fact and law. For example, ECPA requires an "intentional" interception of communications, but as Meta has argued in the Consolidated Healthcare Case (and would argue here if the Court denies severance), Meta cannot have intended to intercept this data because it expressly tells website owners through its Business Tools Terms *not* to program the Pixel to share health data. Should this Court and Judge Orrick disagree about Meta's Business Tools Terms and come to different conclusions about Meta's intent on the merits, Meta will be left with inconsistent legal guidance about how to proceed and guard against future legal liability.

As another example, Meta has argued in the Consolidated Healthcare Action (and would do the same here) that Facebook users—including all members of the putative classes in both cases—consent to Meta's receipt of data reflecting their activity on third-party websites when they agree to Meta's Terms of Service and other policies. But if faced with inconsistent rulings, Meta will likewise be left in a state of uncertainty about the legal effect of its user-facing disclosures. The prejudice of

inconsistent rulings can be avoided by severing the claims here and consolidating them with the Consolidated Healthcare Action.

Severance would not prejudice plaintiff, whose claims against Meta are already encompassed within the Consolidated Healthcare Action. Especially "[b]ecause this litigation . . . is at an early stage, . . . no substantial right will be prejudiced by the severance of the claims." *Valez v. Billingsleys' Main St. Grill, Inc.*, 2020 WL 2213463, at *2 (C.D. Cal. Apr. 2, 2020).

### C. Plaintiff's Claims Against Meta Do Not Arise Out Of The Same Transaction Or Occurrence As Those She Brings Against LinkedIn

Although plaintiff here also brings claims against LinkedIn, those claims are premised on distinct factual allegations and do not arise out of the same "transaction or occurrence." *Leslie*, 2010 WL 2991038, at *4. LinkedIn and Meta are each alleged to have received plaintiff's information via their respective, separate tools—the Meta Pixel and the LinkedIn Insight Tag—the latter of which is subject to the *separate* lawsuits identified in this Court's *L.B.* Order. Dkt. 1 ¶ 13, Case No. 5:24-cv-07374. The factual allegations surrounding each of these tools are distinct. *Id.* ¶¶ 25–40 (discussing Meta's Pixel technology); *id.* ¶¶ 41–61 (discussing LinkedIn's Insight Tag). Plaintiff does not allege that LinkedIn and Meta collaborated with one another in the process of receiving her data. Nor does she claim that these technologies interact with or are related to one another. The alleged transmission of sensitive data by the Meta Pixel thus not only raises distinct factual questions, but also reflects a separate process from the alleged transmission of plaintiff's data by LinkedIn's separate technology.

Judge Davila's *L.B.* Order finding this case is related to *L.B.* and several other cases solely against LinkedIn regarding the use of LinkedIn's Insight Tag further underscores why severance is appropriate here. The common element among *L.B.* and each of the Referred Cases is that they involve claims against LinkedIn—not Meta—related to websites' use of LinkedIn's technology. No claims in *L.B.* or the Referred Cases involve Meta, and as explained herein, the claims against Meta are wholly distinct and separate from the claims against LinkedIn. The Court has logically determined that the claims against LinkedIn here are similar to and should be related to *L.B.* and the Referred Cases. And the Court should likewise sever the wholly distinct and separate claims against Meta here so they can be related to the wholly overlapping claims against Meta in the Consolidated Healthcare Action.

### D. Plaintiff's Claims Against Meta Present Predominantly Distinct Questions Of Law Or Fact Than Her Claims Against The Other Defendants

Plaintiff's claims against each defendant predominantly involve questions of law or fact that are not common to the other defendants. At the outset, plaintiff asserts a separate cause of action against Spring Fertility that it does not assert against Meta or LinkedIn: an alleged violation of the California Confidentiality of Medical Information Act, which makes unlawful a healthcare provider's disclosure of patient medical information. But even as between the claims that plaintiff asserts against all defendants—under ECPA, CIPA, and the California constitution (invasion of privacy)—each defendant's potential liability will depend on defendant-specific facts. For example, as explained above, whether Meta intended to receive plaintiff's data or whether plaintiff consented to Meta receiving it—questions relevant to the merits of each of these claims—will depend on Meta-specific facts and application of the law to those facts. So too with LinkedIn and Spring Fertility's liability. To the extent that there are some common questions of law or fact attendant in plaintiff's claims against each defendant, that is not fatal. Severance is still proper under Rule 21 where—as here—common questions are "few[er]," *Hernandez v. City of San Jose*, 2017 WL 2081236, at *10 (N.D. Cal. May 15, 2017) (severing despite the existence of some common questions), and less "significant," *Jetpack Enters., LLC v. Jetlev, LLC*, 2016 WL 11020227, at *3 (C.D. Cal. Aug. 31, 2016) (same), to liability than the distinct questions of law and fact, *see also Trazo*, 2013 WL 12214042, at *3 (severing despite the presence of some common facts where "each misbranding theory requires a very different analysis to determine if the statements were false or misleading dependent upon product packaging, product type, and . . . the claims asserted," and thus the "mix" of questions "weighs in favor of severance").

### E. Different Witnesses And Documentary Proof Are Required For The Claims Against Each Defendant

As explained above, plaintiff's claims against Meta and LinkedIn arise from separate transactions and present different questions of law and fact. To prove the claims against LinkedIn and Meta, therefore, plaintiff will have to pursue separate evidence for each of the technologies alleged to have facilitated transmission of her data. This will necessarily include separate witnesses with knowledge of each of these different technologies because plaintiff has not alleged any relationship

between the different technologies or the different claims asserted against LinkedIn and Meta. Granting severance of the claims against Meta will thus ease the burdens of discovery. Requiring a jury to hear evidence regarding each of these distinct technologies alongside one another may also risk confusion and prejudice to Meta and LinkedIn. *See E.C. v. Lincoln Mil. Prop. Mgmt. LP*, 2022 WL 4241734, at *5 (S.D. Cal. Sept. 13, 2022) (recognizing that the "likelihood of prejudice to defendant and confusion of the jury . . . are proper considerations for the court" in deciding whether to sever).[2]

**CONCLUSION**

Plaintiff's allegations and claims against Meta fall within the scope of the allegations and claims in the Consolidated Healthcare Action. Because severance and consolidation will promote judicial economy and reduce the risk of prejudice from inconsistent judgments, the claims here do not arise out of the same transaction as the claims against other defendants or present predominantly common questions of law or fact, and different witnesses and documentary proof are required for plaintiff to prosecute her claims against Meta, Meta respectfully requests that this Court sever the claims against it here so that they may be related to and consolidated with the Consolidated Healthcare Action.

Dated: January 13, 2025

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Elizabeth K. McCloskey*
Elizabeth K. McCloskey

**LATHAM & WATKINS LLP**

By: */s/ Melanie M. Blunschi*
Melanie M. Blunschi

*Attorneys for Meta Platforms, Inc.*

[2] Conversely, for the reasons explained above, discovery related to plaintiff's claims against Meta here will be duplicative of discovery ongoing in the Consolidated Healthcare Action. To the extent there is any overlap between the discovery relevant to plaintiff's claims against Spring Fertility and Meta, that overlap is smaller and more easily navigable than the wholly duplicative discovery relevant to plaintiff's claims against Meta and those in the Consolidated Healthcare Action.

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Elizabeth K. McCloskey, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: January 13, 2025

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Elizabeth K. McCloskey*
Elizabeth K. McCloskey