**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
Stephen A. Beck (*pro hac vice* forthcoming)
701 Brickell Ave., Suite 2100
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com
sbeck@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| J.S., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPRING FERTILITY HOLDINGS, LLC, META PLATFORMS, INC., AND LINKEDIN CORPORATION,<br><br>Defendants. | Case No. 5:24-cv-07374-EJD<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO SEVER CLAIMS**<br><br>Hon. Edward J. Davila<br><br>Date: April 3, 2025<br>Time: 9:00 a.m.<br>Courtroom: 4, 5th Floor |

# TABLE OF CONTENTS

**PAGE(S)**

I. INTRODUCTION ..... 1

II. LEGAL STANDARD ..... 2

III. ARGUMENT ..... 2

A. This Case Is Materially Different From *Meta Healthcare* ..... 2

B. Severing The Claims Against Meta Will Not Promote Judicial Economy Or Avoid Prejudice ..... 4

C. Severing The Claims Will Cause Unnecessary Duplication ..... 7

IV. CONCLUSION ..... 8

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**


*Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, 2013 WL 2631333 (S.D. Cal. Jun. 11, 2013) .......... 6

*Colors of India v. Nielsen*, 2018 WL 6430118 (C.D. Cal. Oct. 19, 2018) .......... 7

*Connelly v. Ekimoto & Morris, LLC*, 2018 WL 3312957 n.2 (D. Haw. Jul. 5, 1018) .......... 4

*Doe v. GoodRx Holdings, Inc., et al.*, 2024 WL 3639372 (N.D. Cal. Jul. 31, 2024) .......... 3

*Doe v. Hey Favor, Inc.*, 2023 WL 9955355 (N.D. Cal. May 24, 2023) .......... 2, 3, 4

*E.C. v. Lincoln Mil. Prop. Mgmt.*, 2022 WL 4241734 (S.D. Cal. Sept. 13, 2022) .......... 5, 6, 8

*Hernandez v. City of San Jose*, 2017 WL 2081236 (N.D. Cal. May 15, 2017) .......... 8

*Horowitz v. Chen*, 2020 WL 4805466 (C.D. Cal. May 20, 2020) .......... 8

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 2021 WL 9181832 (C.D. Cal. Aug. 20, 2021) .......... 8

*Jetpack Enterprises, LLC v. Jetlev, LLC*, 2016 WL 11020227 (C.D. Cal. Aug. 31, 2016) .......... 8

*Netlist, Inc. v. Smart Modular, Inc.*, 2013 WL 12128691 (C.D. Cal. Nov. 26, 2013) .......... 4

*Pit River Tribe v. Bureau of Land Mgmt.*, 2019 WL 6341566 (N.D. Cal. Nov. 27, 2019) .......... 7

*S.E.C. v. Leslie*, 2010 WL 2991038 (N.D. Cal. Jul. 29, 2010) .......... 2, 3, 5, 7

*Schertzer v. Bank of Am., N.A.*, 2021 WL 1383164 (S.D. Cal. Apr. 13, 2021) .......... 5, 8

*Trazo v. Nestle USA, Inc.*, 2013 WL 12214042 (N.D. Cal. Dec. 4, 2013) .......... 8

*W. Watersheds Project v. Zinke*,
2018 WL 4210774 (D. Idaho Sept. 4, 2018) ..................................................................... 7

*XpandOrtho, Inc. v. Zimmer Biomet Holdings, Inc.*,
2022 WL 18110171 (S.D. Cal. Nov. 22, 2022)................................................................. 5

**RULES**

Fed. R. Civ. P. 21 .......................................................................................................... 2

## I. INTRODUCTION

Meta Platforms, Inc. ("Meta") is facing dozens of lawsuits across the country related to the unlawful interception of confidential health data. In response, Meta has undertaken a strategic effort whereby it attempts to limit its liability by unjustifiably collapsing all cases against it concerning health or medical apps into the *In re Meta Pixel Healthcare Litigation*, Case No. 3:22-cv-03580-WHO (N.D. Cal. Jun. 17, 2022) (the *Meta Healthcare Litigation*)—a class action alleging Meta improperly received health information from hospital websites and patient portals. But severance is not appropriate here, as Plaintiff J.S. ("Plaintiff") alleges claims that concern legal and factual issues that are distinct from those presented in the *Meta Healthcare Litigation*, and Plaintiffs' claims against all three defendants in this action overlap such that severance of the claims against one defendant would be inefficient.

