**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
Stephen A. Beck (*pro hac vice* forthcoming)
701 Brickell Ave., Suite 2100
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com
sbeck@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| J.S., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPRING FERTILITY HOLDINGS, LLC, META PLATFORMS, INC., AND LINKEDIN CORPORATION,<br><br>Defendants. | Case No. 5:24-cv-07374-EJD<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS**<br><br>Hon. Edward J. Davila<br><br>Date: April 3, 2025<br>Time: 9:00 a.m.<br>Courtroom: 4, 5th Floor |

# TABLE OF CONTENTS

PAGE(S)

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

III. ARGUMENT .......... 4

A. Plaintiff Did Not Consent to LinkedIn Intercepting Her Private Health Information Conveyed in Confidence to Her Healthcare Provider. .......... 4

B. Plaintiff Adequately Alleges That LinkedIn Intended to Intercept Her Private Health Information to Include It in Its Advertising Machinery. .......... 6

C. Plaintiff States a Claim Under CIPA § 631(a) and § 632 Because LinkedIn Surreptitiously Intercepted Her Health-Related Communications with Her Healthcare Provider. .......... 8

1. LinkedIn Was Not a Party to the Communications Between Plaintiff and Spring Fertility, It Was an Eavesdropper. .......... 8

2. Plaintiff Plausibly Alleges a Claim Under All Three Clauses of CIPA § 631(a). .......... 11

a. The First Clause of CIPA § 631(a) Applies to LinkedIn's Online Wiretaps. .......... 12

b. Plaintiff Plausibly Alleges a Claim Under the Second Clause of CIPA § 631(a). .......... 12

c. Plaintiff Plausibly Pleads a Claim Under the Third Clause of CIPA § 631(a). .......... 14

3. Plaintiff States a Claim Under CIPA § 632 .......... 14

a. Plaintiff's Disclosure of Her Private Health Information to Spring Fertility Was a Confidential Communication. .......... 15

b. The LinkedIn Insight Tag is a "Device" Under CIPA § 632(a). .......... 16

D. Plaintiff Sufficiently Alleges a Claim Under the Wiretap Act .......... 18

E. Plaintiff States a Claim for Invasion of Privacy under the California Constitution Because LinkedIn's Conduct in Intercepting Plaintiff's Private Health Information Without Consent Was Highly Offensive. .......... 19

IV. CONCLUSION .......... 23

## TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*B.K. v. Desert Care Network,*
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ........ 19

*B.K. v. Eisenhower Med. Ctr.*,
2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) ........ 19

*Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014) ........ 6

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........ 6

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ........ 5

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ........ 5

*Caro v. Weintraub,*
618 F.3d 94 (2d Cir. 2010) ........ 19

*Castillo v. Costco Wholesale Corp.,*
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ........ 19

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ........ 20

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ........ 4

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........ 4, 6, 8, 17

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ........ 17

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) ........ 9

*Facebook Consumer Priv. Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 16

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) ........ 7, 11, 17, 18

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ... 11

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ... 4, 11

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) ... 13

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ... 19

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal.4th 1 (1994) ... 6

*Hudson v. Superior Ct.*,
7 Cal. App. 5th 1165 (2017) ... 7

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ... 17

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ... 19, 20, 21, 22

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ... 6, 7

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ... 5

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ... 17

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) ... 21

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ... 4

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ... 15, 19, 20, 22

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ... 23

*Jackson v. LinkedIn Corp.*,
2024 WL 3823806 (N.D. Cal. Aug. 13, 2024) ... passim

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ... 17, 18

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........ 11

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ........ 12, 18

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024) ........ 8, 12

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) ........ 16

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 23

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ........ 21

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ........ 12, 18

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ........ 17

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998) ........ 16, 19

*Opperman v. Path*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ........ 22

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
214 F. Supp. 3d 808 (N.D. Cal. 2016) ........ 6

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ........ 18

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ........ 18

*Rojas v. HSBC Card Servs. Inc.*,
20 Cal. App. 5th 427 (2018) ........ 6

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ........ 22

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) ........ 7, 10, 12

*Tate v. VITAS Healthcare Corp.*,
2025 WL 50447 (E.D. Cal. Jan. 8, 2025) ........ 17

*Underhill v. Kornblum*,
2017 WL 2869734 (S.D. Cal. Mar. 16, 2017) .......... 6

*United States v. Hutchins*,
361 F. Supp. 3d 779 (E.D. Wis. 2019) .......... 17

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 13

*Yockey v. Salesforce, Inc.*,
2024 WL 3875785 (N.D. Cal. Aug. 16, 2024) .......... 17

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 9

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) .......... 4, 6

**STATUTES**

18 U.S.C. § 2511(1) .......... 1

42 U.S.C. § 1320d-6 .......... 15, 16, 19, 21

Cal. Penal Code § 632 .......... passim

**REGULATIONS**

45 C.F.R. § 160 .......... 15, 19, 20

45 C.F.R. § 164 .......... 15, 16, 19, 21

## I. INTRODUCTION

Plaintiff opposes Defendant LinkedIn Corporation's ("LinkedIn") Motion to Dismiss Plaintiff's Complaint (ECF No. 41) ("MTD"). Plaintiff plausibly states a claim under various wiretapping statutes and for invasion of privacy under California's Constitution because LinkedIn intentionally, and without the consent of Plaintiff and class members, intercepted sensitive and confidential health-related communications between Plaintiff (and class members) and third party Spring Fertility, via the Spring Fertility Website. Specifically, LinkedIn intercepted Plaintiff's and class members' confidential health information through its software, the LinkedIn Insight Tag, on Spring Fertility's Website, which captured Plaintiff's and class members' interactions with the Website when they were booking consultations for fertility treatment. Defendant captured Plaintiff's and class members' responses to health-related questions such as their specific fertility treatment and their sexual orientation. LinkedIn then used this information by incorporating it into its advertising machinery which functioned to place Plaintiff and class members into targeted audiences for advertisers of similar products. LinkedIn makes the LinkedIn Insight Tag free for website owners to use for exactly that reason, namely, so that it can surreptitiously receive information from website interactions, connect those interactions to a specific LinkedIn user, and then generate highly specific audience segments which it then uses to sell advertising.

As a result of LinkedIn's unlawful conduct, Plaintiff brings the present action on behalf of herself and a class of "all natural persons…who…had a LinkedIn account and booked a consultation on www.springfertility.com." *See* Complaint ¶ 106 (ECF No. 1). Plaintiff brings claims against Defendant for 1) violation of the Electronic Communications Privacy Act (the "ECPA" or the "Wiretap Act;") 18 U.S.C. § 2511(1); 2) violation of CIPA § 631(a); 3) violation of CIPA § 632; and 4) invasion of privacy under the California Constitution. *Id.* ¶¶ 115-182.

