**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
Stephen A. Beck (*pro hac vice* forthcoming)
701 Brickell Ave., Suite 2100
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com
sbeck@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

J.S., individually and on behalf of all others similarly situated,

Plaintiff,

v.

SPRING FERTILITY HOLDINGS, LLC, META PLATFORMS, INC., AND LINKEDIN CORPORATION,

Defendants.

Case No. 5:24-cv-07374-EJD

**PLAINTIFF'S OPPOSITION TO DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S MOTION TO DISMISS**

Hon. Edward J. Davila

Date: April 3, 2025
Time: 9:00 a.m.
Courtroom: 4, 5th Floor

## TABLE OF CONTENTS

PAGE(S)

I. INTRODUCTION .......... 1

II. LEGAL STANDARD .......... 2

III. ARGUMENT .......... 3

A. Plaintiff Did Not Consent To Spring Fertility's Practices .......... 3

B. Plaintiff States A Claim Under The Wiretap Act .......... 5

C. Plaintiff States A Claim Under CIPA Section 631 .......... 8

1. Plaintiff Sufficiently Alleges That Facebook And LinkedIn Violated The Second Prong Of Section 631(a) .......... 8

a. Plaintiff alleges conduct by Facebook and LinkedIn. .......... 8

b. Facebook and LinkedIn were not parties to the communications. .......... 9

c. Plaintiff sufficiently alleges that her communications were intercepted "in transit." .......... 11

2. Plaintiff Sufficiently Alleges That Spring Fertility Violated The Fourth Prong Of Section 631(a) .......... 12

D. Plaintiff States A Claim Under the CMIA .......... 15

E. Plaintiff States A Claim For Invasion Of Privacy Under The California Constitution .......... 16

IV. CONCLUSION .......... 19

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Allen v. Shutterfly, Inc.*,
2020 WL 5517172 (N.D. Cal. Sept. 14, 2020) .... 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 2

*B.K. v. Desert Care Network,*
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .... 6

*B.K. v. Eisenhower Med. Ctr.*,
721 F.Supp.3d 1056 (C.D. Cal. Feb. 29, 2024) .... 18

*B.K. v. Eisenhower Med. Ctr.*,
2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) .... 6

*Berman v. Freedom Finan. Network, LLC,*
30 F.4th 849 (9th Cir. 2022) .... 3

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .... 17

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .... 5, 11

*Caro v. Weintraub,*
618 F.3d 94 (2d Cir. 2010) .... 6

*Castillo v. Costco Wholesale Corp.,*
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) .... 6

*Clausing v. San Francisco Unified Sch. Dist.*,
271 Cal. Rptr. 72 (Ct. App. 1990) .... 19

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .... 9

*Cousin v. Sharp Healthcare*,
681 F.Supp.3d 1117 (S.D. Cal. 2023) .... 12, 13

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) .... 16

*Doe v. Kaiser Foundation Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .... 7

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 7

*Doe v. Regents of Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) .......... 17

*Eisenhower Med. Ctr. v. Superior Court*,
226 Cal. App. 4th 430 (2014) .......... 16

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .......... 14

*Garcia v. Build.com, Inc.*,
2023 WL 4535531 (S.D. Cal. Jul. 13, 2023) .......... 9

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 10

*Hammerling v. Google LLC*,
615 F.Supp.3d 1069 (N.D. Cal. 2022) .......... 18

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) .......... 11

*Heiting v. athenahealth, Inc.*,
2024 WL 3761294 (C.D. Cal. Jul. 29, 2024) .......... 10

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 14

*Humphrey v. J.M. Smucker Company*,
2023 WL 3592093 (N.D. Cal. May 22, 2023) .......... 3

*In re Ambry Genetics Data Breach Litig.*,
567 F.Supp.3d 1130 (C.D. Cal. 2021) .......... 17

*In re Cell Tower Litig.*,
2012 WL 1903883 (S.D. Cal. May 24, 2012) .......... 12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 8, 11, 16

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 5

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .......... 5

*In re Google, Inc. Privacy Policy Litig.*,
58 F.Supp.3d 968 (N.D. Cal. 2014) .......... 18

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) ........ 7

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)........ 18

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)........ 16

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014)........ 11

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023)........ 8, 11

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023)........ 11

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000)........ 3

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636 (E.D. Cal. Mar. 30, 2023)........ 10

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) ........ 7

*Nguyen v. Barnes & Noble, Inc.*,
763 F.3d 1171 (9th Cir. 2014)........ 4, 17

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023)........ 3

*Ojeda v. Kaiser Permanente Int'l., Inc.*,
2022 WL 18228249 (C.D. Cal. Nov. 29, 2022) ........ 16

*Price v. Carnival Corp.*,
2024 WL 221437 (S.D. Cal. Jan. 19, 2024) ........ 4

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)........ 6, 7

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 10, 13

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022)........ 12

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021)........ 8

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .......... 5

*Smith v. YETI Coolers, LLC*,
2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) .......... 14

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) .......... 2

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 11, 13, 16

*Stasi v. Inmediata Health Group Corp*.,
501 F.Supp.3d 898 (S.D. Cal. 2020) .......... 17

*Valenzuela v. Keurig Green Mtn., Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 8

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 9, 10

*Wilson v. Rater8, LLC*,
2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) .......... 15

