KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
MAXWELL E. ALDERMAN - #318548
malderman@keker.com
SPENCER MCMANUS - # 322824
smcmanus@keker.com
JONHATAN A. ARAGON - # 338756
jaragon@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendant LINKEDIN CORPORATION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| J.S.,<br><br>Plaintiff,<br><br>v.<br><br>SPRING FERTILITY HOLDINGS, LLC, et al.,<br><br>Defendants. | Case No. 5:24-cv-07374-EJD<br><br>**DEFENDANT LINKEDIN CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: June 5, 2025<br>Time: 9:00 a.m.<br>Dept.: Courtroom 4, 5th Floor<br>Judge: Hon. Edward J. Davila<br><br>Date Filed: October 22, 2024<br><br>Trial Date: None Set |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ..........1

II. ARGUMENT ..........1

A. Plaintiff's claims all fail because she consented to LinkedIn's and Spring's terms, each of which disclose the relevant data practices. ..........1

B. Plaintiff cannot plead that LinkedIn intentionally invaded her privacy. ..........4

C. Plaintiff's CIPA claims are plagued by terminal pleading deficiencies. ..........7

1. Plaintiff fails to overcome Section 631's "party-exception" rule. ..........7

2. Plaintiff fails to state a Section 631 claim under any clause. ..........9

a. Section 631's first clause does not apply to the Internet. ..........9

b. Plaintiff fails to state a claim under Section 631's second clause because she does not allege an interception of contents of communications while in transit. ..........9

c. Plaintiff's claim under Section 631's third clause fails for the same reasons as her claims under clauses one and two. ..........10

3. Plaintiff does not adequately allege a Section 632 claim. ..........11

a. Plaintiff's Section 632 claim fails because she does not adequately allege that any communications were confidential. ..........11

b. Plaintiff's Section 632 claim fails because she does not plausibly plead that LinkedIn used an electronic amplifying or recording device. ..........11

D. The "crime-tort" exception does not rescue Plaintiff's Wiretap Act claim. ..........12

E. Plaintiff's constitutional invasion of privacy claim fails because she cannot plead an offensive intrusion upon her reasonable expectation of privacy. ..........13

III. CONCLUSION ..........15

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024)....6

*Berman v. Freedom Fin. Network, LLC*,
30 F. 4th 849 (9th Cir. 2022)....4

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023)....9

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021)....3

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014)....3, 11

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024)....10

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024).... *passim*

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)....13

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023)....7, 15

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023)....11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....14, 15

*Gladstone v. Amazon Web. Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024)....6

*In re Google Assistant Privacy Litigation*,
457 F. Supp. 3d 797 (N.D. Cal. 2020)....6, 11

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)....3

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019)....11, 12

*Graham v. Noom*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................8

*Gray v. Twitter Inc.*,
2021 WL 11086642 (W.D. Wash. Mar. 17, 2021) ....................12

*Gutierrez v. FriendFinder Networks Inc.*,
2019 WL 1974900 (N.D. Cal. May 3, 2019) ....................4

*Hammerling v. Google, LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022)....................10, 14

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024)....................2, 3, 10, 14

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) ....................10

*Jackson v. LinkedIn Corp.*,
744 F. Supp. 3d 986 (N.D. Cal. 2024) ....................5, 8, 9

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2014)....................9

*In re Lares*,
188 F.3d 1166 (9th Cir. 1999) ....................12

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sep. 26, 2024) ....................11

*Liparota v. United States*,
471 U.S. 419 (1985)....................11

*Lloyd v. Facebook, Inc.*,
2024 WL 3325389 (9th Cir. July 8, 2024)....................13

*Matera v. Google, Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ....................9

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................13, 14, 15

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017)....................11, 12

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998) ....................15

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ....................4

*Ojeda v. Kaiser Permanente Int'l Inc.*,
2022 WL 18228249 (C.D. Cal. Nov. 29, 2022) ... 15

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ... 4

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2020) ... 13

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ... 10

*Schneider v. Cal. Dept. of Corrs.*,
151 F.3d 1194 (9th Cir. 1998) ... 15

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ... 2, 15

*Smith v. Google LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) ... 7, 8

*St. Aubin v. Carbon Health Techns., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ... 9

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ... 1

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) ... 10

*Valenzuela v. Super Bright LEDs, Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) ... 8

*Williams v. DDR Media, LLC*,
2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ... 8

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ... 13, 15

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ... 3, 5

**State Cases**

*Cal. Teachers Ass'n v. Governing Bd. of Rialto Unified School Dist.*,
14 Cal. 4th 627 (1997) ... 12

