TIMOTHY K. BRANSON (SBN: 187242)
tbranson@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101
Telephone: (619) 230-7441
Facsimile: (619) 696-7124

SARA ANDERSON FREY (pro hac vice)
sfrey@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
1717 Arch Street, Suite 610
Philadelphia, PA 19103
Telephone: (215) 717-4009
Facsimile: (215) 693-6650

Attorneys for Defendant
SPRING FERTILITY HOLDINGS, LLC

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.S., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SPRING FERTILITY HOLDINGS, LLC, META PLATFORMS, INC., AND LINKEDIN CORPORATION,<br><br>Defendants. | Case No. 5:24-cv-07374-EJD<br><br>**DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: June 5, 2025<br>Time: 9:00 a.m.<br>Place: Courtroom 4<br><br>Action Filed: October 22, 2024 |

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. ARGUMENT IN REPLY .......... 1

A. Plaintiff's Consent to Disclosure of Her Personal Information Bars Her Claims .......... 1

1. Spring Fertility Provided Sufficiently Conspicuous Notice of Its Disclosure Policies .......... 2

2. Plaintiff Manifested Assent to the Privacy Policies .......... 4

3. Spring Fertility's Legal & Terms Provides Explicit Notice of Its Data Collection Policies .......... 5

B. Plaintiff Has Failed to Sufficiently Plead the Crime-Tort Exception to Her Federal Wiretap Claim .......... 6

C. Plaintiff Has Failed to Allege Sufficient Facts Demonstrating a CIPA Violation .......... 7

1. Plaintiff Fails to Sufficiently Allege *Facts* Establishing Predicate Liability on the Part of Facebook and LinkedIn .......... 7

2. Plaintiff Fails to Plead Facts Establishing Criminal Aiding and Abetting Required for a Clause Four Violation .......... 8

3. Facebook and LinkedIn are an Extension of Spring Fertility .......... 9

4. Plaintiff Does Not Allege an Interception of Contents of Communications While In Transit .......... 10

D. Plaintiff Has Failed to Allege Facts Supporting a CMIA Claim .......... 10

E. Plaintiff Has Not Met the High Bar Required for Her Constitutional Claims .......... 10

III. CONCLUSION .......... 13

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....1

*Barbour v. John Muir Health*,
No. C22-01693, 2023 WL 2618967 (Cal. Super. Jan 5, 2023) ....10

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....1, 2

*Cardenas v. Region 9 IV-D*,
Case No. 5:23-CV-01220-JWH-JC, 2023 WL 9002726 (C.D. Cal. Dec. 28, 2023) ....3

*Cavanaugh v. Fanatics, LLC*,
738 F. Supp. 3d 1285 (E.D. Cal. 2024)....2

*Chico v. Hilton Worldwide, Inc.*,
Case No. CV 14-5570, 2014 WL 5088240 (C.D. Cal. Oct. 7, 2014) ....4

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019) ....2

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Ca. 2023)....8

*Dean v. OKCoin USA, Inc.*,
Case No. 24-cv-01331, 2024 WL 3522207 (N.D. Cal. July 23, 2024)....4

*Deleon v. Verizon Wireless*,
143 Cal. Rptr. 3d 810 (Cal. 2012)....4

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ....7

*Garcia v. Build.com, Inc.*,
Case No. 22-cv-01985, 2023 WL 4535531 (S.D. Cal. July 13, 2023) ....7

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) ....2, 3, 4

*Gjovik v. Apple Inc.*,
Case No. 23-cv-04957, 2025 WL 637931 (N.D. Cal. Feb. 27, 2025) ....3

*Heerde v. Learfield Communications, LLC*,
Case No. 2:23-cv-04493, 2024 WL 3573874 (C.D. Cal. July 19, 2024)....9

*Hill v. National Collegiate Athletic Ass'n*,
7 Cal.4th 1 (1994) ....................11

*In re Cell Tower Litig.*,
Case No. 07-cv-399, 2012 WL 1903883 (S.D. Cal. May 24, 2012) ....................8

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. 2019)....................12

*In re Guidant Corp. Implantable Defibrillators Litig.*,
MDL No. 05-1708, 2009 WL 1921902 (D. Minn. July 1, 2009) ....................1

