TIMOTHY K. BRANSON (SBN: 187242)
tbranson@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101
Telephone: (619) 230-7441
Facsimile: (619) 696-7124

SARA ANDERSON FREY (pro hac vice)
sfrey@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
1717 Arch Street, Suite 610
Philadelphia, PA 19103
Telephone: (215) 717-4009
Facsimile: (215) 693-6650

Attorneys for Defendant
SPRING FERTILITY HOLDINGS, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.S., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SPRING FERTILITY HOLDINGS, LLC,<br><br>Defendant. | Case No. 5:24-cv-07374-EJD<br><br>**DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: March 5, 2026<br>Time: 9:00 a.m.<br>Place: Courtroom 4<br><br>Action Filed: October 22, 2024 |

*Gordon & Rees LLP*
*101 W. Broadway Suite 2000*
*San Diego, CA 92101*

1

## TABLE OF CONTENTS

2

**Page**

3
I.      INTRODUCTION ..................................................................................... 1

4
II.     STATEMENT OF ISSUES ....................................................................... 2

5
III.    STATEMENT OF FACTS ........................................................................ 2

6
        A.      Plaintiff's Allegations ................................................................... 2

7
        B.      Spring Fertility's Privacy Policy ................................................. 4

8
IV.     LEGAL STANDARD GOVERNING RULE 12(B)(6) MOTION TO DISMISS ............. 6

9
V.      LEGAL ARGUMENT ............................................................................... 6

10
        A.      Plaintiff's Claims Should Be Dismissed Because She Consented to
11              Disclosure of "Personal Information" ...................................... 6

12
                1.      The Spring Fertility Website Provided Reasonably Conspicuous
13                      Notice of the Terms of the Cookie Policy and Privacy Policy. ..... 8

14
                2.      Plaintiff Manifested Assent to the Privacy Policies ..................... 9

15
                3.      The Website Informed Plaintiff the Information Allegedly
16                      Improperly Intercepted Would be Collected ................................. 11

17
        B.      Plaintiff Fails to State a Federal Wiretap Claim (Count I) ..................... 12

18
        C.      Plaintiff Fails to State a CIPA Section 631Claim (Count III) ................ 15

19
                1.      Plaintiff Fails to Adequately Allege Predicate/Direct Liability ............... 15

20
                2.      CIPA's Party Exception Applies to Spring Fertility's Vendors ............ 17

21
                3.      Plaintiff Does Not Plausibly Allege Interception "While In
22                      Transit" ...................................................................................... 18

23
        D.      Plaintiff Fails to State a CIPA Section 632 Claim (Count IV) ............ 20

24
                1.      Plaintiff Fails to Adequately Allege Derivative Liability ................. 20

25
                2.      Plaintiff's Internet Communications Were Not Confidential. ............... 23

26
        E.      Plaintiff Fails to State a CMIA Claim (Count II) ................................. 23

27
        F.      Plaintiff Fails to Allege Violation of the California Constitution (Count V) ....... 25

28
VI.     CONCLUSION ......................................................................................... 26

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-i-

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS AMENDED COMPLAINT         Case No. 5:24-cv-07374-EJD

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)................................................................................................6

*Astra USA, Inc. v. Santa Clara Cnty., Cal.*,
　563 U.S. 110 (2011)..............................................................................................10

*B.K. v. Eisenhower Med. Ctr.*,
　721 F. Supp. 3d 1056 (C.D. Cal. 2024) ....................................................13, 24, 25

*Balistreri v. Pacifica Police Dep't*,
　901 F.2d 696 (9th Cir. 1990) ..................................................................................6

*Barbour v. John Muir Health*,
　No. C22-01693, 2023 WL 2618967 (Cal. Super. Jan. 5, 2023) ............................19

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2006)................................................................................................6

*Berman v. Freedom Fin. Network, LLC*,
　30 F.4th 849 (9th Cir. 2023) ...............................................................................7, 8

*Calhoun v. Google LLC*,
　526 F. Supp. 3d 605 (N.D. Cal. 2021) ....................................................................6

*Cavanaugh v. Fanatics, LLC*,
　738 F. Supp. 3d 1285 (E.D. Cal. 2024) ...............................................................7, 8

*DeLeon v. Verizon Wireless, LLC*,
　207 Cal.App.4th 800 (2012) ...................................................................................9

*Doe I v. Google LLC*,
　No. 23-CV-02431, 2023 WL 6882766 (N.D. Cal. Oct. 18, 2023) ...................13, 14

*Doe v. Kaiser Foundation Health Plan, Inc.* ("*Kaiser*"),
　No. 23-cv-02865, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024).......................11, 14

*Doe v. Meta Platforms, Inc.*,
　690 F. Supp. 3d 1064 (N.D. Cal. 2023) .................................................................12

*Doe v. MKS Instruments, Inc.*,
　No. SACV2300868, 2023 WL 9421115 (C.D. Cal. Nov. 3, 2023) ........................24

*Eisenhower Med. Ctr. v. Super. Ct.*,
　226 Cal.App.4th 430 (2014) ............................................................................23, 24

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

*Esparza v. UAG Escondido A1 Inc.*,
  Case No. 23cv0102, 2024 WL 559241 (S.D. Cal. Feb. 12, 2024)....................................16, 21

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) .............................................................................................17

*Garcia v. Build.com, Inc.*,
  Case No. 22-cv-01985, 2023 WL 4535531 (S.D. Cal. July 13, 2023) ..................................16

*Garcia v. Enterprise Holdings, Inc.*,
  78 F. Supp. 3d 1125 (N.D. Cal. 2015) ...............................................................................9, 10

*Ghazizadeh v. Coursera, Inc.*,
  737 F. Supp. 3d 911 (N.D. Cal. 2024) ....................................................................................8

*In re Google Assistant Privacy Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) ..................................................................................11

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) ..................................................................................18

*Gutierrez v. Converse Inc.*,
  No. CV 23-6547, 2024 WL 3511648 (C.D. Cal. July 12, 2024) ...........................................15

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022), *aff'd* No. 22-17024, 2024 WL 937247
  (9th Cir. Mar. 5, 2024) .................................................................................................24, 25

*Heiting v. athenahealth, Inc.*,
  No. 2:23-CV-10338, 2024 WL 3761294 (C.D. Cal. July 29, 2024)..................................18, 19

*Heiting v. Taro Pharms. USA, Inc.*,
  709 F. Supp. 3d 1007 (C.D. Cal. 2023) ...................................................................................6

*Hernandez v. Hillsides, Inc.*,
  47 Cal. 4th 272 (2009) ........................................................................................................24

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................................25

*Katz-Lacabe v. Oracle Am., Inc.*,
  No. 22-CV-04792, 2024 WL 1471299 (N.D. Cal. Apr. 3, 2024) .........................................14

*Keebaugh v. Warner Bros. Entertainment Inc.*,
  100 F.4th 1005 (9th Cir. 2024) ...................................................................................7, 8, 9, 10

*Licea v. Cinmar, LLC*,
  659 F. Supp. 3d 1096 (C.D. Cal. 2023) ................................................................................19

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...........................................................24, 25

*Martin v. Sephora USA, Inc.*,
   Case No. 1:22-cv-01355, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ...................15, 16, 17

*Mastel v. Miniclip SA*,
   549 F. Supp. 3d 1129 (E.D. Cal. 2021)...........................................................15, 18

*In re Meta Pixel Healthcare Litig.*,
   647 F. Supp. 3d 778 (N.D. Cal. 2022) ...........................................................14

*NovelPoster v. Javith Canfield Grp.*,
   140 F. Supp. 3d 938 (N.D. Cal. 2014) ...........................................................19

*Oberstein v. Live Nation Ent., Inc.*,
   60 F.4th 505 (9th Cir. 2023) ...........................................................7, 9

*People v. Stipo*,
   195 Cal.App.4th 664 (2011) ...........................................................22

*Perkins v. LinkedIn Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal. 2014) ...........................................................7, 10

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
   51 F.4th 1125 (9th Cir. 2022) ...........................................................14

*Revitch v. New Moosejaw, LLC*,
   Case No. 18-cv-06827, 2019 WL 5485330 (N.D. Oct. 23, 2019) ...........................................................22

*Ribas v. Clark*,
   38 Cal.3d 355 (1985) ...........................................................17

*Rodriguez v. Google LLC* ("*Rodriguez I*"),
   No. 20-cv-04688, 2021 WL 2026726 (N.D. Cal. May 21, 2021).....................................15, 22

*Rodriguez v. Google LLC* ("*Rodriguez II*"),
   No. 20-cv-04688, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022).....................................19

*Roe v. Amgen Inc.*,
   No. 2:23-cv-07448, 2024 WL 2873482 (C.D. Cal. June 5, 2024)...........................................13

