**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave., Suite 2100
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-006
Email: swestcot@bursor.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.S., individually and on behalf of all others similarly situated, | Case No. 5:24-cv-07374-EJD |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| v. | Date: March 5, 2026 |
| SPRING FERTILITY HOLDINGS, LLC, | Time: 9:00 a.m. |
| Defendant. | Place: Courtroom 4 |
| | Judge: Hon. Edward J. Davila |

# **TABLE OF CONTENTS**

**PAGE(S)**

STATEMENT OF ISSUES TO BE DECIDED PER CIVIL L. R. 7-4**(A)**(3) ...................................1

INTRODUCTION ................................................................................................................2

LEGAL STANDARD .........................................................................................................3

ARGUMENT .......................................................................................................................4

    I.    PLAINTIFF DID NOT CONSENT TO DEFENDANT'S COLLECTION OF HER PROTECTED HEALTH AND MEDICAL INFORMATION .........................................................................................4

        A.  Defendant Violated Its Own Policies By Sharing Health Information ....................4

        B.  Defendant's Consent Arguments Disregard HIPAA's Authorization Requirements For Protected Health Information ................................................8

    II.   PLAINTIFF STATES A CLAIM UNDER THE ECPA ..........................................10

    III.  PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 631 ...........................12

        A.  Plaintiff Alleges Defendant "Aided, Agreed With, Employed, Or Conspired With" the Third Parties in Violation of the Fourth Prong of CIPA § 631(a) .................................................................................................13

        B.  Meta and LinkedIn Are Not Vendors Of Defendant .................................................15

        C.  Plaintiff Sufficiently Alleges Here Communications Were Intercepted In Transit .........................................................................................16

    IV.  PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 632 ..........................18

        A.  Plaintiff Alleges Derivative Liability Under Section 632 .......................................18

        B.  Plaintiff Adequately Alleged Her Communications Were Confidential ...............................................................................................................19

    V.   PLAINTIFF STATES A CLAIM FOR VIOLATIONS OF THE CMIA...............................................................................................................................20

    VI.  PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION ...................................................22

CONCLUSION .................................................................................................................24

# **TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*A.D. v. Aspen Dental Mgmt., Inc.,*
   2024 WL 4119153 (N.D. Ill. Sept. 9, 2024)................................................................ 10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ....................................................................................................... 3

*Barbour v. John Muir Health,*
   2023 WL 2618967 (Cal. Super. Jan. 05, 2023) .......................................................... 16

*B.K. v. Desert Care Network,*
   2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ............................................................... 11

*B.K. v. Eisenhower Med. Ctr.,*
   721 F. Supp. 3d 1056 (C.D. Cal. 2024)................................................................. 21, 23

*B.K. v. Eisenhower Med. Ctr.,*
   2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) ............................................................. 11

*Barker Bros. v. City of Los Angeles,*
   10 Cal. 2d 603 (1938)................................................................................................... 13

*Calhoun v. Google LLC,*
   526 F. Supp. 3d 605 (N.D. Cal. 2021)........................................................................... 7

*Castillo v. Costco Wholesale Corp.,*
   2024 WL 4785136 (W.D. Wash. Nov. 14, 2024)........................................................ 11

*Cousin v. Sharp Healthcare,*
   681 F. Supp. 3d 1117 (S.D. Cal. 2023) ....................................................................... 14

*Cousin v. Sharp Healthcare,*
   702 F. Supp. 3d 967 (S.D. Cal. 2023) ................................................................... 10, 21

*Doe v. FullStory, Inc.,*
   712 F. Supp. 3d 1244 (N.D. Cal. 2024)......................................................................... 6

*Doe v. Kaiser Found. Health Plan, Inc.,*
   2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)........................................................ 12, 19

*Doe v. Meta Platforms, Inc.,*
   2023 WL 5837443 (N.D. Cal. Sept. 7, 2023)........................................................ 12, 18

*Doe v. MKS Instruments, Inc.,*
   2023 WL 9421115 (C.D. Cal. Nov. 3, 2023) .............................................................. 21

*Doe v. Regents of Univ. of California*,
   672 F. Supp. 3d 813 (N.D. Cal. 2023) ........................................................................ 23

*Doe v. Tenet Healthcare Corp.*,
   789 F. Supp. 3d 814 (E.D. Cal. 2025) ......................................................... 10, 11, 14

*Eisenhower Med. Ctr. v. Superior Ct.*,
   226 Cal. App. 4th 430 (2014) ....................................................................... 20, 21

*Esparaza v. UAG Escondido A1 Inc.*,
   2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ........................................................ 14

*Flanagan v. Flanagan*,
   27 Cal. 4th 766, 117 Cal. Rptr. 2d 574, 41 P.3d 575 (2002) ............................... 19

*Garcia v. Enterprise Holdings Inc.*,
   78 F. Supp. 3d 1125 (N.D. Cal. 2015) ...................................................................... 9

*Georgia v. Public.Resource.Org, Inc.*,
   590 U.S. 255 (2020) ................................................................................................ 14

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) .................................................................. 23

*Heerde v. Learfield Commc'ns, LLC*,
   741 F. Supp. 3d 849 (C.D. Cal. 2024) .................................................................... 17

*Heiting v. athenahealth, Inc.*,
   2024 WL 3761294 (C.D. Cal. 2024) ....................................................................... 15

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
   728 F. Supp. 3d 1112 (C.D. Cal. 2024) .................................................................. 16

*Heiting v. Taro Pharms. USA, Inc.*,
   709 F. Supp. 3d 1007 (C.D. Cal. 2023) .................................................................. 17

*Hubbard v. Google LLC*,
   2024 WL 3302066 (N.D. Cal. July 1, 2024) ........................................................... 24

*Humphrey v. J.M. Smucker Company*,
   2023 WL 3592093 (N.D. Cal. May 22, 2023) ...................................................... 3, 4

*In re Ambry Genetics Data Breach Litigation*,
   567 F. Supp. 3d 1130 (C.D. Cal 2021) ................................................................... 23

*In re Facebook Inc. Consumer Privacy User Profile Litig.*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019) ...................................................................... 7

*In re Facebook, Inc. Internet Tracking Litigation*,
   956 F.3d 589 (9th Cir. 2020) ........................................................... 13, 17, 22, 24

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) ................................................................ 24

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) .................................................................... 12

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................ 23

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) .................................................................. 21

*In re Meta Pixel Healthcare Litig.*,
647 F.Supp.3d 778 (N.D. Cal. Dec. 22, 2022) ............................................... passim

*In re Vizio, Inc. Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................................ 17

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .................................................................... 17

*Jackson v. LinkedIn Corp.*,
744 F. Supp. 3d 986 (N.D. Cal. 2024) .................................................................. 16

*Jones v. Tonal Systems*,
2024 WL 43457558 (S.D. Cal. Sept. 30, 2024) .................................................... 16

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ................................................................ 16

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ................................................................................ 4

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................ 23

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ..................................................... 12

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998) ......................................................................... 2, 22

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) .................................................................. 16

*Ojeda v. Kaiser Permanente Int'l., Inc.*,
2022 WL 18228249 (C.D. Cal. Nov. 29, 2022) .................................................... 22

*People v. Stipo*,
195 Cal. App. 4th 664 (2011) ............................................................................... 19

