1 TIMOTHY K. BRANSON (SBN: 187242)
tbranson@grsm.com
2 GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
3 San Diego, CA 92101
Telephone: (619) 230-7441
4 Facsimile: (619) 696-7124

5 SARA ANDERSON FREY (pro hac vice)
sfrey@grsm.com
6 GORDON REES SCULLY MANSUKHANI, LLP
1717 Arch Street, Suite 610
7 Philadelphia, PA 19103
Telephone: (215) 717-4009
8 Facsimile: (215) 693-6650

9 Attorneys for Defendant
SPRING FERTILITY HOLDINGS, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.S., individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>SPRING FERTILITY HOLDINGS, LLC,<br><br>　　　　　　　Defendant. | Case No. 5:24-cv-07374-EJD<br><br>**DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Date: March 5, 2026<br>Time: 9:00 a.m.<br>Place: Courtroom 4<br><br>Action Filed: October 22, 2024 |

# TABLE OF CONTENTS

| | Page |
|---|---|
| I. INTRODUCTION | 1 |
| II. ARGUMENT IN REPLY | 1 |
|     A. Plaintiff Had No Reasonable Expectation Her Data Would Not Be Shared | 1 |
|     B. The Amended Complaint Fails to Plead Sufficient Facts Supporting an Inference that Spring Fertility's Primary Motive Was to Violate HIPAA | 3 |
|     C. The Amended Compaint Fails to Sufficiently Plead a Section CIPA Violation | 5 |
|         1. Plaintiff Fails to Sufficiently Allege Predicate Liability or the Requisite Intent | 5 |
|         3. The Court Should Apply the Vendor Exception | 6 |
|         4. Plaintiff's Conclusory Allegations Do Not Establish Interception of Contents of Communications While In Transit | 7 |
|     D. Plaintiff's Section 632 Claim Fails as a Matter of Law | 8 |
|         1. Section 632 Does Not Provide for Derivative Liability | 8 |
|         2. Plaintiff's Voluntary Internet Communications Are Not Confidential | 9 |
|     E. Plaintiff Has Failed to Allege Disclosure of Substantive Medical Information | 9 |
|     F. Plaintiff Had No Reasonable Expectation of Privacy and Cannot Seek Recovery Under the California Constitution | 10 |
| III. CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ................................................................................................................1

*B.K. v. Eisenhower Med. Ctr.*,
　Case No. EDCV 23-2092, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) ................................5

*Barbour v. John Muir Health*,
　No. C22-01693, 2023 WL 2618967 (Cal. Super. Jan 5, 2023) ................................................8

*California Mfrs. Ass'n v. Public Utils. Comm'n*,
　24 Cal.3d 836 (1979) ...............................................................................................................9

*Cousin v. Sharp Healthcare*,
　681 F. Supp. 3d 1117 (S.D. Ca. 2023) .....................................................................................6

*Doe v. Eating Recovery Ctr. LLC*,
　Case No. 23-cv-05561, 2025 WL 29710090 (N.D. Cal. Oct. 17, 2025) .........................5, 7, 8

*Doe v. Kaiser Foundation Health Plan, Inc.*,
　No. 23-cv-02865, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .............................................5

*Doe v. Talkiatry Mgmt. Svc., LLC*,
　__ F. Supp. 3d __, No. 5:25-cv-00781, 2026 WL 206483 (C.D. Cal. Jan. 22,
　2026) ........................................................................................................................................3

*Doe I v. Google LLC*,
　741 F. Supp. 3d 828 (N.D. Cal. 2024) .....................................................................................6

*In re Eastport Assocs.*,
　935 F.2d 1071 (9th Cir. 2022) ..................................................................................................9

*Eisenhower Med. Ctr. v. Superior Ct.*,
　226 Cal.App.4th 430 (2014) ...................................................................................................10

*Graham v. Noom, Inc.*,
　533 F. Supp. 3d 823 (N.D. Cal. 2021) .....................................................................................7

