United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| J.S.,<br><br>Plaintiff,<br><br>v.<br><br>SPRING FERTILITY HOLDINGS, LLC, et al.,<br><br>Defendants. | Case No. 5:24-cv-07374-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 76 |

Before the Court is Spring Fertility's second motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Mot., ECF No. 76; Opp'n, ECF No. 81; Reply, ECF No. 82. After carefully reviewing the relevant documents, the Court finds this motion suitable for decision without oral argument pursuant to Local Rule 7-9(b). For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** Spring Fertility's motion.

## I.       BACKGROUND

As the Court detailed in its October 10, 2025, order granting Spring Fertility's first motion to dismiss ("Prior Order"),[1] J.S. alleges that Spring Fertility embedded the LinkedIn Insight Tag and Facebook Tracking Pixel technology on its website, thereby allowing LinkedIn and Meta to intercept users' confidential medication information for advertising purposes without their consent. *See* Prior Order, ECF No. 71.

The Insight Tag and Tracking Pixel are pieces of JavaScript-based code that advertisers

---

[1] Plaintiff previously included Meta and LinkedIn as Defendants in the initial complaint. Compl., ECF No. 1. But the only Defendant named in the FAC is now Spring Fertility.

can install on their websites. *See* First Am. Compl. ("FAC") ¶¶ 38–74, ECF No. 75. When a LinkedIn or Facebook user accesses the advertisers' website, the Insight Tag and Tracking Pixel cause the users' internet browser to send information about their actions on the website to LinkedIn and Meta. *Id.* LinkedIn and Meta then use that data to identify the user and provide insights to the advertiser about its audience. *Id.*

Spring Fertility is a healthcare provider that offers fertility services and treatments and uses the LinkedIn Insight Tag and Facebook Tracking Pixel on its website. *Id.* ¶ 13. Patients are encouraged to schedule consultations for fertility services on its website. *Id.* ¶ 76. When a patient clicks a "BOOK A CONSULT" button, they are brought to another page and directed to enter various pieces of personal information, including first and last name, date of birth, sex assigned at birth, gender as described in the patient's own words, email, and phone number. *Id.* ¶ 80. The next page asks the patient to choose a state in which to be seen, *id.* ¶ 81, then choose which fertility services they seek (fertility treatment, egg freezing, or embryo freezing), *id.* ¶ 82. The next page requests the patient to identify whether they are in a "heterosexual relationship," "same-sex relationship," or "single parent by choice." *Id.* ¶ 83. The final pages ask for more details to book the appointment, including the patient's address, need for an interpreter, partner's name, date of birth, email, and phone number, and whether the patient has fertility-specific insurance. *Id.* ¶¶ 84–85. J.S. alleges that the Insight Tag and Tracking Pixel allowed LinkedIn and Meta to intercept this data.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

Case No.: 5:24-cv-07374-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOT. TO DISMISS
2

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. at 678. If the court concludes that a Rule 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III. DISCUSSION

The Court will first address the threshold issue of consent before examining J.S.'s claims under the Electronic Communications Privacy Act ("ECPA"); California Invasion of Privacy Act ("CIPA") § 631; CIPA § 632; California Confidentiality of Medical Information Act ("CMIA"); and California Constitution Invasion of Privacy.

### A. Consent

As the Court stated in its Prior Order, J.S.'s claims hinge on whether she consented to Spring Fertility sharing her data with LinkedIn and Meta. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 619 (N.D. Cal. 2021) (collecting cases).

The Court previously dismissed J.S.'s claims against Spring Fertility because it found Spring Fertility's disclosures sufficiently notified her that it would share her data with third parties. For a defendant to show consent through disclosures, the disclosures must "explicitly notify" users of the practice at issue and must have only one plausible interpretation. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 794 (N.D. Cal. 2019); *see also In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 190 (N.D. Cal. 2019) ("Consent is only effective if the person alleging harm consented to 'the particular conduct, or to substantially the same conduct' and if the alleged tortfeasor did not exceed the scope of that consent."). While there may be "subtle differences" among consent doctrines, "the question under [each] is essentially the same: Would a reasonable user who viewed [the defendant's] disclosures have understood that [it] was collecting [the information at issue]?" *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014).