On October 22, 2024, Plaintiff filed a class action complaint against Spring Fertility Holdings, LLC ("Spring Fertility"), Meta, and LinkedIn Corporation ("LinkedIn") (together with Spring Fertility and Meta, the "Defendants") related to unlawful disclosures of personal and health information when consumers, like Plaintiff, book a consult for fertility treatment on Spring Fertility's website. *See* Class Action Complaint, ECF No. 1 ¶¶ 1, 75, 90, Figures 13-16. Notably, Spring Fertility is not a hospital system, and Plaintiff's claims do not relate to disclosures made through Spring Fertility's patient portal. This is in stark contrast to the claims brought by the named plaintiffs in the *Meta Healthcare Litigation*, nearly all of which relate to disclosures of information on large hospital systems' patient portals. *See* ECF No. 335 ¶ 24 ("Plaintiff John Doe I is a…patient of [a hospital system] who used [the hospital's] web properties, including the…patient portal[.]"); *see also, id.* ¶¶ 25-30; 32-38 (same). The one named plaintiff in the *Meta Healthcare Litigation* not alleging claims against a hospital system for patient portal disclosures is bringing claims related to alleged disclosures made on a "pharmaceutical web-property…to communicate with her…prescription drug provider[.]" *Id.* ¶ 31. Neither factual circumstance is directly analogous to the claims brought by Plaintiff here. Such significant distinctions eliminate any potential benefit to severing the claims against Meta in this Action and relating them to the *Meta Healthcare Litigation*.

Meta's true motive for seeking severance is to dispose of Plaintiff's claims through procedural means while never actually litigating them. Indeed, given *Meta Healthcare Litigation*'s focus on the websites and patient portals of large hospital systems (which is not what is at issue here), it is likely that Plaintiff's claims related to Spring Fertility would be neglected if severed and consolidated. Even if Meta could show some benefit to severance and consolidation (which it has not), the prejudice of essentially forfeiting claims outweighs any potential efficiencies. Given the significant overlap between Plaintiff's claims against the three Defendants here, the most efficient means of moving forward is to keep those claims together. Meta's motion to sever claims against Meta should be denied.

## II. LEGAL STANDARD

Pursuant to Rule 21, "the court may…sever any claim against a party." Fed. R. Civ. P. 21. Courts consider the following factors: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *S.E.C. v. Leslie*, 2010 WL 2991038, at *4 (N.D. Cal. Jul. 29, 2010) (internal citations omitted).

## III. ARGUMENT

Severing the claims against Meta makes little sense. Other than naming Meta as a defendant, the facts and legal claims asserted in the *Meta Healthcare Litigation* are fundamentally different than those presented by Plaintiff here. Multiple courts in this District have already denied similar requests by Meta to expand the scope of the *Meta Healthcare Litigation*. *See Doe v. Hey Favor, Inc.*, 2023 WL 9955355 (N.D. Cal. May 24, 2023); *Doe v. GoodRx Holdings, Inc., et al.*, 2024 WL 3639372 (N.D. Cal. Jul. 31, 2024). This Court should do the same.

### A. This Case Is Materially Different From *Meta Healthcare*

Meta argues that severance is appropriate here because "[b]oth cases allege that Meta received sensitive health information because of healthcare providers' installation of Meta's Pixel

on their website." *See* Meta's Motion to Sever Claims at 5 (ECF No. 49) ("Motion"). That is insufficient.