Notably, the Honorable P. Casey Pitts recently considered a similar case involving a CIPA § 631 claim related to LinkedIn's use of the LinkedIn Insight Tag on a different website. Judge Pitts denied LinkedIn's motion to dismiss while rejecting many of the same arguments LinkedIn makes here. *See, e.g.*, *Jackson v. LinkedIn Corp.*, 2024 WL 3823806 (N.D. Cal. Aug. 13, 2024). The same outcome should follow in this case.

## II. STATEMENT OF FACTS

Defendant's LinkedIn Insight Tag is a code snippet added to an advertiser's website (here Spring Fertility's Website) which provides tools for the advertiser to optimize advertising campaigns, retarget Website visitors who did not make a purchase, and "learn about [its] audiences." Complaint ¶ 48. The current iteration of the LinkedIn Insight Tag is a JavaScript-based code which permits the LinkedIn Insight Tag to 1) track users and 2) circumvent third-party cookie blockers because it is a first-party cookie embedded within the Website itself. *Id.* ¶ 49. This means that even if third party cookies are blocked, the LinkedIn Insight Tag still captures consumers' information, frustrating the privacy choices of consumers. When a user who has signed in to LinkedIn (even if the user subsequently logs out) is browsing the Website (where the LinkedIn Insight Tag has been embedded), an HTTP request is sent using cookies, which includes information about the user's actions on the Website and data that differentiates users from one another which can be used to link that data to the user's LinkedIn profile. *Id.* ¶¶ 50-51. The cookies are used by LinkedIn to identify its members for Defendant's own advertising purposes. *Id.* ¶¶ 52-54. Through the LinkedIn Insight Tag, LinkedIn can make extremely personal inferences about individuals' demographics, intent, behavior, engagement, interests, buying decisions, and more. *Id.* ¶ 43. The personal information and communications obtained by LinkedIn are used to fuel various services offered via LinkedIn's Marketing Solutions, including Ad Targeting, Matched Audiences, Audience Expansion, and LinkedIn Audience Network. *Id.* ¶ 44.

Spring Fertility operates a national chain of fertility clinics. Individuals who are experiencing fertility-related health conditions can book a consultations for treatment on Spring Fertility's Website. Complaint. ¶ 5. In order to book a consultation, a patient must answer a series of questions, including the specific fertility treatment they are seeking and their sexual orientation. *Id.* Figures 3-12. Unbeknownst to Spring Fertility's patients, LinkedIn is intercepting this private and legally protected information. *See, e.g., id.* Figures 15-16. Specifically, the LinkedIn Insight Tag functioned to permit LinkedIn to intercept and record "click" events, such that once the user clicked a response to complete Spring Fertility's questionnaire, the substance of the question and response was intercepted by LinkedIn. *Id.* ¶¶ 88-92; Figure 3-12, 15-16. LinkedIn intercepted all of the

confidential health information conveyed by Plaintiff on Spring Fertility's Website. LinkedIn began tracking Plaintiff's and class members' interactions with Spring Fertility's Website from the moment they navigated to it. *Id.* ¶ 73. Using software cookies, LinkedIn then matches the intercepted information with a specific LinkedIn user (*i.e.* Plaintiff and class members). *Id.* ¶¶ 52-53, 91.

LinkedIn monetized the sensitive health data it intercepted from Spring Fertility's Website by using it for targeted advertising by incorporating it into its marketing tools. *Id.* ¶¶ 44-54. As such, LinkedIn intentionally intercepted confidential information from Spring Fertility's Website for purposes of targeted advertising. *Id.* ¶ 15. LinkedIn knew that incorporating the LinkedIn Insight Tag into Spring Fertility's Website would result in the interception of confidential health information because the very purpose of the LinkedIn Insight Tag is to intercept user interactions with a website. *Id.*

LinkedIn did not receive consent from Plaintiff or class members to intercept their private health information conveyed to Spring Fertility. *Id.* ¶¶ 5, 10, 92. LinkedIn expressly states in its Privacy Policy: "We will only collect and process personal data about you where we have lawful bases." *Id.* ¶ 59. Despite this explicit representation, LinkedIn intentionally intercepts and receives sensitive health information in violation of state and federal privacy laws due to the value of the data. *Id.* ¶ 15. Plaintiff and class members did not expect that when sharing confidential health information with Spring Fertility, that Defendant was surreptitiously intercepting those communications because LinkedIn assures users that such information will not be intercepted and because they did not know that the Website was embedded with the LinkedIn Insight Tag. *Id.*

Plaintiff is a LinkedIn user. *Id.* ¶ 9. Plaintiff maintained a LinkedIn account when she navigated to the Spring Fertility Website for purposes of booking a fertility treatment. *Id*. When booking a consultation on Spring Fertility's Website, Plaintiff divulged highly confidential health information which was required for her appointment. *Id*. ¶ 10. Plaintiff did not know that LinkedIn was tracking her private activity on Spring Fertility's Website using the LinkedIn Insight Tag. *Id.* LinkedIn intercepted Plaintiff's private communications with Spring Fertility, including communications related to her health, such as the specific fertility treatment she was seeking and her sexual orientation, without Plaintiff's consent. *Id.*

Plaintiff and class members have a reasonable expectation of privacy in their private health information, which is protected by both federal and state law. Plaintiff and class members would not have disclosed their private health information to Spring Fertility if they knew it was being unlawfully intercepted by LinkedIn. LinkedIn deprived Plaintiff and class members of their privacy rights when it implemented a system (using the LinkedIn Insight Tag and cookies) that surreptitiously tracked and recorded Plaintiff's and class members' confidential communications, personally identifiable information, and protected health information.

## III. ARGUMENT

### A. Plaintiff Did Not Consent to LinkedIn Intercepting Her Private Health Information Conveyed in Confidence to Her Healthcare Provider.

LinkedIn contends that Plaintiff's claims all require her to "establish that she did not consent to Spring collecting and sharing her data with LinkedIn." MTD at 10. That is wrong. "On a motion to dismiss, the burden of proof to show consent rests with defendants." *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1253 (N.D. Cal. 2024); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1077–78 (N.D. Cal. 2023), *motion to certify appeal denied*, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) ("On this motion to dismiss, the issue of consent is front and center and the burden of proof to show this exemption applies is on Meta."); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) ("Google bears the burden of proof on consent."); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849 (C.D. Cal. 2024) (collecting cases).