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 1

**STATUTES**

18 U.S.C. § 2511(2)(d) .......... 7

Cal. Civ. Code § 56.05(i) .......... 15

Cal. Civ. Code § 56.10(a) .......... 15

Cal. Pen. Code § 631 .......... passim

## I. INTRODUCTION

Spring Fertility Holdings, LLC ("Spring Fertility") operates a national chain of fertility clinics. Individuals who are experiencing fertility-related health conditions can book a consultation for treatment on Spring Fertility's website. *See* Class Action Complaint (ECF No. 1) ("Compl.") ¶ 5. In order to book a consultation, Spring Fertility requires that its patients answer a series of questions, including the specific fertility treatment they are seeking and their sexual orientation. *Id.* Figures 3-12. Unbeknownst to its patients, Spring Fertility assists third parties, Facebook and LinkedIn, with intercepting this private and legally protected information. *See, e.g. id.* Figures 13-16. Such information is not shared for the purpose of providing treatment, but rather, solely for the purpose of targeted advertising. Facebook and LinkedIn not only utilize this information for Spring Fertility's benefit, but also for their own. *See, e.g., id.* ¶¶ 40, 44-46. Spring Fertility's actions demonstrate a blatant disregard for its duties as a medical provider as well as its patients' privacy interests.

The arguments raised in Spring Fertility's motion to dismiss (ECF No. 45) ("Motion") largely rely on misstatements of both law and fact.

*First*, Spring Fertility argues that its patients consented to its practices. This argument is disingenuous at best. As a threshold matter, Spring Fertility fails to provide its patients with constructive notice of its privacy policy. Even if Spring Fertility did provide notice of its policy, it is grossly insufficient. While Spring Fertility discloses that it *collects* various information from its patients, including the fertility treatment they are seeking and their sexual orientation, it does not disclose that this information will be *shared with third parties for purposes independent of rendering fertility treatment*. Additionally, it does not disclose that, once shared, these third parties will indefinitely retain such information and use it for their own advertising purposes. Courts within this District have found such policies to be insufficient to establish consent.

*Second*, the party exception does not apply to Plaintiff's wiretapping claims. It is well-settled that a party does not act as a mere extension of the defendant when they intercept the information for their own independent purposes. *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021).

*Third*, Spring Fertility's argument that Plaintiff fails to allege facts regarding the information allegedly disclosed deliberately ignores her allegations. Plaintiff alleges that Spring Fertility assisted Facebook and LinkedIn in intercepting its patients "booking information" and that such disclosures were "particularly egregious because it included highly sensitive details such as the specific type of fertility treatment sought and the patient's sexual orientation[.]" Compl. ¶ 5. This includes Plaintiff's own information as well. *See id.* ¶ 8 ("Plaintiff attended her consultation and received services related to IVF treatment from Defendant Spring Fertility."); *see also id.* ¶ 10 ("Pursuant to the systematic process described herein, Spring Fertility assisted Facebook and LinkedIn with intercepting Plaintiff's communications, including those that contained personally identifiable information ("PII"), protected health information (or "PHI"). This includes information related to the specific fertility treatment she received with Spring Fertility.").

*Finally*, Spring Fertility's arguments concerning Plaintiff's invasion of privacy claim fail for the same reasons discussed, *supra*. Spring Fertility's patients did not consent to its unlawful actions. Additionally, Plaintiff specifically alleges the information that was disclosed by Spring Fertility. This information does not merely relate to "patient status," but rather, includes the particular medical treatment being rendered.

Spring Fertility's Motion should be denied.

## II. LEGAL STANDARD

Under a Rule 12(b)(6) analysis, a motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 960. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"In deciding whether the plaintiff has stated a claim upon which relief has been granted, the court accepts her allegations as true and draws all reasonable inferences in her favor." *Humphrey v.*

*J.M. Smucker Company*, 2023 WL 3592093, at *4 (N.D. Cal. May 22, 2023). Finally, "[i]f the court dismisses the complaint, it 'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id*. (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## III. ARGUMENT

### A. Plaintiff Did Not Consent To Spring Fertility's Practices

Relying solely on its website cookie banner, Spring Fertility argues that all of Plaintiff's claims fail "because she consented to disclosure of her personal information." Motion at 6. This argument fails for two independent reasons.

First, California law requires constructive notice for consumers to be bound by contractual terms. *See id.* at 7 (citing *Allen v. Shutterfly, Inc.*, 2020 WL 5517172, at *6 (N.D. Cal. Sept. 14, 2020); *see also Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023) ("To form a contract under California…law, there must be actual or constructive notice of the agreement and the parties must manifest mutual assent."). For internet contracts, courts distinguish between "clickwrap" agreements and "browsewrap" agreements. Clickwrap agreements "present[] users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Berman v. Freedom Finan. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Conversely, browsewrap agreements "offer terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website." *Id.* Courts consistently hold that browsewrap agreements are unenforceable because they fail to provide constructive notice to consumers. *Oberstein*, 60 F.4th at 513 ("Courts are generally reluctant to enforce [browsewrap] agreements because they often leave users unaware that contractual terms were even offered[.]"). As explained by the Ninth Circuit,

> [I]n keeping with courts' traditional reluctance to enforce browsewrap agreements against individual consumers, we therefore hold that where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, ***even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice***. …[T]he onus must be on website owners to put users on notice of the terms to which they wish to bind consumers.

*Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1178-79 (9th Cir. 2014).

The cookie banner located on Spring Fertility's Website is insufficient to provide consumers, including Plaintiff, constructive notice of its existence. As alleged by Plaintiff,

> The "cookie banner" on Defendant Spring Fertility's Website does not provide constructive notice of its privacy policy to consumers. The banner is located off to the right of the screen, and users are in no way required to engage with the cookie banner in order to use the Website. Effectively, the banner is non-binding browsewrap. *Price v. Carnival Corp.*, 2024 WL 221437, at *4-5 (S.D. Cal. Jan. 19, 2024) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014)).

Compl. ¶ 98. Accordingly, Plaintiff could not have been put on notice of privacy practices that she was unaware of.

Second, even if the Court does find that the cookie banner was sufficient to provide constructive notice to consumers (it was not), the terms contained within the cookie banner fail to disclose Spring Fertility's privacy practices. For example, Spring Fertility represents and warrants to its patients that the "Targeting Cookies" on its Website "do not store directly personal information, but are based on uniquely identifying your browser and internet device." Compl. ¶ 102; *see also id.* Figure 17[1]. However, Plaintiff explains that:

> As courts across the country have recognized, however, the identifiers that the Facebook Tracking Pixel captures—Facebook ID, email address, first name, last name, and phone number—constitute "directly personal information." The same is true of the LinkedIn Insight Tag, based on the cookies it utilizes to identify its account holders. By assisting Facebook and LinkedIn with capturing this information anyway, Defendant Spring Fertility fails to receive consent from visitors to intercept their communications.

*Id.* ¶ 103. Nowhere in Spring Fertility's terms or privacy policy does it explicitly inform its patients that it discloses the details of their consultations, as well as their sexual orientation, to third party social media companies for targeted advertising purposes. Indeed, "Plaintiff never consented, agreed, authorized, or otherwise permitted Defendants to disclose her PII and PHI. Plaintiff was never provided with any written notice that Defendant Spring Fertility disclosed the PII or PHI of users of the Website, nor was she provided any means of opting out of such

---

[1] Plaintiff inadvertently labeled Spring Fertility's cookie banner as "Figure 15" in her Complaint. However, for the avoidance of confusion and to avoid duplication, the cookie banner is correctly referred to as "Figure 17."

disclosures." *Id.* ¶ 92. Spring Fertility's argument that "[a] reasonable user who read Spring Fertility's privacy policies would have understood Spring Fertility collected *and disclosed* the personal information at issue here" is nonsense. Motion at 8 (emphasis added); *see also* Compl. ¶ 105 ("Even consumers that do click "Accept" would not understand that Defendant Spring Fertility is sharing confidential information about their fertility consultation appointments, ***as this does not comply with the requirements of HIPAA and/or the CMIA for disclosing such information***[.]") (emphasis added). Nor does the privacy policy inform patients that their private and legally protected information would be retained and independently used by third parties for targeted advertising purposes. Such policies have been found to be insufficient to establish consent. *See In re Google Inc.*, 2013 WL 5423918, at *13 (N.D. Cal. Sept. 26, 2013) ("Google points to its Terms of Service and Privacy Policies, to which all Gmail and Google Apps users agreed, to contend that these users explicitly consented to the interceptions at issue. The Court finds, however, that those policies did not explicitly notify Plaintiffs that Google would intercept users' emails for the purposes of creating user profiles or providing targeted advertising."); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("[A]ny consent with respect to the processing and sending of messages itself does not necessarily constitute consent to the specific practice alleged in this case—that is, the scanning of message content for use in targeted advertising.").

The authority relied upon by Spring Fertility is distinguishable from Plaintiff's allegations here. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017) (Davila, J.) (finding that the stricter authorization requirements of HIPAA do not apply when the information transmitted *does not "relate[] to the past, present, or future physical or mental health or condition of an individual.*") (internal citations omitted) (emphasis added); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) (advising plaintiffs to develop allegations where they "have not alleged facts showing that the parties did not consent to the alleged recording").

**B. Plaintiff States A Claim Under The Wiretap Act**

Spring Fertility argues that Plaintiff's ECPA claim must be dismissed because "the Complaint fails to sufficiently plead the crime-tort exception." Motion at 10. That is wrong.

Although Spring Fertility was a party to the communications with its Website, the crime-tort exception bars the party defense because Spring Fertility's purpose in intercepting these communications was to knowingly violate HIPAA's criminal provisions, which prohibit disclosure of individually identifiable health information ("IIHI") to third parties. Compl. ¶ 132. Nevertheless, Spring Fertility argues that the crime-tort exception cannot apply because the criminal or tortious purpose was not "separate and independent from the act of recording." Motion at 9 (internal citations omitted). But Spring Fertility misunderstands Plaintiff's allegations. Plaintiff alleges that Spring Fertility's disclosure of Plaintiff's PHI and PII was separate and independent from its interception. *See, e.g.,* ¶¶ 76, 88, 92, 93, 129 (explaining that Spring Fertility violated the ECPA by "intentionally disclosing or endeavoring to disclose Plaintiff's and Class Members' electronic communications to affiliates and other third parties, while knowing or having reason to know that the information was obtained through the interception of an electronic communication"). Plaintiff's allegations of disclosure—independent and separate from the interception—when done with the purpose of committing a criminal or tortious act (invading Plaintiff's privacy and violating HIPAA) suffice to plausibly allege the crime-tort exception. *See R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) (recognizing that "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording or interception itself" and holding that crime-tort exception applied because communications were intercepted with intent to commit the tort of invasion of privacy) (emphasis in original); *B.K. v. Desert Care Network,* 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (holding one-party exemption did not apply because "[d]efendants disclosed these communications to Meta in violation of various state tort claims and state and federal laws"); *Castillo v. Costco Wholesale Corp.,* 2024 WL 4785136, at *5 (W.D. Wash. Nov. 14, 2024) ("The Court concludes that alleging a defendant intercepted data to use the data in violation of criminal or tort laws suffices to invoke the crime-tort exception."); *B.K. v. Eisenhower Med. Ctr.*, 2024 WL 2037404, at *4 (C.D. Cal. Apr. 11, 2024) (acknowledging that a violation of HIPAA can constitute independent conduct such that the crime-tort exception would apply); *Caro v. Weintraub,* 618 F.3d 94, 100 (2d Cir. 2010)