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ... 5

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .......... 13, 14

*Lozano v. City of Los Angeles*,
73 Cal. App. 5th 711 (2022) .......... 6

*People v. Acosta*,
29 Cal. 4th 105 (2002) .......... 12

*Rojas v. HSBC Card Servs. Inc.*,
20 Cal. App. 5th 427 (2018) .......... 6

## I. INTRODUCTION

Plaintiff's opposition confirms that her Complaint—like many other carbon-copy pixel cases—fails to state claims under CIPA, the Wiretap Act, or the California Constitution. Plaintiff does nothing to address the fact that any alleged collection and sharing of her Spring data with LinkedIn was expressly disclosed to Plaintiff when she signed up for Spring's and LinkedIn's services. Nor can she legitimately contest that she consented to those very data practices when she agreed to LinkedIn's and Spring's policies and terms of services. Separately, those terms further confirm that LinkedIn did not intentionally collect any sensitive data from her; to the contrary, LinkedIn explicitly instructed Spring not to use the Insight Tag in a manner that would result in the transmission of sensitive data to LinkedIn. These independent grounds—Plaintiff's consent and LinkedIn's lack of intent—each warrant dismissal of Plaintiff's entire Complaint, in addition to the slew of pleading deficiencies identified in LinkedIn's motion. Unable to overcome these failures, Plaintiff ignores LinkedIn's authorities, block-quotes from inapplicable decisions, and relies upon unpled allegations. But Plaintiff cannot evade dismissal by recasting her Complaint or turning a blind eye to the law. Plaintiff's concessions reveal this case for what it is: yet "another" inadequately pleaded "pixel case" that should be dismissed with prejudice. *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 836 (N.D. Cal. 2024).

## II. ARGUMENT

### A. Plaintiff's claims all fail because she consented to LinkedIn's and Spring's terms, each of which disclose the relevant data practices.

Plaintiff's opposition confirms she was aware of and consented to any disclosure of her Spring data. Plaintiff does not dispute that her Complaint incorporates by reference LinkedIn's User Agreement, Privacy Policy, Cookie Policy, and Cookie Table ("LinkedIn's Terms"), and Spring's Legal & Terms ("Spring's Terms").[1] Plaintiff also says nothing in response to

---

[1] As explained in LinkedIn's unopposed request for judicial notice, the Court can and should consider these materials as part of the pleadings. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

LinkedIn's cited Ninth Circuit decisions, which affirmed dismissal of privacy claims based on the defendants' disclosures of the data practices at issue. *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (plaintiffs had no expectation of privacy where defendant's privacy policy disclosed the complained-of practices); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (affirming dismissal of privacy claims based on the "collection of health-related data," where defendant's terms of service disclosed its "practices of (a) collecting its users' data from third-party sites and (b) later using the data for advertising purposes"). As in those cases, LinkedIn's and Spring's Terms plainly disclose the complained-of conduct, dooming her claims.

Unable to distinguish either the Terms or Ninth Circuit law, Plaintiff suggests that both sets of Terms are insufficiently explicit and whether she consented to Spring's Terms is a question of fact. Neither argument succeeds. *First*, the plain language of LinkedIn's Terms—which Plaintiff agrees she is bound by, Compl. ¶¶ 9, 56—contradicts Plaintiff's assertion that LinkedIn failed to "explicitly notify" her of the "practice at issue." Opp. at 5. Quite the opposite: LinkedIn discloses that it may (1) "use cookies and similar technologies . . . to collect data . . . to recognize you and your device(s) on, off and across different services and devices"; (2) target ads to members using "[d]ata collected by advertising technologies on and off [LinkedIn's] Services using pixels, ad tags (e.g., when an advertiser installs a LinkedIn tag on their website), cookies"; (3) "receive information about your visits and interactions with services provided by others when you . . . visit others' services that include . . . cookies or similar technologies"; and (4) enable third parties to collect data using the Insight Tag. Exs. B §§ 1.4, 1.8, 2.4; C; D.[2]

Plaintiff does not engage with these disclosures and instead simply declares that they are insufficiently explicit as a matter of law. Opp. at 5. The Ninth Circuit, however, already rejected a heightened disclosure requirement for "the collection of health-related data," holding instead that a defendant's disclosures about its collection of user data from third-party sites and use of that data "for advertising purposes" were sufficient to find "consent[] to [the defendant's] data tracking and collection practices." *Smith*, 745 F. App'x at *8–9. Regardless, taking Plaintiff's

---

[2] LinkedIn's exhibit citations are to those attached to the Alderman Declaration. ECF No. 43.