*In re Meta Pixel Healthcare Litig.*,
647 F.Supp.3d 778 (N.D. Cal. 2022) ....................6, 10

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................11

*Keebaugh v. Warner Bros. Entertaiment Inc.*,
100 F.4th 1005 (9th Cir. 2024) ....................2, 3, 5

*McCoy v. Alphabet, Inc.*,
Case No. 20-cv-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021)....................12

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ....................2, 4

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) ....................11, 12

*Randas v. YMCA of Metropolitan Los Angeles*,
21 Cal. Rptr. 2d 245 (Cal. 1993)....................4

*Revitch v. New Moosejaw, LLC*,
Case No. 18-cv-06827, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ....................8

*Rodriguez v. Ford Motor Co.*,
Case No. 3:23-cv-00598, 2024 WL 1223485 (S.D. Cal. Mar. 21, 2024) ....................9

*Sheski v. Shopify (USA) Inc.*,
Case No. 19-cv-06858, 2020 WL 2474421 (N.D. Cal. May 13, 2020)....................12

*Slaten v. Dick's Sporting Goods, Inc.*,
Case No. 2:230cv004861, 2024 WL 1136399 (C.D. Cal. Feb. 2, 2024)....................2

*Smith v. YETI Coolers, LLC*,
Case No. 24-cv-01703, 2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) ....................8

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999) ....................6

**Gordon & Rees LLP**
**101 W. Broadway Suite 2000**
**San Diego, CA 92101**

*Touma v. EEOC*,
No. SACV192412VBFKS, 2020 WL 2332171 (C.D. Cal. Jan. 9 2020)................................12

*Turner v. Nuance Communications, Inc.*,
Case No. 22-cv-05827, 2024 WL 2750017 (N.D. Cal. May 28, 2024)....................................9

*Weston v. Lefiti*,
Case No. 24-541, 2024 WL 4579237 (9th Cir. Oct. 25, 2024).................................................6

*Wilson v. Rater8, LLC*,
Case No. 20-cv-1515, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) .....................................10

*Zarif v. Hwareh.com, Inc.*,
Case No. 23-cv-0565, 2025 WL 486317 (S.D. Cal. Feb. 13, 2025).....................................6, 7

**Statutes**

18 U.S.C. § 2511(2)(d) .........................................................................................................6

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

Defendant Spring Fertility Holdings, LLC ("Spring Fertility") respectfully submits the following Reply Brief in Support of its Motion to Dismiss Plaintiff J.S.'s ("Plaintiff") Complaint.

**I. INTRODUCTION**

Plaintiff's opposition to Spring Fertility's motion to dismiss—much like her Complaint—is peppered with legal buzzwords. Her repeated references to terms such as "tracking," "sharing," "intercept," and "sensitive information," however, are not backed up with any substance. To survive a motion to dismiss, a complaint must contain sufficient *factual matter* to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 669 (2009); *see also In re Guidant Corp. Implantable Defibrillators Litig.*, MDL No. 05-1708, 2009 WL 1921902 (D. Minn. July 1, 2009) ("The use of buzzwords, coupled with only vague and conclusory allegations, is insufficient to withstand a motion to dismiss, especially in light of *[Iqbal and Twombly]*."). Because Plaintiff's Complaint fails to set forth sufficient *facts* establishing any claims against Spring Fertility upon which relief may be granted, dismissal of all claims against Spring Fertility is warranted.

**II. ARGUMENT IN REPLY**

**A. Plaintiff's Consent to Disclosure of Her Personal Information Bars Her Claims**

Plaintiff argues that she did not consent to disclosure of her personal information because (1) Spring Fertility did not provide sufficiently conspicuous notice of its policies and (2) even if it had, the cookie policy did not provide adequate details of the disclosures. Opposition ("Opp.") at pp. 9-10, Doc. 58. Plaintiff is wrong on both fronts.

Plaintiff argues that there are only two types of internet contracts – clickwrap agreements and browsewrap agreements. Opp. at p. 9, Doc. 58. The picture, however, is not as black and white as Plaintiff paints it to be. To the contrary, courts evaluate internet contracts on a spectrum. At one end are clickwrap agreements, which "present[] users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). At the other end of the spectrum are browsewrap agreements, where "terms . . . are disclosed

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website." *Id.* Browsewrap agreements are typically characterized by a hyperlink placed at the bottom of a website. *See Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 763 (N.D. Cal. 2019) (discussing different forms of online contracts).