*Sellers v. JustAnswer LLC*,
   73 Cal.App.5th 444 (2021) ...........................................................7

*Silver v. Stripe Inc.*,
   No. 4:20-cv-08196, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ...........................................9

*Smith v. Facebook, Inc.* ("*Smith I*"),
   262 F. Supp. 3d 943 (N.D. Cal. 2017) ...........................................................13

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-iv-

*Smith v. Facebook, Inc.* ("*Smith II*"),
   745 Fed. Appx. 8 (9th Cir. 2018) ................................................................................9

*Smith v. YETI Coolers, LLC*,
   Case No. 24-cv-01703, 2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) ...........................16, 21

*Sussman v. American Broadcasting Co., Inc.*,
   186 F.3d 1200 (9th Cir. 1999) ................................................................................13

*Taft v. Ventura County Med. Ctr.*,
   Case No. CV 20-7856, 2021 WL 910959 ...............................................................10

*Turner v. Nuance Communications, Inc.*,
   Case No. 22-cv-05827, 2024 WL 2750017 (N.D. Cal. May 28, 2024).................................18

*Valenzuela v. Keurig Green Mountain, Inc.*,
   674 F. Supp. 3d 751 (N.D. Cal. 2023) ......................................................................19

*Vulk v. State Farm Gen. Ins. Co.*,
   69 Cal.App.5th 243 (2021) ...................................................................................10

*Webb v. Smart Document Solutions, LLC*,
   499 F.3d 1078 (9th Cir. 2007) ................................................................................10

*Wilson v. Rater8, LLC*,
   Case No.: 20-cv-1515, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) ...........................23, 24

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........................................................................15

*Zarif v. Hwareh.com, Inc.*,
   Case No. 23-cv-0565, 2025 WL 486317 (S.D. Cal. Feb. 13, 2025)...................................14

**Statutes**

18 U.S.C. § 2511 ...................................................................................................12

18 U.S.C. § 2511(1) .................................................................................................4

18 U.S.C. § 2511(1)(a)-(e) ......................................................................................12

18 U.S.C. § 2511(2)(d) ......................................................................................12, 13

Cal. Civ. Code § 56.10...................................................................................5, 24, 25

Cal. Civ. Code § 56.05(j) ........................................................................................23

Cal. Civ. Code § 56.10(a) ....................................................................................4, 22

Cal. Penal Code § 31...............................................................................................21

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS AMENDED COMPLAINT          Case No. 5:24-cv-07374-EJD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Gordon & Rees LLP**
**101 W. Broadway Suite 2000**
**San Diego, CA 92101**

Cal. Penal Code § 631 .................................................................................. *passim*

Cal. Penal Code § 631(a) ............................................................................. *passim*

Cal. Penal Code § 632 .................................................................................. *passim*

Cal. Penal Code § 632(a) ...........................................................................................20

Cal. Penal Code § 632(c) ...........................................................................................21

**Rules**

Fed. R. Civ. P. 12(b)(6).................................................................................................6

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS AMENDED COMPLAINT          Case No. 5:24-cv-07374-EJD

1    **TO THE HONORABLE COURT, TO ALL PARTIES AND TO THEIR RESPECTIVE**

2    **ATTORNEYS OF RECORD:**

3          PLEASE TAKE NOTICE THAT ON March 5, 2026 at 9:00 a.m. in Courtroom 4 of the

4    United States District Court, Northern District of California, located at 280 South 1st Street, San

5    Jose, California 95113, Defendant SPRING FERTILITY HOLDINGS, LLC ("Defendant" or

6    "Spring Fertility") will and hereby does move this Court for an Order dismissing with prejudice

7    all counts against Spring Fertility in the Amended Complaint filed by Plaintiff J.S. ("Plaintiff" or

8    "J.S.").    This Motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil

9    Procedure.

10          This Motion is based on this Notice of Motion, the attached Memorandum of Points and

11    Authorities, the Request for Judicial Notice, and upon the papers, records, and pleadings on file

12    herein.

13

14                                                   Respectfully submitted,

15    Dated:  December 11, 2025                GORDON REES SCULLY MANSUKHANI

16

17                                           By:    /s/ Sara Anderson Frey
                                                    Timothy K. Branson
18                                                  Sara Anderson Frey (pro hac vice)

19                                                  Attorneys for Defendant
                                                    SPRING FERTILITY HOLDINGS,
20                                                  LLC

21

22

23

24

25

26

27

28

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS AMENDED COMPLAINT                Case No. 5:24-cv-07374-EJD

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

In dismissing Plaintiff's Complaint, this Court found that the Cookie Banner on Spring Fertility's Website "clearly states that users agree to the terms of the Cookie Policy by continuing to use the website" and further that the terms set forth in the Website's Privacy Policy "are so specific that there can be no reasonable expectation that the information provided to Spring Fertility is private." Doc. 71 at p. 19. As such, this Court held that the Complaint failed to sufficiently allege that the Cookie Banner did not provide constructive notice and failed to sufficiently allege a reasonable expectation that the data would not be shared. *Id.* at p. 20. Plaintiff's Amended Complaint does nothing to rectify these deficiencies.

The only new allegation with respect to consent is an allegation that Spring Fertility violated the Health Insurance Portability and Accountability Act ("HIPAA") by failing to obtain a "signed express authorization" from Plaintiff. Plaintiff, however, has not sued under HIPAA, which does not provide for a private cause of action. She asserts claims under the Electronic Communications Privacy Act ("ECPA"), Confidentiality of Medical Information Act ("CMIA"), California Invasion of Privacy Act ("CIPA"), and California Constitution, none of which required a "signed express authorization."

Alternatively, Plaintiff's federal and state wiretapping claims fail to state a claim upon which relief may be granted. Spring Fertility is a party to the communications which Plaintiff claims were wiretapped and a party cannot eavesdrop with itself. The Amended Complaint fails to adequately allege any third-party violations of CIPA for which Spring Fertility could be derivatively liable. The Amended Complaint also fails to adequately allege that any communications were intercepted "in transit." Plaintiff's Section 632 claim is insufficient because the Amended Complaint fails to allege facts supporting derivative liability or that Plaintiff's internet communications were confidential.

Plaintiff's CMIA claim fails because the Amended Complaint fails to establish substantive "medical information" was transmitted. The Amended Complaint is purposefully vague on the alleged information disclosed and conclusory allegations regarding consultations

-1-

booked on a public website are simply insufficient to establish a CMIA violation. The Amended Complaint also fails to establish a violation of the California Constitution. Plaintiff could not have had a reasonable expectation of privacy based on her agreement to the Spring Fertility Privacy Policy. And, even if she did, the use of boilerplate terms such as "medical information," "medical communications," and "health information" does not meet required pleading standards.

Dismissal of all claims with prejudice against Spring Fertility is warranted, given Plaintiff's failure to cure the defects that doomed her initial Complaint.

## II.    STATEMENT OF ISSUES

1.    Whether Plaintiff's consent to Spring Fertility's Privacy Policy bars her claims?

2.    Whether Plaintiff has stated a claim under the ECPA where Spring Fertility was a party to the communications?

3.    Whether Plaintiff has stated a claim under CIPA Section 631 where there is no showing of predicate liability by a third party, the party exception does not apply to software vendors, and the Amended Complaint fails to establish an interception while in transit?

4.    Whether Plaintiff has stated a claim under CIPA Section 632 where the Amended Complaint fails to allege facts supporting derivative liability or that Plaintiff's internet communications were confidential?

5.    Whether Plaintiff has stated a claim under the CMIA where she has failed to plead the disclosure of the requisite medical information?

6.    Whether Plaintiff has stated a claim for invasion of privacy where she has failed to sufficiently allege a violation of a reasonable expectation of privacy?

## III.    STATEMENT OF FACTS

### A.    Plaintiff's Allegations

Plaintiff, a resident of California, commenced this action against Spring Fertility, Meta Platforms, Inc. ("Facebook"), and LinkedIn Corporation ("LinkedIn") on October 22, 2024, on behalf of herself and "all patients who accessed and used www.springfertility.com (the "Website") to book a consultation for fertility services." Doc. 1 at ¶ 1. Spring Fertility moved to dismiss the Complaint on January 1, 2025. Doc. 45. This Court granted Spring Fertility's Motion

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

to Dismiss, with leave to amend, on September 30, 2025 (amended on October 10, 2025), finding the Website provided constructive notice of its privacy policy to consumers and that the terms of Spring Fertility's policies were "so specific" that there could be no reasonable expectation that the information Plaintiff provided to Spring Fertility was private.  Doc. 71 at p. 19.