*Perkins v. LinkedIn Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal. 2014) .................................................................... 9, 13

*Popa v. Harriet Carter Gifts, Inc.*,
   426 F. Supp. 3d 108 (W.D. Pa. 2019) ........................................................................ 7

*R.C. v. Walgreen Co.*,
   733 F. Supp. 3d 876 (C.D. Cal. 2024) ...................................................................... 11

*R.S. v. Prime Healthcare Srvs., Inc.*,
   2025 WL 103488 (C.D. Cal. Jan 13, 2025) ............................................................. 11

*Ribas v. Clark*,
   38 Cal. 3d 355 (1985) ................................................................................................ 15

*Rodriguez v. Google LLC*,
   2021 WL 2026726 (N.D. Cal. May 21, 2021) ......................................................... 19

*Rodriguez v. Google LLC*,
   2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ........................................................... 16

*Silver v. Stripe Inc.*,
   2021 WL 3191752 (N.D. Cal. July 28, 2021) ........................................................... 9

*Smith v. Facebook, Inc.*,
   745 Fed. Appx. 8 (9th Cir. 2018) ............................................................................ 10

*Smith v. Google, LLC*,
   735 F. Supp. 3d 1188 (N.D. Cal. 2024) ...................................................... 12, 15, 16

*Smith v. Rack Room Shoes, Inc.*,
   2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ................................................. 7, 18, 19

*Smith v. YETI Coolers, LLC*,
   754 F. Supp. 3d 933 (N.D. Cal. 2024) ..................................................................... 14

*Somers v. Apple*,
   729 F.3d 953 (9th Cir. 2013) ...................................................................................... 3

*St. Aubin v. Carbon Health Techs., Inc.*,
   2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ..................................................... 14, 17

*Stasi v. Inmediata Health Grp. Corp.*,
   501 F. Supp. 3d 898 (S.D. Cal. 2020) ..................................................................... 24

*Tavernetti v. Superior Ct.*,
   22 Cal. 3d 187 (1978) ............................................................................................... 12

*Vaccaro v. Altais*,
   2023 WL 7003211 (C.D. Cal. Oct. 23, 2023) ......................................................... 18

*Valenzuela v. Nationwide Mut. Ins. Co.*,
  686 F.Supp.3d 969 (C.D. Cal. 2023) ................................................................ 15

*Vera v. O'Keefe*,
  791 F. Supp. 2d 959 (S.D. Cal. 2011) .............................................................. 18

*Wilson v. Rater8, LLC*,
  2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) .................................................. 20

*Wright v. Ulta Salon, Cosms. & Fragrance, Inc.*,
  2023 WL 5837492 (S.D. Cal. Sept. 8, 2023) .................................................. 17

**STATUTES**

Cal. Civ. Code § 56.05 ............................................................................................. 21

Cal. Civ. Code § 56.05(j) .................................................................................. 19, 22

Cal. Civ. Code § 56.05 (j)(1) ............................................................................ 20, 21

Cal. Civ. Code § 56.05(j) ....................................................................................... 20

Cal. Civ. Code § 56.05(q) ............................................................................ 19, 21, 22

Cal. Civ. Code § 56.10(d) ..................................................................................... 2, 8

Cal. Civ. Code § 56.10–11 ....................................................................................... 8

Cal. Pen. Code § 631 ........................................................................................ 15, 16

Cal. Pen. Code § 631(a) ......................................................................................... 13

Cal. Penal Code § 632(c) ........................................................................................ 19

**REGULATIONS**

45 C.F.R. § 160.103 ........................................................................................ 19, 20, 22

45 C.F.R. § 164.506 ................................................................................................. 8

45 C.F.R. § 164.508 .............................................................................................. 2, 8

**RULES**

*Civ. L.R. 7-4(a)(3)* ................................................................................................. 1

<u>**STATEMENT OF ISSUES TO BE DECIDED PER CIVIL L. R. 7-4(A)(3)**</u>

1.     Whether Plaintiff J.S.'s use of the website, springfertility.com (the "Website") constituted consent to Defendant Spring Fertility Holdings, LLC's ("Defendant" or "Spring Fertility") recordings and disclosures, where Defendant represented to its patients that its Targeting Cookies "do not store directly personal information" and where Defendant's Privacy Policy represents that the personal information it collects and discloses "does not include health or medical information."

2.     Whether Plaintiff states a claim under the Electronic Communications Privacy Act (the "ECPA") where Defendant intercepted and disclosed Plaintiff's protected communications for the purpose of committing criminal and tortious acts, including violations of federal and state law, without her knowledge or consent.

3.     Whether Plaintiff states a claim under the California Invasion of Privacy Act ("CIPA") Section 631 where Defendant assisted third parties, Meta Platforms Inc. ("Meta" or "Facebook") and LinkedIn Corporation ("LinkedIn") (together the "Third Parties") in intercepting Plaintiff's confidential communications without authorization or consent through Defendant's installation of the Meta Pixel and LinkedIn Insight Tag (the "Tracking Technologies") on its Website.

4.     Whether Plaintiff J.S. states a claim under CIPA Section 632 where Defendant assisted Third Parties in eavesdropping upon and recording Plaintiff's confidential communications by embedding the Tracking Technologies without Plaintiff's authorization or consent.

5.     Whether Plaintiff states a claim under the California Confidentiality of Medical Information Act (the "CMIA") where Plaintiff plausibly alleges Defendant disclosed protected medical information—including information related to Plaintiff's health treatment and sexual/reproductive health application—to the Third Parties without authorization or consent.

6.     Whether Plaintiff states a claim for invasion of privacy under the California Constitution where Plaintiff had a reasonable expectation of privacy that the sensitive health and medical information she shared on the Website would remain confidential between her and

Defendant, and where Defendant intercepted and disclosed Plaintiff's sensitive information to the Third Parties without authorization or consent.

## **INTRODUCTION**

Seeking fertility care is among the most private decisions an individual can make, implicating core expectations of confidentiality and bodily autonomy. Few categories of information carry greater privacy weight than a person's health status, reproductive choices, and related communications with a medical provider. *See Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998). This case arises because Defendant treated that sensitive information not as protected medical data, but as marketing fodder.

Plaintiff alleges that Defendant, a healthcare provider, quietly embedded the Meta Pixel and LinkedIn Insight Tag on its Website and used those tools to duplicate and transmit patients' appointment and treatment-related communications to Meta and LinkedIn in real time. FAC (ECF No. 75) ¶¶ 38–106 & Figs. 13–15. The data Defendant enabled third parties to receive was not generic web analytics; it included personally identifiable information ("PII") and medical information revealing, among other things, that the user was seeking fertility services, the nature of the treatment requested, and related highly sensitive inferences (including sexual orientation). *Id.* Defendant did not deploy these tracking technologies to provide medical care. It deployed them to monetize patient interactions, fuel targeted advertising, and enrich itself and its advertising partners. *Id.* ¶¶ 5, 10, 13, 23–37, 49–74.

These allegations describe a straightforward and unlawful use of patient health information for marketing without the express authorization required by both federal and California law. HIPAA draws a clear line between routine healthcare operations and marketing disclosures requiring written authorization. *See* 45 C.F.R. § 164.508; FAC ¶¶ 10, 21, 24–27, 114–15. California's CMIA is equally clear: a provider may not share medical information for marketing absent express authorization, and its protections encompass reproductive and sexual health information and inferences. FAC ¶¶ 21, 24–27; *see also* Cal. Civ. Code § 56.10(d). Defendant's conduct, as pled, falls squarely on the wrong side of these rules.