*Gray v. Luxottica of Am., Inc.*,
　Case No. 8:24-CV-00160, 2024 WL 5689566 (C.D. Cal. Dec. 16, 2025) .............................10

*Haage v. Zavala*,
　158 N.E.3d 1171, 1187 (Ill. App. 2020) ..................................................................................2

*Heerde v. Learfield Communications, LLC*,
　Case No. 2:23-cv-04493, 2024 WL 3573874 (C.D. Cal. July 19, 2024) .................................6

*Hill v. National Collegiate Athletic Ass'n*,
    7 Cal.4th 1 (1994) ...........................................................................................................10, 12

*In re Google Location Hist. Litig.*,
    428 F. Supp. 3d 185 (N.D. 2019)...........................................................................................11

*In re Guidant Corp. Implantable Defibrillators Litig.*,
    MDL No. 05-1708, 2009 WL 1921902 (D. Minn. July 1, 2009) ............................................1

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................................................................................11

*Kight v. CashCall, Inc.*,
    231 Cal.App.4th 112 (2014) ...................................................................................................9

*Opperman v. Path, Inc.*,
    205 F. Supp. 3d 1064 (N.D. Cal. 2016) ................................................................................11

*R.C. v. Walgreen Co.*,
    733 F. Supp. 3d 876 (C.D. Cal. 2024) ....................................................................................4

*Sheski v. Shopify (USA) Inc.*,
    Case No. 19-cv-06858, 2020 WL 2474421 (N.D. Cal. May 13, 2020) .................................11

*Smith v. YETI Coolers, LLC*,
    754 F. Supp. 3d 933 (N.D. Cal. 2024) ....................................................................................6

*Stoba v. Saveology.com, LLC*,
    No. 13-cv-2925, 2014 WL 3573404 (S.D. Cal. July 18, 2014) ..............................................8

*Tamraz v. Bakotic Pathology Assocs., LLC*,
    No. 22-cv-0725, 2022 WL 16985001 (S.D. Cal. Nov. 16, 2022)..........................................10

*Yang v. Amazon*,
    Case No. 2:23-cv-105572, 2024 WL 4339969 (C.D. Cal. Sept. 27, 2024) .............................2

**Statutes**

18 U.S.C. §2511(2)(d) ....................................................................................................................3

Cal. Penal Code §31........................................................................................................................6

Cal. Penal Code §631..............................................................................................................5, 6, 8, 9

Cal. Penal Code §632.................................................................................................................8, 9

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

Defendant Spring Fertility Holdings, LLC ("Spring Fertility") respectfully submits the following Reply Brief in Support of its Motion to Dismiss Plaintiff J.S.'s ("Plaintiff") Amended Complaint.

## I. INTRODUCTION

Plaintiff concedes that Spring Fertility's Cookie Banner provided constructive notice of its privacy policies. Nonetheless, Plaintiff argues she had a reasonable expectation that data would not be shared, despite the fact that Spring Fertility told Plaintiff exactly what data would be collected, how that data would be shared, and importantly, how she could opt out. Plaintiff did not, however, opt out, and instead, by her continued use of the Website, she agreed to the collection of her data. Her consent forecloses her claims.

Alternatively, Plaintiff's opposition to Spring Fertility's motion to dismiss—much like her Amended Complaint—is peppered with legal buzzwords. Her repeated references to terms such as "tracking," "sharing," "intercept," and "sensitive information," however, are not backed up with any substance. To survive a motion to dismiss, a complaint must contain sufficient *factual matter* to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 669 (2009); *see also In re Guidant Corp. Implantable Defibrillators Litig.,* MDL No. 05-1708, 2009 WL 1921902 (D. Minn. July 1, 2009) ("The use of buzzwords, coupled with only vague and conclusory allegations, is insufficient to withstand a motion to dismiss, especially in light of *[Iqbal and Twombly].*"). Because Plaintiff's Amended Complaint fails to set forth sufficient *facts* establishing any claims against Spring Fertility upon which relief may be granted, dismissal of all claims against Spring Fertility is warranted.