Case No.: 5:24-cv-07374-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOT. TO DISMISS
3

United States District Court
Northern District of California

In its Prior Order, the Court found the Privacy Notice sufficiently informed users that Spring Fertility collects their personal information—including age, race, marital status, medical condition, gender identity, sexual orientation, date of birth, genetic, characteristics, and a user's preferences, behavior, and aptitudes—and may disclose this information "to a third party for a business purpose." The Cookies Policy also disclosed that Spring Fertility uses "Targeting Cookies," which it describes as technology placed on its website by advertising partners to build a profile of the user's interests and show the user relevant advertisements on third-party websites. The Court found these disclosures explicitly notified J.S. of the data collection practices at issue here, and by continuing to use the site, she consented to the collection of her data.

The Court finds J.S. has cured this deficiency. The FAC now specifically alleges that J.S. had a reasonable expectation in *anonymized* data sharing.[2] Although J.S. recognizes the Privacy Notice and Cookie Policy disclose that Spring Fertility will collect users' personal data, J.S. now alleges the Cookie Policy also contains a conflicting representation—that its targeting cookies "do not store directly personal information, but are based on uniquely identifying your browser and internet device." FAC ¶ 111.[3] This changes the Court's analysis. The Court previously found that the Privacy Notice and Cookie Policy were "so specific that there can be no reasonable expectation that the information provided to Spring Fertility is private." Prior Order 19. But if users were also told that all the information shared would be anonymized, then that could lead to a reasonable expectation that their personally identifying data would not be shared. In other words, there is no longer only one plausible interpretation of Spring Fertility's disclosures. *See In re*

---

[2] Spring Fertility argues this is not a new allegation, citing the prior complaint's allegation that "Spring Fertility's privacy policy expressly warrants that it will not assist a third party with intercepting communications that are paired with personally identifiable information." Compl. ¶ 110. But the FAC describes this theory for expectation of privacy with greater clarity, and the Court did not examine any arguments regarding the expectation of anonymized data in its Prior Order.

[3] The FAC also includes a new background section titled "health information is sensitive and confidential" that discusses HIPAA protection, FAC at 6, and J.S. newly alleges that, because she did not expressly authorize the disclosure of HIPAA information, there was no reasonable expectation that HIPPA information would be shared. *Id.* ¶ 115. In the opposition, though not in the complaint, J.S. also argues that Spring Fertility violates its own definition of "personal information," which excludes HIPAA-protected information.

Case No.: 5:24-cv-07374-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOT. TO DISMISS
4

United States District Court
Northern District of California

*Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 794. To the extent that the anonymized data clause in the Cookie Policy conflicts with the Privacy Policy's disclosures discussed in the Prior Order, the impact of that conflict on a reasonable consumer's expectation of privacy is a question of fact inappropriate for a Rule 12(b)(6) motion.

The Court therefore no longer finds consent fatal to J.S.'s claims for the purposes of a motion to dismiss.

### B. ECPA

To state a claim under the ECPA, a plaintiff must allege the defendant "(1) intentionally (2) intercepted (3) the contents of (4) plaintiffs' electronic communications (5) using a device." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1075 (N.D. Cal. 2023).

The ECPA is a one-party consent statute, meaning that there is no liability where "one of the parties to the communication has given prior consent" to the interception. 18 U.S.C. § 2511(2)(d). There is one exception, however, when a "communication is intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). This is called the "crime-tort" exception, and it requires "sufficient evidence to show '*the purpose* for the interception—its intended use—was criminal or tortious.'" *Doe I v. Google LLC*, No. 23-CV-02431-VC, 2023 WL 6882766, at \*2 (N.D. Cal. Oct. 18, 2023) (quoting *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)) (emphasis in original). "It is not enough for the interception itself to have violated the law, the interception must be 'done for the purpose of facilitating some further impropriety'" for the crime-tort exception to apply. *Id.* In other words, a plaintiff "must allege that either the 'primary motivation or a determining factor in [the defendant's] actions has been to injure plaintiffs tortiously." *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880 (S.D. Cal. 2025) (internal quotation marks and citations omitted) (quoting *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022)).