The first and second factors under *Leslie* ask the court to consider "whether the claims arise out of the same transaction or occurrence," and "whether the claims present some common questions of law or fact." *Leslie*, 2010 WL 2991038, at *4. Meta's prior attempts to expand the scope of the *Meta Healthcare Litigation* have already been rejected. For example, Judge Orrick correctly noted that the *Meta Healthcare Litigation* concerns the interception of patient data "primarily through patient portals." *Favor*, 2023 WL 9955355 at *1. As discussed, *supra*, the claims Plaintiff brings in this matter do not concern the patient portal on the Spring Fertility website. That central distinction differentiates this matter from the *Meta Healthcare Litigation* in at least two additional ways that are fatal to Meta's Motion.

*First*, the *Meta Healthcare Litigation* is limited to a specific set of hospitals and thus *excludes* the present case. Meta tellingly neglects to mention in its Motion that Spring Fertility is *not* listed in the 124-page "Appendix" to the *Meta Healthcare Litigation* Consolidated Amended Complaint, which identifies the specific hospital websites and patient portals that are at issued. Case No. 3:22-cv-03580, ECF No. 335-1. The omission of Spring Fertility from the extensive list in the *Meta Healthcare Litigation* demonstrates—contrary to Meta's contention—that the claims asserted in this action are not part of the *Meta Healthcare Litigation*. Meta's attempt to further expand the scope of the consolidated litigation (even after discovery is well underway) should not be permitted.

*Second*, prior to class certification, there is no basis to consider the *Meta Healthcare Litigation* operative complaint's fantastical class definition—which purportedly encompasses every Facebook user whose undefined health data was ever "obtained by Meta" (regardless of means) from any "health care provider or covered entity" (which is defined as "any person or business entity for which Plaintiffs and Class members have a reasonable expectation that the 'covered entity' will not share patient health information with third parties." Case No. 3:22-cv-03580, ECF No. 335. *See Connelly v. Ekimoto & Morris, LLC*, 2018 WL 3312957, at *1 n.2 (D. Haw. Jul. 5, 1018) (explaining that "until Plaintiffs move for and obtain class certification, this Court will only

consider the claims that Plaintiffs bring as individuals against the named defendants."). Indeed, Judge Orrick rejected Meta's attempt to sever and relate claims asserted in the *Favor* action based on the same "untested" class definition. *See Favor*, 2023 WL 9955355 at *1.

None of the cases Meta relies on support a different conclusion, as they either involve distinct scenarios (*see Newton v. Kaiser Foundation Health Plan, Inc.*, Case No. 3:24-cv-03625-EMC (ECF No. 1-4) (claims concerning unlawful disclosure of protected information for "members [who] were signed into a Kaiser Permanente account or service[.]"); *Netlist, Inc. v. Smart Modular, Inc.*, 2013 WL 12128691, at *7 (C.D. Cal. Nov. 26, 2013) (granting severance because patent infringement, contract, and trade secret claims would require proving different "underlying facts" and "different types of witnesses and documentary proof"); *XpandOrtho, Inc. v. Zimmer Biomet Holdings, Inc.*, 2022 WL 18110171, at *5 (S.D. Cal. Nov. 22, 2022) (severing counterclaim that involved a different product, different parties, and different time period from primary claim), or, when read correctly, actually support the denial of Meta's Motion. *See Leslie*, 2010 WL 2991038, at *4 (N.D. Cal. Jul. 29, 2010) (denying motion to sever because "the significant number of common witnesses and documents, severance would not result in judicial economy, and [d]efendants have not demonstrated that they will be unfairly prejudiced unless severance is granted."). Meta's argument that Plaintiff's "claims against LinkedIn…are premised on distinct factual allegations and do not arise out of the same 'transactions or occurrences,'" similarly misses the mark. Motion at 8. Here, Plaintiff's claims against all Defendants arise from the same transactions and occurrences *on the Spring Fertility website*, precluding severance. *See Schertzer v. Bank of Am., N.A.*, 2021 WL 1383164, at *3 (S.D. Cal. Apr. 13, 2021) (denying motion to sever because proceeding with "two separate cases will not result in judicial economy—it will produce the opposite result in inefficiency, overlap witnesses, issues of fact and law and defenses and will produce a significant amount of extra work.").