Here, Plaintiff specifically alleges she did not consent to LinkedIn's interception of her confidential information conveyed to Spring Fertility. Complaint ¶¶ 5, 10, 55. Nevertheless, LinkedIn argues that Plaintiff consented based on 1) Spring Fertility's privacy policy and cookie banner; and 2) LinkedIn's privacy policy. MTD at 9-10. Neither argument has merit.

*First*, LinkedIn wrongly claims that Plaintiff's own allegations establish that "Spring discloses the practices at issue in this action." MTD at 11. Plaintiff's allegations detail why Spring Fertility failed to provide conspicuous notice of its privacy policies. *See* Complaint ¶ 98. Whether Plaintiff agreed to any version of any purported privacy policy is a question of fact not suitable for resolution at the pleading stage. *See Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *4 (N.D.

Cal. Dec. 30, 2024) ("Defendant has not shown that Plaintiffs had the requisite actual or constructive knowledge of the policies."); *id.* ("It is not sufficient to simply allege that the policies exist . . . to prove consent").

Even if the Court were to assume the purported Spring Fertility terms submitted are binding on Plaintiff, LinkedIn's argument still has a fatal flaw, as those terms did not "explicitly notify" Plaintiff of the practice at issue, namely that LinkedIn was intercepting her confidential health information and using it for its advertising services. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) ("In order for consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue.").

*Second*, LinkedIn's argument regarding its own privacy policy is similarly unavailing because it also does not explicitly notify Plaintiff of the practice at issue: LinkedIn's interception of the confidential health information of Plaintiff and class members and using it to bolster its advertising services. *In re Google Inc.*, 2013 WL 5423918, at *13 (N.D. Cal. Sept. 26, 2013) ("Google points to its Terms of Service and Privacy Policies, to which all Gmail and Google Apps users agreed, to contend that these users explicitly consented to the interceptions at issue. The Court finds, however, that those policies did not explicitly notify Plaintiffs that Google would intercept users' emails for the purposes of creating user profiles or providing targeted advertising."); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("[A]ny consent with respect to the processing and sending of messages itself does not necessarily constitute consent to the specific practice alleged in this case—that is, the scanning of message content for use in targeted advertising."). This is in addition to the fact that LinkedIn falsely states in its privacy policy that it "will only collect and process personal data about you where we have lawful bases." Complaint ¶ 59. LinkedIn's generalized disclosures do not create consent for interception of lawfully protected private health information, and LinkedIn lulled Plaintiff and class members into a false sense of security by representing that it would not intercept their protected health information, when in fact it was. In sum, LinkedIn has not carried its burden to establish consent.

### B. Plaintiff Adequately Alleges That LinkedIn Intended to Intercept Her Private Health Information to Include It in Its Advertising Machinery.

LinkedIn contends that it lacked the requisite knowledge and intent as required under CIPA and for invasion of privacy because, in its LinkedIn Ads Agreement for LinkedIn Insight Tag, it purportedly tells users not to transfer "Sensitive Data." MTD at 13. That is wrong. Indeed, Judge Pitts recently denied a motion to dismiss brought by LinkedIn for a CIPA claim in similar case about the LinkedIn Insight Tag, thereby necessarily finding that LinkedIn acted with the requisite intent. *Jackson*, 2024 WL 3823806, at *5–6; *Yoon*, 2024 WL 5264041, at *5-6 (denying motion to dismiss CIPA § 631 claim in a case involving a similar Facebook Tracking Pixel). Courts in this district have rejected similar arguments under analogous circumstances. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d at 1076.

"[I]nterceptions may be considered intentional where a defendant is aware of the defect causing interception and takes no remedial action." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020); *see also Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1044 (N.D. Cal. 2014) (collecting cases). While *In re Google* involved a claim under the federal Wiretap Act, CIPA applies the same standard. *Underhill v. Kornblum*, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020); *Yoon*, 2024 WL 5264041, at *4. For CIPA § 632(a), the statute punishes "a person who intends to make a recording of a confidential communication." *Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427, 435 (2018) (internal quotation marks and citation omitted).[1]

[1] There is no intent element regarding Plaintiff's claim for invasion of privacy under the California constitution: "[T]he elements of the California constitutional claim for invasion of privacy are: (i) the identification of a specific, legally protected privacy interest; (ii) a 'reasonable expectation of privacy on plaintiff's part'; and (iii) a sufficiently serious invasion." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 846 (N.D. Cal. 2016), *aff'd*, 890 F.3d 828 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018), and *aff'd*, 735 F. App'x 241 (9th Cir. 2018) (quoting *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal.4th 1, 35–37 (1994). Even if there were such an intent requirement, for the reasons set forth herein, LinkedIn acted intentionally because it knew that the LinkedIn Insight Tag was being used to intercept confidential health information and failed to take appropriate remedial action to prevent such disclosures (or destroy health information received). In fact, LinkedIn used the protected health information to improve its advertising products. Complaint ¶¶ 37, 41, 75.

As a threshold matter, "[w]hether a person possesses the requisite intent under CIPA is generally a question of fact." *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 859 (W.D. Wash. 2024); *see also Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1198 (N.D. Cal. 2024) ("While Google argues that judicially noticeable policy documents suggest that Google did not actually want to receive personally identifiable information and expressly prohibited developers from transmitting such data, this presents a question of fact that the Court cannot resolve at this stage."); *Hudson v. Superior Ct.*, 7 Cal. App. 5th 1165, 1171 (2017) ("[A] person's intent is a question of fact to be determined from all the circumstances of the case, and usually must be proven circumstantially." (internal citations omitted)).

Nonetheless, Plaintiff adequately alleges knowledge and intent under each applicable cause of action. *See, e.g.,* Complaint ¶¶ 5, 15, 30, 60. Plaintiff alleges that the LinkedIn Insight Tag is specifically designed for the purpose of recording and analyzing communications between its customers (like Spring Fertility) and consumers (like Plaintiff). Complaint ¶¶ 48-53; *see also Gladstone*, 739 F. Supp. 3d at 860 (finding intent element under CIPA § 631(a) and § 632(a) satisfied where "[t]he SAC alleges that Amazon Connect is designed for the purpose of recording and analyzing communications between its customers (like Capital One) and consumers or other entities"). LinkedIn was well aware that its LinkedIn Insight Tag could be used to intercept "Sensitive Data" as evidenced by the LinkedIn Ads Agreement. However, LinkedIn took no remedial action in preventing use of the LinkedIn Insight Tag for intercepting protected health information, nor did LinkedIn destroy the protected health information it received, evidencing intent. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 827–28 ("[T]he Court finds that Defendants' failure to rectify the defect causing 'false accepts' or destroy the recordings produced under such circumstances could plausibly be considered 'intentional' rather than 'a result of accident or mistake.'"). In short, LinkedIn's interception of Plaintiff's and class members' confidential health information was no accident, as evidenced by the fact that LinkedIn used the intercepted confidential information to power its own algorithms and advertising products to derive a profit. *See, e.g.,* Complaint ¶¶ 44-46.