(finding that "if, at the time of the recording, the offender plans to use the recording to harm the other party to the conversation, a civil cause of action exists under the Wiretap Act.")[2]

Spring Fertility's reliance on *Doe v. Kaiser Foundation Health Plan, Inc.* is misguided. Motion at 9-10. In *Kaiser*, there was no allegation that the defendant knew or approved of third parties collecting or using information for their own purposes. As the *Kaiser* court explained, "the remainder of this order addresses Plaintiffs' claims as based on the factual scenario in (1) –i.e., that Kaiser hired third parties to collect and/or use information for the benefit of Kaiser," essentially hiring the third parties as vendors. 2024 WL 1589982, at *7 (N.D. Cal. Apr. 11, 2024). Here in contrast, Plaintiff alleges that Spring Fertility intercepted her communications for the purpose of disclosing that information to third parties so that those third parties could use the information to provide advertising for their own benefit and in violation of HIPAA. *See* Compl. ¶¶ 132-33.

Finally, whether Spring Fertility had criminal or tortious intent when intercepting Plaintiff's communications is a factual question for discovery or an evidentiary record before being decided by the Court. *See, e.g., Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) (noting the intent inquiry turned on "disputed questions of fact that need development on a full evidentiary record"); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 719 (D. Minn. 2023) ("[D]etermination of [defendant]'s actual purpose for . . . using the Pixel Code requires a factual undertaking.") (emphasis in original).[3]

---

[2] In setting forth the crime-tort exception, the ECPA expressly distinguishes between the interception of communications and a separate criminal or tortious purpose by providing that the communication must be "intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d).

[3] Spring Fertility's argument that that Plaintiff alleges that the primary purpose of intercepting her communications was to make money is also unavailing. "[E]ven where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims." *Walgreen*, 733 F. Supp. 3d at 901; *see also Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 928, n.4 (D. Minn. 2024) ("[T]he Court has serious doubts that a pecuniary purpose and an injurious purpose can always be so clearly distinguished. And it defies common sense that a clearly harmful act could escape liability as long as it was done for profit.").

### C. Plaintiff States A Claim Under CIPA Section 631

#### 1. <u>Plaintiff Sufficiently Alleges That Facebook And LinkedIn Violated The Second Prong Of Section 631(a)</u>

The second prong of Section 631(a) prohibits parties from:

> willfully and without consent of all parties to the communication, or in any unauthorized manner, reading, or attempting to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state.

Cal. Pen. Code § 631(a).

Accordingly, the second prong of Section 631 has three independent requirements: (1) lack of consent of all parties to a communication; (2) eavesdropping by a third-party nonparticipant; and (3) interception of a communication while in transit. *See, e.g.*, *Valenzuela v. Keurig Green Mtn., Inc.*, 674 F. Supp. 3d 751, 756–58 (N.D. Cal. 2023); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1081–84 (C.D. Cal. 2023). Section 631(a) shields parties to a communication from liability. *See, e.g.*, *Valenzuela*, 674 F. Supp. 3d at 757; *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606–07 (9th Cir. 2020); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 518 (C.D. Cal. 2021). Spring Fertility challenges the second and third requirements.

##### *a. <u>Plaintiff alleges conduct by Facebook and LinkedIn.</u>*

Spring Fertility argues that Plaintiff's claim brought under Section 631(a) fails because Plaintiff's "allegations relate to Spring Fertility's *own conduct*, not the conduct of a third party[.]" Motion at 11. That argument ignores Plaintiff's allegations.

Plaintiff asserts numerous allegations concerning Facebook and LinkedIn's conduct, including conduct related to the development of their business tools (*i.e.*, the Facebook Tracking Pixel and LinkedIn Insight Tag) (*see* Compl. ¶¶ 25-61), their interception of information through their business tools (*see, e.g., id.* Figures 13-16, ¶¶ 86, 91), and their knowledge of the protected information their business tools intercept. *See, e.g., id.* ¶ 14 ("Defendant Facebook, as the creator of its software and the Facebook Tracking Pixel, knew that it intercepted each of a users' interactions on the Website that incorporated its technology. Defendant Facebook has consistently come under scrutiny for incorporating its technology on websites that involve the transmittal of

sensitive data, including health information, but continues to do so."); *see also id.* ¶ 15 (containing similar allegations against Defendant LinkedIn). Nothing more is required.