arguments at face value, LinkedIn's Terms bear no resemblance to those in Plaintiff's cited cases, where the defendants purportedly failed to disclose the possibility that data could be used for targeted advertising. Opp. at 5 (citing *In re Google Inc.*, 2013 WL 5423918, at *13 (N.D. Cal. Sept. 26, 2013) (Google policies "did not explicitly notify" about the complained-of conduct); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 847 (N.D. Cal. 2014) (Facebook policies did not explicitly notify users about use of private messages for providing targeted advertising)). Nor is this a case where a defendant collected data despite its disclosures "suggest[ing] to a reasonable user that [it] would not engage in the alleged data collection." *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 621 (N.D. Cal. 2021). While Plaintiff asserts that LinkedIn "falsely states" that it "will only collect and process personal data about you where [it] ha[s] lawful bases," Opp. at 5, as LinkedIn noted in its motion (which Plaintiff ignores), those lawful bases expressly include "consent (where you have given consent)," "contract" (*e.g.*, to facilitate the delivery of "LinkedIn Services," which include the Insight Tag and "ad services"), and LinkedIn's "legitimate interests." Ex. B at 3 ("Services"), § 5.3. All told, LinkedIn expressly disclosed that Plaintiff's "activity" might be "track[ed] . . . on third-party [websites]," necessitating dismissal of her claims. *Hammerling*, 2024 WL 937247, at *3.

Plaintiff's attempts to sidestep Spring's Terms also fall flat. Plaintiff again asserts—without even referencing the language of the Terms—that Spring's Terms fail to provide explicit notice of its data collection practices. But Spring's Terms are clear: they repeatedly state that Spring hosts "Targeting Cookies," which "may be set through our site by our advertising partners," and are "used by those companies to build a profile of your interests and show relevant adverts on other sites"; and that "we or our third-party partners use common tracking tools to collect information about the pages you view, our website functions that you access," and "the buttons and icons you click" to "provide advertising content." Ex. I.

*Second*, Plaintiff asserts that Spring's Terms were insufficiently conspicuous and that whether she agreed to those Terms is a question of fact. Opp. at 4–5. In support, Plaintiff cites *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *4 (N.D. Cal. Dec. 30, 2024) to argue that consent requires constructive notice of an agreement, and her conclusory allegation that Spring's

Cookie Banner is "off to the right of the screen" and she was not required to engage with it. Compl. ¶ 98. But this is a red herring: her Complaint tacitly acknowledges that she had notice of the Cookie Banner and its linked disclosures. Courts regularly enforce online agreements based on inquiry notice if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F. 4th 849, 856 (9th Cir. 2022).

Here, Plaintiff concedes that Spring's Cookie Banner is persistent, and that it hovered in the center and on the right-hand side of her browser window while she scrolled Spring's website. Ex. J; Alderman Dec. ¶ 11; Compl. ¶ 98. Plaintiff also concedes that the Banner contained a hyperlink to Spring's Terms in the underlined phrase "Cookie Policy," while disclosing that its "website uses cookies." Ex. J. That banner states "by continuing to use our site, you are agreeing to our Cookies Policy," with a large "ACCEPT" button directly beneath it, outlined in a white rectangle. Further, Plaintiff evinced assent by using Spring's website, including by allegedly booking an appointment. Compl. ¶ 7. Plaintiff was thus on inquiry notice of Spring's Terms. *See Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) (plaintiff was on inquiry notice of terms—where those terms were "disclosed only through a hyperlink," a user manifested assent by "continuing to use the website," and clicked "Place Order"—because notice of the agreement was on an "uncluttered page" and "not hidden or obscured," and the notice provided a hyperlink for the terms in contrasting colors); *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (enforcing agreement where terms of use were displayed beneath a "Sign in" button, with clear language stating "By continuing past this page, you agree to the Terms of Use"); *Gutierrez v. FriendFinder Networks Inc.*, 2019 WL 1974900, at *7 (N.D. Cal. May 3, 2019) (continued use of the website constituted consent to terms given disclosures).

In sum, Plaintiff was aware of and consented to any collection or sharing of her Spring data with LinkedIn, and all of her claims can be dismissed on this independent ground.

**B. Plaintiff cannot plead that LinkedIn intentionally invaded her privacy.**

Plaintiff's Complaint should be dismissed in its entirety for yet another independent

reason: it contains no well-pleaded facts to support her bare assertion that LinkedIn intended to invade her privacy.[3] Plaintiff's opposition ignores entirely the *Doe I* decision, which held that Google lacked the requisite intent to invade plaintiffs' privacy by providing tracking software to health care providers because "Google repeatedly told developers not to send personally identifiable information through use of its source code." 741 F. Supp. 3d at 840. Like Google, LinkedIn's Ads Agreement with Spring—which Plaintiff does not dispute is incorporated by reference into her Complaint, RJN at 4–5—likewise requires that Spring will "not transfer to LinkedIn any data" that "constitutes Sensitive Data" or install "the Insight Tag on a page that collects medical" information. Ex. E § 5; *see also* Exs. G, H, H1 (FAQ and Help webpages, advising advertisers to "never add" the Insight Tag to websites "that collect or otherwise handle health" data). As in *Doe I*, the only plausible "takeaway from these allegations is that [LinkedIn] purposefully acted so as *not* to receive any personal health information." 741 F. Supp. at 840.[4]