The Spring Fertility website does not fit neatly into either category, but rather, falls somewhere within the spectrum. Where—as here—"'an online agreement falls between these two extremes, courts analyze mutual assent under an objective-reasonableness standard.'" *Slaten v. Dick's Sporting Goods, Inc.*, Case No. 2:23-cv-04861, 2024 WL 1136399 (C.D. Cal. Feb. 2, 2024) (quoting *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 513 (9th Cir. 2023)). Constructive notice will be found when the website provides "'reasonably conspicuous notice of the terms to which the consumer will be bound'" and where the consumer takes some action that "'ambiguously manifests his or her assent to those terms.'" *Keebaugh v. Warner Bros. Entertaiment Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (quoting *Berman*, 30 F.4th at 856). Both conditions are easily met here.

**1. Spring Fertility Provided Sufficiently Conspicuous Notice of Its Disclosure Policies**

"To be conspicuous, notice 'must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.'" *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 924 (N.D. Cal. 2024) (quoting *Berman*, 30 F.4th at 856). Courts look to a variety of factors including text size, text color compared to the background it appears against, location of the text and proximity to any box or button that must be clicked to continue use of the website, obviousness or any associated hyperlink, and whether the screen is cluttered or otherwise obscures the textual notice. *Cavanaugh v. Fanatics, LLC*, 738 F. Supp. 3d 1285, 1295 (E.D. Cal. 2024).

Here, there can be no doubt that the visual aspects of Spring Fertility's notice of its Cookie Policy are reasonably conspicuous. As Plaintiff, concedes, when she visited the Spring Fertility website, she was presented with a pop-up cookie banner ("Cookie Banner") advising that that by continuing to use the site, she agreed to Spring Fertility's Cookie Policy. Compl. at ¶

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

98, Doc. 1; Declaration of Timothy K. Branson ("Branson Decl.") at ¶ 2 and Ex. 1, Doc. 47, 47-1.[1] The Cookie Banner appears automatically on the righthand side of a user's browser and remains "*persistent, hovering* in the center . . . *unless and until* the user clicks 'ACCEPT' and acknowledges 'Our Website uses Cookies. By continuing to use our site, you are agreeing to our Cookie Policy.'" Compl. at ¶ 100; Branson Decl. at ¶ 2 and Ex. 1, Doc. 47, 47-1 (emphasis added). The underlined Cookie Policy is a hyperlink that leads directly to Spring Fertility's "Legal & Terms," which includes its Privacy Notice, Cookie Policy, and Privacy Policy. Branson Decl. at ¶¶ 2, 3 and Ex. 1, 2, Doc. 47, 47-1, 47-2.

The text of the Cookie Banner is not hidden or obscured by graphics. The white lettering stands out against the blue background. Branson Decl. at Ex. 1, Doc. 47-1. Unlike a traditional browsewrap agreement, the Cookie Banner is not buried at the bottom of the website. Rather, it is persistent and hovers on the screen until a user clicks the large "ACCEPT" button which is outlined in a white rectangle. Branson Decl. at ¶ 2, Doc. 47. The "Cookie Policy" hyperlink sends users directly to the Spring Fertility Legal & Terms page which sets forth in detail the information collected through use of the website, how that information is used and shared, and how users may opt-out. Branson Decl. at Ex. 2, 47-2. Similar hyperlinks have been found to provide reasonably conspicuous notice. *See Ghazizadeh*, 737 F. Supp. 3d at 928 (finding "hyperlinks were conspicuous even without blue font or capitalization"); *Keebaugh*, 100 F.4th at 1020 (hyperlink located "[d]irectly beneath the operative Play button" that advised "continued

---

[1] Spring Fertility filed a Request for Judicial Notice ("RJN") concurrently with its Motion to Dismiss, requesting that the Court take judicial notice of the Cookie Banner and Spring Fertility's Legal & Terms. RJN, Doc. 46. Plaintiff did not object to or oppose the Request. Her failure to do so "is deemed consent to the granting thereof." *Cardenas v. Region 9 IV-D*, Case No. 5:23-CV-01220-JWH-JC, 2023 WL 9002726, at *1 (C.D. Cal. Dec. 28, 2023); *see also Gjovik v. Apple Inc.*, Case No. 23-cv-04957, 2025 WL 637931, at *8 (N.D. Cal. Feb. 27, 2025) ("failure to timely oppose the request for judicial notice [constitutes] a waiver of any argument challenging the request for judicial notice").