Plaintiff filed her Amended Complaint against Spring Fertility only on November 5, 2025.  Doc. 75.  Plaintiff asserts that Spring Fertility "provides fertility services and treatments for consumers" and "owns and operates the Website" *Id.* at ¶ 13.  Plaintiff alleges that "Spring Fertility aided, employed, agreed, and conspired with social media websites . . . Facebook . . and LinkedIn . . . to intercept sensitive and confidential personal and medical communications sent by patients seeking to book services with Spring Fertility through its website."  *Id.* at ¶ 5.

According to the Amended Complaint, both the Facebook Tracking Pixel and LinkedIn Insight Tag are embedded on websites to track people and the types of actions they take on websites.  *Id.* at ¶¶ 44, 56.  Plaintiff asserts that Spring Fertility utilized the Facebook Tracking Pixel and LinkedIn Insight Tag on its Website.  *Id.* at ¶ 77.  Plaintiff claims that through use of the Facebook Tracking Pixel and LinkedIn Insight Tag, Spring Fertility "shared its patients' identities and online activity, including information related to consumers seeking to procure fertility treatment."  *Id.* at ¶ 78.

Plaintiff alleges she used the Spring Fertility website to book a consultation for fertility services and thereafter, attended her consultation and received fertility services related to In-Vitro Fertilization ("IVF") from Spring Fertility.  *Id.* at ¶¶ 7, 8.  At the time she used the Spring Fertility Website, Plaintiff alleges she also maintained social media accounts with Facebook and LinkedIn. *Id.* at ¶ 9.  Plaintiff alleges she used the same device to access the Spring Fertility Website, Facebook, and LinkedIn.  *Id.*  Plaintiff claims that she subsequently received targeted advertisements on Facebook and LinkedIn related to fertility services.  *Id.*

The primary difference between the Complaint and Amended Complaint is the inclusion of a litany of assertions related to HIPAA.  *Id.* at ¶¶ 23-37, 115.  Plaintiff alleges that information related to fertility treatments constitutes protected health information ("PHI") under HIPAA.  *Id.* at ¶ 24.  Plaintiff further alleges Spring Fertility violated HIPAA "because it knowingly

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1    disclosed individually identifiable health information relating to its patients."  *Id.* at ¶ 28.

2    Plaintiff asserts that Spring Fertility's use of tracking tools violated HIPAA because it "resulted

3    in third parties intercepting information regarding Plaintiff and Class Members' fertility

4    appointments and treatments on Defendant's Website."  *Id.* at ¶ 32.  Plaintiff further claims

5    Spring Fertility violated HIPAA because it did not obtain a "signed express authorization" from

6    Plaintiff.  *Id.* at ¶ 115.

7         The Amended Complaint asserts five counts against Spring Fertility:  Violation of ECPA,

8    18 U.S.C. § 2511(1) (Count I); Violation of CMIA, Cal. Civ. Code § 56.10 (Count II); Violation

9    of CIPA, Cal. Penal Code § 631 (Count III), Violation of CIPA, Cal. Penal Code § 632 (Count

10   IV), and Invasion of Privacy under California's Constitution (Count V).

11        **B.        Spring Fertility's Privacy Policy**

12        When individuals such as Plaintiff visit the Spring Fertility Website, they are presented

13   with a pop-up banner ("Cookie Banner") advising that the Website uses cookies and that by

14   continuing to use the site, individuals agree to Spring Fertility's Cookies Policy.  Doc. 75 at ¶

15   108; Request for Judicial Notice ("RJN"), Ex. 1. The Cookie Banner appears automatically on

16   the right side of the screen until a visitor clicks "ACCEPT" and acknowledges "Our Website

17   uses Cookies.  By continuing to use our site, you are agreeing to our <u>Cookie Policy</u>."  Doc. 75 at

18   ¶ 108, Figure 16; RJN, Ex. 1.   A hyperlink leads to Spring Fertility's "Legal & Terms," which

19   includes its Privacy Notice, Cookie Policy, and Privacy Policy.  RJN, Ex. 1, 2.  The Privacy

20   Notice advises that Spring Fertility "collect[s] information that identifies, relates to describes,

21   references, is capable of being associated with, or could reasonably be linked, directly or

22   indirectly, with a particular consumer or device."  RJN, Ex. 2.  This "personal information"

23   includes identifiers (e.g., name, IP address, email address), personal information listed in the

24   California Customer Records Statute (e.g., age, race, marital status, **medical condition**, gender

25   identity, **sexual orientation**), biometric information (e.g., genetic, psychological, behavioral, and

26   biological characteristics), internet and network activity (e.g. **browsing and search history**),

27   professional or employment-related information, non-public education information, and

28   inferences from other personal information (e.g., person's preferences, behavior, aptitudes).

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-4-

RJN, Ex. 2 (emphasis added).  The Privacy Notice further advises that personal information may be used to fulfill or meet the reason the information is provided and to personalize website experiences.  RJN, Ex. 2.  Spring Fertility notifies that personal information may be disclosed "to a third party for a business purpose."  RJN, Ex. 2.

Spring Fertility's Cookie Policy informs Plaintiff and other users that Spring Fertility "use[s] cookies and similar technologies to help provide, protect, and improve the springfertility.com website."  RJN, Ex. 2.  The Cookie Policy explains how and why Spring Fertility uses cookies, the types of cookies used, and the choices users have with respect to cookies.  One type of cookie used by Spring Fertility are "Targeting Cookies," which may be set on the Spring Fertility website by its advertising partners.  *Id.*  Targeting Cookies are "used by those companies to build a profile of your interests and **show you relevant adverts on other sites**."  *Id.* (emphasis added). Users are advised they will experience less targeted advertising if they do not allow these cookies.  *Id.*

Spring Fertility's Privacy Policy details the information collected through use of the Website which may include information about interactions with the website, content posted to the Website via web forms, and technical data.  RJN, Ex. 2.  Spring Fertility discloses that its Website uses cookies "to collect information about the pages you view, our website functions that you access, the buttons and icons you click, and to remember your login information and website settings to make it easier and more efficient for you to use our website, and to provide advertising content that we think may be of interest to you."  RJN, Ex. 2.  Users are provided with information on how to opt-out of having cookies and other data collection technologies.  RNJ, Ex. 2.

Plaintiff alleges the Facebook Tracking Pixel and LinkedIn Insight Tag are Targeting Cookies and that Spring Fertility represents Targeting Cookies "do not store directly personal information, but are based on uniquely identifying your browser and internet device."  *Id.* at ¶ 111 (emphasis omitted).  Plaintiff alleges that based on that representation, Spring Fertility's "patients reasonably expect that any tracking that occurs on Defendant's Website is done in an anonymized manner."  *Id.*

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS AMENDED COMPLAINT                    Case No. 5:24-cv-07374-EJD

1    **IV.    LEGAL STANDARD GOVERNING RULE 12(b)(6) MOTION TO DISMISS**

2        Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a

3    complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

4    A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal

5    theory; or (2) insufficient facts under a cognizable legal theory.  *Balistreri v. Pacifica Police*

6    *Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff must state "enough facts to state a claim to

7    relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2006).  A

8    claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the

9    reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

10   556 U.S. 662, 678 (2009).  Federal courts follow a two-pronged approach when deciding a

11   motion to dismiss.  First, "[t]hreadbare recitals of the elements of a cause of action, supported by

12   mere conclusory statements, do not suffice."  *Id.*  Courts need not "accept as true a legal

13   conclusion couched as a factual allegation."  *Id.* at 678-79.  Second, while the court must accept

14   well-pleaded factual allegations as true, courts must also "determine whether they plausibly give

15   rise to an entitlement to relief."  *Id.* at 679.  "[W]here the well-pleaded facts do not permit the

16   court to infer more than the mere possibility of misconduct" there is no plausible claims for

17   relief. *Id.*

18   **V.    LEGAL ARGUMENT**

19         **A.    Plaintiff's Claims Should Be Dismissed Because She Consented to Disclosure**

20               **of "Personal Information"**

21        As this Court found in dismissing Plaintiff's original Complaint, Plaintiff cannot state

22   any claim for invasion of privacy—whether under the ECPA, CIPA, CMIA, or California

23   Constitution—because she consented to disclosure of her personal information.  Doc. 71 at p. 20

24   n.9.  Nothing in the Amended Complaint changes this conclusion.

25        Lack of consent is an element of Plaintiff's ECPA, CMIA, and CIPA claims and a

26   defense to her state common law claims.  *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 619

27   (N.D. Cal. 2021).  While there may be "subtle differences" among consent doctrines, "the

28   question under [each] is essentially the same: Would a reasonable user who viewed [the

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-6-

defendant's] disclosures have understood that [it] was collecting" the information at issue? *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014).