Unable to rebut the substance of the Plaintiff's allegations, Defendant instead seeks dismissal through arguments that misstate both the pleadings and the governing law. Defendant contends that its general website disclosures establish consent, ignoring the fact that its own policies expressly reassure users that health and CMIA/HIPAA-protected information is not disclosed to third parties - precisely what Plaintiff alleges occurred here. FAC ¶¶ 107–115. Defendant also argues Plaintiff has not alleged interception "in transit" under CIPA § 631, even though the FAC details how JavaScript-based tracking code contemporaneously duplicates and transmits communications before they reach their intended destination. These allegations match, and in many respects exceed, those courts in this District and the Ninth Circuit have repeatedly found sufficient at the pleading stage. *Id.* ¶¶ 44, 52–53, 63–67, 86–106.

This is not a case about ordinary website cookies. It is a case about a medical provider surreptitiously routing patients' fertility-related communications to advertising platforms for commercial gain, contrary to law and contrary to the express assurances it gave patients. Accepting the FAC's well-pled allegations as true, Plaintiff plausibly states claims under CIPA, ECPA, CMIA, and the California Constitution. Defendant's Motion should be denied.

## LEGAL STANDARD

Under a Rule 12(b)(6) analysis, a motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Somers v. Apple*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 960. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"In deciding whether the plaintiff has stated a claim upon which relief has been granted, the court accepts her allegations as true and draws all reasonable inferences in her favor." *Humphrey v. J.M. Smucker Company*, 2023 WL 3592093, at *4 (N.D. Cal. May 22, 2023). Finally, "[i]f the court dismisses the complaint, it 'should grant leave to amend even if no request to amend the pleading

was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id*. (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## ARGUMENT

### I. PLAINTIFF DID NOT CONSENT TO DEFENDANT'S COLLECTION OF HER PROTECTED HEALTH AND MEDICAL INFORMATION

#### A. Defendant Violated Its Own Policies By Sharing Health Information

Defendant argues Plaintiff's "claims should be dismissed because she consented to the disclosure of 'personal information.'" MTD at 6. That is wrong.

Plaintiff does not dispute she was presented with a Cookie Banner containing the language "[b]y continuing to use our site, you are agreeing to our Cookies Policy[.]" Declaration of Timothy K. Branson ("Branson Decl."), Ex. 1, ECF No. 78-1, at 2. Within the Cookie Policy link, Defendant includes several additional policies: the Privacy Policy, Terms, and the "Do Not Sell My Personal Information CCPA" policy (all included on a web page titled "Legal & Terms"). Branson Decl., Ex. 2, ECF No. 78-2. Each of these policies makes representations regarding the scope of Defendant's data sharing practices that would lead any reasonable consumer to understand that their personally identifiable medical and health information would not be shared with third parties.

Reasonable consumers would reach this conclusion because there are several express representations made within Defendant's policies assuring patients their personally identifiable medical information *will not be shared*.

First, in the "Do Not Sell My Personal Information CCPA" policy, the very first policy appearing on Defendant's Legal & Terms web page, patients are presented with the following representation regarding the information Defendant purports to collect in a section titled "Information We Collect":



> **Information We Collect**
>
> We collect information that identifies, relates to, describes, references, is capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or device ("**personal information**"). In particular, we have collected the following categories of personal information from consumers within the last (12) months.
>
> **Category A:** Identifiers.
>
> **Examples:** A real name, IP address, email address, or other similar identifiers.
>
> **Collected:** YES

Branson Decl., Ex. 2, ECF No. 78-2 at 2.

The policy goes on to describe 11 categories of information Defendant collects. *See Id.* at 1-3. None of the categories describe the collection of health or medical information.

Defendant's then makes a clear representation of what is *not* included in its definition of "personal information:"



Personal information does not include:

- *Publicly available information from government records;*
- Deidentified or aggregated consumer information; or
- Information excluded from the CCPA's scope, like:
- health or medical information covered by the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and the California Confidentiality of Medical Information Act (CMIA) or clinical trial data; or
- personal information covered by certain sector-specific privacy laws, including the Fair Credit Reporting Act (FRCA), the Gramm-Leach-Bliley Act (GLBA) or California Financial Information Privacy Act (FIPA), and the Driver's Privacy Protection Act of 1994.

Branson Decl., Ex. 2, ECF No. 78-2 at 4 (emphasis added).

As shown in the highlighted portion of the above image, Defendant *specifically excludes* from its definition of "personal information" any health or medical information covered by HIPAA and the CMIA. *Id.* A reasonable user reading the plain language of this policy would believe their health and medical information was not included in the "personal information" Defendant intended to share with third parties.

Defendant's Cookie Policy immediately follows on the Legal & Terms web page, and the Cookie Policy does not separately define the previously defined term "personal information." The Cookie Policy purports to "explain how and why we use these technologies and the choices you have."



**Cookie Policy**

COOKIE POLICY

*Effective 12.09.2019*

Please Review This Notice Carefully

We use cookies and similar technologies to help provide, protect, and improve the springfertility.com website. This policy explains how and why we use these technologies and the choices you have.

Branson Decl., Ex. 2, ECF No. 78-2 at 10.

The Cookie Policy further details the use of "Targeting Cookies" (those at issue here), stating that cookies may be used by advertising partners to build a profile of your interests, <u>but that the cookies do not store directly personal information</u>, as shown in the figure below:

> **Targeting Cookies:** These cookies may be set through our site by our advertising partners. They may be used by those companies to build a profile of your interests and show you relevant adverts on other sites. They do not store relevant adverts on other sites. They do not store directly personal information, but are based on uniquely identifying your browser and internet device. If you do not allow these cookies, you will experience less targeted advertising.

Branson Decl., Ex. 2, ECF No. 78-2 at 11.

Again, a reasonable user reading the plain language of this statement regarding the use of targeted advertising cookies would understand that their personally identifiable information was not being shared with third-party advertising companies. FAC ¶¶ 107–115. Based on this express representation, Defendant's patients reasonably expected that any targeted tracking cookies on Defendant's Website were operating in an anonymized manner. *Id.* ¶ 111.

Assuming, *arguendo*, Defendant's Legal & Terms policies are binding (they are not), Defendant misrepresents its data sharing practices as complying with its legal and ethical responsibilities under HIPAA and the CMIA. Branson Decl., Ex. 2, ECF No. 78-2 at 4 ("Personal Information does not include health or medical information covered by the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and the California Confidentiality of Medical Information Act (CMIA) . . ."). This exclusion is fatal to Defendant's consent argument as Defendant's own policies expressly exclude HIPAA and CMIA-protected information from its definition of "Personal Information." When coupled with Defendant's Cookie Policy which characterizes "Targeting Cookies" as not storing "directly personal information[,]" no reasonable user would understand Defendant's disclosures as applying to the data practice at issue in the present action. FAC ¶ 111, Fig. 16; *see In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 791 (N.D. Cal. Dec. 22, 2022) (finding that "a reasonable user would not have understood that Meta may intercept their health information."); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1254 (N.D. Cal. 2024) (declining to dismiss claims based on consent where the defendant's policies were contradictory and created a question of "[h]ow reasonable persons would interpret the totality of the

disclosures"); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *3 (N.D. Cal. Apr. 4, 2025) (holding "provisions of the privacy policy concerning collection of personal information [do not] cure [the defect created by representing the cookies are not linked to personal information]").