## II. ARGUMENT IN REPLY

### A. Plaintiff Had No Reasonable Expectation Her Data Would Not Be Shared

Plaintiff concedes that Spring Fertility's cookie banner provided reasonably conspicuous notice of its policies and that by continuing to use the Website, she agreed to the Cookies Policy. Opp. at p. 4, Doc. 81. Despite the fact, as this Court previously found, that "Spring Fertility's terms are so specific that there can be no reasonable expectation that the information provided to Spring Fertility is private," Doc. 71 at p. 19, Plaintiff argues that reasonable consumers would

-1-

understand their information would not be shared with third parties. Opp. at p. 4, Doc. 81. In doing so, Plaintiff argues that Spring Fertility violated its own policies, based on a tortured and cherry-picked interpretation of those policies. Plaintiff's arguments fail.

Plaintiff first argues that Spring Fertility violates its own definition of "personal information." Opp. at p. 5, Doc. 81. At the outset, there are no allegations in the Amended Complaint that Spring Fertility violated its own definition of "personal information" and for this reason alone, Plaintiff's argument fails. *See Yang v. Amazon*, Case No. 2:23-cv-10572, 2024 WL 4339969, at *2 (C.D. Cal. Sept. 27, 2024) (factual assertions not contained in complaint are not relevant and may not be considered by the district court). Even if this Court considers this "beyond the pleadings" assertion, it does not support Plaintiff's argument that she had no reasonable expectation her information would be shared.

Conveniently left out of Plaintiff's Opposition is the fact that Spring Fertility specifically sets forth the data that it collects, which includes "personal information" including "pregnancy or childbirth and related medical conditions" and "sexual orientation," *the very same information Plaintiff claims was improperly intercepted here*. 78-2 at p.3. Nonetheless, Plaintiff argues that the Court should ignore this transparent representation of what is collected because the policy also states that personal information does not include "health or medical information covered by" HIPAA and the CMIA. Opp. at p. 5, Doc. 81. Plaintiff does not, however, offer any authority to support a conclusion that the information Spring Fertility discloses it collects constitutes such health or medical information.[1] Simply calling something protected health information does not make it so and does not satisfy *Twombly*'s pleading standards.

Plaintiff next argues that because the Cookie Policy states targeting cookies do not store directly personal information, this somehow means Spring Fertility's patients reasonably expected that "personally identifiable information was not being shared with third-party advertising companies." Opp. at p. 6, Doc. 81. This argument is non-sensical in light of the

---

[1] HIPAA "does not protect all health information wherever it is found." *Haage v. Zavala*, 158 N.E.3d 1171, 1187 (Ill. App. 2020).

-2-
DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT      Case No. 5:24-cv-07374-EJD

clear and unambiguous representations throughout the policies that Spring Fertility uses personal information to deliver "targeted offers and acts through [its] Website [and] third-party site" and "may disclose . . . personal information to a third party for a business purpose." Doc. 78-2 at p. 5. Spring Fertility further provides that "cookies are placed on your computer" when vising the Website, including "Targeting Cookies" which are "set through [the] site by [Spring Fertility's] advertising partners" and are "used by those companies to build a profile of your interests and show you relevant adverts on other sites." *Id.* at pp. 10-11. Spring Fertility further advises that third-party cookies may be used to track your online activity" and warns that Spring Fertility has "no direct control over the information that is collected" by third party cookies. *Id.*

Spring Fertility could not be clearer about the personal information its collects (including the very same information Plaintiff alleges was intercepted here) and how it uses and shares that personal information. When the policies are viewed as a whole, it is undeniable that "there can be no reasonable expectation that the information provided to Spring Fertility is private." Doc. 71 at p. 19. Nothing in the Amended Complaint or Plaintiff's Opposition changes that conclusion.