Here, Spring Fertility consented to sharing its users' data with LinkedIn and Meta, thus J.S.'s claim may only proceed if she sufficiently pleads the crime-tort exception. The Court finds J.S. failed to meet this requirement. Other than reciting the requirements of the crime-tort

Case No.: 5:24-cv-07374-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOT. TO DISMISS
5

exception—"Defendant intercepted and disclosed Plaintiff's protected communications for the purpose of committing criminal and tortious acts, including violations of federal and state law," FAC ¶ 2—the only "purpose" J.S. alleges throughout the FAC is financial gain. *Id.* ¶ 13 ("for advertising purposes), ¶ 78 ("for targeted advertising purposes"), ¶ 105 ("for targeted advertising purposes"), ¶138 ("for targeted advertising purposes").  However, the Court agrees with multiple others in this district that have found the crime-tort exception is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously.  *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (collecting cases).  Although J.S. argues in her opposition that the primary unlawful purpose here was to violate HIPAA and invade J.S.'s privacy, this is not sufficiently pled in the FAC.  *See Doe v. Talkiatry Mgmt. Servs., LLC*, 816 F. Supp. 3d 1206, 1210 (C.D. Cal. 2026) ("[N]owhere in the SAC do the facts suggest that Defendant intercepted and/or disclosed this information with violations of HIPAA as the 'primary motivation or a determining factor.'").[4]

Accordingly, the Court finds the crime-tort exception is insufficiently pled and therefore **GRANTS** Spring Fertility's motion to dismiss J.S.'s ECPA claim with leave to amend.

### C.  CIPA § 631

CIPA § 631 contains four independent clauses, and J.S. premises her claim on Clause Four.  Clause Four imposes liability when a person "aids, agrees with, employs, or conspires with any person" to violate the statute.  Cal. Penal Code § 631(a).

Spring Fertility argues the Court should dismiss this claim because: (1) there are insufficient facts to show a predicate violation of § 631 by Meta or LinkedIn; (2) there are insufficient facts to show Spring Fertility possessed the requisite knowledge and intent to support an aiding and abetting claim; (3) the vendor exception applies; and (4) there are insufficient facts to satisfy the "in-transit" requirement.

---

[4] Given the insufficient facts pled, the Court makes no finding regarding whether the purpose of violating HIPPA or invading privacy qualifies under the crime-tort exception at this time.

United States District Court
Northern District of California

### 1. Predicate Violation

First, Spring Fertility argues J.S. failed to plead Meta and LinkedIn themselves committed a predicate violation of § 631, instead focusing all allegations on Spring Fertility's conduct. For example, Spring Fertility cites to allegations that it "chose to include the Facebook Tracking Pixel on its Website," FAC ¶ 45, and it "utilized the Facebook Tracking Pixel and LinkedIn Insight Tag," *id.* ¶ 77.

The Court disagrees. As J.S. highlights, the FAC also includes allegations specific to Meta and LinkedIn, including: (1) the Tracking Technologies operate by causing J.S.'s browser to secretly duplicate her communications with Spring Fertility and transmit them contemporaneously to Meta and LinkedIn's servers, *id.* ¶¶ 44, 52–53, 63–67, 86–106; (2) Meta and LinkedIn receive, process, analyze, and assimilate the intercepted information into advertising datasets, including "Core Audiences," "Custom Audiences," and "Lookalike Audiences" for Meta, and advertising analytics for LinkedIn, *id.* ¶¶ 39–41, 53, 55–58; and (3) Meta and LinkedIn use this information for their own independent advertising purposes, not merely to provide a service to Spring Fertility, *id.* ¶¶ 10, 49–53, 57–59, 183. The Court finds that these allegations are sufficiently tailored to Meta and LinkedIn's conduct for purposes of pleading their involvement in a predicate § 631 violation.