### B. Severing The Claims Against Meta Will Not Promote Judicial Economy Or Avoid Prejudice

The third and fourth factors under *Leslie* ask the court to consider "whether settlement of the claims or judicial economy would be facilitated" and "whether prejudice would be avoided if

severance were granted." *Leslie*, 2010 WL 2991038, at *4. Beyond conclusory assertions, Meta fails to identify any way in which severance would promote judicial economy or avoid prejudice. It would not.

Courts recognize that the clearest way to promote judicial economy is to hear similar or overlapping claims arising out of the same transaction or occurrence in the same action. *See E.C. v. Lincoln Mil. Prop. Mgmt.*, 2022 WL 4241734, at *7 (S.D. Cal. Sept. 13, 2022) ("Keeping the claims together will streamline the proceedings, reduce litigation costs for all Parties, and eliminate the need for duplicative discovery and motions."). Keeping the claims together in this action achieves that goal, and there is no prejudice to Meta simply by participating in a multi-party case. *See Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, 2013 WL 2631333, at *6 (S.D. Cal. Jun. 11, 2013) (explaining claim of potential jury confusion from trying claims together with other defendants is "speculative"); *Lincoln Mil. Prop. Mgmt.*, 2022 WL 4241734, at *6 (declining to sever cases against multiple defendants because any prejudice from hearing the claims together was outweighed by "factual similarities between the claims.").

Indeed, Meta is a party in several actions in this District that arise from the collection of health data on apps and/or websites by multiple defendants (cases in which the claims against Meta have not been severed and consolidated into *Meta Healthcare Litigation*). *See, e.g., Frasco v. Flo Health, et al.*, Case No. 3:21-cv-00757-JD (N.D. Cal.); *Hey Favor, Inc.*, Case No. 3:23-cv-00059 (N.D. Cal.); *GoodRx Holdings, Inc.*, Case No. 3:23-cv-00501 (N.D. Cal.); *A.A. v. Wisp, Inc., et al.*, Case No. 3:24-cv-05733 (N.D. Cal.). The parties in *Flo Health*—which was filed well before the *Meta Healthcare Litigation*—have fully briefed class certification and at least one motion for summary judgment. Additionally, all four of these cases will address questions of law and fact specific to Meta, including legal and factual issues related to Meta's "user-facing disclosures." There is no reason the parties in this action should not do the same and separately address the claims and unique issues arising from the Spring Fertility website here.

Furthermore, severing the claims against Meta and relating them to the *Meta Healthcare Litigation* would only hinder judicial economy, as it would bring the claims against Meta into an action involving different users, who used separate services (i.e. patient portals offered by hospital

systems), and had different health data intercepted. This would not only require expanding the discovery taking place in the *Meta Healthcare Litigation*, which already includes 1,800+ hospital systems, but would require duplicative discovery about Meta's collection of health and other sensitive data from Spring Fertility patients which would still need to occur in the current action with the two remaining Defendants.

Meta's self-serving contention that Plaintiff would not be prejudiced if its Motion is granted is nonsense. If Meta is no longer a party to this case, Plaintiff would still need to pursue discovery from Meta regarding the use of its technology on Spring Fertility's website as part of the liability case against Spring Fertility. However, Plaintiff would be forced to seek this discovery from Meta as a third-party, which not only presents a higher burden, but may be inconsistent with the party-discovery ordered in the *Meta Healthcare Litigation*. Meta also does not address the potential for inconsistent rulings if severance were granted and Plaintiff was proceeding before different judges. And worse—if severance were granted—in all likelihood Plaintiff's claims against Meta would be overlooked or extinguished as the *Meta Healthcare Litigation* proceeds, given that it lacks any similarity to the primary factual allegations being pursued by Plaintiff here.