LinkedIn's argument regarding the admonitions in the LinkedIn Ads Agreement does not change the analysis. In *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d at 1076, the court found:

> While plaintiffs acknowledge that Meta may tell third parties and Facebook users that it intends to prevent receipt of sensitive health information, plaintiffs contend that is not what Meta really intends. . . What Meta's true intent is, what steps it actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record. . . At this stage, intent has been adequately alleged."

So too here, LinkedIn intended to use the LinkedIn Insight Tag to capture protected health information because it made no effort to filter such information and in fact accepted and used the information to suit its ends. Indeed, Plaintiff specifically alleges that

> Defendant LinkedIn at all times knew that the incorporation of its software into the Spring Fertility Website would result in its interception of PHI and other sensitive data. Defendant LinkedIn, as the creator of its software and the LinkedIn Insight Tag, knew that it intercepted each of a users' interactions on the Website that incorporated its technology. Defendant LinkedIn is well aware of the dangers of incorporating such technology on websites that offer medical services, but continues to do so. Defendant Linkedin intends to intercept this sensitive data and health information due to the value it holds for targeted advertising.

Complaint ¶ 15. Therefore, knowledge and intent are plausibly alleged.

### C. Plaintiff States a Claim Under CIPA § 631(a) and § 632 Because LinkedIn Surreptitiously Intercepted Her Health-Related Communications with Her Healthcare Provider.

#### 1. LinkedIn Was Not a Party to the Communications Between Plaintiff and Spring Fertility, It Was an Eavesdropper.

LinkedIn argues that "Plaintiff's Section 631 claim fails…because her allegations establish that LinkedIn acted as no more than 'an extension of' Spring." MTD at 16. That is wrong. Here too, the question of whether LinkedIn is a party to the communication or a third-party eavesdropper is a question of fact not suitable for determination on a motion to dismiss. *Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at *7 (S.D. Cal. Jan. 12, 2024) ("Whether FullStory acts akin to a tape recorder or whether its actions are closer to 'an eavesdropper standing outside the door' is a question

of fact which is better answered after discovery into the session replay technical context of the case."); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021) ("The question thus becomes, in analogue terms: is Quantum Metric a tape recorder held by Lululemon, or is it an eavesdropper standing outside the door? This is a question of fact for a jury, best answered after discovery into the storage mechanics of Session Replay."); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 942 (S.D. Cal. 2024) ("The Court finds here that whether ASI acts akin to a tape recorder or whether its actions are closer to 'an eavesdropper standing outside the door' is a question of fact which is better answered after discovery.").

Regardless, Plaintiff specifically alleges that LinkedIn intercepted her communications with Spring Fertility and used the data "to fuel various services offered via LinkedIn's Marketing Solutions including Ad Targeting, Matched Audiences, Audience Expansion, and LinkedIn Audience Network." Complaint ¶ 44. In short, LinkedIn uses the data it receives from the LinkedIn Insight Tag to group users into audience groups, which it then sells to advertisers by displaying their ads to the targeted groups. Complaint ¶ 54 ("Through the LinkedIn Pixel, Defendant LinkedIn is able to target its account holders for advertising."). LinkedIn's use of the intercepted data for its own advertising purposes brings it outside the scope of a mere "extension of Spring Fertility." That the LinkedIn Insight Tag may have been installed by Spring Fertility (MTD at 16) is irrelevant, because the question is whether LinkedIn made use of the data for its own purposes, regardless of who installed the tag, and Plaintiff specifically alleges that LinkedIn used the information gleaned from the LinkedIn Insight Tag for its own marketing purposes. Complaint ¶¶ 44-54. Such allegations establish that LinkedIn was a third-party eavesdropper under CIPA.

Judge Pitts, considering a near identical case involving a CIPA § 631 claim related to use of the LinkedIn Insight Tag on a different website, squarely rejected the very same argument by LinkedIn, reasoning that "LinkedIn received this sensitive data and read and used it for its own marketing services." *Jackson*, 2024 WL 3823806, at *5. Plaintiff here makes nearly identical allegations to the plaintiff in *Jackson* which led Judge Pitts to conclude that LinkedIn was more than just a vendor regarding the LinkedIn Insight Tag. *Compare Jackson*, 2024 WL 3823806, at *5 ("LinkedIn's Marketing Services monetizes the collected data through the sale of [ads]."); ("LinkedIn

is also learning the contents of communications between website users and the DMV. This enables advertisers to target users with relevant content or advertisement[s] using the personal information and data that LinkedIn harvested.") *with* Complaint ¶ 44 ("The personal information and communications obtained by LinkedIn are used to fuel various services offered via LinkedIn's Marketing Solutions including Ad Targeting, Matched Audiences, Audience Expansion, and LinkedIn Audience Network."); *id.* ¶ 54 ("Based on information it obtains through the LinkedIn Pixel, Defendant LinkedIn is able to target its account holders for advertising."). The "acquisition and review of the [health] information by LinkedIn for advertising purposes qualifies as interception under CIPA."[2] *Jackson*, 2024 WL 3823806, at *5.