Spring Fertility's reliance on *Garcia*[4] is misguided. In *Garcia*, the court dismissed the plaintiff's wiretapping claims, finding that she failed to establish that a third-party eavesdropper acted independently from Defendant's conduct. 2023 WL 4535531, at *5 (S.D. Cal. Jul. 13, 2023) ("Plaintiff's allegation that Defendant 'has covertly embedded software code…into its website that automatically intercepts, records, and creates transcripts of all conversations using the website chat feature,' does not assist Plaintiff because it points to *Defendant's own* conduct, not the conduct of a third party. At best, this allegation suggests that Defendant employs a third party software service as a tool to record its own data."). This is a far cry from the allegations here, where Facebook and LinkedIn both intentionally intercept communications from Spring Fertility's Website for their own independent purposes. *See, e.g.*, Compl. ¶ 173 ("Facebook and LinkedIn utilized Plaintiff's and Class Members' sensitive personal and health information for their own purposes, including for targeted advertising.").

*b. <u>Facebook and LinkedIn were not parties to the communications.</u>*

Spring Fertility argues that Plaintiff's claim brought under Section 631(a) fails because her "allegations that Facebook or LinkedIn could use data for targeted marketing are too general to find that Facebook or LinkedIn are third-party wiretappers." Motion at 14. Not so.

"[A] vendor hired by a website may act as a third-party eavesdropper if they secretly record conversations in real time." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1002 (N.D. Cal. 2024). In determining the party status of a website vendor, California courts look to see if the "usage of third-party recordation software can be considered equivalent to having hired a third-party in the first place for purposes of a Section 631(a) analysis." *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022). Courts will pay particular attention to whether the accused eavesdropper intercepted communications for self-use or, comparatively, simply recorded

[4] Plaintiff believes Spring Fertility's citation to *Martin* in its Motion was a scrivener's error because the citation appears to relate to the holdings from the *Garcia* case. Thus, Plaintiff will address the relevant holdings from *Garcia*.

communications for future playback on behalf of one of the parties. *Compare Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("Facebook acquired user communications by causing their browsers to transmit parallel signals . . . that means of interception should not have stripped Facebook of its third-party status."), *with Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021) ("[T]here are no allegations here that FullStory intercepted and used the data itself."). Finding of wrongdoing may require an examination into "whether or not the alleged third-party software provider aggregates or otherwise processes the recorded information, which might suggest that the software vendor independently uses the gathered data in some way." *Williams*, 2022 WL 17869275, at *3.

Here, Plaintiff sufficiently alleges that Facebook and LinkedIn are more than processing "tools" for Spring Fertility. Indeed, Plaintiff provides significant detail regarding how Facebook and LinkedIn both utilize the data they intercept for their own independent purposes. *See* Compl. ¶ 40 ("After collecting and intercepting the information described in the preceding paragraph, Facebook processed, analyzed, and assimilated it into datasets like Core Audiences and Custom Audiences."); *see also id.* ¶ 44 ("The personal information and communications obtained by LinkedIn are used to fuel various services offered via LinkedIn's Marketing Solutions[.]"). Courts routinely find that such allegations are sufficient to defeat the party exception. *See Revitch*, 2019 WL 5485330, at *2. This case is no different.

The authority relied upon by Spring Fertility is inapposite, as those cases do not allege interceptions through the Facebook Tracking Pixel or LinkedIn Insight Tag, nor plaintiffs in those cases plausibly allege that third parties used the intercepted data for any independent purpose. *See Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023) (finding that "caselaw supports the contention that a third-party vendor that is deemed merely to facilitate customer chats as an extension of the company"); *Heiting v. athenahealth, Inc.*, 2024 WL 3761294, at *4 (C.D. Cal. Jul. 29, 2024) (same).

c. *Plaintiff sufficiently alleges that her communications were intercepted "in transit."*

Spring Fertility argues that Plaintiff's claim brought under Section 631(a) fails because she does not establish that her communications were intercepted "in transit." Motion at 14-16. That is wrong.

Plaintiff details exactly how the Facebook Tracking Pixel and LinkedIn Insight Tag allow Facebook and LinkedIn to intercept communications contemporaneously and concurrently from Spring Fertility's Website. *See* Compl. ¶ 31; *see also id.* ¶ 50. The Complaint goes on to explain and show how this code works to allow the in-transit interception. *Id.* ¶¶ 75-76; 89-91. These allegations are sufficient to allege "in transit" interception of communications. *See St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024) (finding allegations similar to those here sufficient to satisfy "in transit" requirement); *see also Facebook Tracking*, 956 F.3d at 608 ("[S]imultaneous, unknown duplication and communication . . . do[es] not exempt a defendant from liability . . . . Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion"); *Campbell*, 77 F. Supp. 3d at 848 (accepting allegations that communications occur "in transit" and explaining consideration of evidence to the contrary would be "premature" absent a "more developed factual record."); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) (refusing to "assum[e]" communications are not intercepted in transit as they would "contradict[] Plaintiffs' allegations"); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 862 (C.D. Cal. 2024) ("Plaintiffs allege that, after they entered their Search Terms, the Search Terms were replicated and sent in parallel to the tracking entities . . . . Therefore, . . . their communications were intercepted in transit.") (cleaned up).