Plaintiff's only response to LinkedIn's clear prohibitions is to try to water down the intent standard. Citing *In re Google Assistant Privacy Litigation*, 457 F. Supp. 3d 797 (N.D. Cal. 2020), she argues that she satisfies this standard because LinkedIn was "aware" a privacy violation could occur and "took no remedial action" to prevent it. Opp. at 7. But the *Google Assistant* court

---

[3] Plaintiff argues that her constitutional claim does not require her to allege intent, Opp. at 6 n.1, but California law disagrees: "[N]o cause of action will lie for accidental, misguided, or excusable acts of overstepping upon legitimate privacy rights." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009). Plaintiff also cites *Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986 (N.D. Cal. 2024), and *Yoon*, 2024 WL 5264041, at *5–6, for the proposition that LinkedIn acted with the requisite intent, despite the *Jackson* court never addressing intent and the *Yoon* court discussing "intent" under a section of CIPA not at issue here.

[4] As LinkedIn raised in its motion (which Plaintiff again ignores), by insisting that LinkedIn is engaged in "a plot to steal private health information from its clients," Plaintiff "may well be subjecting [her] intent-related allegations to the heightened pleading standard of [Rule] 9(b)." *Doe I*, at 841–42. In any event, Plaintiff fails to satisfy even Rule 8, requiring dismissal.

"d[id] not hold that inaction in the face of a known design defect necessarily makes an interception 'intentional.'" *Id.* at 816. 457 F. Supp. 3d at 816. Instead, it found intent was adequately alleged because Google was aware of the specific interceptions and persisted in using the intercepted data "even after [it became] aware of their provenance." *Id.*

The *Doe I* court also already considered and rejected Plaintiff's arguments. 741 F. Supp. 3d at 840–42. Consistent with "binding" Ninth Circuit law requiring "purposeful[] and deliberate[]" conduct, the court dismissed the notion that "mere awareness that an interception might occur" is sufficient to show intent. *Id.* at 840 (quoting *United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015)). Nor is intent sufficiently alleged even where a defendant "is capable of preventing the inadvertent transmission of private information from a health care provider" but fails to do so. *Id.* at 840–41. "There is nothing inherently unlawful about Google"—or LinkedIn—"offering its source code to health care providers, and no inference can be drawn that Google's failure to prevent providers from using its source code entirely somehow reveals an intent to receive private health information." *Id.* at 841. Many other courts have reasoned similarly, declining to find intent on allegations that a defendant "understood it was deploying recording devices that *might* happen to record a confidential communication" but "not that [defendant] intended to record those communications." *Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711, 728 (2022); *see also B.K. v. Desert Care Network*, 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024) (no willfulness for CIPA liability where Meta notified business partners that they needed to have the right to collect, use, and share any user data, including health data, before providing it to Meta). Even Plaintiff's own cited case held that it is insufficient to allege "the mere intent to activate a tape recorder which subsequently 'by chance' records a confidential communication"; instead, one must allege the intention "to make a recording of a confidential communication." *Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427, 434–35 (2018).

Plaintiff's reliance on a smattering of inapposite caselaw does not save her claims. In *Gladstone v. Amazon Web. Servs., Inc.*, 739 F. Supp. 3d 846, 860 (W.D. Wash. 2024), the court found that plaintiffs adequately alleged intentional conduct under CIPA because defendant Amazon specifically promoted the use of its call-recording services to Capital One as a "case

study" on its website, "demonstrating specific awareness of the nature of Capital One's business." Not only has Plaintiff pleaded nothing resembling *Gladstone*'s intent allegations, but Amazon, unlike LinkedIn here, had no express prohibitions on the collection or use of certain types of data. Plaintiff also relies heavily on *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023), and cases adopting its reasoning, like *Smith v. Google LLC*, 735 F. Supp. 3d 1188 (N.D. Cal. 2024), but *Meta Platforms* and its progeny are similarly inapposite. As the *Doe I* court acknowledged, *Meta Platforms* involved different facts. 741 F. Supp. 3d at 841. The *Meta Platforms* plaintiffs specifically alleged that Meta directed health care providers to upload patient lists and encouraged "health care marketers" to use Meta's pixel to collect data to target patients and "disrupt health and how we market to patients"; quoted Meta employees who explained how Meta can assist in "the patient journey"; and provided a litany of examples of Meta developing and distributing targeted ads using health-related data. ECF No. 185 at 12–13, 29–31, 35, No. 3:22-cv-03580-WHO (N.D. Cal. Feb. 21, 2023). Here, unlike the *Meta Platforms* plaintiffs, Plaintiff does not plausibly allege with well-pleaded facts that LinkedIn ever sought, solicited, or used any health information shared by Spring, much less any health information from her specifically. Additionally, while Plaintiff states in her briefing that LinkedIn used her "health information to improve its advertising products," the cited paragraphs of her Complaint say nothing of the sort. Opp. at 6 n.1 (describing "Facebook's" data-collection practices and not LinkedIn's, Compl. ¶¶ 37, 75; alleging that LinkedIn has an advertising business, *id.* ¶ 41). Instead, as in *Doe I*, Plaintiff at most offers only "hypothetical examples" based on "generic product descriptions" of how LinkedIn "could target ads to [individuals] who have shared communications," but "there are no allegations that" Plaintiff "ever saw any targeted advertisements related" to Spring. 741 F. Supp. 3d at 839. Plaintiff's allegations thus fall squarely within *Doe I*'s ambit and should be dismissed.