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

use" constituted acceptance of the terms of service was reasonably conspicuous); *Oberstein*, 60 F.4th at 517 (notices "located directly on top of or below each action button" were reasonably conspicuous because they were "not buried on the bottom of the webpage or placed outside the action box"); *Dean v. OKCoin USA, Inc.*, Case No. 24-cv-01331, 2024 WL 3522207, at *4 (N.D. Cal. July 23, 2024) (finding notice was reasonably conspicuous despite "lack of a contrasting font color, different font size, or use of capital letters").

Finally, Plaintiff's argument that she was unaware of Spring Fertility's privacy practices, Opp. at p. 10, Doc. 58, is specious at best. Indeed, her Complaint acknowledges the presence of the Cookie Banner on the Spring Fertility website, with its linked disclosure. Compl. at ¶ 100, Doc. 1. Thus, not only would have "reasonably prudent Internet user" have seen it, *Ghazizadeh*, 737 F. Supp. 3d at 924, *Plaintiff actually did*.

**2. Plaintiff Manifested Assent to the Privacy Policies**

Plaintiff's Opposition only addresses the reasonably conspicuous notice prong and, understandably, does not address her obvious and unambiguous manifestation of assent to the terms of the privacy policies.

The issue of "whether the user takes some action that unambiguously manifests assent—is relatively straightforward." *Oberstein*, 60 F.4th at 515. The assent necessary to form a contract "'is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.'" *Chico v. Hilton Worldwide, Inc.*, Case No. CV 14-5570, 2014 WL 5088240, at *6 (C.D. Cal. Oct. 7, 2014) (quoting *Deleon v. Verizon Wireless, LLC,* 143 Cal. Rptr. 3d 810, 820-21 (Cal. 2012)). Generally, "'one who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms'" and "'may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it.'" *Id.* (quoting *Randas v. YMCA of Metropolitan Los Angeles,* 21 Cal. Rptr. 2d 245, 248 (Cal. 1993)).

Here, there can be no dispute that Plaintiff unambiguously assented to the terms of Spring Fertility's data collection policies. Plaintiff concedes that the Cookie Banner "is persistent,

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

hovering in the center and on the righthand side of a user's browser window unless and until the user clicks "ACCEPT" and that the "underlined phrase 'Cookies Policy' is a hyperlink, which redirects users to Spring Fertility's Legal & Terms." Branson Decl. at ¶ 2, Doc. 47. She further concedes that *she continued to use Spring Fertility's website*, including allegedly booking an appointment. Compl. at ¶ 7, Doc. 1.

Plaintiff's sustained and ongoing use of the website was enough to place her "on notice that [she] [was] agreeing to be bound by the" Cookie Policy. *Keebaugh*, 100 F.4th at 1021. Because Plaintiff was aware of and consented to the collection of and/or sharing of her personal information, her claims must be dismissed.

**3. Spring Fertility's Legal & Terms Provides Explicit Notice of Its Data Collection Policies**

Without referencing the language contained in the Legal & Terms, Plaintiff argues that even if the Cookie Banner was sufficient to provide her notice—which it was—the Legal & Terms fails to provide explicit details of Spring Fertility's data collection policies. Opp. at p. 10, Doc. 58. Even a cursory glance at the Legal & Terms demonstrates Plaintiff is wrong.