"To form a contract under California law, there 'must be actual or constructive notice of the agreement and the parties must manifest mutual assent.'" *Keebaugh v. Warner Bros. Entertainment Inc.*, 100 F.4th 1005, 1013-14 (9th Cir. 2024) (quoting *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023)). Although assent may be manifested through conduct, "'[t]he conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.'" *Id.* at 1014 (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855-56 (9th Cir. 2023)).

These principles apply with equal force to contracts formed online. *Cavanaugh v. Fanatics, LLC*, 738 F. Supp. 3d 1285, 1294 (E.D. Cal. 2024). Internet contracts "are classified 'by the way in which the user purportedly gives their assent to be bound by the associated terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps.'" *Keebaugh*, 100 F.4th at 1014 (quoting *Sellers v. JustAnswer LLC*, 73 Cal.App.5th 444, 463 (2021)). Scrollwrap agreements, which require a user to scroll through terms of use and click a button agreeing to same, and clickwrap agreements, which require a user check a box before proceeding, are at one end of the spectrum. *Cavanaugh*, 738 F. Supp. 3d at 1294. These types of agreements "are generally enforced because the user received notice of the terms put forth and asserted to those terms." *Id.* Browsewrap agreements, which provide a hyperlink and indicate users manifest assent by continuing to browse the website, are on the other end of the spectrum. *Id.* "Courts are more reluctant to enforce these agreements." *Id.*

"Somewhere in the middle are 'sign-in' wrap agreements," which "include a textual notice that a user will be bound by the terms of use [] by either creating or logging in to an account or by placing an order; however, the user is not required to review the terms and conditions or otherwise manifest their assent." *Id.* Sign-in wrap agreements are enforceable "if '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box,

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS AMENDED COMPLAINT                    Case No. 5:24-cv-07374-EJD

1  that ambiguously manifests his or her assent to those terms.'"  *Keebaugh*, 100 F.4th at 1014

2  (quoting *Berman*, 30 F.4th at 856).

3      The Spring Fertility Website falls into this middle category.  Doc. 71 at p. 16.  As this

4  Court previously found, the Website provided constructive notice of its Privacy Policy and

5  sufficiently disclosed the specific conduct alleged here.  *Id.* at p. 19.

6          **1.    The Spring Fertility Website Provided Reasonably Conspicuous**

7          **Notice of the Terms of the Cookie Policy and Privacy Policy.**

8      "To be conspicuous, notice 'must be displayed in a font size and format such that the

9  court can fairly assume that a reasonably prudent Internet user would have seen it.'"  *Ghazizadeh*

10 *v. Coursera, Inc.*, 737 F. Supp. 3d 911, 924 (N.D. Cal. 2024) (quoting *Berman*, 30 F.4th at 856).

11 Courts look to a variety of factors including text size, text color compared to the background it

12 appears against, location of the text and proximity to any box or button that must be clicked to

13 continue use of the website, obviousness or any associated hyperlink, and whether the screen is

14 cluttered or otherwise obscures the textual notice.  *Cavanaugh*, 738 F. Supp. 3d at 1295.

15     Here, there can be no doubt that the visual aspects of Spring Fertility's notice of its

16 Cookie Policy are reasonably conspicuous.  As Plaintiff, concedes, visitors to the Spring Fertility

17 Website are presented with a Cookie Banner advising that by continuing to use the site, they

18 agree to Spring Fertility's Cookie Policy.  Doc. 75 at ¶ 108; Declaration of Timothy Branson

19 ("Branson Decl.") at ¶ 2 and Ex. 1.  The Cookie Banner appears automatically on the righthand

20 side of a user's browser and remains "*persistent, hovering* in the center . . . *unless and until* the

21 user clicks 'ACCEPT' and acknowledges 'Our Website uses Cookies.  By continuing to use our

22 site, you are agreeing to our Cookie Policy.'"  *Id.* (emphasis added).  The underlined Cookie

23 Policy is a hyperlink that leads directly to Spring Fertility's "Legal & Terms," which includes its

24 Privacy Notice, Cookie Policy, and Privacy Policy.  Branson Decl. at ¶¶ 2, 3 and Ex. 1, 2.

25     The text of the Cookie Banner is not hidden or obscured by graphics.  The white lettering

26 stands out against the blue background.  Branson Decl. at Ex. 1.  Unlike a traditional browsewrap

27 agreement, the Cookie Banner is not buried at the bottom of the website.  Rather, it is persistent

28 and hovers on the screen until a user clicks the large "ACCEPT" button which is outlined in a

-8-
DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS AMENDED COMPLAINT          Case No. 5:24-cv-07374-EJD

white rectangle. Branson Decl. at ¶ 2. The "Cookie Policy" hyperlink sends users directly to the Spring Fertility Legal & Terms page which sets forth in detail the information collected through use of the website, how that information is used and shared, and how users may opt-out. Branson Decl. at Ex. 2. Similar hyperlinks have been found to provide reasonably conspicuous notice. *See Keebaugh*, 100 F.4th at 1020 (hyperlink located "[d]irectly beneath the operative Play button" that advised "continued use" constituted acceptance of the terms of service was reasonably conspicuous); *Oberstein*, 60 F.4th at 517 (notices "located directly on top of or below each action button" were reasonably conspicuous because they were "not buried on the bottom of the webpage or placed outside the action box").

Because the Amended Complaint "fail[s] to plead fact sufficient to support [Plaintiff's] allegation that the Cookie Banner 'does not provide constructive notice of its privacy policy to consumers,'" Doc. 71 at p. 19, the Amended Complaint must be dismissed.

### 2.    Plaintiff Manifested Assent to the Privacy Policies

"[W]hether the user takes some action that unambiguously manifests assent—is relatively straightforward." *Oberstein*, 60 F.4th at 515. The assent necessary to form a contract "is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *DeLeon v. Verizon Wireless, LLC,* 207 Cal.App.4th 800, 813 (2012).

In *Smith v. Facebook, Inc.* ("*Smith II*"), 745 Fed. Appx. 8 (9th Cir. 2018), the Ninth Circuit affirmed the district court's finding that the plaintiff consented to Facebook's Cookies Policy and Privacy Policy, holding that "[a] reasonable person viewing these disclosures would understand" Facebook's practices of collecting and using data. District courts have "consistently" held that a website's terms and privacy policies "can establish consent to the alleged conduct challenged under various states wiretapping statutes and related claims," including CIPA. *Silver v. Stripe Inc.,* No. 4:20-cv-08196, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (dismissing claims where privacy policy "explicitly state[d] that a consumer's information may be provided to [the defendant's] 'partners'"); *Garcia v. Enterprise Holdings,*

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-9-

1    *Inc.,* 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (finding plaintiff consented to sharing of

2    personal data by agreeing to privacy policy); *Perkins,* 53 F. Supp. 3d at 1213 (finding

3    plaintiffs consented to collection of information "[i]n light of the clarity of the disclosure, the

4    proximity of the disclosure to the wrongful conduct, and the ability to opt out").

5         Here, there can be no dispute that Plaintiff unambiguously assented to the terms of Spring

6    Fertility's data collection policies. The Cookie Banner "is persistent, hovering in the center and

7    on the righthand side of a user's browser window unless and until the user clicks "ACCEPT" and

8    that the "underlined phrase 'Cookies Policy' is a hyperlink, which redirects users to Spring

9    Fertility's Legal & Terms." Branson Decl. at ¶ 2. Plaintiff concedes that *she continued to use*

10   *Spring Fertility's website*, including allegedly booking an appointment. Doc. 75 at ¶ 7.

11   Plaintiff's sustained and ongoing use of the website was enough to place her "on notice that [she]

12   [was] agreeing to be bound by the" Cookie Policy. *Keebaugh*, 100 F.4th at 1021.

13        The Amended Complaint alleges Spring Fertility was required to obtain a "signed express

14   authorization" from Plaintiff, citing HIPAA requirements. Doc. 75 at ¶ 115. HIPAA, however,

15   does not supplant the reasonable user standard endorsed by the Ninth Circuit in *Smith II*.

16   Plaintiff has not brought a claim under HIPAA. Nor could she, as HIPAA does not provide a

17   private cause of action. *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1082 (9th Cir.