At a minimum, Plaintiff has adequately alleged Defendant's purported disclosures have more than "one plausible interpretation for a finding of consent" such that Defendant's motion must be denied. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 794; *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) ("If a reasonable user could have plausibly interpreted the contract language as not disclosing that the defendant would engage in particular conduct, then the defendant cannot obtain dismissal of a claim about that conduct (at least not based on the issue of consent)") (cleaned up); *Smith v. Rack Room Shoes, Inc.,* 2025 WL 1085169, at *3 (N.D. Cal. Apr. 4, 2025) ("Nor do the provisions of the privacy policy concerning collection of personal information cure this defect."); *In re Facebook, Inc., Consumer Priv. User Profile Litig.,* 402 F. Supp. 3d 767, 787–95 (N.D. Cal. 2019) (same); *see also Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108 (W.D. Pa. 2019) ("[e]ven if a privacy statement discloses some kinds of tracking, a defendant can still be liable for other kinds of tracking that the privacy statement does not disclose."); *Yates v. Evernorth Health, Inc*, 2:25-CV-02773, ECF No. 20 at 7–8 (E.D. Pa. Dec. 10, 2025) (finding general consent to a healthcare website's privacy notice and third-party tracking did not include consent to HIPAA protected health information).

Defendant tries to escape liability by arguing its patients consented to its interception and disclosure of PHI, PII, and medical information to the Third Parties, despite Defendant's express representations to its patients that (1) the targeting cookies do not store directly personal information and (2) its own policies excluding health or medical information covered by HIPAA and the CMIA from its definition of "personal information." Branson Decl., Ex. 2, ECF No. 78-2 at 4, 11; FAC ¶¶ 110, Fig. 16. Defendant—***having expressly warranted against the collection of personal information, PII, PHI, and medical information***—cannot now disclaim its own promises to avoid liability.

**B.** **Defendant's Consent Arguments Disregard HIPAA's Authorization Requirements For Protected Health Information**

HIPAA distinguishes between "consent" and "authorization." As a HIPAA covered entity, Defendant must adhere to the authorization requirements when protected health information ("PHI") and personally identifiable information ("PII") are being disclosed to third parties (including, as is the case here, Meta and LinkedIn). FAC ¶¶ 23–37, 114–15. While consent may allow certain uses or disclosures of PHI for treatment, payment, or healthcare operations, it is not sufficient for uses or disclosures that require an authorization under 45 C.F.R. § 164.508, which encompasses most uses, including marketing. *Compare* 45 C.F.R. § 164.506 (consent) with 45 C.F.R. § 164.508 (authorizations); *Yates v. Evernorth Health, Inc*, 2:25-CV-02773, ECF No. 20 at 7–8 (E.D. Pa. Dec. 10, 2025) (holding general consent to a healthcare website's privacy notice which notified patients of third-party tracking did not include consent to HIPAA protected health information when the defendant's policies warranted the opposite).

Likewise, California law requires an authorization when a "provider of healthcare" (as Defendant is here) discloses medical information for advertising purposes. Cal. Civ. Code § 56.10(d) ("Except to the extent expressly authorized by a patient . . . a provider of health care . . . contractor, or corporation and its subsidiaries and affiliates shall not intentionally share, sell, use for marketing, or otherwise use medical information for a purpose not necessary to provide health care services to the patient."). Defendant's argument, which rests entirely on its attempts to categorize Plaintiff's use of the Website as consent to its policies and sufficient under HIPAA and CMIA, is without merit as it does not meet the more stringent requirements for authorizations imposed by state and federal law. *Compare* MTD at 10–11; *with* 45 C.F.R. § 164.508; Cal. Civ. Code § 56.10–11. Defendant is aware of the heightened requirements these laws impose, as its own policies explicitly notify patients that "*[p]ersonal information does not include: . . . health or medical information covered by [HIPAA] and the [CMIA] . . . .*" Branson Decl., Ex. 2, ECF No. 78-2 at 4.

Moreover, it is a well-established legal principle that consent is rarely a defense to criminal conduct, and here, Defendant's conduct falls squarely within what the U.S. Department of Health and Human Services has warned is unlawful:

Regulated entities [those to which HIPAA applies] are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules. For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations, would constitute impermissible disclosures.

FAC ¶ 30 (citations omitted); *see also* FAC. ¶¶ 23–37 (FTC and HHS Pronouncements).

While Defendant uses cherry-picked language from *Doe v. Kaiser Foundation* to argue HIPAA's authorization requirement does not apply in the present action, Defendant fails to acknowledge the *Kaiser* court expressly declined to "make a blanket ruling on consent that cover[ed] all claims asserted by [p]laintiffs in the FAC." *Doe v. Kaiser Found. Health Plan, Inc.*, 102024 WL 1589982, * 7 (N.D. Cal. Apr. 11, 2024) ("*Kaiser*"); MTD at 14. Further, the *Kaiser* court did not reject applying the HIPAA standard as "supplanting the reasonable person" standard as Defendant suggests. MTD 10–11. Rather, the *Kaiser* court found the plaintiffs ***allegations*** insufficient to show HIPAA applied to the claims asserted, suggesting if HIPAA applied to the claims, so would the written authorization requirement. *Id.*; *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 791 (N.D. Cal. 2022) ("I agree that the information at issue here appears to show patient status and thus constitutes protected health information under HIPAA. But I do not reach the question of whether HIPAA's heightened standard for consent applies because . . . I do not believe that a reasonable user would have understood that Meta may intercept their health information").

Defendant's reliance on *Silver v. Stripe Inc.*, 2021 WL 3191752 (N.D. Cal. July 28, 2021), *Garcia v. Enterprise Holdings Inc.*, 78 F. Supp. 3d 1125 (N.D. Cal. 2015), and *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190 (N.D. Cal. 2014), is unavailing. Unlike those cases, which involved general consent to routine online tracking and the disclosure of non-sensitive data, the present action turns on Defendant's mishandling of sensitive and protected PHI, PII, and medical information. *Silver*, 2021 WL 3191752, at *1–2 (involving disclosure to payment processors); *Garcia v. Enterprise Holdings Inc.*, 78 F. Supp. 3d at 1129 (rideshare information); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d at 1195–1202 (account creation information). *Smith v. Facebook, Inc.* is similarly distinct because there, the plaintiffs were suing Facebook for its collection of general browsing data

available to the public at large on public facing websites. 745 Fed. Appx. 8 (9th Cir. 2018) ("The data show only that [p]laintiffs searched and viewed *publicly available health information* that cannot, in and of itself, reveal details of an individual's health status or medical history"). Here, in contrast, Defendant intercepted and disclosed Plaintiff's and Class Members' *personal medical appointment details* which it received when patients filled out *individual details* about themselves, including that they were booking a consultation, their provider (i.e. Spring Fertility), the specific treatment they were seeking (e.g. IVF/egg freezing/embryo freezing), the location of their appointment (e.g. Oakland, California), etc. FAC ¶¶ 75–106. This information clearly allows inferences to be drawn about a patient's fertility status and treatment (in violation of the Confidentiality of Medical Information Act) and protected health information (including users' patient status) in violation of HIPAA. FAC ¶¶ 23–37, 75–106. Numerous courts have found analogous allegations sufficient to deny a Defendant's motion to dismiss. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 ("Unlike in *Smith*, then, the Pixel captures information that connects a particular user to a particular healthcare provider—*i.e.*, patient status—which falls within the ambit of information protected under HIPAA."); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973 (S.D. Cal. 2023) ("the Court finds that their interactions on Defendant's website, while "unauthenticated" or publicly facing, plausibly involve PHI); *see e.g., Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814 (E.D. Cal. 2025); *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) (denying defendant's motion to dismiss federal and state (Florida, California, and Pennsylvania) wiretapping claims).