**B.    The Amended Complaint Fails to Plead Sufficient Facts Supporting an Inference that Spring Fertility's Primary Motive was to Violate HIPAA**

Plaintiff does not dispute that the Electronic Communications Privacy Act (ECPA) is a one-party consent statute such that there can be no liability where one of the parties has given consent prior to the interception. *See* 18 U.S.C. § 2511(2)(d). Instead, Plaintiff attempts to save her ECPA claim from inevitable dismissal by relying on the crime-tort exception. Opp. at p. 11, Doc. 81. Because Plaintiff has failed to sufficiently plead facts establishing Spring Fertility's *primary motive* was an *independent* criminal act, her claim cannot be revived.

To survive a motion to dismiss, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording or interception itself." *Doe v. Talkiatry Mgmt. Svcs., LLC ("Talkiatry Mgmt.")*, __ F. Supp. 3d __, No. 5:25-cv-00781, 2026 WL 206483, at *2 (C.D. Cal. Jan. 22, 2026) (emphasis in original). Plaintiff argues that her

-3-

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

allegations that Spring Fertility violated Plaintiff's privacy and the CMIA and HIPAA are sufficient to plausibly plead the crime-tort exception. Opp. at p. 11, Doc. 81. Not so.

The court in *Talkiatry Mgmt.* recently rejected that same argument. There, the plaintiff, like Plaintiff here, alleged that the defendant engaged in an illegal interception of individually identifiable health information to a third party in violation of HIPAA. 2026 WL 206483, at *2. The plaintiff, like Plaintiff here, further alleged that the defendant did so to bolster its own advertising and gain a benefit. *Id.* The court granted the defendant's motion to dismiss, finding that the complaint "does not adequately allege Defendant's purpose to commit an independent criminal or tortious act to overcome the party exemption to ECPA liability." *Id.* at *3. In doing so, the court found that the complaint failed to allege that the defendant "intercepted and/or disclosed this information with violations of HIPAA as the '*primary motivation or a determining factor.*'" *Id.* (quoting *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024)) (emphasis added). The court further noted that the conduct alleged was not "*per se* unlawful" because HIPAA allows organization to use third-party tracking tools. *Id.* Moreover, the court remarked that "other district courts have found that mere collection of personal information for market research and advertising was not for the purpose of committing a crime or tort." *Id.*

Like the plaintiff in *Talkiatry Mgmt.*, Plaintiff here fails to allege sufficient facts demonstrating that violating HIPAA was Spring Fertility's "primary motive or a determining factor." 2026 WL 206483, at *3. To the contrary, Plaintiff repeatedly alleges throughout the Amended Complaint that Spring Fertility purposed in utilizing tracking technologies is "advertising." *See, e.g.* Doc. 75 at ¶13 ("for advertising purposes), ¶78 ("for targeted advertising purposes"), ¶ 105 ("for targeted advertising purposes"), ¶138 ("for targeted advertising purposes"). Plaintiff's boilerplate, conclusory allegations that Spring Fertility utilized pixels for the purpose of "committing a criminal or tortious act" and "invading . . . privacy" fall short of the requirement of "plead[ing] sufficient facts" to support a finding that Spring Fertility's primary purpose was violating HIPAA or invading Plaintiff's privacy." *Talkiatry Mgmt.* 2026 WL 206483, at *2.

The cases relied upon by Plaintiff are distinguishable and contradict this Court's holding

-4-
DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT                                      Case No. 5:24-cv-07374-EJD

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

in *Doe v. Kaiser Foundation Health Plan, Inc.*, No. 23-cv-02865, 2024 WL 1589982, at (N.D. Cal. Apr. 11, 2024) (holding allegations that defendant violated HIPAA and tortiously collected information without consent insufficient to invoke crime-tort exception). Moreover, in *B.K. v. Eisenhower Med. Ctr.*, Case No. EDCV 23-2092, 2024 WL 2037404, at *4 (C.D. Cal. Apr. 11, 2024), the court *granted* the defendant's motion to dismiss, finding that the plaintiff's allegations that the defendant violated HIPAA were "far too vague" to satisfy the requirements of the crime-tort exception.