### 2. Aiding and Abetting

Next, Spring Fertility argues there are insufficient facts pled to show Spring Fertility had the requisite intent to aid and abet.

As an initial matter, the Court rejects Spring Fertility's position that § 631 must be analyzed narrowly under the common law definition of "aiding and abetting." Spring Fertility argues J.S. must allege facts to show Spring Fertility "aided and abetted" LinkedIn and Meta's unlawful receipt of data, which according to Spring Fertility, requires specific intent. But § 631 creates liability to any person who "aids, agrees with, employs, *or* conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." Cal. Penal Code § 631(a). Spring Fertility has provided insufficient support for

the proposition that this language, which merely includes "aids" in a list of four different types of conduct, implies the specific intent requirement for aiding and abetting under California common law. However, the Court agrees that "other language in § 631(a)'s fourth clause does require *some* level of knowledge and intent." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933 (N.D. Cal. 2024) (emphasis added). Namely, § 631's prohibition on aiding, agreeing with, employing, or conspiring "*to* unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section" suggests the statute requires at least knowledge that the third parties' conduct would violate the statute. *Id.*

The Court finds the FAC meets this standard. J.S. alleges Spring Fertility purposefully disclosed J.S.'s legally protected PII, PHI, and medical information to LinkedIn and Meta, knowing it had no lawful basis to disclose such data. FAC ¶¶ 23–36, 114. Spring Fertility's knowledge that this conduct is prohibited specifically by § 631 flows from the principle that every citizen is presumed to know the law. *See, e.g., Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 266 (2020).

### 3. Vendor Exception

Spring Fertility also argues the vendor exception is fatal to J.S.'s claims because LinkedIn and Meta are merely third-party vendors. However, Spring Fertility admittedly raises this argument only to "preserve the record." As Spring Fertility recognizes, the Court already held in its Prior Order that LinkedIn was not a third-party vendor. Prior Order, 25–26. The Court incorporates that analysis and reaches the same conclusion here.

### 4. While "In Transit"

To meet the "in transit" requirement, J.S. must allege that LinkedIn and Meta read their communications during their transmission, as opposed to once the communications were placed in electronic storage. *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1125 (C.D. Cal. 2024). That is, they must plead specific facts about "when the interception occurs." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 746 (N.D. Cal. 2023). J.S. need not prove her theory of interception to survive dismissal, but she must "provide fair notice to [LinkedIn] of when they

Case No.: 5:24-cv-07374-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOT. TO DISMISS
8

believe [LinkedIn] intercepts their communications." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017); *see also Esparza v. Gen Digital Inc.*, No. CV 23-8223-KK-AGRX, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) (dismissing CIPA claims where "Plaintiff fail[ed] to allege specific facts about . . . when the interception took place, and how the interception took place").

The Court finds J.S. failed to meet this standard. The Court indicated in its Prior Order that general allegations that the Insight Tag, for example, sends LinkedIn data "'[w]hen a user who has signed in to LinkedIn . . . is browsing a website' and that LinkedIn begins 'tracking their activity the moment they entered [the websites]'" are insufficient to allege that LinkedIn intercepted and read the communications in real time. Prior Order 29–30 (citations omitted). Granted, the Court was discussing allegations made in a related case, but the complaint there and the FAC here contain nearly identical allegations, authored by the same counsel. The FAC makes no meaningful changes in allegations regarding the "in transit" requirement, and J.S. failed to address the Court's prior holding and explain how the FAC overcomes the deficiencies previously identified.

The Court therefore finds J.S. failed to sufficiently plead "in transit" and on that basis **GRANTS** the motion to dismiss the § 631 claim with leave to amend.