Meta's failure to propose any practical solution for how such prejudice would be avoided, as well as how to avoid the possibility for inconsistent rulings when motions covering the same subject matter or claims are filed twice, only emphasizes why its Motion should not be granted. *See Pit River Tribe v. Bureau of Land Mgmt.*, 2019 WL 6341566, at *5-6 (N.D. Cal. Nov. 27, 2019) ("Courts recognize that the interest of justice is advanced where the risk of inconsistent judgments are avoided."); *W. Watersheds Project v. Zinke*, 2018 WL 4210774, at *6 (D. Idaho Sept. 4, 2018) ("[A] decision that keeps the case intact…largely avoids the risk of inconsistent court rulings, rather than creating such a risk as [] Defendants contend.").

The case relied upon by Meta is distinguishable because it severed claims based on immigration plaintiffs who were unrelated, with different immigration statuses, alleging different violations, and seeking different relief being improperly joined in the action. *See Colors of India v. Nielsen*, 2018 WL 6430118, at *5 (C.D. Cal. Oct. 19, 2018). That circumstance is simply not applicable to the facts here.

### C. Severing The Claims Will Cause Unnecessary Duplication

The fifth factor under *Leslie* asks the court to consider "whether different witnesses and documentary proof are required for the separate claims." *Leslie*, 2010 WL 2991038, at *4. Here, severance would not ease discovery burdens, but instead would guarantee them.

The risk of duplication is readily apparent here, where proceeding with two separate actions—one against Spring Fertility and LinkedIn, and another against Meta that both concern the same Plaintiff, the same website, the same technology, and the same data—would necessarily result in discovery and litigation on the same issues multiple times. *See Lincoln Mil. Prop. Mgmt.*, 2022 WL 4241734, at *7 ("Keeping the claims together will streamline the proceedings, reduce litigation costs for all Parties, and eliminate the need for duplicative discovery and motions."); *Schertzer*, 2021 WL 1383164, at *3 (denying motion to sever because proceeding with "two separate cases will not result in judicial economy—it will produce the opposite and result in inefficiency, overlap of witnesses, issues or fact and law and defenses and will produce a significant amount of extra work."); *see also In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 2021 WL 9181832, at *10 (C.D. Cal. Aug. 20, 2021) (denying severance where "there will be overlapping proof and duplication in testimony" with respect to certain issues); *Horowitz v. Chen*, 2020 WL 4805466, at *2 (C.D. Cal. May 20, 2020) (declining to sever claims that "arise from the exact same set of facts" because it would make "little practical sense;); *Id.* at *3 (finding "severance would produce inefficiency and duplication of judicial resources" because the claims involve the same facts and would "require testimony from the same witnesses and discovery of the same documents"). The Court should not impose those burdens on Plaintiff or unnecessarily waste judicial resources on duplicative litigation. Moreover, none of the authority relied upon by Meta supports severance when addressing this factor. *See Hernandez v. City of San Jose*, 2017 WL 2081236, at *9 (N.D. Cal. May 15, 2017) (Court severing claims where the "[p]laintiffs have alleged 11 discrete and separate incidents of alleged violence, which involve different [p]laintiffs, different [d]efendants, different actions, different harms, different law enforcement responses, different locations, and different times."); *Jetpack Enterprises, LLC v. Jetlev, LLC*, 2016 WL 11020227, at *4 (C.D. Cal. Aug. 31, 2016) ("Since the two suits involve two different factual

circumstances, it is unlikely that the parties will rely on much shared documentary proof to substantiate their claims.”); *Trazo v. Nestle USA, Inc.,* 2013 WL 12214042, at *3 (N.D. Cal. Dec. 4, 2013) (“While some overlap is likely, the court agrees that because each product is unique, the majority of the evidentiary proof required to sustain claims for each product will likewise be unique.).

## IV. CONCLUSION

For the foregoing reasons, Meta’s Motion should be denied.

Dated: February 3, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Sarah N. Westcot*
Sarah N. Westcot

Sarah N. Westcot (SBN 264916)
Stephen A. Beck (*pro hac vice* forthcoming)
701 Brickell Avenue, Suite 2100
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: swestcot@bursor.com
sbeck@bursor.com

*Counsel for Plaintiff*