Judge Pitts also reached the same conclusion in *Smith* regarding a similar tracking software offered by Google. There, Google, like LinkedIn here, offered "tools that track how users interact with websites[,]" including "information about the user's browser, language, clicks, downloads, and form interactions, as well as the titles of webpages, and matches the information it collects with a user's location, gender, and general interests." *Smith*, 735 F. Supp. 3d at 1193-94. Also like the LinkedIn Insight Tag, the data collected by Google's tools was "sent in real time to Google, which store[d] the data and processe[d] it into reports." *Id.* at 1194. Like LinkedIn here, Google benefitted from the collection of the data because used the "data to power its algorithms and learn about user habits." *Id.* Also like LinkedIn here, Google argued that it was merely acting as a vendor and providing software tools for the benefit of its customers and therefore was not liable under CIPA § 631. *Id.* at 1196 ("Google . . . argues that the Section 631 claim should be dismissed because Google acted as a 'mere vendor' of a tool that allows websites to record their own interactions with their users."). The court rejected Google's argument, finding that Google reads and uses the analytics data by: 1) using the data to power its algorithms; 2) gaining detailed information about its users; and 3) collecting and aggregating the data to present to its customers on a dashboard. *Id.* at 1196-98. The court also noted that Google provides the tools for free, "suggesting that Google derives

[2] LinkedIn's argument largely devolves into fact-based arguments and baseless contentions that Plaintiff's factual allegations regarding LinkedIn's use of the data are somehow "conclusory" (MTD at 16), but LinkedIn cannot escape the fact that nearly identical allegations regarding the *very same software* were upheld in *Jackson*.

some benefit when websites use the tool." *Id.* at 1197. The court concluded that "Google is not simply a vendor of a tool that websites can use to 'record' their own users' interactions on their websites, but rather that Google read or used the data collected about these users." *Id.* at 1198. So too here, the LinkedIn Insight Tag records "click" events (Complaint ¶ 89), personal information regarding a patients fertility treatment and sexual orientation. (*id.* ¶ 90; Figures 15-16), and LinkedIn used the data for its own advertising purposes and to provide "in-depth campaign reporting" to advertisers using the LinkedIn Insight Tag (*id.* ¶ 48). As such, the *Smith* decision is directly analogous to this matter.

In both *Jackson* and *Smith*, Judge Pitts distinguished and declined to follow the authority cited by LinkedIn in its MTD, *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021) (*see* MTD at 15), on the grounds that in both *Jackson* and *Smith*, Defendant and Google actually used the data for their own purposes, whereas in *Graham* there were "no allegations here that FullStory intercepted and used the data itself." This case is akin to *Jackson* (which involved the very same LinkedIn Insight Tag at issue here) and *Smith*, as Plaintiff alleges that LinkedIn used the data collected from the LinkedIn Insight Tag for its own marketing purposes. *Gladstone*, 739 F. Supp. 3d at 855 ("Plaintiff's allegations demonstrate that Defendant has capabilities beyond that of a mere tape recorder, and there is no evidence that Defendant is incapable of using the data for any other purpose.").

#### 2. Plaintiff Plausibly Alleges a Claim Under All Three Clauses of CIPA § 631(a).

CIPA § 631 creates avenues for relief where a person: (1) "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection ... with any telegraph or telephone wire, line, cable, or instrument"; (2) "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit"; and (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained[.]" *Heerde*, 741 F. Supp. 3d at 858 (quoting *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023)). Here, Plaintiff plausibly

states a claim under each of the above-mentioned prongs of CIPA. CIPA § 637.2 provides a civil cause of action to anyone who violates § 631. *Smith*, 735 F. Supp. 3d at 1196.

**a. The First Clause of CIPA § 631(a) Applies to LinkedIn's Online Wiretaps.**

LinkedIn contends that Plaintiff cannot bring a claim under the first clause of CIPA § 631(a) because "Clause one prohibits telephonic wiretapping, which does not apply to Internet transmissions like her interactions with the Spring website." MTD at 17. That is wrong. In *Jackson*, Judge Pitts concluded that CIPA applied to the LinkedIn Insight Tag and explained that "Section 631 applies to 'new technologies' such as computers, email, and the Internet." *Jackson*, 2024 WL 3823806, at *5 (quoting *Matera v. Google Inc.*, 2016 WL 8200619, at *20 (N.D. Cal. Aug. 12, 2016). In *Matera*, the court explained that the "California Supreme Court . . . regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." 2016 WL 8200619, at *20. After surveying California case law applying this principle, the court in *Matera* concluded that "[b]ecause the California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme, the Court is unpersuaded by Google's argument that CIPA cannot apply to email because email did not exist at the time of CIPA's enactment." *Id.*

In *Kauffman*, 2024 WL 171363, at *8, the court applied *Matera* and reasoned that "[r]eading the first clause of Section 631 to apply only to communications through a wire ignores the fact that a statute may be read to apply to new technologies . . ." *See also id.* ("[t]hough written in terms of wiretapping, § 631(a) applies to internet communications") (quoting *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022)). Plaintiff alleges that "LinkedIn…through the LinkedIn Insight Tag, intentionally tapped or made unauthorized connections with, the lines of internet communications between Plaintiff and Class Members and Spring Fertility's Website." Complaint ¶ 158. Plaintiff therefore adequately pleads a violation of the First Clause of CIPA.

**b. Plaintiff Plausibly Alleges a Claim Under the Second Clause of CIPA § 631(a).**

To plausibly plead a violation of the eavesdropping prong (Second Clause) of CIPA, plaintiffs must allege that the violator (1) read, or attempted to read, contents of a message or similar

communication; (2) without consent of all the parties; (3) while the message was in transit, passing over a wire, or being sent or received from within California; and (4) did so willingly. *See Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 976–77 (C.D. Cal. 2023). Here, Plaintiff adequately alleges each element of her claim.

*First*, Plaintiff plausibly alleged that LinkedIn learned or attempted to learn the contents of her communications because, through the LinkedIn Insight Tag, LinkedIn intercepted the substantive communications between Plaintiff and the Spring Fertility Website, which included Plaintiff's confidential health information. Complaint ¶¶ 5, 10, 15; Figures 15-16. Plaintiff interacted with the Spring Fertility Website by completing the questionnaire required to book her fertility treatment, and LinkedIn intercepted those communications and used them for the purpose of augmenting its own advertising services. *Id; see also id.* ¶¶ 73, 88-91; Figures 3-12.

*Second*, Plaintiff did not consent to LinkedIn's eavesdropping on her interactions with the Website. *Id.* ¶¶ 5, 55, 92. For the reasons set forth in Section III.A., *supra*, LinkedIn has not carried its burden to establish a consent defense.