Once again, Spring Fertility relies on inapplicable case law that either does not concern the same tracking technology at issue here (*see Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1110 (C.D. Cal. 2023) ("Bare allegations of recording and creating transcripts do not specifically allege that Plaintiff's messages were intercepted while in transit."); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F.Supp.3d 1072, 1085 (C.D. Cal. Mar. 7, 2023) (same)) or does not plead with specificity how

the data is allegedly intercepted. *See Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit."). Spring Fertility even concedes that courts have found the Facebook Tracking Pixel to intercept communications in transit. Motion at 16 fn 2.

**2. <u>Plaintiff Sufficiently Alleges That Spring Fertility Violated The Fourth Prong Of Section 631(a)</u>**

Spring Fertility argues that it cannot be held liable under Section 631(a) because Plaintiff does not establish "the requisite knowledge and intent" to violate or assist in violating the statute. Motion at 13. Spring Fertility misconstrues the law concerning an aiding violation of Section 631(a).

Prong four of CIPA § 631(a) provides for liability when a person, "by means of any machine, instrument, contrivance, or in any other manner,…*aids, agrees with, employs, or conspires with* any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." (emphasis added). Notably, missing from the plain statutory text is of Section 631(a)(4) is *any* reference to an "abetting" requirement. Had the legislature intended for "aids" to mean "aids and abets," it would have written the latter term instead of the former. *Cousin v. Sharp Healthcare*, 681 F.Supp.3d 1117, 1129-30 (S.D. Cal. 2023) ("Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause."); *In re Cell Tower Litig.*, 2012 WL 1903883, at *2 (S.D. Cal. May 24, 2012) ("The first step in analyzing a statute is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning.") (citations omitted).

The legislature's use of the terms "aids," "agrees with," and "employs" indicates that CIPA § 631(a) was mean to apply to a much broader swath of non-criminal conduct, regardless of "specific intent." *See Cousin*, 681 F.Supp.3d at 1129-30. To that end, "aid" should be interpreted as "to give assistance,"[5] "agrees with" as "to concur in opinion or purpose,"[6] and "employs" as "to

[5] *Aid*, Merriam-Webster Dictionary. http://www.merriam-webster.com/dictionary/aid.

[6] *Agree*, Black's Law Dictionary (11th ed. 2019).

make use of" or "to hire."[7] In short, a defendant violates prong four where it simply enables another's wrongdoing. *See Revitch*, 2019 WL 5485330, at *2 ("[T]he complaint adequately alleges that [defendant] violated section 631 by enabling [a third party's] wrongdoing.").

Here, Plaintiff's Complaint is replete with allegations that Spring Fertility intentionally enabled Facebook and LinkedIn's wrongdoing. *See, e.g.,* Compl. ¶ 10 ("Pursuant to the systematic process described herein, Spring Fertility assisted Facebook and LinkedIn with intercepting Plaintiff's communications, including those that contained personally identifiable information ("PII"), protected health information (or "PHI"). This includes information related to the specific fertility treatment she received with Spring Fertility."); *id.* ¶ 32 ("[Spring Fertility] chose to include the Facebook Tracking Pixel [and LinkedIn Insight Tag] on its Website."); *id.* ¶ 92 ("Plaintiff was never provided with any written notice that Defendant Spring Fertility disclosed the PII or PHI of users of the Website, nor was she provided any means of opting out of such disclosures. Defendant Spring Fertility nonetheless knowingly disclosed Plaintiff's PII and PHI, and assisted Defendants Facebook and LinkedIn in unlawfully intercepting this private information for targeted advertising purposes."); *Id.* ¶ 94 ("Defendant Spring Fertility assisted Defendants Facebook and LinkedIn with intercepting information that was sensitive, confidential, and personally identifiable."). Moreover, Spring Fertility acts violated its duties as a healthcare provider. *See, e.g., id.* ¶ 11 ("By failing to receive the requisite consent, Spring Fertility breached its duty of confidentiality and aided Facebook and LinkedIn in unlawfully intercepting Plaintiff's PII and PHI."); *id.* ¶ 146 ("Defendant Spring Fertility failed to obtain its patients' valid authorization for the disclosure of medical information."). These allegations are sufficient to plead Spring Fertility's violation of prong four of CIPA § 631(a). *See Carbon Health*, 2024 WL 4369675, at *8*; Cousin*, 681 F. Supp. 3d at 1129–30.

The authority relied upon by Spring Fertility is inapposite. For example, in *Smith v. YETI Coolers, LLC*, the court held that Section 631(a) does not apply to "a defendant who *properly and lawfully provides information or access to a third party* without any knowledge or intent that the

[7] *Employ*. Black's Law Dictionary (11th ed. 2019).