### C. Plaintiff's CIPA claims are plagued by terminal pleading deficiencies.

#### 1. Plaintiff fails to overcome Section 631's "party-exception" rule.

Plaintiff's Section 631 claim fails under the party-exception rule. Plaintiff admits, as she must, that Spring added the Insight Tag to its own website, which renders LinkedIn a third-party

service provider that cannot be liable under CIPA because it is "an extension of" the website using its software. *Williams v. DDR Media, LLC*, 2023 WL 5352896, at *3 (N.D. Cal. Aug. 18, 2023).[5] Plaintiff asserts that this fact is "irrelevant," Opp. at 9, despite Plaintiff *herself* alleging that Spring controls all aspects of implementing the Insight Tag, Compl. ¶¶ 13, 64–65, 73, placing her allegations about LinkedIn squarely in the "extension" line of cases, *see Williams*, 2023 WL 5352896, at *3–4 (collecting cases).

As LinkedIn anticipated, however, Plaintiff seeks to avoid dismissal under that clear rule by baldly alleging that LinkedIn received user data for targeted advertising purposes, citing two decisions by another court in this district for support. Opp. at 9–10. Not only does Plaintiff fail to allege facts to support those conclusory assertions, but she also goes a step further and tries to dodge the consequences of what her Complaint does *not* allege: that LinkedIn used *her* data or targeted *her* with advertisements based on *her* data. The absence of allegations specifically tailored to any use of *her* own information dooms her CIPA claims. *See Valenzuela v. Super Bright LEDs, Inc.*, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) (allegations that chat vendor merely had the "capability to use its record of [w]ebsite users' interaction[s]" for analytics and marketing were "conclusory and insufficient"); *cf. Doe I*, 741 F. Supp. 3d at 839 (finding insufficient "hypothetical examples—based on the generic product descriptions—of how various product features could be used in ways that could result in privacy violations"). For that reason, *Smith v. Google, LLC*, is dissimilar to this case, as *Smith*'s plaintiff alleged that Google used the collected data to assemble a "detailed dossier, or digital fingerprint" for each of its users. 735 F. Supp. 3d at 1197. Plaintiff does not and cannot make similar allegations. This failure is fatal to each of Plaintiff's CIPA claims.

Rather than grapple with her own deficient allegations and LinkedIn's arguments, Plaintiff instead invokes *Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986 (N.D. Cal. 2024)—a case she

---

[5] Contrary to Plaintiff's argument otherwise, Opp. at 10, the Court can resolve the party-exception rule on a motion to dismiss. *See* MTD at 15 (citing *Williams*, 2023 WL 5352896, at *4-5; *Graham v. Noom*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021)).

characterizes as "nearly identical" to hers. Opp. at 9. Not only is *Jackson* in tension with the decisions of this district discussed above, but LinkedIn respectfully submits that the generalized, conclusory allegations about LinkedIn's marketing services in *Jackson* also failed to plausibly show that LinkedIn ever received, read, and used any of the plaintiff's data specifically. But at bottom, Plaintiff's attempt to hide behind *Jackson* only underscores her failure to state any claim: "if a litigant pleads at such a high level of generality that it is possible to copy and paste a complaint word-for-word . . . , then almost by definition [s]he is pleading without the factual specificity necessary to state a claim for relief." *See Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1060–61 (C.D. Cal. 2023) (dismissing CIPA § 631 claims and decrying "cookie cutter" lawsuits involving "copying and pasting" from "boilerplate pleadings"). Plaintiff must show how *her* pleading in *this case* states claims for relief. She has failed to do so.