The Privacy Notice in the Legal & Terms advises users that Spring Fertility collects certain identifying "personal information" including "pregnancy or childbirth and related medical conditions" and "sexual orientation," *the very same information Plaintiff claims was improperly intercepted here*. Branson Decl. at Ex. 2 at p. 3, Doc. 47-2. The Privacy Notice goes on to explicitly advise that this personal information may be used "to deliver content and product and service offerings relevant to your interests, including targeted offers and ads through our Website, third-party sites, and via email or text message." *Id.* at p. 5 (emphasis added). The Privacy Notice further advises that Spring Fertility "may disclose your personal information to a third party for a business purpose." *Id.*

Furthermore, the Cookie Policy clearly states that when a user visits the Spring Fertility website, "cookies are placed on your computer." *Id.* at p. 10. This includes "Targeting Cookies" which are "set through [the] site by [Spring Fertility's] advertising partners" and are "used by those companies to build a profile of your interests and show you relevant adverts on other

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

sites." *Id.* at p. 11. Spring Fertility also informs its users that its websites uses various "social media plugins" including Facebook and that when a user visits the Spring Fertility website, "the operator of the social plugin may place a cookie on your computer, enabling that operator to recognize individuals who have previously visited [the] site." *Id.* at p. 12.

Spring Fertility's Legal & Terms could not be clearer about the personal information its collects (including the very same information Plaintiff alleges was intercepted here) and how Spring Fertility uses and shares that personal information. Plaintiff's conclusory arguments to the contrary are disingenuous.

**B. Plaintiff Has Failed to Sufficiently Plead the Crime-Tort Exception to Her Federal Wiretap Claim**

Plaintiff does not dispute that the Electronic Communications Privacy Act (ECPA) is a one-party consent statute such that there can be no liability where one of the parties has given consent prior to the interception. *See* 18 U.S.C. § 2511(2)(d). Instead, Plaintiff attempts to save her ECPA claim from inevitable dismissal by relying on the crime-tort exception. Opp. at p. 12, Doc. 58. Because Plaintiff has failed to sufficiently plead facts establishing an independent criminal act, her claim cannot be revived.

The focus of the crime-tort exception is "on whether 'the *purpose* for the interception—its intended use—was criminal or tortious.'" *Zarif v. Hwareh.com, Inc.*, Case No. 23-cv-0565, 2025 WL 486317, at *9 (S.D. Cal. Feb. 13, 2025) (quoting *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original)). A plaintiff "'must allege that either the 'primary motivation or a determining factor in [the defendant's] actions has been to injure plaintiffs tortiously.'" *Id.* (quoting *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (internal citations omitted)). Thus, Plaintiff was required to plead facts showing Spring Fertility intercepted communications "for the purpose of a tortious or criminal act *independent of*" of its alleged use of the Facebook Pixel or Insight Tag. *Weston v. Lefiti*, Case No. 24-541, 2024 WL 4579237, at *2 (9th Cir. Oct. 25, 2024). Plaintiff failed to do so.

Plaintiff hinges her argument on her conclusory, boilerplate allegation that the lumped-together "Defendants violated" HIPAA. Compl. at ¶ 132, Doc. 1. Even assuming Plaintiff had

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

alleged facts establishing a HIPAA violation—which she has not—completely absent from the Complaint is any allegation that Spring Fertility's *purpose* in its alleged use of the Facebook Pixel or Insight Tag was to violate HIPAA. To the contrary, in the very next paragraph, Plaintiff alleges that Spring Fertility used the Facebook Pixel and Insight Tag "to increase [its] profit margin . . . for financial gain." Compl. at ¶ 133, Doc. 1. As discussed in Spring Fertility's Opening Brief, Doc. 45, and as recently confirmed in *Zarif*, such "allegations are insufficient to implicate the crime-tort exception." 2025 WL 486317 at *10.

**C. Plaintiff Has Failed to Allege Sufficient Facts Demonstrating a CIPA Violation**

**1. Plaintiff Fails to Sufficiently Allege *Facts* Establishing Predicate Liability on the Part of Facebook and LinkedIn**

Plaintiff cites to various allegations in the Complaint to argue she has pleaded conduct violative of Section 631 on the part of Facebook and LinkedIn. Opp. at p. 14, Doc. 58. These conclusory allegations, however, are insufficient to establish predicate liability on the part of Facebook or LinkedIn. Nowhere does Plaintiff allege facts establishing Facebook or LinkedIn sought, solicited, or used any health information shared by Spring Fertility. At best, the Complaint sets forth "hypothetical" examples of how Facebook or LinkedIn "***could*** target ads to [individuals] who have shared communications." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 836 (N.D. Cal. 2024) (emphasis added). There are no facts pleaded, however, establishing that they actually did.