18   2007). Plaintiff should not be permitted to plead around this bar by injecting HIPAA standards

19   into her claims here. *See, e.g., Astra USA, Inc. v. Santa Clara Cnty.,Cal.*, 563 U.S. 110, 114

20   (2011) (where statute does not allow private cause of action, "it would make scant sense to allow

21   [plaintiff] to sue on a form contract implementing the statute, setting out terms identical to those

22   contained in the statute"). Allowing such would run afoul of legislative decisions to prohibit

23   private rights of action. Federal and state courts in California have rejected attempts by plaintiffs

24   to bring claims they cannot bring directly through the backdoor of other causes of action. *See,*

25   *e.g., Taft v. Ventura County Med. Ctr.*, Case No. CV 20-7856, 2021 WL 910959, at *2

26   (dismissing Section 1983 claim based upon violations of HIPAA regulations); *Vulk v. State Farm*

27   *Gen. Ins. Co.*, 69 Cal.App.5th 243, 261-62 (2021) (holding plaintiff could not bring claim under

28   Unfair Competition Law relying on proscriptions of a statute that did not provide for a private

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS AMENDED COMPLAINT                    Case No. 5:24-cv-07374-EJD

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1    action).

2    This Court considered a similar argument in *Doe v. Kaiser Foundation Health Plan, Inc.*

3    ("*Kaiser*"), No. 23-cv-02865, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) and rejected it.

4    There, the plaintiffs brought claims under various privacy statutes, including the ECPA and

5    CIPA, alleging the defendant installed code on its mobile applications to unlawfully collect

6    confidential medical information.  The defendant moved to dismiss arguing, in part, that the

7    plaintiffs consented to the disclosure of the information.  The plaintiffs asserted that because the

8    information was protected health information under HIPAA, the defendant was required to

9    obtain written consent from the plaintiff.  This Court rejected this argument, holding that the

10   plaintiffs "**have not shown that the HIPAA standard on consent applies to each of the claims**

11   **that has been asserted**" in the complaint.  *Id.* at *6 (emphasis added).

12   Finally, Plaintiff's conclusory allegations that she "never consented, agreed, authorized,

13   or otherwise permitted" Spring Fertility to collect and disclose her information are insufficient to

14   state a plausible claim for relief.  *In re Google Assistant Privacy Litig.,* 457 F. Supp. 3d 797, 828

15   (N.D. Cal. 2020) (dismissing CIPA claim and noting that "allegation that the recordings 'were

16   made without Plaintiffs' consent' is conclusory").  Those allegations are further belied by the

17   broad disclosures about data collection and the use of third-party cookies in the Spring Fertility

18   Legal & Terms.  RJN, Ex. 1 and Ex. 2.  A reasonable user who read Spring Fertility's privacy

19   policies would have understood Spring Fertility collected and disclosed the personal information

20   at issue here.  The Amended Complaint fails to plausibly allege the requisite lack of consent and

21   dismissal is warranted.

22                    **3.      The Website Informed Plaintiff the Information Allegedly Improperly**

23                            **Intercepted Would be Collected.**

24   The Amended Complaint alleges that even if Website users were aware of the Cookie

25   Banner, "it is still grossly insufficient in notifying consumers of the types of information

26   disclosed."  Doc. 75 at ¶ 107.  This Court rejected this contention in dismissing the original

27   Complaint, finding that "Spring Fertility's terms **are so specific** that there can be no reasonable

28   expectation that the information provided to Spring Fertility is private."  Doc. 71 at p. 19

-11-

*(left margin)* Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

(emphasis added).

Plaintiff alleges that the Facebook Tracking Pixel and LinkedIn Insight Tag are "Targeting Cookies," citing to a cherry-picked definition in the Cookie Policy. Doc. 75 at ¶ 109. Plaintiff then alleges that Spring Fertility warrants that Targeting Cookies "do not store directly personal information, but are based on uniquely identifying your browser and internet device." *Id.* at ¶ 110 (emphasis omitted). Based on this purported representation, Plaintiff alleges that Spring Fertility's "patients reasonably expect that any tracking that occurs on Defendant's Website is done in an anonymized manner." *Id.* at ¶ 111. At the outset, **these are not new allegations**. The language Plaintiff relies on in Paragraph 111 of the Amended Complaint was before the Court when it dismissed Plaintiff's original Complaint. Doc. 1 at ¶ 100; Doc. 47-2.

Moreover, Plaintiff ignores that the Cookie Policy also states that cookies from social media platforms "*such as Facebook*" are "Third Party Cookies" and that Spring Fertility has "no directed control over the information that is collected by these cookies." RJN, Ex. 2 at p. 11 (emphasis added). The Privacy Notice goes into great detail as to the type of information that Spring Fertility collects, including the very information Plaintiff alleges was improperly intercepted, i.e., "medical condition," "sexual orientation," and "browsing and searching history." RJN, Ex. 2 at pp. 1-4.

The Amended Complaint "fail[s] to plead facts sufficient to show a reasonable expectation that" Plaintiff's information would not be shared. Doc. 71 at p. 20. Thus, her claims fail as a matter of law.

## B. Plaintiff Fails to State a Federal Wiretap Claim (Count I)

Count I alleges violation of the ECPA—the Federal Wiretap Act—which prohibits the unauthorized interception of electronic communications. 18 U.S.C. § 2511(1)(a)-(e). To state a claim under the ECPA, a plaintiff must allege the defendant "(1) intentionally (2) intercepted (3) the contents of (4) plaintiffs' electronic communications (5) using a device." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1075 (N.D. Cal. 2023). Plaintiff's claim fails because she has not establish that any communication has been unlawfully intercepted by Spring Fertility.

The ECPA is a one-party consent statute, meaning that there is no liability where "one of

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS AMENDED COMPLAINT                Case No. 5:24-cv-07374-EJD

**Gordon & Rees LLP**
101 W. Broadway Suite 2000
San Diego, CA 92101

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1   the parties to the communication has given prior consent" to the interception.   18 U.S.C. §

2   2511(2)(d); *see also Smith v. Facebook, Inc.* ("*Smith I*"), 262 F. Supp. 3d 943 955 (N.D. Cal.

3   2017) (ECPA "only requires one party to the communication to consent to an interception").

4   Courts have not hesitated to dismiss ECPA claims in similar cases, including suits involving the

5   use of pixels by healthcare providers.   *See, e.g., Roe v. Amgen Inc.*, No. 2:23-cv-07448, 2024 WL

6   2873482, at *6 (C.D. Cal. June 5, 2024) (dismissing ECPA claim because biopharmaceutical

7   company "as the creator and operator of its website, consented to the use of data collection tools

8   it installed on its website"); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D.

9   Cal. 2024) (dismissing ECPA claim where hospital "was the party that was meant to, and did,

10  receive Plaintiffs' communications"); *Doe I v. Google LLC*, No. 23-CV-02431, 2023 WL

11  6882766, at *2 (N.D. Cal. Oct. 18, 2023) (health care provider consented to use of tracker and

12  thus, plaintiff was unlikely to succeed on merits of ECPA claim).

13        Here, Plaintiff alleges that Spring Fertility utilized and embedded the Facebook Tracking

14  Pixel and LinkedIn Insight Tag on its Website, giving rise to the inference that Spring Fertility,

15  as owner and operator of its website consented to the use of the data collection tools it installed

16  on the website.  Doc. 75 at ¶¶ 13, 77.  Moreover, Plaintiff alleges that the communications were

17  "between Plaintiff and Class Members and Defendant's Website."   *Id.* at ¶ 135.   These

18  allegations are "self-defeating."  *Roe*, 2024 WL 2873482, at *6.  Because Spring Fertility was a

19  party to the communications, Plaintiff cannot recover under the ECPA.

20        Apparently cognizant of this fatal flaw, Plaintiff tries to invoke the crime-tort exception

21  to the ECPA by alleging Spring Fertility intercepted contents "for the purpose of committing a

22  criminal or tortious act in violation of the Constitution or laws of the United States or of any

23  state, namely, invasion of privacy, among others."  Doc. 75 at ¶ 141.  The crime-tort exception

24  operates as an exception to the one-party consent rule where a "communication is intercepted for

25  the purpose of committing any criminal or tortious act."  18 U.S.C. § 2511(2)(d).  The exception

26  applies only where there is "sufficient evidence to show 'the *purpose* for the interception—its

27  intended use—was criminal or tortious.'"  *Doe I*, 2023 WL 6882766, at *2 (quoting *Sussman v.*

28  *American Broadcasting Co., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)) (emphasis in original).

-13-

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1    "It is not enough for the interception itself to have violated the law, the interception must be

2    'done for the purpose of facilitating some further impropriety'" for the crime-tort exception to

3    apply. *Id.* A plaintiff "'must allege that either the 'primary motivation or a determining factor in

4    [the defendant's] actions has been to injure plaintiffs tortiously.'" *Zarif v. Hwareh.com, Inc.*,

5    Case No. 23-cv-0565, 2025 WL 486317, at *9 (S.D. Cal. Feb. 13, 2025) (quoting *In re Meta*

6    *Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (internal citations omitted)).