The severity of Defendant's disclosures of Plaintiff and Class Members' sensitive health information is further compounded by its own policies which *explicitly* informed patients that such health and medical information covered by HIPAA and the CMIA would not be shared, and was *explicitly* excluded from its definition of personal information. Branson Decl., Ex. 2, ECF No. 78-2, at 4, 11.

## II.    PLAINTIFF STATES A CLAIM UNDER THE ECPA

Defendant suggests Plaintiff's ECPA claim must be dismissed because the "Amended Complaint fails to sufficiently plead the crime-tort exception." MTD at 14. That is wrong.

"Courts have applied the ECPA's crime-tort exception where the intentional disclosure of private information constituted a further impropriety independent and separate from [the] interception of private information." *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 849 (E.D. Cal. 2025) (internal quotation omitted). Here, Plaintiff alleges Defendant's disclosure of her PHI, PII and medical information was separate and independent from the interception. *See, e.g.*, FAC ¶¶ 89, 101, 105–06, 139–40 (explaining Defendant violated the ECPA by "intentionally disclosing or endeavoring to disclose Plaintiff's and Class Members' electronic communications to affiliates and other third parties, while knowing or having reason to know that the information was obtained through the interception of an electronic communication"). Plaintiff's allegations of disclosure— independent and separate from the interception—when done with the purpose of committing a criminal or tortious act (invading Plaintiff's privacy and violating the CMIA and HIPAA) suffice to plausibly allege the crime-tort exception. *See R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) (recognizing that "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording or interception itself" and holding that crime-tort exception applied because communications were intercepted with intent to commit the tort of invasion of privacy); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (applying crime-tort exception because "[d]efendants disclosed these communications to Meta in violation of various state tort claims and state and federal laws"); *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *5 (W.D. Wash. Nov. 14, 2024) (concluding "alleging a defendant intercepted data to use the data in violation of criminal or tort laws suffices to invoke the crime-tort exception."); *B.K. v. Eisenhower Med. Ctr.*, 2024 WL 2037404, at *4 (C.D. Cal. Apr. 11, 2024) (violation of HIPAA can constitute independent conduct such that the crime-tort exception would apply).

Defendant states "acting for a commercial gain . . . is not a criminal or tortious purpose" as though it is a brightline rule. It is not. In the Ninth Circuit, "the crime-tort exception may nonetheless apply" where a defendant is primarily motivated by monetary gain. *Compare R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024); *see also R.S. v. Prime Healthcare Srvs.*, *Inc.*, 2025 WL

103488, at *7 (C.D. Cal. Jan 13, 2025) ("The Court joins those courts that have held a monetary purpose does not insulate a party from liability under the ECPA."); *with* FAC ¶¶ 78, 138.

Defendant's reliance on *Doe v. Kaiser Foundation Health Plan, Inc.* is misplaced. MTD at 14. In *Kaiser*, the plaintiffs' allegations failed to allege wrongdoing by the defendant, as their allegations treated the third parties as vendors—which the *Kaiser* Court's reasoning turned upon. *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *7 (N.D. Cal. Apr. 11, 2024) ("there is no alleged wrongdoing by [defendant] – i.e., that [defendant] knew and/or approved of third parties collecting and/or using information for their own purposes"). Here, Plaintiff alleges that Defendant intercepted her communications for the purpose of disclosing that information to the Third Parties so that those third parties could use the information to provide advertising for their own benefit and in violation of HIPAA. *See* FAC ¶¶ 143–45.

Whether Defendant had a criminal or tortious intent in intercepting and disclosing Plaintiff's communications is a factual question improper to decide without an evidentiary record. *See, e.g., Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *3 (N.D. Cal. Sept. 7, 2023) (noting the intent inquiry turned on "disputed questions of fact that need development on a full evidentiary record"); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 719 (D. Minn. 2023) ("[D]etermination of [defendant]'s actual purpose for . . . using the Pixel Code requires a factual undertaking").

## III.    PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 631

CIPA § 631(a) has four distinct clauses. *See Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1196 (N.D. Cal. 2024) (denying the defendant's motion to dismiss under prongs two and three and noting that "631(a) . . . makes punishable . . . any of [the] four things"). Each one of these clauses imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192–93 (1978). Here, Plaintiff "advances a claim under the fourth" clause. *M.G. v. Therapymatch, Inc.,* 2024 WL 4219992, at *3 (N.D. Cal. Sept. 16, 2024); *accord* FAC ¶¶ 17–20. As Defendant recognizes, Section 631(a) further contains a fourth basis for liability, for anyone who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the other three bases for liability. MTD at 15.

**A.**   **Plaintiff Alleges Defendant "Aided, Agreed With, Employed, Or Conspired With" the Third Parties in Violation of the Fourth Prong of CIPA § 631(a)**

Defendant argues Plaintiff fails to "sufficiently allege predicate violations of Section 631" by the Third Parties for purposes of liability.  MTD at 16.  Not so.

The text of the fourth clause of § 631(a) imposes liability when a person "aids, agrees with, employs, *or* conspires with any person" to violate the statute. Cal. Pen. Code § 631(a) (emphasis added).  This clause uses the word "or."  "The word 'or' is ordinarily used as a disjunctive that marks an alternative generally corresponding to 'either' as 'either this or that.'"  *Barker Bros. v. City of Los Angeles*, 10 Cal. 2d 603, 606 (1938).  So, there is liability if Defendant *either* "aids" *or* "agrees with," *or* "employs" *or* "conspires with" the Third Parties.

Here, Plaintiff alleges that Meta and LinkedIn, through the Meta Pixel and LinkedIn Insight Tag, willfully and without consent read or attempted to read, or learned the contents or meaning of Plaintiff's communications while in transit.  FAC ¶¶ 165, 168–69.  Specifically, Plaintiff alleges (1) the Tracking Technologies operate by causing Plaintiff's browser to secretly duplicate her communications with Defendant and transmit them contemporaneously to Meta and LinkedIn's servers (*Id.* ¶¶ 44, 52–53, 63–67, 86–106); (2) Meta and LinkedIn receive, process, analyze, and assimilate the intercepted information into advertising datasets, including "Core Audiences," "Custom Audiences," and "Lookalike Audiences" for Meta, and advertising analytics for LinkedIn (*Id.* ¶¶ 39–41, 53, 55–58); and (3) that Meta and LinkedIn use this information for their own independent advertising purposes, not merely to provide a service to Defendant.  *Id.* ¶¶ 10, 49–53, 57–59, 183.  Plaintiff also alleges Defendant employed the Third Parties Tracking Technologies on its Website. *E.g. id.* ¶¶ 5, 13, 171.  Nothing more is required.  As the Ninth Circuit explained in *In re Facebook, Inc. Internet Tracking Litigation*, "simultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception . . . . Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule."  956 F.3d 589, 608 (9th Cir. 2020).