Because the Amended Complaint fails to allege sufficient facts supporting an inference that Spring Fertility's primary motive was violating HIPAA or invading privacy, Count I must be dismissed.

### C. The Amended Complaint Fails to Sufficient Plead a Section 631 CIPA Violation

Because CIPA is a criminal statute, it is to be "narrowly construed" and the "rule of lenity" should be applied in resolving any ambiguity. *Doe v. Eating Recovery Ctr. LLC ("Eating Recovery Ctr.")*, Case No. 23-cv-05561, 2025 WL 29710090, at *1, *6 (N.D. Cal. Oct. 17, 2025) ("courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation"). With that guidance, it is clear Plaintiff has failed to establish an entitlement to recovery under Section 631.

#### 1. Plaintiff Fails to Sufficiently Allege Predicate Liability and the Requisite Intent

The Amended Complaint fails to allege sufficient facts establishing a predicate violation of Section 631 by Facebook or LinkedIn and fails to allege sufficient facts establishing that Spring Fertility possessed the requisite knowledge and intent to support an aiding and abetting claim.

Plaintiff cites to various allegations in the Complaint to argue she has pleaded conduct violative of Section 631 on the part of Facebook and LinkedIn. Opp. at p. 13, Doc. 81. These conclusory allegations, however, are insufficient to establish predicate liability on the part of Facebook or LinkedIn. Nowhere does Plaintiff allege facts establishing Facebook or LinkedIn

-5-

sought, solicited, or used any health information shared by Spring Fertility. At best, the Complaint sets forth "hypothetical" examples of how Facebook or LinkedIn "***could*** target ads to [individuals] who have shared communications." *Doe I v. Google LLC ("Doe I")*, 741 F. Supp. 3d 828, 836 (N.D. Cal. 2024) (emphasis added). There are no facts pleaded, however, establishing that they actually did.

Plaintiff tries to distinguish the cases cited by Spring Fertility on grounds those cases apply a common law definition of aiding and abetting. Opp. at p. 14, Doc. 81. As discussed in Spring Fertility's Opening Brief, courts interpreting California law—including this Court—have applied the common law definition of aiding and abetting to claims under the fourth clause of Section 631. *See* Doc. 76 at pp. 16-17. The case law cited by Plaintiff does not support her position. For example, in *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1129-30 (S.D. Ca. 2023) the court disregarded the defendant's intent argument on the basis that the defendant "provide[d] no case law requiring the court to analyze 'aids, agrees with, employs, or conspires with' as solely 'aiding and abetting.'" By contrast, Spring Fertility has provided this Court with several cases holding that Section 631 "does require some level of knowledge and intent." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024).

"There is nothing inherently unlawful" with third parties offering source code to health care providers. *Doe I*, 741 F. Supp.3d at 841. The Amended Complaint fails to set forth sufficient facts showing otherwise. As such, dismissal is warranted.

### 2. The Court Should Apply the Vendor Exception

As Spring Fertility acknowledged in its Opening Brief, there is a "split among courts regarding . . . communications between internet users and developers of websites who track or record user data," with some courts considering "a software developers' *intentions* with respect to the use of the collected information" and others considering "whether a developer has the *capability* to sue the information for any purpose other than to furnish the communications to the website owner." *Heerde v. Learfield Communications, LLC*, 741 F. Supp. 3d 849, 860 (C.D. Cal. 2024) (emphasis in original). For the reasons set forth in Spring Fertility's Opening Brief, this Court should follow the holdings of those courts that have held vendors such as Facebook

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT    Case No. 5:24-cv-07374-EJD

and LinkedIn are not third parties.