### D.      CIPA § 632

Spring Fertility argues that J.S.'s § 632 claim fails simply because there is no derivative liability under this section, unlike § 631, which explicitly includes a derivative liability clause.

J.S. acknowledges derivative liability is not included in the language of the statute, but argues the Court can nevertheless apply derivative liability through California Penal Code § 31, which defines the term "principals" and states that "[a]ll persons concerned in the commission of a crime . . . whether they directly commit the act constituting the offense, or aid and abet in its commission. . . are principals in any crime so committed." Cal. Penal Code § 31.

The Court is not persuaded that § 31 saves J.S.'s claims for derivative liability. The plain language of § 631 allows for derivative liability, and the language of § 632 does not. Though § 31

Case No.: 5:24-cv-07374-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOT. TO DISMISS
9

applies in criminal cases, there is no binding or persuasive authority holding it applies in civil cases as well. *See In re Eastport Assocs.*, 935 F.2d 1071, 1080 (9th Cir. 1991) ("[S]tatutes should be construed to give their terms meaning and effect, avoiding 'interpretive constructions which render some words surplusage.'") (*quoting California Mfrs. Ass'n v. Public Utils. Comm'n*, 24 Cal.3d 836, 844 (1979)).[5] And regardless, J.S. has not pled derivative liability under Penal Code § 31 in the FAC.

Therefore, because the Court finds no derivative liability available under § 632, the Court **GRANTS** Spring Fertility's motion to dismiss this claim without leave to amend.

### E.     CMIA

California Civil Code § 56.10 provides: "A provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization." Cal. Civ. Code § 56.10(a).

Spring Fertility argues J.S.'s CMIA claim fails because she did not allege facts showing qualifying "medical information" has been transmitted. The CMIA defines "medical information" as:

> any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment.

*Id.* § 56.05(j). In other words, "medical information" under the CMIA is "substantive information regarding a patient's medical condition or history that is combined with individually identifiable information." *Eisenhower Med. Ctr. v. Superior Ct.*, 226 Cal. App. 4th 430, 434 (2014).

The Court disagrees and finds J.S. sufficiently alleged qualifying "medical information."

---

[5] The Court acknowledges some tension between other district court orders on this issue. *See Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709-RFL, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025) ("Nothing in the language of CIPA explicitly limits the application of section 31.") (citing *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 963 (S.D. Cal. 2011); *contra Stoba v. Saveology.com, LLC*, No. 13-CV-2925-BAS NLS, 2014 WL 3573404, at *4 (S.D. Cal. July 18, 2014) (finding § 31's "criminal standards do not apply to Plaintiffs' §§ 632 and 632.7 civil causes of action") (emphasis in original)). However, the Court finds the reasoning in the latter line of cases more persuasive.

Case No.: 5:24-cv-07374-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOT. TO DISMISS
10

United States District Court
Northern District of California

The CMIA's definition of reproductive or sexual health application is broad and includes even "*information from which one can infer* someone's pregnancy status, menstrual cycle, fertility, hormone levels, birth control use, sexual activity, or gender identity." Cal. Civ. Code § 56.05(q) (emphasis added). Here, J.S. has pled that her specific treatment and reproductive/sexual health application information has been disclosed without her consent—namely, information revealing that J.S. sought fertility services and treatment for in vitro fertilization ("IVF"). FAC ¶¶ 7–10. In the FAC, J.S. also provides images setting forth the information disclosed to Meta and LinkedIn, including the specific reason for the appointment. *Id.* ¶¶ 88, 103; Figs. 4, 13–15. At a minimum, this allows for inferences to be drawn about J.S. fertility status, and as a result, requires a CMIA compliant authorization. Cal. Civ. Code § 56.05.

The Court therefore **DENIES** the motion to dismiss the CMIA claim.

### F.    California Constitutional Invasion of Privacy

To state a claim for invasion of privacy under the California Constitution, plaintiffs "must show that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is 'so serious . . . as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009)).