*Third*, Plaintiff alleges that LinkedIn attempted to read or learn the contents of Plaintiff's communications with the Website while the same were in transit. *Id.* ¶ 159. To satisfy the so-called "in transit" requirement, Plaintiff need only "demonstrate a party intercepted the communication during its transmission, rather than once it was placed in electronic storage." *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112 (C.D. Cal. 2024). Here, Plaintiff more than plausibly explains how LinkedIn used the LinkedIn Insight Tag to intercept Plaintiff's and class members' communications with the Website in real time, while they were in transit. *Id.* ¶¶ 44-55; *see also id.* Figures 15-16. In short, LinkedIn intercepted Plaintiff's and class members' communications at the time that Plaintiff and class members input said communications into the Spring Fertility Website, as the function of the LinkedIn Insight Tag caused the communications to duplicate the communication with the Website and send the same to LinkedIn. *Id.* Plaintiff's allegations place LinkedIn on notice of the basis of what is alleged. *See Valenzuela*, 686 F. Supp. 3d at 979 ("[T]he SAC makes quite clear that Valenzuela's allegation is that Akamai's code intercepts chat messages in real time and stores transcripts, which gives Nationwide plenty of notice on what is alleged . . . Nothing more than this

combination of plausibility and notice is required at this stage."). Notably, in *Jackson*, the court concluded that the identical LinkedIn Insight Tag at issue here violated the Second Clause of CIPA, thus necessarily concluding that the tag intercepts communications "in transit." 2024 WL 3823806, at *5–6.

*Fourth*, Plaintiff alleges that LinkedIn intercepted Plaintiff's communications willfully and intentionally. Complaint ¶¶ 15, 158. For the reasons set forth in Section III.B., *supra*, Plaintiff plausibly pleads intent under CIPA because LinkedIn was aware that the LinkedIn Insight Tag was intercepting confidential health information but failed to take appropriate remedial action to filter or destroy the same.

#### c. Plaintiff Plausibly Pleads a Claim Under the Third Clause of CIPA § 631(a).

The Third Clause of CIPA creates liability where LinkedIn uses or attempts to use data unlawfully obtained in violation of either the First or Second Clauses of CIPA. Here, LinkedIn violated the Third Clause of CIPA because it used the data it unlawfully intercepted in violation of the First and Second Clauses of CIPA to learn highly specific information regarding its users (by intercepting information input by users onto the Website and connecting it to their LinkedIn account) which LinkedIn then used to make highly specific audience segments for advertisers to target by serving them related advertising on the LinkedIn platform. Complaint ¶¶ 10, 15, 41-61.

### 3. Plaintiff States a Claim Under CIPA § 632

Cal. Penal Code § 632(a) states, in pertinent part:

> (a) A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation . . .

Cal. Penal Code § 632(c) defines "confidential communication" as:

> any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive, or administrative proceeding open to the public, or in any other circumstance in which

> the parties to the communication may reasonably expect that the communication may be overheard or recorded.

Plaintiff states a claim under Cal. Penal Code § 632(a) because LinkedIn, without Plaintiff's consent, eavesdropped on Plaintiff's confidential communications with the Website, which included sensitive personal and health information disclosed via the questionnaire on the Website. Complaint ¶¶ 88-92. The LinkedIn Insight Tag is an electronic recording device because it functions to electronically intercept and record Plaintiff's interactions with the Website. *Id.* ¶¶ 170-71. Plaintiff had a reasonable expectation of privacy when communicating with the Spring Fertility Website because private health information is among the most sensitive information relevant to any individual, which is why disclosure of such information is heavily regulated by federal law. *See, e.g.,* 42 U.S.C. § 1320d-6; 45 C.F.R. Part 160 and 164. Plaintiff reasonably believed that when engaging with an health provider online such as Spring Fertility, that the health information Plaintiff conveyed would remain private as between those two parties, without an unknown third party eavesdropping on the communications.

**a. Plaintiff's Disclosure of Her Private Health Information to Spring Fertility Was a Confidential Communication.**

LinkedIn argues that Plaintiff did not have a reasonable expectation of privacy in the information that she conveyed to Spring Fertility because it was a communication over the internet. MTD at 16. That is wrong. Plaintiff navigated to the Spring Fertility Website for the sole purpose of seeking medical treatment (i.e. fertility treatment), and in doing so had to provide private health information to qualify and book such treatment. As indicated above, health information is among the most private and confidential information there is, and individuals such as Plaintiff who disclose private health information to a health care provider reasonably expect that the information will be kept private.

Notably, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022), Judge Orrick explained how "[c]ommunications made in the context of a patient–medical provider relationship are readily distinguishable from online communications in general for at least two reasons":

> First, patient-status and medical-related communications between patients and their medical providers are protected by federal law. *See, e.g.*, 42 U.S.C. § 1320d-6 (providing criminal and civil penalties for disclosing protected health information without authorization); 45 C.F.R. § 164.508 (requiring a "valid authorization" for use or disclosure of protected health information); Section I.A.2 *supra* (finding that patient status is protected health information under HIPAA). Second, unlike communications made while inquiring about items of clothing on a retail website, . . . health-related communications with a medical provider are almost uniquely personal. "One can think of few subject areas more personal and more likely to implicate privacy interests than that of one's health or genetic make-up." *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998) … *cf. Facebook Consumer Priv. Litig.*, 402 F. Supp. 3d at 783 ("So, for example, if you are diagnosed with a medical condition, you can expect to conceal it completely only if you keep it between you and your doctor. But it does not follow that if you send an email to selected colleagues and friends explaining why you'll be out of commission for a while, you've relinquished any privacy interest in your medical condition, such that the email provider could disseminate your diagnosis to anyone who might be interested in your health status."). For these reasons, it seems to me that plaintiffs will likely be able to show that they had an objectively reasonable expectation that their communications with their medical providers were confidential.

*Id.*, at 799 (internal citation omitted).

LinkedIn's argument that the information is not confidential because of Spring Fertility's alleged disclosures in its policies fails for the same reasons set forth in section III.A., *supra*. Spring Fertility's purported policies do not disclose that LinkedIn is intercepting protected health information.

**b. The LinkedIn Insight Tag is a "Device" Under CIPA § 632(a).**

LinkedIn argues that software and software applications are not "devices" under Section 632. MTD at 20. That is wrong. Indeed, this Court has already determined that software is a "device" under CIPA § 632(a), and LinkedIn has provided no reason for this Court to deviate from its recent decision. *Libman v. Apple, Inc.*, 2024 WL 4314791, at *13 (N.D. Cal. Sept. 26, 2024) (Davila, J.) ("Plaintiffs have plausibly alleged that the Apple Apps at issue in this case constitute a 'device' under Section 632.").