third party will use the information in a manner that violates the statute." 2024 WL 4539578, at *4 (N.D. Cal. Oct. 21, 2024) (emphasis added). But notably, *Smith* did not involve the interception of protected health information, but rather the payment processing of consumer transactions on the Yeti website. *Id.* at *1. The court there held that the plaintiff had not pled sufficient facts to establish that the defendant knew that such information was being unlawfully utilized by its service provider. *Id.* at *5. Here, unlike *Smith*, the very act of Spring Fertility's disclosure constituted a violation of Section 631(a) because it had no lawful basis to share its patients' medical information to begin with. Both the HIPAA and the CMIA place heightened requirements on healthcare providers, like Spring Fertility, for the specific purpose of safeguarding this sensitive information. Similarly, in *Heiting*, the court found that the plaintiff failed to satisfy Section 631(a)'s intent requirement because he did not "adequately ple[a]d factual allegations to support [the third party interceptor]'s capabilities to function as anything other than a tape recorder storing data for a party to this action." *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1017 (C.D. Cal. 2023). Not so here, as Plaintiff alleges Spring Fertility knowingly assisted third parties Facebook and LinkedIn in unlawfully intercepting Plaintiff's PII and PHI, and that Facebook and LinkedIn then used that private information for advertising purposes. Compl. ¶ 94. Finally, *Esparza v. UAG Escondido A1 Inc.* does not apply, as unlike here, the plaintiff there failed to even adequately allege a wiretap much less defendant's knowledge of the third party's wrongful conduct. 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) ("However, at this stage of the case, there has been no finding that CarNow was engaged in wiretapping or eavesdropping, and even if there were such a finding, that would not speak to Defendant's knowledge. Absent factual allegations on that specific issue, Plaintiff has failed to state an aiding and abetting claim against Defendant."); *see* Compl. ¶ ¶ 10, 32 (Plaintiff alleges that Spring Fertility assisted Facebook and LinkedIn with intercepting Plaintiff's PII and PHI by making the affirmative choice to include the Facebook Tracking Pixel and LinkedIn Insight Tag on its Website.).

### D. Plaintiff States A Claim Under the CMIA

Spring Fertility argues that "Plaintiff's CMIA claim must be dismissed because she has failed to allege facts showing 'medical information' has been transmitted." Motion at 16. That is wrong.

The CMIA states that a "provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization." Cal. Civ. Code § 56.10(a). "'Medical information' means ***any*** individually identifiable information, in electronic or physical form … regarding a patient's medical history, mental health application information, ***mental or physical condition***, or treatment." Cal. Civ. Code § 56.05(i) (emphasis added).

Spring Fertility relies on *Wilson v. Rater8, LLC* in support of its argument that the information it disclosed to Facebook and LinkedIn does not constitute medical information. *See* Motion at 17. In *Wilson,* the court found that the plaintiff did not "allege facts that would allow the court to infer that he received medical treatment during [a disclosed] examination" and that the information plaintiff alleged the defendant disclosed was "insufficient to allege disclosure of medical information." 2021 WL 4865930, at *5 (S.D. Cal. Oct. 18, 2021). There, the plaintiff alleged that the defendant disclosed his "medical treatment appointment information, and medical treatment discharge dates and times." *Id.* However, the plaintiff did not plead any specifics of the treatment sought and received, and merely described the examination as treatment. *Id.* Thus, Wilson does not stand for the blanket proposition that information relating to appointments is never medical information within the meaning of the CMIA.

Here, Plaintiff has pled facts revealing the disclosure of "the specific fertility treatment she received with Spring Fertility." Compl. ¶ 10; Figures 13-16; *see also* Cal. Civ. Code § 56.05(i). In the Complaint, Plaintiff also provides images setting forth the information disclosed to Facebook and LinkedIn, which included specific information regarding the treatment she was receiving. *See* Compl. ¶ 10, Figures 13-16 (illustrating the transmission of data to Facebook related to in vitro fertilization treatment). Given that Plaintiff pleads Spring Fertility disclosed "substantive information" related to her medical appointment, Plaintiff has pled sufficient facts to plausibly

establish a violation of the CMIA. *Cf. Eisenhower Med. Ctr. v. Superior Court*, 226 Cal. App. 4th 430, 434-36 (2014) (explaining that the compromised information amounted only to "individually identifiable information" because it did not show specific medical concerns or treatments); *see also Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 975 (S.D. Cal. 2023) (allegations that plaintiffs used healthcare website to book appointments stated a CMIA claim); *Meta Pixel*, 2024 WL 3338833, at *1 (finding plaintiffs plausibly pled privacy-based claims where they identified "the specific types of information they provided to their healthcare providers that they believe Meta collected without their consent[,]" including "the health conditions for which they sought treatment or services, as well as examples of their queries, appointment requests, or other information and services which they communicated to their providers.").

### E. Plaintiff States A Claim For Invasion Of Privacy Under The California Constitution

Spring Fertility argues that Plaintiff's invasion of privacy claim should be dismissed because "she has failed to plead facts establishing she had a reasonable expectation of privacy or that any action by Spring Fertility constituted a serious invasion of privacy." Motion at 18. Spring Fertility is wrong on both counts.

To state a claim for invasion of privacy, a plaintiff must allege that "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Tracking*, 956 F.3d at 601. "It is well-settled under California law that, although not absolute, people have a privacy interest in their 'medical history and information.'" *Ojeda v. Kaiser Permanente Int'l., Inc.*, 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022); *see also Carbon Health*, 2024 WL 4369675, at *12. Further, because "patient-status and medical-related communications between patients and their medical providers are protected by federal law" and are "almost uniquely personal," "communications made in the context of a patient-medical provider relationship are readily distinguishable from" general online communications. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 800 (N.D. Cal. 2022).