### 2. Plaintiff fails to state a Section 631 claim under any clause.

#### a. Section 631's first clause does not apply to the Internet.

Clause one of Section 631 does not apply to Internet transmissions. *See* MTD at 17 (citing cases); *St. Aubin v. Carbon Health Techns., Inc.*, 2024 WL 4369675, at *4 (N.D. Cal. Oct. 1, 2024). Plaintiff argues that *Jackson* and *Matera v. Google, Inc.*, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) hold otherwise. But *Jackson* did not involve a clause one claim. *See* 744 F. Supp. 3d at 993–94. And *Matera* actually *supports* LinkedIn's position, confirming that clause one is "limited to communications passing over 'telegraph or telephone' wires, lines, or cables."[6] 2016 WL 8200619, at *18. Plaintiff's clause one claim should be dismissed.

#### b. Plaintiff fails to state a claim under Section 631's second clause because she does not allege an interception of contents of communications while in transit.

Plaintiff's opposition confirms that LinkedIn has not "intercepted" the contents of any of her communications "while in transit," much less that LinkedIn read or attempted to read those communications. Plaintiff does not respond to *any* of the authorities LinkedIn cited in its motion,

---

[6] *Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363 (S.D. Cal. Jan. 12, 2014), is also not persuasive because it incorrectly cites *Matera* as support for clause one applying to the Internet.

Opp. at 12–14, and one of the few authorities she cites *dismissed* a CIPA clause two claim making similarly insufficient allegations of interception "in transit." *See Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1126–27 (C.D. Cal. 2024).[7] Plaintiff cites to a handful of allegations from her Complaint, but they say nothing at all about when exactly or how specifically any alleged interception occurred. *See* Compl. ¶¶ 49–50 (alleging only that "an HTTP request is sent using cookies" while a user is browsing a website with an Insight Tag). And while Plaintiff argues that the Insight Tag "caused the communications to duplicate the communication with the [w]ebsite and send the same to LinkedIn," Opp. at 13—to the extent it is even clear what she means—such allegations are nowhere in her Complaint regarding the Insight Tag. Plaintiff thus fails to meet the requirements of "explain[ing] how the software works or how the interception occurs" with respect to her specific communications. *See Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (plaintiff insufficiently pled "interception" by alleging that "the third-party software is 'plugged into' Ring's website" and "allows chats to be routed 'in real time . . . as they occur'"). Her generic, conclusory allegations about the mechanism and timing of the alleged interception are not sufficient. *See Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [that a company] is intercepting their data in transit."). Plaintiff's clause two claim must be dismissed.

**c. Plaintiff's claim under Section 631's third clause fails for the same reasons as her claims under clauses one and two.**

Plaintiff's claim under clause three of Section 631 is derivative of and fails for the same reasons as her claims under clauses one and two. *See Google Assistant*, 457 F. Supp. 3d at 827.

---

[7] Plaintiff also cites *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 979 (C.D. Cal. 2023), which held that allegations that the defendant collected "real-time insights" and "[d]ata from every use event collected as it happens" were sufficient to allege interception "in transit." But the district court in *Hammerling* held similar allegations insufficient to allege interception "in transit," as even "real-time data need not be collected in real time." 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022), *aff'd on other grounds*, 2024 WL 937247 (9th Cir. Mar. 5, 2024).

**3. Plaintiff does not adequately allege a Section 632 claim.**

**a. Plaintiff's Section 632 claim fails because she does not adequately allege that any communications were confidential.**

Plaintiff acknowledges that California courts have found Internet-based communications are presumptively not confidential under Section 632 because those "communications can easily be shared by, for instance, the recipients of the communications." *Campbell*, 77 F. Supp. 3d at 849 (collecting cases). In opposition, Plaintiff argues that communications made in a "patient-medical provider relationship" are not subject to this presumption. *See* Opp. at 15–16 (quoting *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022)). But Plaintiff has not plausibly alleged that she was in a patient-medical provider relationship with Spring at the time her information was allegedly shared. Indeed, her Complaint alleges the opposite: she was a website user interested in potentially receiving fertility services. Compl. ¶ 10. Accepting Plaintiff's characterization of her pre-services relationship with Spring as a patient-medical provider one would sweep into CIPA's criminal ambit swaths of Internet traffic having only a tangential relationship with health care, undermining the presumption of non-confidentiality under California law. The rule of lenity does not permit a criminal statute, such as Section 632, to be so broadly interpreted. *See Liparota v. United States*, 471 U.S. 419, 427 (1985) ("[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.").

**b. Plaintiff's Section 632 claim fails because she does not plausibly plead that LinkedIn used an electronic amplifying or recording device.**

Plaintiff's Section 632 claim is defective for the additional reason that Plaintiff cannot plausibly plead that the Insight Tag is an "electronic amplifying or recording device." *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023). LinkedIn acknowledges this Court's decision in *Libman v. Apple, Inc.*, 2024 WL 4314791, at *13 (N.D. Cal. Sep. 26, 2024), but respectfully submits that the reasoning in *Doe I*, this Court's decision in *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185 (N.D. Cal. 2019), and *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017), should persuade this Court to freshly consider this issue.