Plaintiff's attempt to distinguish *Garcia v. Build.com, Inc.*, Case No. 22-cv-01985, 2023 WL 4535531 (S.D. Cal. July 13, 2023), fails. Like the plaintiff in *Garcia*, Plaintiff here fails to allege facts to support her conclusory allegation that Facebook and LinkedIn used her personal information "for their own purposes." Compl. at ¶ 173, Doc. 1. The substance of the Complaint focuses solely on Spring Fertility's own conduct. *See, e.g.*, Compl. at ¶ 32, Doc. 58 (alleging Spring Fertility "chose to include the Facebook Tracking Pixel on its Website"); *Id.* at ¶ 64 (alleging Spring Fertility "utilized the Facebook Tracking Pixel and LinkedIn Insight Tag").

Because Plaintiff has failed to allege facts sufficient to establish predicate liability on the

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

part of Facebook or LinkedIn, her Section 631(a) claims fail and dismissal is warranted.

**2. Plaintiff Fails to Plead Facts Establishing Criminal Aiding and Abetting Required for a Clause Four Violation**

Plaintiff argues that because the word abet does not appear in Clause Four of Section 631(a), she is not required to plead facts establishing criminal aiding and abetting despite the fact that Section 631 is a *criminal statute*. Opp. at p. 18, Doc. 58. Not so.

Contrary to Plaintiff's argument, Spring Fertility applies the correct aiding and abetting standard in its motion to dismiss. As discussed in Spring Fertility's Opening Brief, courts interpreting California law—including this Court—have applied the common law definition of aiding and abetting to claims under the fourth clause of Section 631. *See* Doc. 45 at pp. 16-17. Plaintiff, however, ignores this case law and instead relies on cherry-picked dictionary definitions to argue that "'aid" should be interpreted as 'to give assistance,' 'agrees with' as 'to concur in opinion or purpose,' and 'employs' as 'to make use of' or 'to hire,'" Opp. at p. 18, Doc. 58. These dictionary definitions do not trump a court's statutory interpretation.

Moreover, the case law cited by Plaintiff does not support her position. Plaintiff's reliance on *In re Cell Tower Litig.*, Case. No. 07-cv-399, 2012 WL 1903883 (S.D. Cal. May 24, 2012), is misplaced as that case involved the Federal Telecommunications Act of 1996 and does not even mention CIPA. Likewise, in *Revitch v. New Moosejaw, LLC*, Case No. 18-cv-06827, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019), this Court did not actually consider the definition of "aids" or any scienter requirement, though Plaintiff misleadingly frames this Court's mere singular use of the term "enabling"—a word notably absent from Section 631—as an endorsement of her definition. Finally, the court in *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1129-30 (S.D. Ca. 2023) disregarded the defendant's intent argument on the basis that the defendant "provide[d] no case law requiring the court to analyze 'aids, agrees with, employs, or conspires with' as solely 'aiding and abetting.'" By contrast, Spring Fertility has provided this Court with several cases—including a case decided by this Court a mere five (5) months ago—holding that Section 631 "does require some level of knowledge and intent." *Smith v. YETI Coolers, LLC*, Case No. 24-cv-01703, 2024 WL 4539578, at *4 (N.D. Cal. Oct. 21, 2024).

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

Plaintiff cites to various allegations in the Complaint to support her claim that Spring Fertility violated Clause Four of Section 631(a). Opp. at p. 19, Doc. 58. None of these allegations, however, contain sufficient *facts* demonstrating the requisite intent required. At best, Plaintiff alleges that Spring Fertility knew Facebook and LinkedIn were intercepting Plaintiff's communications. The relevant inquiry, however, is not whether Spring Fertility knew Facebook and LinkedIn were intercepting those communications, but rather whether Spring Fertility knew Facebook and LinkedIn were misusing that data for their own unauthorized purposes. *See, e.g. Rodriguez v. Ford Motor Co.*, Case No. 3:23-cv-00598, 2024 WL 1223485, at *15 (S.D. Cal. Mar. 21, 2024) (finding no intent where the plaintiff failed to allege the defendant "knew that [vendor] was using the chat data beyond storing it"). Because Plaintiff has not alleged facts making it plausible that Spring Fertility had the requisite knowledge and intent to support an aiding and abetting claim, *i.e.*, that Facebook and LinkedIn were using Spring Fertility's data for its own purposes, Plaintiff's CIPA claim fails.