7         Plaintiff alleges that by using the Facebook Tracking Pixel and LinkedIn Insight Tag,

8    Spring Fertility violated HIPAA and invaded users' privacy.  Doc. 5 at ¶¶ 142, 143.  Neither of

9    these acts, however, is "separate and independent from the act of recording."  *Planned*

10   *Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022).  Rather, those

11   supposed violations occur through the act of interception itself and therefore, do not fall within

12   the statutory exception. *Id.*

13        This Court's decision in *Kaiser* is particularly instructive.  Like Plaintiff here, the

14   plaintiffs in *Kaiser* argued that allegations asserting the defendant violated HIPAA and tortiously

15   collected information without consent were sufficient to invoke the crime-tort exception.  2024

16   WL 1589982, at *10.  This Court disagreed, finding that any alleged violation of HIPAA "was

17   not the purpose of the alleged interception." *Id.*  Because "the act of interception cannot be the

18   crime or the tort," the crime-tort exception did not save the plaintiff's claims from dismissal. *Id.*

19   The same result should be reached here.

20        Plaintiff further alleges that Spring Fertility intercepted communications "for financial

21   gain" and to "increase [its] profit margins."  Doc. 75 at ¶ 143.  Acting for a commercial gain,

22   however, is not a criminal or tortious purpose.  "Multiple courts in this district have found that

23   the crime-tort exception to the [ECPA] is inapplicable where the defendant's primary motivation

24   was to make money, not to injure plaintiffs tortiously." *In re Meta Pixel Healthcare Litig.*, 647

25   F. Supp. 3d at 797; *see also Katz-Lacabe v. Oracle Am., Inc.*, No. 22-CV-04792, 2024 WL

26   1471299, at *3 (N.D. Cal. Apr. 3, 2024) (allegations that defendant collected data to generate

27   revenue were insufficient to invoke crime-tort exception).

28        The Amended Complaint fails to sufficiently plead the crime-tort exception.  Spring

-14-

Fertility's consent to the use of the Facebook Tracking Pixel and LinkedIn Insight Tag on its website, therefore, bars Plaintiff's ECPA claim. *Rodriguez v. Google LLC* ("*Rodriguez I*"), No. 20-cv-04688, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) ("'consent of one party is a complete defense'" to ECPA claim) (quoting *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014). Count I must be dismissed.

### C.    Plaintiff Fails to State a CIPA Section 631 Claim (Count III)

Count III asserts a violation of Section 631(a) of CIPA, California's wiretap statute. To plead a claim under Section 631(a), a plaintiff must allege facts showing someone "willfully" intercepted the contents of his or her communications while "in transit." Cal. Pen. Code § 631(a). Section 631(a) contains three operative clauses, each of which cover distinct and mutually independent patterns of conduct: (1) intentional wiretapping; (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire; and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities. *Martin v. Sephora USA, Inc.*, Case No. 1:22-cv-01355, 2023 WL 2717636, at *6 (E.D. Cal. Mar. 30, 2023) (citing *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021)). There is a fourth basis for liability for anyone "'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' other three bases for liability." *Id.* (quoting Cal. Penal Code § 631(a)). It is this fourth category which Plaintiff alleges Spring Fertility violated, by "aid[ing], agree[ing] with, and conspir[ing] with Facebook and LinkedIn to track and intercept Plaintiff's and Class Members' internet communications while using www.springfertility.com to book fertility consultation." Doc. 75 at ¶ 165. Plaintiff's claims fail for several reasons.

### 1.    Plaintiff Fails to Adequately Allege Predicate/Direct Liability.

A party will be subject to derivative liability under the fourth clause of Section 631(a) only "where [a] third party is directly liable for recording the communications in violation of the first, second, or third clauses of § 631(a)." *Martin*, 2023 WL 2717636, at *12. In other words, "a defendant cannot be liable for aiding and abetting another party in violation of this clause absent a predicate violation of Section 631(a)'s first three clauses." *Gutierrez v. Converse Inc.*,

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1    No. CV 23-6547, 2024 WL 3511648, at *8 (C.D. Cal. July 12, 2024).   Plaintiff fails to

2    sufficiently alleged predicate violations of Section 631 by a third party and thus, her claim fails.

3        Plaintiff repeatedly alleges that it was Spring Fertility who "chose to include the

4    Facebook Tracking Pixel on its Website," Doc. 75 at ¶ 45, and that Spring Fertility "utilized the

5    Facebook Tracking Pixel and LinkedIn Insight Tag," *Id.* at ¶ 77.   These allegations relate to

6    Spring Fertility's *own conduct*, not the conduct of a third party and they "cannot be a basis for

7    liability because a participant to a conversation cannot eavesdrop on their own conversation."

8    *Garcia v. Build.com, Inc.*, Case No. 22-cv-01985, 2023 WL 4535531, at *5 (S.D. Cal. July 13,

9    2023) (dismissing CIPA claim); *see also Martin*, 2023 WL 2717636, at *12  (dismissing CIPA

10   claim where all of plaintiff's allegations pertained to defendant and no actions were attributed to

11   alleged third-party eavesdropper).   No derivative liability can attach here because the Amended

12   Complaint fails to allege sufficient facts alleging violation by a third-party.

13       Furthermore, even if Plaintiff had alleged facts sufficient to make it plausible that

14   Facebook or LinkedIn violated one of the first three clauses of Section 631, liability under clause

15   four "only arise[s] if the defendant *knew* the perpetrator intended to commit the crime and

16   *intended* to aid and abet the perpetrator in the crime."   *Esparza v. UAG Escondido A1 Inc.*, Case

17   No. 23cv0102, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (emphasis in original).   The

18   fact that a defendant paid a vendor to intercept messages is insufficient to establish the necessary

19   scienter for a Section 631 aiding and abetting claim.   *Heiting v. Taro Pharms. USA, Inc.*, 709 F.

20   Supp. 3d 1007, 1019 (C.D. Cal. 2023).

21       In *Smith v. YETI Coolers, LLC* ("*Smith v. YETI*"), Case No. 24-cv-01703, 2024 WL

22   4539578 (N.D. Cal. Oct. 21, 2024), this Court confirmed the need to show knowledge and intent

23   for an aiding and abetting claim under the fourth clause of Section 631, noting that while Section

24   631(a) "does not necessarily incorporate the common law requirement for aiding and abetting

25   simply because it contemplates liability where an individual or entity provides 'aid,'" there is

26   other language in the fourth clause that "does require some level of knowledge and intent."   *Id.* at

27   *4.   Specifically, this Court held that the clause prohibiting "a defendant from aiding, agreeing

28   with, or employing a third party '**to** unlawfully do, or permit, or cause' the third party to act in

-16-

violation of the wiretapping statute . . . indicates that the defendant must be acting with a third party *in order to* have the third party perform acts that violate the statute." *Id.* (emphasis in original). This language, "at the very least . . . requires both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Id.* This Court held that the plaintiff's allegations that the defendant was aware that the third party collected consumers' information and assisted the third party in doing so did "not contain sufficient facts for the Court to draw a plausible inference that Defendant knowingly agreed with or employed [the third party] to engage in conduct that violated the wiretapping statute." *Id.* at *5.

Plaintiff's Amended Complaint is devoid of allegations sufficient to establish the requisite knowledge and intent for her aiding and abetting claim. There are no facts showing Spring Fertility knew about any allegedly unlawful intent to intercept Plaintiff's communications, possessed any intent to help Facebook or LinkedIn intercept any alleged communications, or engaged in conduct that assisted the achievement of the alleged crime. As such, she has failed to state a claim under Clause 4 of Section 631(a).

### 2.    CIPA's Party Exception Applies to Spring Fertility's Vendors[1]

CIPA's wiretapping provision is "aimed at . . . eavesdropping, or the secret monitoring of conversations by third parties." *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985). For this reason, CIPA contains an "exemption from liability for a person who is a 'party' to the communication." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020). This exemption has been routinely extended to software vendors. *See, e.g., Martin*, 2023 WL 2717636, at *13 (holding third-party vendor is "an extension of the company"). "[A] vendor [that] provides a

---

[1] Spring Fertility respectfully acknowledges this Court held in *J.P. v. LinkedIn Corp.*, Case No. 5:24-cv-07586, that LinkedIn was not a third-party vendor. Doc. 71 at pp. 25-26. The Court did not, however, reach the issue in this case and Spring Fertility includes this argument to preserve the record in light of the split among courts within the Ninth Circuit and lack of precedential appellate decisions.

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-17-

software service that captures its clients' data, hosts it on [the vendor's] servers, and allows the clients to analyze their data" is simply "an extension" of the client" and "not a third-party eavesdropper" subject to liability under the CIPA. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021). In other words, a company's use of a website vendor does not constitute eavesdropping under Section 631 where the vendor is a tool, agent, or extension of the company. *Id.* at 832.