Defendant's argument that Plaintiff's allegations "relate solely to the conduct of Facebook [*i.e.* Meta] and LinkedIn" ignores Plaintiff's allegations pertaining to Defendant's own conduct. MTD at 21. Indeed, Plaintiff alleges Defendant "utilized," "embedded," and "chose to include" the Tracking Technologies on its Website. FAC ¶¶ 5, 13, 45, 77. These allegations describe exactly how Defendant's affirmative acts enabled the Third Parties' interception. *Id.* ¶¶ 38–106. Here, Plaintiff's allegations that Defendant installed and configured the Tracking Technologies to help target its advertisements (*Id.* ¶¶ 5, 13, 45, 77), "are sufficient to plead that [Defendant] ***either*** aided, agreed, employed, ***or*** conspired with [the Third Parties—Meta and LinkedIn] in the alleged interception of their information and data . . . ." *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 839–40 (E.D. Cal. 2025).

Defendant's case law is unavailing.[1] Defendant's reliance on *Esparza v. UAG Escondido A1 Inc.* and *Smith v. YETI Coolers* is misplaced, because in those cases, the court used the "common law definition of aiding and abetting." *Compare Esparaza*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933 (N.D. Cal. 2024) (reading in knowledge and intent requirements); *with St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *8 (N.D. Cal. Oct. 1, 2024); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023). *Smith v. YETI Coolers, LLC* is further distinguishable because there, the plaintiff failed to allege the defendant knew the information it was sharing of with its payment processor for fraud prevention was being used unlawfully. 754 F. Supp. 3d at 942–43. Here, Defendant had no lawful basis for disclosing Plaintiff's legally protected PII, PHI, and medical information in violation of HIPAA and the CMIA. FAC ¶¶ 23–36, 114. Defendant's knowledge of this unlawful use flows logically from the bedrock principle that every citizen is presumed to know the law. *See e.g.*, *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 266 (2020).

---

[1] Defendant's vendor argument fails as discussed *infra*-Section III.B.

### B. Meta and LinkedIn Are Not Vendors Of Defendant

Defendant argues it is exempt from liability under the party exception because the Third Parties function as mere "vendors" or "extensions" of Defendant. MTD at 17–18. This argument mischaracterizes both the law and the facts alleged.

"Under Section 631, it . . . matter[s] who is holding the tape recorder . . . [i]f a nonparty to a conversation listens in directly or records the conversation themselves, they are generally liable under Section 631 if the other elements of that claim are satisfied." *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1196–97 (N.D. Cal. 2024) (cleaned up) (citing *Ribas v. Clark*, 38 Cal. 3d 355, 360–61 (1985) (explaining that Section 631 covers "simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device")). The only time the vendor exception applies, as Defendant acknowledges, is when a "plaintiff . . . allege[s] facts demonstrating that the third-party software company possesses the ability to act as an independent entity capable of using the recorded information for some other means." MTD at 18 (citing *Heiting v. athenahealth, Inc.*, 2024 WL 3761294 (C.D. Cal. 2024)).

Here, Plaintiff has alleged far more than a simple vendor relationship between Defendant and the Third Parties. The FAC details exactly how Meta and LinkedIn process and analyze the intercepted and disclosed data to create advertising profiles and inferences about users' demographics, intent, behavior, engagement, and interests (FAC ¶¶ 39–41, 50–51, 55–58); use the intercepted and disclosed information to fuel their own advertising services, including serving targeted advertisements to users across their platforms (*Id.* ¶¶ 49, 51–53, 55–58, 105); and generate revenue from the data they collect. *Id.* ¶¶ 39–40, 60. Plaintiff's allegations are clear; the Third Parties are independent entities that use (or have the capacity to use) the intercepted communications for their own commercial purposes in violation of state and federal law. Even if Meta and LinkedIn's primary purpose for using the data was for the benefit of Defendant, they still "read" and "used" the data. *Smith v. Google, LLC*, 735 F. Supp. 3d at 1198; *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F.Supp.3d 969, 980 (C.D. Cal. 2023) ("Eavesdropping on a conversation at the time it occurs is a violation of Section 631, even if done for the benefit of a party to the conversation.").

As this Court recognized in its October 10 Order, when "Plaintiffs' allegations create a reasonable inference that the Insight Tag is for LinkedIn to collect confidential data from users," the vendor exception does not apply. ECF No. 71, at 25–26; *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) ("the Ninth Circuit has construed the term [intercept] according to its ordinary meaning as the 'act of acquiring, or coming into possession of' "); *Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024) (software provider needs the capability to use the data for its own purpose, not actual use); *Smith v. Google, LLC*, 2024 WL 2808270 (N.D. Cal. June 3, 2024).

## C. Plaintiff Sufficiently Alleges Here Communications Were Intercepted In Transit

Defendant contends Plaintiff "fails to adequately allege interception while in transit." MTD at 20. That is wrong.

Satisfying Section 631's in transit element requires "a defendant must have read or learned the contents of a communication while the communication was in transit, or in the process of being sent or received." *Jones v. Tonal Systems*, 2024 WL 43457558, at *6 (S.D. Cal. Sept. 30, 2024). Put differently, "the allegations must demonstrate a party intercepted the communication during its transmission, rather than once it was placed in electronic storage." *Heiting v. Taro Pharmaceuticals USA, Inc*., 728 F. Supp. 3d 1112, 1125 (C.D. Cal. 2024).

Defendant's case law is distinguishable, because either the authority concerns a dissimilar technology (*see Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1110 (C.D. Cal. 2023) ("Bare allegations of recording and creating transcripts do not specifically allege that Plaintiff's messages were intercepted while in transit."); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 953 (N.D. Cal. 2014) (wrongful access by changing passwords); or the authority does not plead with specificity how the data was allegedly intercepted. *See Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit."). Further, unlike *Barbour v. John Muir Health*, where the plaintiffs alleged the duplication and sending occurred "after the requests reached its destination ([defendant's] server)[,]" 2023 WL 2618967, at

*5 (Cal. Super. Jan. 05, 2023), here Plaintiff alleges a "contemporaneous transmission" is sent concurrently with the communications with the host website." FAC ¶ 44, 88. "[C]ourts have held that, at the motion to dismiss stage, a plaintiff is not expected to prove or even know how and when its communications were captured." *Wright v. Ulta Salon, Cosms. & Fragrance, Inc.*, 2023 WL 5837492, at *6 (S.D. Cal. Sept. 8, 2023) (citing *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017)).