Regardless, however, Plaintiff cites to various allegations in her Amended Complaint to support her argument that she has sufficiently pleaded that Facebook and LinkedIn are third parties. Opp. at p. 15, Doc. 81. Completely absent from the Amended Complaint, however, are any plausible allegations that Spring Fertility used Facebook and LinkedIn as anything more than a "tool . . . that allow[ed] [it] to record and analyze its own data in aid of [Spring Fertility's] business," which cannot support aiding and abetting liability. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021). Indeed, Plaintiff concedes that the Facebook Tracking Pixel and LinkedIn Insight Tag are tools. *See, e.g.,* Doc. 75 at ¶¶ 42-44 and p. 15. Moreover,

As such, Plaintiff's CIPA claim should be dismissed.

### 3. Plaintiff's Conclusory Allegations Do Not Establish Interception of Contents of Communications While In Transit

In arguing she has adequately pleaded her communications were intercepted "in transit," Plaintiff cites to various boilerplate and conclusory allegations that she claims "detail[] exactly how the Meta Pixel and LinkedIn Insight Tag allow the Third Parties to intercept communications contemporaneously and concurrently as they travel between Plaintiff's device and [Spring Fertility's] Website." Opp. at p. 17, Doc. 81. Allegations concerning *how* something works do not equate to sufficient allegations establishing a statutory violation.

Moreover, even accepting Plaintiff's conclusory allegation that Facebook "directs the user's browser to contemporaneously send a separate message to Facebook's servers," information is "contemporaneously intercept[ed] and record[ed]," Doc. 75 at ¶ 44, as true, this is not enough. This Court has adopted a narrow reading of "in transit." *Eating Recovery Ctr.*, 2025 WL 29710090, at *6 (noting that "using a third-party company to perform data analytics is worlds different from wiretapping and eavesdropping"). Facebook "must do something more than just intercept the communication while it is in transit to be held liable." *Id.* Plaintiff does not allege anything more and in fact, concedes that is only "**[a]fter**" information is collected that "Facebook processed, analyzed, and assimilated it into datasets." Doc. 75 at ¶ 53 (emphasis added). "A filtering process that simply sorts out certain data—which may be better analogized

-7-

to sorting mail than to reading it—can't fairly be characterized an effort of understanding the meaning of the communication." *Eating Recovery Ctr.*, 2025 WL 29710090, at *5. Such process "indisputably takes place after the communication has already traveled from the website visitor to the website operator" and thus, does not support liability under Section 631(a).

While Plaintiff cites to a handful of cases she claims support her allegations, Spring Fertility submits that the holding of the California Superior Court in *Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967 (Cal. Super. Jan 5, 2023) is well-reasoned and should be followed by this Court for the reasons stated in Spring Fertility's Opening Brief.

### D. Plaintiff's Section 632 Claim Fails as a Matter of Law

Plaintiff's Opposition fails to overcome Spring Fertility's showing the Section 632 claim must be dismissed because Section 632 does not provide for derivative liability and because Plaintiff has failed to establish her communications were confidential.

#### 1. Section 632 Does Not Provide for Derivative Liability

Plaintiff does not dispute the absence of any language in Section 632 permitting a claim based on derivative liability. Instead, Plaintiff attempts to fashion a derivative liability claim under Section 632 through Section 31 of the Penal Code. Section 31 simply defines the term "principals" and states that "[a]ll persons concerned in the commission of a crime . . . whether they directly commit the act constituting the offense, or aid and abet in its commission. . . are principals in any crime so committed." Cal. Penal Code § 31. Initially, Plaintiff did not bring a claim under Section 31; rather, her claim is brought under Section 632. In any event, Section 31, which relate to "the commission of a **crime**," Cal. Penal Code § 31 (emphasis added), does not apply to offenses committed under Section 632 where a plaintiff seeks **civil** damages. *See Stoba v. Saveology.com, LLC*, No. 13-cv-2925, 2014 WL 3573404, at *4 (S.D. Cal. July 18, 2014) (finding Section 31's "criminal standards do not apply to Plaintiffs' §§ 632 and 632.7 *civil* causes of action") (emphasis in original)).