Spring Fertility first argues J.S. fails to allege facts establishing she had a reasonable expectation of privacy because she agreed to a Privacy Policy that allowed Spring Fertility to collect her personal information. But as the Court detailed above, this is now a question of fact inappropriate for a motion to dismiss.

Next, Spring Fertility argues that J.S. failed to plead highly offensive behavior, citing *Hammerling*'s proposition that "data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022), *aff'd* No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024). Spring Fertility contends the FAC is purposefully vague as to what

Case No.: 5:24-cv-07374-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOT. TO DISMISS
11

United States District Court
Northern District of California

information was allegedly collected, using generalized words such as "medical information," "medical communications," and "health information." Without more, Spring Fertility contends J.S. cannot demonstrate that the disclosure of this information would result in "serious harm" or would constitute an egregious breach of social norms.

The Court disagrees. As the Court detailed in its Prior Order, allegations of a highly offensive intrusion require a holistic consideration of "factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, [and] the intruder's motives and objectives[.]" *See, e.g., Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1126 (S.D. Cal. 2023); *Hammerling v. Google LLC*, No. 21-CV-09004-CRB, 2022 WL 17365255, at *8 (N.D. Cal. Dec. 1, 2022), *aff'd*, No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024). While the reasonable expectation of privacy analysis primarily focuses on the nature of the intrusion, the highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy. *Hernandez*, 47 Cal. 4th at 287 (noting that highly offensive analysis "essentially involves a 'policy' determination as to whether the alleged intrusion is highly offensive under the particular circumstances"). Courts have found unauthorized data sharing could possibly constitute a "highly offensive" intrusion in certain circumstances. *See, e.g.*, *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021) ("Whether Google's collection and storage of location data when Location History was set to off was highly offensive to a reasonable person is a question of fact.") (citing *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d at 606 ("The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage.")). But courts have also found that certain data sharing practices do not rise to the level of highly offensive conduct as a matter of law. *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1049–50 (N.D. Cal. 2012) (finding that permitting third-party application developers to access personally identifying information from users' devices, including in some cases location data, did not rise to the level of highly offensive conduct); *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014) (finding no highly offensive conduct in allegations that Google surreptitiously

Case No.: 5:24-cv-07374-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOT. TO DISMISS
12

United States District Court
Northern District of California

tracked users' browsing data while using Google's services); *Ojeda v. Kaiser Permanente Int'l, Inc.*, No. EDCV221057MWFGJS, 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022) (finding the disclosure of vaccination status not "highly offensive").

As it did in its Prior Order, the Court finds the allegations here do not fit squarely into any of the cases cited above. Spring Fertility's conduct may not be the same egregious systematic tracking and misrepresentations at issue in *In re Facebook Internet Tracking Litigation* and *In re Google Location History Litigation*; but the disclosure of information including the specific type of fertility treatment sought is medically-related and arguably more sensitive than the data at issue in *In re iPhone Application Litigation*, *In re Google, Inc. Privacy Policy Litigation*, and *Ojeda*. The Court therefore cannot conclude as a matter of law that no reasonable jury would find Spring Fertility's conduct to be an egregious breach of social norms or incapable of creating serious harm.

Accordingly, the Court **DENIES** Spring Fertility's motion to dismiss the California Constitution privacy claim.

## IV. CONCLUSION

Based on the foregoing, the Court:

- **GRANTS** the motion to dismiss the ECPA claim with leave to amend;
- **GRANTS** the motion to dismiss the CIPA § 631 claim with leave to amend;
- **GRANTS** the motion to dismiss the CIPA § 632 claim without leave to amend;
- **DENIES** the motion to dismiss the CMIA claim; and
- **DENIES** the motion to dismiss the California Constitution claim.

Should J.S. wish to file an amended complaint, she must do so by June 17, 2026.

**IT IS SO ORDERED.**

Dated: May 27, 2026

EDWARD J. DAVILA
United States District Judge

Case No.: 5:24-cv-07374-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOT. TO DISMISS
13

United States District Court
Northern District of California