While CIPA does not define "device," courts routinely look to the federal Wiretap Act for guidance. *Gladstone*, 739 F. Supp. 3d at 856. "The majority of courts to consider this issue" under the Federal Wiretap Act and analogous state wiretapping laws, including CIPA § 632, "have entertained the notion that software may be considered a device for the purpose of the Wiretap Act." *United States v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) (collecting cases); *see also, e.g., Gladstone*, 739 F. Supp. 3d at 856 ("[T]he Court finds that 'device,' as used in Section 632, can include software."); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d at 1080 ("I agree that the Pixel software is a device under [CIPA] section 632(a)."); *Yockey v. Salesforce, Inc.*, 2024 WL 3875785, at *7 (N.D. Cal. Aug. 16, 2024) ("The Court agrees with those Ninth Circuit district court decisions that have found that software qualifies as a device under Section 632."); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015) ("Plaintiffs have sufficiently alleged that the Carrier IQ Software is a 'device' for purposes of the Wiretap Act."); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 957–58 (N.D. Cal. 2023), *motion to certify appeal denied*, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024) (denying motion to dismiss Pennsylvania wiretapping claim where the defendant challenged that software was a "device").

LinkedIn's contrary authorities are not persuasive. LinkedIn cites *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023), which found "software does not constitute a 'device' under the CIPA." *See* MTD at 20. To come to this (incorrect) conclusion, the court in *Doe* referenced two decisions concerning CIPA § 637.7 that LinkedIn also cites in its MTD: *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019), and *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017). As courts have recognized, "Section 632 contains materially different language than Section 637.7, and it does not contain similar context that would narrow the meaning of 'device' here." *Gladstone*, 739 F. Supp. 3d at 857 (distinguishing *In re Google Location History Litig.*); *Tate v. VITAS Healthcare Corp.*, 2025 WL 50447, at *5–6 (E.D. Cal. Jan. 8, 2025) (same). Specifically, CIPA § 637.7(d) defines a device as something "attached to a vehicle or other movable thing that reveals its location or movement by the transmission of electronic signals." By contrast, CIPA § 632 was enacted "to be more expansive," and "the Ninth Circuit has observed the California Supreme Court's instruction

that 'all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA.'" *Gladstone*, 739 F. Supp. 3d at 856 (quoting *Javier*, 2022 WL 1744107, at *2); *see also Matera*, 2016 WL 8200619, at *19 ("[W]hen faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection."). Thus, decisions citing to CIPA § 637.7—a narrower subsection of CIPA—should not dictate the Court's interpretation of the broader language of CIPA § 632.

Moreover, as several courts have noted:

> [LinkedIn's] position is problematic because it ignores the fundamental fact that, in order for software to work, it must be run on some kind of computing device. It is artificial to claim that software must be viewed in isolation from the computing device on which it runs and with which it is inseparable in regard to the challenged conduct.

*James*, 701 F. Supp. 3d at 958; *see also Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1115 (S.D. Cal. 2024) ("It is not apparent to this Court why the statutory language would 'undeniably' apply to a computer but not the software that a computer entails."). In other words, accepting LinkedIn's argument would mean divorcing the LinkedIn Insight Tag software from the physical, tangible computer the software is running on. There is no commonsense reason to do this, and such an interpretation flies in the face of the California Supreme Court's directive to apply CIPA "to new technologies where such a reading would not conflict with the statutory scheme." *Matera*, 2016 WL 8200619, at *20. Accordingly, the LinkedIn Insight Tag is an "electronic amplifying or recording device" for the purposes of CIPA § 632. Complaint ¶ 170.

**D. Plaintiff Sufficiently Alleges a Claim Under the Wiretap Act**

LinkedIn argues that Plaintiff's claim under the Wiretap Act should be dismissed for the same reasons as her CIPA claim. LinkedIn's arguments all fail for the same reasons discussed, *supra* Section III.C. Moreover, LinkedIn's argument concerning the party exception are routinely rejected under the crime-tort exception. *See R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) (recognizing that "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is

independent of the intentional act of recording or interception itself" and holding that crime-tort exception applied because communications were intercepted with intent to commit the tort of invasion of privacy) (emphasis in original); *B.K. v. Desert Care Network,* 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (holding one-party exemption did not apply because "[d]efendants disclosed these communications to Meta in violation of various state tort claims and state and federal laws"); *Castillo v. Costco Wholesale Corp.,* 2024 WL 4785136, at *5 (W.D. Wash. Nov. 14, 2024) ("The Court concludes that alleging a defendant intercepted data to use the data in violation of criminal or tort laws suffices to invoke the crime-tort exception."); *B.K. v. Eisenhower Med. Ctr*., 2024 WL 2037404, at *4 (C.D. Cal. Apr. 11, 2024) (acknowledging that a violation of HIPAA can constitute independent conduct such that the crime-tort exception would apply); *Caro v. Weintraub,* 618 F.3d 94, 100 (2d Cir. 2010) (finding that "if, at the time of the recording, the offender plans to use the recording to harm the other party to the conversation, a civil cause of action exists under the Wiretap Act.").

### E. Plaintiff States a Claim for Invasion of Privacy under the California Constitution Because LinkedIn's Conduct in Intercepting Plaintiff's Private Health Information Without Consent Was Highly Offensive.

To state a claim for invasion of privacy under the California Constitution, Plaintiff "must show that (1) [she] possess[es] a legally protected privacy interest, (2) [she] maintain[s] a reasonable expectation of privacy, and (3) the intrusion is 'so serious ... as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009)).

*First*, Plaintiff has a legally protected privacy interest in her health information, which was intercepted by LinkedIn. *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998) ("The constitutionally protected privacy interest in avoiding disclosure of personal matters clearly encompasses medical information and its confidentiality."). As discussed above, Plaintiff's health information is protected by federal law. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799; 42 U.S.C. § 1320d-6; 45 C.F.R. Part 160 and 164. In a similar case involving an embedded

software pixel on the webpage of a health care provider, the court found the plaintiffs had a protected privacy interest in health-related information disclosed to an online health care provider:

> HIPAA defines "protected health information," or "PHI" as "individually identifiable" information that is "created or received by a health care provider" and that "[r]elates to the past, present, or future physical or mental health or condition of an individual" or the "provision of health care to an individual." 45 C.F.R. § 160.103. Having reviewed Plaintiffs' allegations, [. . .]the Court finds that their interactions on Defendant's website, while "unauthenticated" or publicly facing, plausibly involve PHI. As to whether the information is individually identifiable, all three Plaintiffs plead that they are Facebook users. . . Plaintiffs allege at length how Meta Pixel uses JavaScript code to connect internet activity to a specific individual using IP addresses and Facebook credentials. . . Turning to the information that is tracked and whether it is protected, Plaintiff Cousin alleges that she used Sharp's website to search for a primary care physician. . .

*Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973 (S.D. Cal. 2023).

So too here, Plaintiff's communications with the Website contained PHI (including interacting with the questionnaire on the Website in which Plaintiff disclosed and LinkedIn intercepted confidential medical information).

*Second*, Plaintiff had a reasonable expectation of privacy that her health-related interactions with a health care provider online would be confidential. The Ninth Circuit recognized in *Facebook Internet Tracking* that "individuals maintain the expectation that entities will not be able to collect . . . broad swaths of personal information absent consent." 956 F.3d at 604 n.7. "The question is not necessarily whether Plaintiffs maintained a reasonable expectation of privacy in the information in and of itself," but "whether the data itself is sensitive *and* whether the manner it was collected . . . violates social norms." *Id.* at 606 (emphasis in original) (rejecting the suggestion "that Plaintiffs need to identify specific, sensitive information that Facebook collected").

Applying the Ninth Circuit's analysis in *Facebook Internet Tracking*, the court in *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 800, a factually analogous case, found that the plaintiffs there "had an objectively reasonable expectation that their communications with their medical providers were confidential based on the laws and regulations protecting the confidentiality of

medical information." This analysis applies with equal weight to Plaintiff's communications with Spring Fertility, a healthcare provider to whom Plaintiff disclosed information to obtain fertility treatment.

LinkedIn rehashes its argument that Plaintiff lacks a reasonable expectation of privacy because of the boilerplate disclosures in the LinkedIn User Agreement, Privacy Policy, and Cookie Policy and the purported disclosures on Spring Fertility's Website, but as discussed in section III.A., *supra*, these arguments fail because they make no reference to protected health information and because LinkedIn expressly states to consumers that it will not collect information without a lawful basis (which is what it is doing by collecting health information without specific consent for the same).

*Third*, LinkedIn's conduct was highly offensive. As a threshold matter, "questions of whether conduct is 'egregious,' 'offensive,' or violates 'social norms' tend by their very nature to be subjective . . . [and] these questions are typically more appropriately resolved by a jury." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1139 (E.D. Cal. 2021); *see also In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021) ("Whether [defendant's] collection and storage of location data when Location History was set to off was highly offensive to a reasonable person is a question of fact.") (citing *Facebook Internet Tracking*, 956 F.3d at 606). The Ninth Circuit held that this determination "requires a holistic consideration of factors" and raises "an issue that cannot be resolved at the pleading stage." *Facebook Internet Tracking*, 956 F.3d at 606.

Here, Plaintiff has identified sufficient facts to survive a motion to dismiss because she pleads that LinkedIn surreptitiously collected her private health information in unexpected ways (and contrary to LinkedIn's express assertions in its Privacy Policy). Indeed, under similar circumstances, the court in *In re Meta Pixel Healthcare Litig.* found:

> There is support for plaintiffs' position that Meta has behaved egregiously. By enacting criminal and civil statutes forbidding the disclosure of protected health information without proper authorization, Congress has made policy decisions regarding the importance of safekeeping this information. *See, e.g.*, 42 U.S.C. § 1320d-6 (providing criminal and civil penalties for disclosing protected health information without authorization); 45 C.F.R. § 164.508 (requiring a "valid authorization" for use or disclosure of

> protected health information). Courts have also found that taking personal contact information without consent could be deemed highly offensive. *See Opperman v. Path*, 87 F. Supp. 3d 1018, 1060–61 (N.D. Cal. 2014) (finding that a jury must decide whether the "surreptitious theft of personal contact information" is highly offensive). Finally, I note that Meta's policies forbid the transmission of health-related information, which the Ninth Circuit has found to be relevant in the "highly offensive" inquiry. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606 (finding that highly offensive element was sufficiently pleaded where Facebook collected full-string detailed URLs and where "Plaintiffs have alleged that internal Facebook communications reveal that the company's own officials recognized these practices as a problematic privacy issue."). These arguments have merit.

647 F. Supp. 3d at 800–01.

The same analysis applies here. As discussed above, Plaintiff disclosed private health information when interacting with the Spring Fertility Website, which is entitled to stringent protections under federal law. Further, LinkedIn purports to forbid the transmission of health-related information using the LinkedIn Insight Tag (even though it acts contrary to its stated policy), which reveals that LinkedIn's own officials recognized that collection of such data is a problematic privacy issue.

LinkedIn raises issues of fact, namely that "Plaintiff does not allege any facts showing that she received any targeted advertisements based on any specific data collected from her use of Spring's website—from Spring, on LinkedIn, or otherwise." MTD at 22. Not only is this a fact issue, but it is also beside the point. The LinkedIn Insight Tag, embedded on the Spring Fertility Website, captured the questionnaire responses of all patients, including Plaintiff. Said another way, by operation of the LinkedIn Insight Tag, Plaintiff's information was intercepted in real time as she engaged with Spring Fertility's Website, and therefore the privacy violation occurred regardless of whether she was ultimately subject to specific ads from Spring Fertility.

LinkedIn further cites several cases in which "allegations like Plaintiff's" did not rise to the level of an actionable intrusion on privacy (MTD at 23-24), but none of the cited cases are actually similar to Plaintiff's allegations here. For example, in *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018), the court affirmed a dismissal where the information intercepted showed "only that

Plaintiffs searched and viewed publicly available health information that cannot, in and of itself, reveal details of an individual's health status or medical history." Here, by contrast, LinkedIn intercepted information that revealed the specific fertility treatment that Plaintiff was seeking as well as her sexual orientation. Complaint ¶¶ 88-92, Figures 15-16. Indeed, in *Smith*, the Ninth Circuit recognized that the public information at issue "stands in stark contrast to the personally identifiable patient records and medical histories protected by these statutes—information that unequivocally provides a window into an individual's personal medical history." *Id.*; *see also In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) (the "collection of intimate or sensitive personally identifiable information may amount to a highly offensive intrusion").

LinkedIn's other cited authorities are even further afield. For example, in *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012), there was no alleged disclosure of private health information at all, which renders it immediately distinguishable and irrelevant to this case. The same is true of LinkedIn's other cited cases. *See* MTD at 24.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny LinkedIn's motion to dismiss.

Dated: February 10, 2025

**BURSOR & FISHER, P.A.**

By: *<u>/s/ Sarah N. Westcot</u>*
Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave., Suite 2100
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

*Counsel for Plaintiff*