Courts are hesitant to determine whether an alleged invasion of privacy is highly offensive at the pleading stage. *Carbon Health*, 2024 WL 4369675, at *12. Only where allegations reveal

no reasonable expectation of privacy or only an insubstantial impact on privacy interests should the question of whether an alleged invasion of privacy is serious or highly offensive be decided as a matter of law. *Id.*

As discussed above, Plaintiff has a significant privacy interest in her medical information, and even more so for information related to fertility treatments which are inherently personal and involve intimate details about an individual's health, reproductive choices, and often, their sexual orientation. This Court should follow the decisions of numerous other courts that have refused to dismiss complaints alleging invasion of privacy based on nonconsensual disclosures of medical information. *Id.* at *13; *see also Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) ("Personal medical information is understood to be among the most sensitive information that could be collected about a person."); *In re Ambry Genetics Data Breach Litig.*, 567 F.Supp.3d 1130, 1143 (C.D. Cal. 2021) (even negligent disclosure of medical information is "more likely to constitute an 'egregious breach of the social norms' that is 'highly offensive'"); *Stasi v. Inmediata Health Group Corp.*, 501 F.Supp.3d 898, 926 (S.D. Cal. 2020) (disclosure of medical information "constitutes a serious invasion of privacy"); *see also Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 531 (N.D. Cal. 2021) (surreptitious collection of data contrary to representations is highly offensive).

As a threshold matter, Spring Fertility's reliance on its privacy policy fails for the same reasons discussed, *supra*. The cookie banner located on Spring Fertility's Website is insufficient to provide consumers, including Plaintiff, with constructive notice of its existence. *Nguyen*, 763 F.3d at 1178-79. Even if the Court finds that Spring Fertility provided its patients with constructive notice of its cookie banner, Spring Fertility represents and warrants to its patients that the "Targeting Cookies" on its Website "do not store directly personal information, but are based on uniquely identifying your browser and internet device." Compl. ¶ 102; *see also id.* Figure 17. That representation is false because Spring Fertility utilizes targeting cookies, such as Facebook's c_user cookie and LinkedIn's lms_ads and li_sugr cookies, that specifically identify the personal information of patients who have accounts on their platforms. Plaintiff does not bring claims against Spring Fertility for the mere "collection" of her personal information, but rather, for the

*disclosure* of this information to third parties who took her information and used it for their own monetary gain through the generation of advertising revenue. *See* Motion at 19. These disclosures were made without Plaintiff's knowledge or consent.

Spring Fertility's argument that "Plaintiff's Complaint is purposefully vague as to what information was collected" ignores Plaintiff's allegations. For example, Spring Fertility' actions were "particularly egregious because it['s disclosures] included highly sensitive details such as the specific type of fertility treatment sought and the patient's sexual orientation[.]" Compl. ¶ 5; *see also id.* ¶ 10 ("Pursuant to the systematic process described herein, Spring Fertility assisted Facebook and LinkedIn with intercepting Plaintiff's communications, including those that contained personally identifiable information ("PII"), protected health information (or "PHI"). *This includes information related to the specific fertility treatment she received with Spring Fertility*.") (emphasis added); *see also* Figures 13-16 (network traffic detailing the information Spring Fertility assisted Facebook and LinkedIn in intercepting).

The authority relied upon by Spring Fertility is unpersuasive and not in line with the facts here. Three of cases Spring Fertility relies on do not even involve the disclosure of medical information. *See Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1091 (N.D. Cal. 2022) (did not involve the disclosure of detailed medical information, but rather involved data showing how long users used a mobile app; *In re Google, Inc. Privacy Policy Litig*., 58 F.Supp.3d 968 (N.D. Cal. 2014) (involved neither an invasion of privacy claim under the California Constitution nor the disclosure of medical information); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) (did not involve the disclosure of medical information). Spring Fertility also relies on *B.K. v. Eisenhower Med. Ctr.,* but that case is distinguishable because the plaintiffs there "fail[ed] to allege any specificity as to what medical information was allegedly disclosed[.]" 721 F.Supp.3d 1056, 1064 (C.D. Cal. Feb. 29, 2024). Not the circumstance here, where Plaintiff *has* alleged the disclosure of specific medical information, including the specific medical treatment and the patient's sexual orientation. *See* Compl. ¶¶ 5, 10, Figures 13-16 (illustrating the transmission of data to Facebook related to a booking for in vitro fertilization treatment).

Finally, Spring Fertility contends that Plaintiff's invasion of privacy claim should be dismissed because Plaintiff is not entitled to seek monetary damages. Motion at 21. Spring Fertility's reading of the complaint is too narrow. Plaintiff seeks "all relief available for invasion of privacy under California's Constitution." Compl. ¶ 182. While Plaintiff concedes that she may not seek monetary damages under California's Constitution, she is entitled to seek injunctive relief. *Clausing v. San Francisco Unified Sch. Dist.*, 271 Cal. Rptr. 72, 79 (Ct. App. 1990) ("the constitutional provision protecting the right of privacy . . . supports a cause of action for an injunction"). Accordingly, Spring Fertility's motion to dismiss on this basis should be denied.

## IV. CONCLUSION

For the foregoing reasons, Spring Fertility's Motion should be denied.

Dated: February 10, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Sarah N. Westcot*
Sarah N. Westcot

Sarah N. Westcot (SBN 264916)
Stephen A. Beck (*pro hac vice* forthcoming)
701 Brickell Avenue, Suite 2100
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: swestcot@bursor.com
sbeck@bursor.com

*Counsel for Plaintiff*