Applying California statutory interpretation rules to California's statutes, as required, *In re*

*Lares*, 188 F.3d 1166, 1168 (9th Cir. 1999), involves first looking to the "plain and commonsense meaning" of statutory text, *Cal. Teachers Ass'n v. Governing Bd. of Rialto Unified School Dist.*, 14 Cal. 4th 627, 632–33 (1997). As explained in *Moreno*, the plain meaning of "device" is "a thing made or adapted for a particular purpose, especially a piece of mechanical or electronic equipment," and thus does not extend to software. 2017 WL 6387764, at *5. This Court held that "[s]oftware like Google Maps, Chrome, etc. are not 'devices' within the meaning of CIPA because they are not 'equipment.'" *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 193. Plaintiff has offered nothing that contravenes the plain meaning of "device," and neither websites nor Javascript code like the Insight Tag have physical embodiments that satisfy that definition.

Trying to sidestep the plain meaning of "device," Plaintiff cites decisions that derive a purportedly different meaning of "device" from the Wiretap Act. Opp. at 18–19 (citing cases). But while CIPA may be analogous to the Wiretap Act, the two statutes have different definitions and text, and reading CIPA in the exact same manner as the Wiretap Act obviates the plain meaning of the California statute. Additionally, to read "electronic amplifying or recording device" in Section 632 to encompass "software," where the term "electronic tracking device" in Section 637.7 *excludes* software, would result in an internal inconsistency in the statute. This would violate the principle that "[a]s a matter of statutory construction, a word or phrase repeated in a statute should be given the same meaning throughout." *People v. Acosta*, 29 Cal. 4th 105, 114 (2002). And it would run afoul of the rule of lenity, which "weighs in favor of resolving [any] doubts" about "the proper interpretation" of criminal statutes like CIPA "in [LinkedIn's] favor." *Gray v. Twitter Inc.*, 2021 WL 11086642, at *8 (W.D. Wash. Mar. 17, 2021). Thus, expanding the term "device" to encompass software would "push CIPA beyond its plain meaning." *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 194. Plaintiff's Section 632 claim should be dismissed.

### D. The "crime-tort" exception does not rescue Plaintiff's Wiretap Act claim.

Plaintiff's opposition tacitly concedes that her Wiretap Act claim (1) is subject to dismissal because Spring consented to the sharing of her information, *see Doe I*, 2024 WL 3490744, at *5, and (2) rises and falls with her CIPA claims. In lieu of opposing dismissal on

these grounds, Plaintiff string-cites cases regarding the Wiretap Act's crime-tort exception, which prohibits a party from recording communications "for the purpose of facilitating some *further* impropriety, such as blackmail." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135 (9th Cir. 2020) (emphasis added). That exception is inapplicable here. Plaintiff does not allege that LinkedIn intended to commit any wrongful act at all with her communications, *see supra* II.B, much less to commit any specific "tortious or criminal act [that is] separate and independent from the act of recording," *Planned Parenthood*, 51 F.4th at 1136. Plaintiff effectively concedes as much, bringing a claim for California Confidentiality of Medical Information Act violations against Spring alone, and declining to specify what crime LinkedIn intended to commit. Additionally, her own cited precedent makes clear that allegations that a defendant intercepted data "to make money, not to injure plaintiffs tortiously," are insufficient to meet the crime-tort exception. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) ("The collection of information itself was not for the purpose of committing a crime or tort"; "rather, the apparent purpose was to use the information collected for market research and consumer analysis."). Thus, Plaintiff's Wiretap Act claim must be dismissed.

### E. Plaintiff's constitutional invasion of privacy claim fails because she cannot plead an offensive intrusion upon her reasonable expectation of privacy.

Plaintiff's "allegations 'show no reasonable expectation of privacy'" and "'an insubstantial impact on privacy interests,'" requiring dismissal of her constitutional-privacy claim "'as a matter of law.'" *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014).

*First*, Plaintiff cannot merely brush aside that LinkedIn's and Spring's Terms foreclose her constitutional claim. "[A] defendant's conduct will rarely be deemed 'highly offensive to a reasonable person'" when "voluntary consent is present," *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994), and a policy that "gives clear notice that third party partners may share data with [LinkedIn]" is also sufficient to negate a plaintiff's "reasonable expectation of privacy in this information," *Lloyd v. Facebook, Inc.*, 2024 WL 3325389, at *2 (9th Cir. July 8, 2024), *cert. denied*, 145 S. Ct. 462 (2024). As the Ninth Circuit has repeatedly held, a plaintiff has "no