**3. Facebook and LinkedIn are an Extension of Spring Fertility**

Spring Fertility acknowledges "[t]here is a split in the Ninth Circuit on the standard used to define a third party" under the CIPA. *Turner v. Nuance Communications, Inc.*, Case No. 22-cv-05827, 2024 WL 2750017, at *9 (N.D. Cal. May 28, 2024); *see also Heerde v. Learfield Communications, LLC*, Case No. 2:23-cv-04493, 2024 WL 3573874, at *6 (C.D. Cal. July 19, 2024) (noting "split among courts" regarding communications between internet users and developers of websites who track or record user data). For the reasons set forth in Spring Fertility's Opening Brief, this Court should follow the holdings of those courts that have held vendors such as Facebook and LinkedIn are not third parties.

Plaintiff cites to various allegations in her Complaint to support her argument that she has sufficiently pleaded that Facebook and LinkedIn are third parties. Opp. at p. 16, Doc. 58. Completely absent from the Complaint, however, are any allegations that Facebook or LinkedIn used Plaintiff's data or targeted Plaintiff with advertisements based on her data. Her vague allegations that Facebook or LinkedIn *could* use data for targeted marketing are too general to find that either Facebook or LinkedIn is a third-party wiretapper. As such, Plaintiff's CIPA

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

claim should be dismissed.

#### 4. Plaintiff Does Not Allege an Interception of Contents of Communications While In Transit

In arguing she has adequately pleaded her communications were intercepted "in transit," Plaintiff cites to various boilerplate and conclusory allegations that she claims "detail[] exactly how the Facebook Tracking Pixel and LinkedIn Insight Tag allow Facebook and LinkedIn to intercept communications contemporaneously and concurrently from Spring Fertility's Website." Opp. at p. 17, Doc. 58. Plaintiff's Complaint and Opposition set forth conclusory allegations of how websites use tools such a Facebook Pixel and LinkedIn Insight to gather information through tracking technologies, however, allegations concerning *how* something works do not equate to sufficient allegations establishing a statutory violation. Simply throwing out the word "intercept" over and over in hopes that something sticks is insufficient. While Plaintiff cites to a handful of cases she claims support her allegations, Spring Fertility submits that the holding of the California Superior Court in *Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967 (Cal. Super. Jan 5, 2023) is well-reasoned and should be followed by this Court for the reasons stated in Spring Fertility's Opening Brief.

### D. Plaintiff Has Failed to Allege Facts Supporting a CMIA Claim

Plaintiff's Opposition devotes less than two pages to addressing her CMIA claim, primarily attempting to distinguish the holding in *Wilson v. Rater8, LLC*, Case No. 20-cv-1515, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021). However, as previously explained in Spring Fertility's Opening Brief, Plaintiff's conclusory allegations that "the specific fertility treatment she received" constitutes substantive medical information falls woefully short of what is required under the CMIA. Plaintiff's reliance on *In re Meta Pixel*, 647 F. Supp. 3d 778, is misplaced, as that case turned on the presence of an active Facebook Pixel *inside patient portals*. There are no such allegations here.

### E. Plaintiff Has Not Met the High Bar Required for Her Constitutional Claims

At the outset, Plaintiff concedes that she cannot recover monetary damages under California's Constitution, Doc. 58 at p. 25, and thus, to the extent the Complaint seeks monetary

relief for Count IV, dismissal is required.

Plaintiff primarily argues that it would be premature for the Court to determine whether an alleged invasion of privacy is highly offensive. This argument ignores the high bar a plaintiff asserting a Constitutional invasion of privacy must meet. This permits a court to weed out insignificant intrusions of privacy. *See Hill v. National Collegiate Athletic Ass'n*, 7 Cal.4th 1, 37 (1994) (noting impact on a plaintiff's privacy rights must be more than "slight or trivial").