To assert a claim under Section 631, "a plaintiff must allege, in non-conclusory fashion, facts demonstrating that the third-party software company possesses the ability to act as an independent entity capable of using the recorded information for some other means." *Heiting v. athenahealth, Inc.*, No. 2:23-CV-10338, 2024 WL 3761294 (C.D. Cal. July 29, 2024) (finding conclusory allegations that third party could use communications to collect information about a specific user and create a transcript to enhance its own business were "too general and conclusory to support a reasonable inference that [the third party] had the capability to use the communications for any purpose beyond providing it to" the defendant). Here, Plaintiff's vague allegations that Facebook or LinkedIn could use data for targeted marketing are too general to find that Facebook or LinkedIn are third-party wiretappers. As such, Plaintiff's CIPA claim should be dismissed.

Spring Fertility acknowledges "[t]here is a split in the Ninth Circuit on the standard used to define a third party" under the CIPA. *Turner v. Nuance Communications, Inc.*, Case No. 22-cv-05827, 2024 WL 2750017, at *9 (N.D. Cal. May 28, 2024). For the reasons set forth above, this Court should follow the holdings of those courts that have held vendors such as Facebook and LinkedIn are not third parties.

### 3. Plaintiff Does Not Plausibly Allege Interception "While In Transit"

Section 631(a) only applies where the "contents or meaning" of a communication is intercepted "in transit." Cal. Penal Code § 631(a). A plaintiff must plausibly allege a third party "read one of his communications while it was still in transit, i.e., *before it reached its intended recipient.*" *Mastel*, 549 F. Supp. 3d at 1137 (emphasis added). Because Plaintiff's Amended Complaint fails to allege sufficient facts establishing a third party intercepted communications

-18-

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

"in transit," Count III must be dismissed for this additional reason.

Section 631(a) requires proof that a third party listened to a communication "*while* the same is in transit or passing over any wire, line, or cable." *Heiting I*, 2024 WL 1626114, at *8; *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (noting Section 631(a) requires "real time interception").

In the context of "modern internet communications," courts have recognized that the speed in which those communications are sent and held liability for same under wiretapping status is "undoubtedly limited." *NovelPoster v. Javith Canfield Grp.*, 140 F. Supp. 3d 938, 951-52 (N.D. Cal. 2014) (noting internet communications travel so quickly, there is only an incredibly narrow window during which an interception could occur). As such, courts within the Ninth Circuit have interpreted the "in transit" requirement of Section 631(a) "narrowly." *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1109 (C.D. Cal. 2023) (finding allegations that "third party . . . secretly intercept[s] in real time, eavesdrop[s] upon, and store[s] transcripts" and defendant "automatically records and creates transcripts of all such private conversations" did not specifically allege messages "were intercepted ***while in transit***." *Id.* at 1110 (emphasis added).

Here, while Plaintiff uses the word "intercept" repeatedly throughout the Amended Complaint, stating the word over and over "is simply not enough without the addition of specific facts that make it plausible" that her data was intercepted in transit. *Rodriguez v. Google LLC* ("*Rodriguez II*"), Case No. 20-cv-04688, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022). Plaintiff alleges "[w]hen a user accesses a website hosting the Facebook Tracking Pixel, Facebook's software script surreptitiously directs the user's browser to contemporaneously send a separate message to Facebook's servers." Doc. 75 at ¶ 44. "This second secret and contemporaneous transmission" is then "sent to the host website" and "two sets of code [are] thus run as part of the browser's attempt to load and read" Spring Fertility's website. *Id.* She further alleges, however, that it is "[**a**]**fter** collecting and interception the information" that Facebook "processe[s], analyze[s], and assimilate[s] it into datasets." *Id.* at ¶ 53 (emphasis added). Nearly identical allegations have been found insufficient to establish an interception.

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-19-

1    *Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967 (Cal. Super. Jan. 5, 2023).

2         With respect to LinkedIn, Plaintiff merely alleges that "[w]hen a user who has signed in

3    to LinkedIn . . . is browsing a website where the LinkedIn Insight Tag has been embedded, an

4    HTTP request is sent using cookies, which includes information about the user's actions on the

5    website." Doc. 75 at ¶ 63. These allegations lack specificity and "do not provide fair notice of

6    exactly what or how LinkedIn intercepted the communications." Doc. 71 at p. 30.

7         Because Plaintiff fails to adequately allege interception while in transit, Count I must be

8    dismissed.

9         **D.    Plaintiff Fails to State a CIPA Section 632 Claim (Count IV)**

10        Plaintiff's original Complaint did not assert a Section 632 claim against Spring Fertility;

11   rather, that claim was asserted only against Meta and LinkedIn. Now that those entities are no

12   longer parties to this action, Plaintiff attempts to assert a derivative Section 632 claim against

13   Spring Fertility. Doc. 75 at Count IV. Other than a change in Paragraph 175 to assert Count IV

14   against "Defendant," the remaining allegations in Count IV are largely unchanged and focus

15   entirely on the conduct of Facebook and LinkedIn. *Id.* at ¶¶ 175-185; Doc. 75-1 at ¶¶ 175-185.

16        Section 632 of CIPA prohibits "intentionally and without the consent of all parties to  a

17   confidential communications, us[ing] an electronic amplifying or recording device to eavesdrop

18   upon or record the confidential communication." Cal. Penal Code § 632(a). A "confidential

19   communication" is defined as "any communication carried on in circumstances as may

20   reasonably indicate that any party to the communication desires it to be confined to the parties

21   thereto," but does <u>not</u> include any communication that the parties "may reasonably expect . . . be

22   overheard or recorded." *Id.* at § 632(c). For the following reasons, the Amended Complaint fails

23   to sufficiently plead a claim under Section 632.

24        **1.    Plaintiff Fails to Adequately Allege Derivative Liability.**

25        Plaintiff does not allege that Spring Fertility eavesdropped on her communications. To

26   the contrary, Plaintiff alleges that she expected her communications "to be **confined to Spring**

27   **Fertility**." Doc. 75 at ¶ 179 (emphasis added). She only alleges that "third parties, and

28   specifically Facebook and LinkedIn . . . secretly eavesdrop[ped] upon or record[ed]" her

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-20-

1    communications with Spring Fertility. *Id.* Because Plaintiff does not allege that Spring Fertility

2    "us[ed] an electronic amplifying or recording device to eavesdrop upon or record" her

3    communications, she has failed to plead a claim under Section 632. Cal. Penal Code § 632(a).

4           To the extent Plaintiff is attempting to make a derivative claim under Section 632, "the

5    text of Penal Code § 632 does not expressly provide for derivative liability." *Smith v. YETI*, 754

6    F. Supp. 3d at 944. Section 31 of the Penal code does provide that "'[a]ll persons concerned in

7    the commission of crime . . . or [who] aid and abet in its commission . . . are principals in any

8    crime so committed.'" *Id.* (quoting Cal. Penal Code § 31). Courts have cited to Section 31 to

9    "imput[e] the civil liability standard for aiding and abetting to determine the scope of derivative

10   liability" under Section 632. *Id.* Specifically, courts have looked to the common law definition

11   of aiding and abetting the commission of a crime which requires a person "'(a) know the other's

12   conduct constitutes a breach of duty and give substantial assistance or encouragement to the

13   other to so act or (b) give substantial assistance to the other in accomplishing a tortious result and

14   the person's own conduct, separately considered, constitutes a breach of duty to the third

15   person.'" *Id.* (quoting *Esparaza*, 2024 WL 559241, at *6) (internal citations omitted).

16          Thus, to establish derivative liablity under Section 632, Plaintiff was required to allege

17   Spring Fertility had "knoweldge of the other's conduct and must have provided substantial

18   assistance." *Id.* Count IV is completely devoid of any such allegations. Rather, the allegations

19   in Count IV relate solely to the conduct of Facebook and LinkedIn.[2] Because "Plaintiff did not

20   plead sufficient facts to support a plausible inference that [Spring Fertility] had knowledge of

21   [Facebook's and LinkedIn's] conduct violating the statute, let alone had an intent or purpose of

22   aiding it substantially," Count IV must be dismissed. *Id.* (dismissing Section 632 claim based on

23   derivative liability).

24   _____

25   [2] *See, e.g.,* Doc. 75 at ¶ 181 ("Facebook and LinkedIn eavesdropped and/or recorded confidential

26   communications); ¶ 183 ("Facebook and LinkedIn utilized Plaintiff's and Class Members

27   sensitive personal and health information for their own purposes"); ¶ 185 (Plaintiff's "sensitive

28   data has been collected, viewed, accessed, stored, by Facebook and LinkedIn").