Here, Plaintiff goes beyond "[m]erely parroting the statutory requirement that it occurred in transit," *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023), by detailing exactly how the Meta Pixel and LinkedIn Insight Tag allow the Third Parties to intercept communications contemporaneously and concurrently as they travel between Plaintiff's device and Defendant's Website. FAC ¶¶ 44 (explaining GET requests), 52, 75–106. The FAC further details how this code works to allow the interception in-transit. *Id.* ¶¶ 86–106. These allegations are sufficient to allege "in transit" interception of communications. *See St. Aubin v. Carbon Health Techs., Inc.,* 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024) (finding allegations similar to those here sufficient to satisfy "in transit" requirement); *see also In re Facebook, Inc. Internet Tracking Litig*, 956 F.3d 589, 608 (9th Cir. 2020) ("simultaneous, unknown duplication and communication . . . do[es] not exempt a defendant from liability . . . . Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion"); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) (refusing to "assum[e]" communications are not intercepted in transit as they would "contradict[] Plaintiffs' allegations"); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 862 (C.D. Cal. 2024) ("Plaintiffs allege that, after they entered their Search Terms, the Search Terms were replicated and sent in parallel to the tracking entities . . . . Therefore, . . . their communications were intercepted in transit.") (cleaned up).

## IV.    PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 632

### A.    <u>Plaintiff Alleges Derivative Liability Under Section 632</u>

Defendant suggests Plaintiff's Section 632 claim must fail because she didn't allege Defendant had knowledge and provided the substantial assistance necessary for derivative liability. MTD at 21.  That is wrong.

As a preliminary matter, Plaintiff alleged Defendant used the Third Parties' Tracking Technologies because (1) software is a device for purposes of liability under Section 632(a),  and (2) Plaintiff alleged Defendant used the Tracking Technologies for its own benefit, as well as for the benefit on the Third Parties.  *Doe v. Meta Platforms, Inc.,* 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023); FAC ¶¶ 75–106 (Defendant disclosed Plaintiff's information for its own targeted advertising, as well as for Third Parties' advertising without authorization), 180 (the Meta Pixel and Insight Tag are devices).

Defendant primary argument is that Plaintiff failed to allege derivative liability under § 632. Not so.  "Nothing in the language of CIPA explicitly limits the application of [derivative liability to] section 31 [of the California Penal Code]."  *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025).  When applied to CIPA Section 632, Section 31 "allows for [a defendant who aids and abets another] to be viewed as a principal whether or not she actually physically recorded the confidential conversation." *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011); *accord Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023). "The plain language of the statute does not limit liability to the person who has physically recorded a confidential conversation." *Vera*, 791 F. Supp. 2d at 965.

Applying this reasoning, the Court in *Smith v. Rack Room Shoes, Inc.* explained the plaintiffs adequately alleged the "[defendant] knew [the third parties'] data collection had the purpose of tracking individually identifiable user habits, despite provisions of [its] policy that created a contrary expectation" and that by knowingly and affirmatively embedding third parties' tracking codes into its website was sufficient to plead substantial participation.  *Smith*, 2025 WL 1085169, at *5.

Here, Plaintiff does the same.  Specifically, Plaintiff alleges that Defendant aided, agreed with, and conspired with the Third Parties' wiretapping of Plaintiff's communications on

Defendant's Website. *See, e.g.*, FAC ¶¶ 5, 13, 165, 171. Plaintiff further alleges Defendant, as the owner and operator of the Website, intentionally "embedded the tracking software . . . on its Website[.]" *Id.* ¶ 13. As a result of Defendant's intentional integration of the Tracking Technologies, Meta and LinkedIn were able to intercept Plaintiff and putative class members' protected health and medical information regarding their fertility appointments. *Id.* ¶¶ 75–106, Figs. 13–16 (detailing Defendants disclosures to Meta and LinkedIn). Nothing more is required. *See e.g., Rack Room Shoes, Inc.*, 2025 WL 1085169, at *5.

**B.     <u>Plaintiff Adequately Alleged Her Communications Were Confidential</u>**

Defendant contends Plaintiff's Section 632 claim fails because "her internet communications were not confidential." MTD at 23. Not so. Defendants' argument is flawed for two reasons.

Cal. Penal Code § 632(c) defines "confidential communication" as:

> any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive, or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

***First***, Defendant overlooks that the information at issue is protected health information (45 C.F.R. §160.103) protected medical information (Cal. Civ. Code § 56.05(j)), and reproductive or sexual health application information (Cal. Civ. Code § 56.05(q)). FAC ¶¶ 21–37. Indeed, ***none*** of the authority Defendant relies upon relates to protected health information and medical information. *See Rodriguez v. Google LLC*, 2021 WL 2026726 (N.D. Cal. May 21, 2021); *Flanagan v. Flanagan*, 27 Cal. 4th 766, 117 Cal. Rptr. 2d 574, 41 P.3d 575 (2002); *People v. Stipo*, 195 Cal. App. 4th 664, 666 (2011).

***Second***, beyond relying on *Kaiser,*[2] Defendant fails to reconcile any purported consent with the heightened authorization requirements California and federal law impose on medical and health

---

[2] As discussed at length in Section I, Defendant misreads *Kaiser*. *Supra* Sec. ; *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982 at *6–7 (declining to make a blanket ruling on consent, the court's refusal to apply HIPAA's authorization requirements turned on the plaintiffs failure to show HIPAA applied to each of the claims asserted).

information—including express authorization mandates under HIPAA and CMIA. 45 C.F.R. §160.103; Cal. Civ. Code § 56.05(j), (q). Indeed, Defendant's own policies undermine its reasoning that HIPAA's and the CMIA's authorization requirements do not apply by expressly excluding HIPAA and CMIA-protected information from its definition of "personal information," thereby acknowledging the boilerplate disclosures in its policies as insufficient. Branson Decl., Ex. 2, ECF 78-2, at 5.

## V. PLAINTIFF STATES A CLAIM FOR VIOLATIONS OF THE CMIA

Defendant contends "Plaintiff's CMIA claims must be dismissed because she has failed to allege facts showing 'medical information' has been transmitted." MTD at 23–24. That is wrong.

The CMIA defines medical information as "any individually identifiable information, . . . regarding a patient's medical history, . . . *reproductive or sexual health application information*, *mental or physical condition, or treatment*." Cal. Civ. Code § 56.05 (j)(1).

Citing to *Wilson v. Rater8, LLC*, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021), Defendant argues that the information it disclosed to Meta and LinkedIn does not constitute medical information. MTD at 24–25. In *Wilson,* the court found that the plaintiff did not "allege facts that would allow the court to infer that he received medical treatment during [an] examination" and that the information plaintiff alleged the defendant disclosed was "insufficient to allege disclosure of medical information." 2021 WL 4865930, at *5. There, the plaintiff alleged that the defendant disclosed his "medical treatment appointment information, and medical treatment discharge dates and times." *Id.* However, the plaintiff did not plead specifics of the treatment sought and received, and merely described the examination as treatment. *Id.*

*Wilson* is distinguishable. Unlike here, the complaint in *Wilson* did not "contain specific allegations about what information the CMIA Defendants disclosed to rater8 beyond Plaintiff's contact information and appointment date." *Id.* Nor did the plaintiff "allege facts that would allow the Court to infer that he received medical treatment during [the subsequent] examination." *Id.* Thus, *Wilson* does not stand for the blanket proposition that information relating to appointments is never medical information within the meaning of the CMIA. Defendant's remaining authority is similarly distinct. *Eisenhower Med. Ctr. v. Superior Ct.*, 226 Cal. App. 4th 430, 434 (2014) (no substantive

medical information); *Doe v. MKS Instruments, Inc.*, 2023 WL 9421115, at *2 (C.D. Cal. Nov. 3, 2023) (not necessarily "medical information" under the CMIA); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024) (no specificity). Additionally, ***none*** of the cases Defendant deal with "reproductive or sexual health application information."