Moreover, Section 632 does not expressly provide for the same derivative liability provided for in Section 631. Accepting Plaintiff's interpretation would violate the rules of statutory construction providing that "statutes should be construed to give their terms meaning

-8-
DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT   Case No. 5:24-cv-07374-EJD

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

and effect, avoiding 'interpretive constructions which render some words surplusage.'" *In re Eastport Assocs.*, 935 F.2d 1071, 1080 (9th Cir. 1991) (quoting *California Mfrs. Ass'n v. Public Utils. Comm'n*, 24 Cal.3d 836, 844 (1979)). The cases relied on by Plaintiff do not follow the plain language of Section 632 and are, therefore, not persuasive or dispositive.

Even assuming, however, that Section 632 permitted Plaintiff to bring a claim against Spring Fertility for allegedly aiding and abetting Facebook's and LinkedIn's purported violation of Section 632, this claim necessarily fails for the same reasons Plaintiff's aiding and abetting claim fails under Section 631.

### 2. Plaintiff's Voluntary Internet Communications Are Not Confidential

Plaintiff does not contest that California does not recognize an expectation of privacy regarding internet communications. Opp. at p. 19, Doc. 81. Nor does Plaintiff set forth any "unique, definite circumstances" to rebut against the presumption against online confidentiality. *Id.* Instead, Plaintiff simply argues that the information is protected health information. Plaintiff offers no authority holding that health information provided on a public website is per se confidential under Section 632.

Furthermore, whether a communication is confidential is based on "the surrounding circumstances," including "the party's own conduct." *Kight v. CashCall, Inc.*, 231 Cal.App.4th 112, 133 (2014). As discussed above, Plaintiff had reasonably conspicuous notice of Spring Fertility's policies. By continuing to utilize the Website after being presented with the cookie banner, she consented to the challenged conduct and had no reasonable expectation her voluntarily provided information would be kept confidential.

### E. Plaintiff Has Failed to Allege Disclosure of Substantive Medical Information

Plaintiff argues that the inclusion of "reproductive or sexual health application information" in the CMIA's definition of medical information is fatal to Spring Fertility's argument that she has failed to allege facts supporting her CMIA claim. Opp. at p. 21, Doc. 81. Not true.

The medical information covered by CMIA does not "'mean just any patient-related information held by a health care provider, but must be 'individually identifiable information'

-9-

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT   Case No. 5:24-cv-07374-EJD

and also include 'a patient's medical history, mental or physical condition, or treatment.'" *Gray v. Luxottica of Am., Inc.*, Case No. 8:24-CV-00160, 2024 WL 5689566, at *8 (C.D. Cal. Dec. 16, 2024) (quoting *Eisenhower Med. Ctr. v. Superior Ct.*, 226 Cal.App.4th 430, 435 (2014)). The definition of medical information, therefore, "'does not encompass demographic or numeric information that does not reveal medical history, diagnosis, or care.'" *Id.* (quoting *Eisenhower*, 226 Cal.App.4th at 435). Nor does it apply simply because a person was a patient at the facility at some point in time. *Id.* "In other words, 'the information must be 'substantive,' rather than merely administrative.'" *Id.* (quoting *Tamraz v. Bakotic Pathology Assocs., LLC*, No. 22-cv-0725, 2022 WL 16985001, at *4 (S.D. Cal. Nov. 16, 2022)) (noting "appointment information is not medical information"). In *Gray*, the court held that data related to the type of treatment sought did not constitute medical information under the CMIA. *Id.* at *9.

The fact that Plaintiff sought fertility treatment does not constitute substantive medical information within the meaning of the CMIA. Accordingly, Plaintiff has not identified any medical information that may serve as the subject of her CMIA claim.

### F. Plaintiff Had No Reasonable Expectation of Privacy and Cannot Seek Recovery Under the California Constitution

Plaintiff's Opposition focuses primarily on her claim that she has a significant privacy interest in her fertility journey. Opp. at p. 22, Doc. 81. The right of privacy afforded by the California Constitution only protects an individual's *reasonable expectation* of privacy against a serious invasion. *Hill v. National Collegiate Athletic Ass'n*, 7 Cal.4th 1, 36-37 (1994). Because Plaintiff has failed to establish she had a *reasonable expectation* of privacy, she cannot recover.