reasonable expectation of privacy" in her data when a defendant expressly discloses its data-sharing and collection practices. *Hammerling*, 2024 WL 937247, at *3. Put simply, even if Plaintiff did not consent to Spring's and LinkedIn's data practices (she did, as explained in Section II.A), the disclosures in their Terms would nonetheless independently negate her claim to a reasonable expectation of privacy. Here, LinkedIn's and Spring's Terms—which Plaintiff incorporated into her Complaint, was aware of, and agreed to—plainly disclose that her "activity on third-party [webpages]" may be collected using the Insight Tag. *Id.* These facts stand in sharp contrast to Plaintiff's cited cases where, in each, "the critical fact was that the online entity represented to the plaintiffs that their information would not be collected, but then proceeded to collect it anyway." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603 (9th Cir. 2020); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793–94 (N.D. Cal. 2022) (Meta's terms had "multiple plausible interpretations" and did not disclose the complained-of conduct). Accordingly, Plaintiff had no reasonable expectation of privacy in her Spring data.

*Second*, Plaintiff acknowledges that she must allege an "egregious breach of social norms," *Hill*, 7 Cal. 4th at 37, yet fails to do so. Plaintiff does not dispute that the collection of data on public websites using cookies is "'routine commercial behavior,' not considered a highly offensive intrusion of privacy in this district." *Hammerling*, 2022 WL 17365255, at *9. Her sparse allegations about LinkedIn's alleged practices—namely, that its Insight Tag is available for use on third-party websites—amount to the type of conduct courts routinely dismiss as inoffensive. *Id.* Indeed, her allegations fall short even of those in *Hammerling* because she does not even allege well-pleaded facts that LinkedIn used her data at all.

This is not a case where LinkedIn "surreptitiously" captured "sensitive" data, like "her questionnaire responses," "the specific fertility treatment that Plaintiff was seeking," and her "sexual orientation." Opp. at 21–23. Plaintiff never alleges in her Complaint that she completed Spring's questionnaire or clicked buttons disclosing her anticipated fertility treatment or sexual orientation; she alleges only that Spring shared "information related to the specific fertility treatment she received." Compl. ¶ 10. Her actual allegations are implausible on their face (she had not yet received any treatment from Spring) and insufficient as a matter of law, *Meta*

*Platforms, Inc.*, 690 F. Supp. 3d at 1081 (dismissing plaintiffs' claim for failing to "describe the types or categories of sensitive health information"), and Plaintiff's belated attempt to create "'new' allegations . . . are irrelevant for Rule 12(b)(6) purposes," *Schneider v. Cal. Dept. of Corrs.*, 151 F.3d 1194, 1197, n.1 (9th Cir. 1998). In any event, as Plaintiff had yet to receive any fertility treatment at the time of the alleged collection, she was not "navigating to a patient portal on a healthcare provider's website." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 793. She, according to her allegations, was at most simply navigating a public website. "[S]earch[ing] and view[ing] publicly available health information," *Smith*, 745 F. App'x at *9, or even disclosing certain types of health information, like vaccination status, *Ojeda v. Kaiser Permanente Int'l Inc.*, 2022 WL 18228249, at *7 (C.D. Cal. Nov. 29, 2022), cannot constitute a sufficiently serious invasion of privacy. Plaintiff's allegations thus fall far short of the "high bar" for stating a highly offensive intrusion upon her constitutional rights. *In re Yahoo*, 7 F. Supp. 3d at 1038.

Plaintiff's cited cases serve only to confirm this outcome. The *In re Facebook* court found that the defendant's alleged misconduct in violation of its terms was offensive because plaintiffs alleged the collection of "broad swaths of personal information," including their "likes, dislikes, interests, and habits over a significant amount of time," and compilation of their data into "cradle-to-grave profile[s] without users' consent." 956 F.3d at 599, 604 n.7. Here, Plaintiff does not allege LinkedIn engaged in any such conduct. And LinkedIn's alleged conduct is a far cry from the defendant's secret, nonconsensual testing for "highly private and sensitive medical and genetic information such as syphilis, sickle cell trait, and pregnancy" in *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1264 (9th Cir. 1998). While Plaintiff tries to invoke the California Constitution simply by repeating the phrase "sensitive health information" over and over in her opposition, her well-pleaded allegations rise nowhere near those necessary to demonstrate a constitutional violation. Her constitutional-privacy claim should be dismissed.

## III. CONCLUSION

For the foregoing reasons, LinkedIn respectfully asks that this Court dismiss Plaintiff's Complaint with prejudice.

Dated: March 12, 2025

KEKER, VAN NEST & PETERS LLP

By: */s/ Christina Lee*
BENJAMIN BERKOWITZ
MATAN SHACHAM
CHRISTINA LEE
MAXWELL E. ALDERMAN
SPENCER MCMANUS
JONHATAN A. ARAGON

Attorneys for Defendant LINKEDIN CORPORATION