While Plaintiff argues she "has a significant privacy interest" in her "medical information," Opp. at p. 23, Doc. 58, she has failed to establish she had a *reasonable expectation* of privacy. The right of privacy afforded by the California constitution only protects an individual's reasonable expectation of privacy against a serious invasion. *Hill*, 7 Cal. 4th at 36-37. Courts considering whether there is a reasonable expectation of privacy "must take into account any accepted community norms," including the "customs, practices, and physical settings surrounding particular activities" as well as "the presence or absence of opportunities to consent voluntarily to activities impacting privacy interests." *Id.* Moreover, a plaintiff seeking to recover for an alleged invasion of privacy "must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1037-38 (N.D. Cal. 2014); *see also Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) (where "voluntary consent is present, a defendant's conduct will rarely be deemed highly offensive to a reasonable person") (citation omitted).

Here, Plaintiff concedes she *voluntarily* provided the information in question while on notice of its collection, and, as such, manifested her consent to the collection of this information. Plaintiff was on notice that the information at issue may be collected when she engaged in the purported communication with Spring Fertility's website. She was presented with persistent and hovering Cookie Banner advising that by her continued use of the website, she agreed to the terms of the hyperlinked Cookie Policy. Compl. at ¶ 100, Branson Decl. at ¶ 1 and Ex. 2, Doc. 47, 47-1. Spring Fertility's policies explicitly disclose that it collects certain personal information—including medical conditions and sexual orientation—and that this

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

personal information may be provided to third parties. Branson Decl. at Ex. 2 at pp. 3-5, Doc. 47-2. Spring Fertility also explicitly discloses its use of targeting cookies which are used by third parties to provide users with targeted advertisements. *Id.* at p. 11. After being provided with this information, Plaintiff continued to use the website, including to allegedly book an appointment. Compl. at ¶ 7, Doc. 1.

There can be no reasonable expectation of privacy in information that is voluntarily shared, where, as here, the information was collected only for Spring Fertility's use and was used for only the purposes Spring Fertility disclosed. *See, e.g., Sheski v. Shopify (USA) Inc.*, No. 19-cv-06858, 2020 WL 2474421, at *6 (N.D. Cal. May 13, 2020) (even voluntarily supplying information that is then used for purposes *beyond* what was expected when the information was supplied "does not rise to the level of being 'highly offensive to a reasonable person'" (citation omitted)); *see also In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198-99 (N.D. Cal. 2019) (dismissing invasion of privacy claims because Google's "profile" of a user was "only as specific as their" voluntary "use of Google services"); *Opperman*, 205 F. Supp. 3d at 1072 ("[A] plaintiff cannot have a reasonable expectation of privacy if she consented to the intrusion."). Here, Plaintiff *voluntarily* interacted with and provided information to Spring Fertility, after receiving notice via the Cookie Banner that her continued use constituted assent to the Cookie Policy. As such, she had no reasonable expectation of privacy.

Even if the Court were to find a reasonable expectation of privacy—which it should not—Plaintiff still cannot recover because the collection of information falls into the category of "routine commercial behavior" courts routinely dismiss as inoffensive. *See*, *e.g.*, *McCoy v. Alphabet, Inc.*, Case No. 20-cv-05427, 2021 WL 405816, at *7 (N.D. Cal. Feb. 2, 2021) (noting that "courts have characterized the collection and disclosure of [personal information about the users of a technology] as routine commercial behavior") (citation omitted). To withstand a motion to dismiss, Plaintiff was required to "plead sufficient specific facts to support a plausible inference that conduct by [Spring Fertility] was an egregious breach of social norms and/or highly offensive to a reasonable person." *Touma v. EEOC*, No. SACV192412VBFKS, 2020 WL 2332171, at *16 (C.D. Cal. Jan. 9 2020). She has not and therefore, her constitutional claims

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

should be dismissed.

## III. CONCLUSION

For the foregoing reasons, Defendant Spring Fertility Holdings, LLC respectfully requests this Honorable Court dismiss all claims against it with prejudice.

Respectfully submitted,

Dated: March 12, 2025

GORDON REES SCULLY
MANSUKHANI, LLP

By: /s/ Sara Anderson Frey
Sara Anderson Frey (pro hac)
Timothy K. Branson
Attorneys for Defendant
SPRING FERTILITY HOLDINGS, LLC