-21-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Gordon & Rees LLP**
**101 W. Broadway Suite 2000**
**San Diego, CA 92101**

-22-

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS AMENDED COMPLAINT          Case No. 5:24-cv-07374-EJD

**3.    Plaintiff's Internet Communications Were Not Confidential.**

Even if Plaintiff had sufficiently pleaded derivative liability under Section 632—which she has not—her Section 632 claim still requires dismissal because her internet communications were not confidential.

Section 632 applies only to confidential communications. A communication is confidential under Section 632 only if a party has "'an objectively reasonable expectation that the conversation is not being overheard or recorded.'"  *Rodriguez I*, 2021 WL 2026726, at *7 (quoting *Flanagan v. Flanagan*, 27 Cal.4th 766, 776-77 (2002)).  California does not recognize an expectation of privacy regarding internet communications. *People v. Stipo*, 195 Cal.App.4th 664, 669 (2011) ("Internet users have no expectation of privacy in . . . the websites they visit."). As such, courts analyzing Section 632 "'have developed a presumption that internet communications do not reasonably give rise'" to an expectation of privacy. *Rodriguez I*, 2021 WL 2026726, at *7 (quoting *Revitch v. New Moosejaw, LLC*, Case No. 18-cv-06827, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019)).  To assert a reasonable expectation of privacy in internet communications, a plaintiff "must plead unique, definite circumstances rebutting California's presumption against online confidentiality." *Id.*

Plaintiff has not pleaded such "unique, definite circumstances."  Moreover, as this Court has already found, Spring Fertility's Privacy Policies are "so specific that there can be no reasonable expectation that the information provided to Spring Fertility is private."  Doc. 71 at p. 19.  Thus, Plaintiff has failed to state a claim under Section 632.

**E.    Plaintiff Fails to State a CMIA Claim (Count II)**

Plaintiff alleges Spring Fertility violated Section 56.10 of the CMIA by disclosing "several pieces of information regarding its patients' use of the Spring Fertility Website, which included but was not limited to: treatments patients were seeking, such as booking consultations for fertility services," to Facebook and LinkedIn.  Doc. 75 at ¶ 154.  Section 56.10 states, in relevant part, that "[n]o provider of health care . . . shall disclose *medical information* regarding a patient of the provider of health care . . . without first obtaining an authorization." Cal. Civ. § 56.10 (emphasis added).  Here, Plaintiff's CMIA claim must be dismissed because she has failed

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1   to allege facts showing "medical information" has been transmitted.

2        The CMIA defines "medical information" as "any individually identifiable information,

3   in electronic or physical form, in possession of or derived from a provider of health care, health

4   care service plan, pharmaceutical company, or contractor regarding a patient's medical history,

5   mental or physical condition, or treatment." *Id.* at § 56.05(j).   Medical information is

6   "individually identifiable" if it "includes or contains any element of personal identifying

7   information sufficient to allow identification of the individual, such as the patient's name,

8   address, electronic mail address, telephone number, or social security number, or other

9   information that, alone or in combination with other publicly available information, reveals the

10  identity of the individual." *Id.*   In other words, "medical information" under the CMIA is

11  "***substantive information*** regarding a patient's medical condition or history that is combined

12  with individually identifiable information."   *Eisenhower Med. Ctr. v. Super. Ct.*, 226

13  Cal.App.4th 430, 434 (2014) (emphasis added).

14       In *Eisenhower*, the plaintiffs alleged that information including patient name, medical

15  record number, age, date of birth, and last four digits of their social security number was

16  improperly disclosed by a hospital in violation of the CMIA.   *Id.* at 432.   The court disagreed,

17  holding that while such information may be individually identifiable, it was not medical

18  information under the CMIA because it did "not reveal medical history, diagnosis, or care." *Id.*

19  at 435.   The court further held that "[c]onfirmation that a person's medical record exists

20  somewhere is not medical information as defined under the CMIA," nor is "the mere fact that a

21  person may have been a patient." *Id.* at 435-36 ("mere fact that a person is or was a patient is not

22  accorded the same level of privacy as more specific information about his medical history").

23       Here, Plaintiff alleges that information related to treatments sought and booking

24  consultations constitute "medical information" under the CMIA.   Doc. 75 at ¶¶ 154.   Similar

25  allegations were found insufficient in *Wilson v. Rater8, LLC*, Case No. 20-cv-1515, 2021 WL

26  4865930 (S.D. Cal. Oct. 18, 2021).   There, the plaintiff alleged that his medical provider

27  disclosed his name, cell phone number, physician name, appointment information, discharge

28  date, and discharge time, in violation of the CMIA.   *Id.* at *1.   The district court held that this

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-24-

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1    information did not constitute "medical information" under the CMIA and dismissed the claim

2    because the complaint failed to make "specific allegations" about the information disclosed.  *Id.*

3         Like the plaintiff in *Wilson*, Plaintiff here fails to allege any specific "medical history,

4    diagnosis, or care" that was disclosed.  *Eisenhower*, 226 Cal.App.4th at 435.   Conclusory

5    allegations that appointment information was disclosed is simply insufficient to establish a

6    CMIA violation and thus, Count II must be dismissed.  S*ee also Doe v. MKS Instruments, Inc.*,

7    No. SACV2300868, 2023 WL 9421115, at *1 (C.D. Cal. Nov. 3, 2023) (holding allegation that

8    "information about disabilities, health and medical conditions" was disclosed was conclusory

9    and did not constitute "medical information" under CMIA); *B.K.*, 721 F. Supp. 3d at 1064

10   (dismissing CMIA claim where plaintiff failed to allege "any specificity as to what medical

11   information was allegedly disclosed or when it was disclosed").

12        **F.**      **Plaintiff Fails to Allege Violation of the California Constitution (Count V)**

13        Count V of the Complaint asserts a claim for violation of the right to privacy under

14   California's Constitution.  A privacy claim under the California Constitution requires a showing

15   of (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the

16   circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the

17   protected privacy interest.  *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 286 (2009).

18        Even assuming Plaintiff could satisfy the first element, she has failed to plead facts

19   establishing she had a reasonable expectation of privacy.  Plainitff agreed to a Privacy Policy that

20   allowed Spring Fertility to collect certain personal information—including medical condition,

21   sexual orientation, and gender identity, RJN Ex. 2—and, thus, she cannot establish that she had a

22   reasonable expectation of privacy under the circumstances.  In other words, she cannot claim that

23   Spring Fertility invaded her privacy by collecting information *she already agreed to share*.

24        Moreover, the California Constitution sets "a high bar for an invasion of privacy claim."

25   *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).   This Court has

26   consistently held that "data collection and disclosure to third parties that is 'routine commercial

27   behavior' is not a 'highly offensive' invasion of privacy.  *Hammerling v. Google LLC*, 615 F.

28   Supp. 3d 1069, 1090 (N.D. Cal. 2022), *aff'd* No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5,

-25-

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS AMENDED COMPLAINT          Case No. 5:24-cv-07374-EJD

2024) (collection of information about a user's menstrual cycle, religion, political affiliation, or sexual preference did not give rise to invasion of privacy); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1060 (N.D. Cal. 2012) (disclosures of unique device identification number, personal data, and geolocation information without consent not an egregious breach of social norms); *Low*, 900 F. Supp. 2d at 1025 (disclosure of social security numbers not offensive); *B.K.*, 721 F. Supp. 3d at 1061 (disclosure of information about medical conditions, providers sought, and appointments did not invade privacy).

Plaintiff's Amended Complaint is purposefully vague as to what information was collected that allegedly violated her privacy. Plaintiff uses boilerplate terms such as "medical information," "medical communications," and "health information." Doc. 75 at ¶¶ 187-190. These vague allegations are insufficient to meet the high bar required to establish a constitutional violation. As a matter of law, the Amended Complaint fails to state sufficient facts demonstrating the disclosure of information which would result in "serious harm" to Plaintiff or that would constitute an egregious breach of social norms. As such, Count V should be dismissed.

## VI.    CONCLUSION

For all the reasons set forth above, Defendant Spring Fertility Holdings, LLC respectfully requests that this Honorable Court grant its Motion to Dismiss and enter an order dismissing all claims against Spring Fertility Holdings, LLC with prejudice.

Respectfully submitted,

Dated: December 10, 2025

GORDON REES SCULLY
MANSUKHANI, LLP

By:   /s/ Sara Anderson Frey
Timothy K. Branson
Sara Anderson Frey (pro hac pending)
Attorneys for Defendant
SPRING FERTILITY HOLDINGS,
LLC

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-26-

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S
MOTION TO DISMISS AMENDED COMPLAINT          Case No. 5:24-cv-07374-EJD