Defendant also overlooks that the definition of medical information includes "reproductive or sexual health application information" which is fatal to its argument. In addition to "information about a consumer's reproductive health, menstrual cycle, fertility, pregnancy, pregnancy outcome, plans to conceive, or type of sexual activity collected by a reproductive or sexual health digital service," the CMIA's definition of reproductive or sexual health application information includes "***information from which one can infer*** someone's pregnancy status, menstrual cycle, fertility, hormone levels, birth control use, sexual activity, or gender identity." Cal. Civ. Code § 56.05(q). This definition is intentionally broad, as it is extends to inferences about sexual and reproductive health, including fertility. *Id.*

Here, Plaintiff has pled facts revealing the disclosure of her specific treatment and reproductive/sexual health application information—namely, Plaintiff disclosed seeking fertility services and treatment for in vitro fertilization (IVF). FAC ¶¶ 7–10. In the Complaint, Plaintiff also provides images setting forth the information disclosed to Meta and LinkedIn, including the specific reason for the appointment. *Id.* ¶¶ 88, 103; Figs. 4, 13–15. At a minimum, this allows for inferences to be drawn about Plaintiff and Class Members' fertility status, and as a result, requires a CMIA compliant authorization. Cal. Civ. Code § 56.05. Given that Plaintiff pleads Defendant disclosed "substantive information" related to Plaintiff's medical information in the form of treatment and reproductive/sexual health application information, Plaintiff has pled sufficient facts to plausibly establish a violation of the CMIA. *Cf. Eisenhower Med. Ctr. v. Superior Court*, 226 Cal. App. 4th 430, 434–36 (2014) (explaining that the compromised information amounted only to "individually identifiable information" because it did not show specific medical concerns or treatments); *see also Cousin v. Sharp Healthcare,* 702 F. Supp. 3d 967, 975 (S.D. Cal. 2023) (allegations that plaintiffs used healthcare website to book appointments stated a CMIA claim); *In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 653 (N.D. Cal. 2024) (finding plaintiffs plausibly pled privacy-based

claims where they identified "the specific types of information they provided to their healthcare providers that they believe Meta collected without their consent[,]" including "the health conditions for which they sought treatment or services, as well as examples of their queries, appointment requests, or other information and services which they communicated to their providers.").

## VI.  PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION

Defendant contends Plaintiff's invasion of privacy claim fails because she did not demonstrate "the disclosure of information which would result in 'serious' harm to Plaintiff or that would constitute a breach of social norms." MTD at 25–26. That is wrong.

To state a claim for invasion of privacy, a plaintiff must allege that "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive*." In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). Plaintiff satisfies both elements.

First, it is well-settled "that, although not absolute, people have a privacy interest in their 'medical history and information.'" *Ojeda v. Kaiser Permanente Int'l., Inc*., 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 800 (N.D. Cal. 2022) ("plaintiffs will likely be able to show that they had an objectively reasonable expectation that their communications with their medical providers were confidential based on the laws and regulations protecting the confidentiality of medical information"); *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 606 (9th Cir. 2020); *Norman-Bloodsaw v. Lawrence Berkeley Lab'y,* 135 F.3d 1260, 1269 (9th Cir. 1998) ("The constitutionally protected privacy interest in avoiding disclosure of personal matters clearly encompasses medical information and its confidentiality").

Here, Plaintiff's communications with the Website contained legally protected information relating to fertility journey in the form of protected health information (45 C.F.R. §160.103), protected medical information (Cal. Civ. Code § 56.05(j)), and reproductive or sexual health application information (Cal. Civ. Code § 56.05(q)). FAC ¶¶ 7–12, 21–37. Moreover, as discussed *infra*–Section I, Plaintiff never consented or authorized these recordings.[3] Indeed, patient status—

---

[3] As discussed *supra*–Section I, protected health information under HIPAA and protected information under the CMIA (Compl. ¶¶ 21–37), require an ***authorization*** to use such information

i.e., merely connecting a "particular user to a particular healthcare provider"—is protected health information subject to HIPAA's authorization requirements. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022). Plaintiff's allegations are clear Defendant's conduct constitutes "a serious invasion of privacy divulging deeply personal aspects of an individual's life including . . . highly sensitive details including the specific type of fertility treatment sought, all without the patients' knowledge or consent." FAC ¶ 5, 191.

Nonetheless, Defendant attempts to minimize its egregious conduct by suggesting the Plaintiff "already agreed to share" the information contained in its recordings (MTD at 25), disregarding the increased protections the California Legislature provides to the legally protected medical and health information at issue, disregarding its own policies wherein it explicitly excludes information covered by HIPAA and the CMIA from its definition of personal information. FAC ¶¶ 21–37, MTD Ex. 2, ECF No. 78-2, at 5. This is fatal to Defendant's argument. Defendant's authority is unavailing—indeed, the majority of Defendant's cited cases have nothing to do with the disclosure of health and medical information. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022) (download of apps, without more, was not offensive because "not specific or personal"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (geolocation data); *Low v. LinkedIn Corp.,* 900 F. Supp. 2d 1010 (N.D. Cal. 2012) (profile information). Defendant's remaining case fares no better, as in *B.K.* the plaintiffs "fail[ed] to plead that any medical information was disclosed." *Compare B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024); *with Rusow v. SkinSpirit Essential LLC*, 3:24-cv-09317, ECF No. 44 (N.D. Cal. Oct. 15, 2025) (medical and cosmetic appointments were protected medical information under the CMIA and disclosure was highly offensive); *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) ("Personal medical information is understood to be among the most sensitive information that could be collected about a person."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 801; *In re Ambry Genetics Data Breach Litigation*, 567 F. Supp. 3d 1130 (C.D. Cal 2021)

---

for marketing purposes. Further, Defendant's own policies purport to comply with HIPAA and the CMIA.

(medical information); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 926 (S.D. Cal. 2020) (same).

Second, "assessing the degree of offensiveness . . . presents a policy question that often evades resolution at the pleading stage." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) ("*Hubbard I*"); *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021) ("Whether [defendant's] collection and storage of location data . . . was highly offensive to a reasonable person is a question of fact.") (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020)).

Even so, Plaintiff has identified sufficient facts to survive a motion to dismiss because she pleads Defendant surreptitiously collected her protected health information and medical information in unexpected ways (and contrary to Defendant's express assertions in its policies). MTD Ex. 2, ECF No. 78-2, at 5; *Rusow v. SkinSpirit Essential LLC*, 3:24-cv-09317, ECF No. 44 (N.D. Cal. Oct. 15, 2025) (medical and cosmetic appointments were protected medical information under the CMIA and disclosure was highly offensive); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 801 ("Meta's policies forbid the transmission of health-related information, which the Ninth Circuit has found to be relevant in the 'highly offensive' inquiry" (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606)).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.

Dated: January 12, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _  /s/ Sarah N. Westcot_
Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave., Suite 2100
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

*Counsel for Plaintiff*