Courts considering whether there is a reasonable expectation of privacy "must take into account any accepted community norms," including the "customs, practices, and physical settings surrounding particular activities" as well as "the presence or absence of opportunities to consent voluntarily to activities impacting privacy interests." *Id.* Moreover, a plaintiff seeking to recover for an alleged invasion of privacy "must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant." *In re Yahoo Mail*

DEFENDANT SPRING FERTILITY HOLDINGS, LLC'S REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT      Case No. 5:24-cv-07374-EJD

*Litig.*, 7 F. Supp. 3d 1016, 1037-38 (N.D. Cal. 2014); *see also Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) (where "voluntary consent is present, a defendant's conduct will rarely be deemed highly offensive to a reasonable person") (citation omitted).

Here, Plaintiff concedes she *voluntarily* provided the information in question while on notice of its collection, and, as such, manifested her consent to the collection of this information. Plaintiff was on notice that the information at issue may be collected when she engaged in the purported communication with Spring Fertility's website. She was presented with persistent and hovering Cookie Banner advising that by her continued use of the website, she agreed to the terms of the hyperlinked Cookie Policy. Doc. 75 at ¶ 108, Branson Decl. at ¶ 2 and Ex. 1, Doc. 78, 78-1. Spring Fertility's policies explicitly disclose that it collects certain personal information—including medical conditions and sexual orientation—and that this personal information may be provided to third parties. Branson Decl. at Ex. 2 at pp. 3-5, Doc. 78-2. Spring Fertility also explicitly discloses its use of targeting cookies which are used by third parties to provide users with targeted advertisements. *Id*. at p. 11. After being provided with this information, Plaintiff continued to use the website, including to allegedly book a consultation. Doc. 75 at ¶ 7.

There can be no reasonable expectation of privacy in information that is voluntarily shared, where, as here, the information was collected only for Spring Fertility's use and was used for only the purposes Spring Fertility disclosed. *See, e.g., Sheski v. Shopify (USA) Inc.*, No. 19-cv-06858, 2020 WL 2474421, at *6 (N.D. Cal. May 13, 2020) (even voluntarily supplying information that is then used for purposes *beyond* what was expected when the information was supplied "does not rise to the level of being 'highly offensive to a reasonable person'" (citation omitted)); *see also In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198-99 (N.D. Cal. 2019) (dismissing invasion of privacy claims because Google's "profile" of a user was "only as specific as their" voluntary "use of Google services"); *Opperman*, 205 F. Supp. 3d at 1072 ("[A] plaintiff cannot have a reasonable expectation of privacy if she consented to the intrusion."). Here, Plaintiff *voluntarily* interacted with and provided information to Spring Fertility, after receiving notice via the Cookie Banner that her continued use constituted assent to

-11-

1 the Cookie Policy. As such, she had no reasonable expectation of privacy.

2 Finally, Plaintiff also argues that it would be premature for the Court to determine whether an alleged invasion of privacy is highly offensive. This argument ignores the high bar a plaintiff asserting a Constitutional invasion of privacy must meet. This permits a court to weed out insignificant intrusions of privacy. *See Hill*, 7 Cal.4th at 37 (noting impact on a plaintiff's privacy rights must be more than "slight or trivial").

## III. CONCLUSION

For the foregoing reasons, Defendant Spring Fertility Holdings, LLC respectfully requests this Honorable Court dismiss all claims against it with prejudice.

Respectfully submitted,

Dated: February 9, 2026

GORDON REES SCULLY MANSUKHANI, LLP

By: /s/ Sara Anderson Frey
Sara Anderson Frey (pro hac vice)
Timothy K. Branson
Attorneys for Defendant
SPRING FERTILITY HOLDINGS, LLC

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101