**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave., Suite 2100
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-006
Email: swestcot@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| J.S., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPRING FERTILITY HOLDINGS, LLC,<br><br>Defendant. | Case No. 5:24-cv-07374-EJD<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Date: October 8, 2026<br>Time: 9:00 a.m.<br>Place: Courtroom 4<br>Judge: Hon. Edward J. Davila |

# TABLE OF CONTENTS

PAGE(S)

STATEMENT OF ISSUES TO BE DECIDED PER CIVIL L. R. 7-4(A)(3) .................................. 1

INTRODUCTION .................................................................................................................. 1

LEGAL STANDARD .............................................................................................................. 3

ARGUMENT ........................................................................................................................... 3

I. PLAINTIFF STATES A CLAIM UNDER THE ECPA ........................................... 3

A. Defendant's Disclosure of Protected Health Information for Commerical Advantage Independently Satisfies the Crime-Tort Exception ........................................................................... 4

B. Plaintiff Adequately Alleges Both Interception And Disclosure ........................................................................................... 7

II. PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 631 ............................ 7

CONCLUSION ...................................................................................................................... 10

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3, 9

*B.K. v. Eisenhower Med. Ctr.*,
2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) .......... 7

*Brown v. Google*,
525 F.Supp.3d 1049 (N.D. Cal. 2021) .......... 5, 6

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) .......... 7

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 10

*Doe v. Eating Recovery Ctr. LLC*,
2024 WL 2852210 (N.D. Cal. June 4, 2024) .......... 8

*Doe v. Talkiatry Mgmt. Services, LLC*,,
816 F. Supp. 3d 1206 (C.D. Cal. 2026) .......... 5, 7

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 7

*Hazel v. Prudential Financial, Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) .......... 8

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) .......... 9

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) .......... 7

*Humphrey v. J.M. Smucker Company*,
2023 WL 3592093 (N.D. Cal. May 22, 2023) .......... 3

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 9

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 4, 5

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) .......... 7

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) .......... 9

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) .......... 9

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .......... 3

*Marden v. LMND Med. Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024) .......... 6

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998) .......... 1

*NovelPoster v. Javitch Canfield Group*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) .......... 9

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 6

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 7, 10

*Shah v. Capital One Fin. Corp.*,
768 F.Supp.3d 1033 (N.D. Cal. 2025) .......... 6

*Smith v. Rack Room Shoes*,
2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) .......... 3, 4, 6

*Somers v. Apple*,
729 F.3d 953 (9th Cir. 2013) .......... 3

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 8, 9

*Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
2023 WL 5837492 (S.D. Cal. Sept. 8, 2023) .......... 8

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) .......... 4

**STATUTES**

18 U.S.C. § 2511(1)(a), (d) .......... 4

18 U.S.C. § 2520(a) .......... 4

42 U.S.C. § 1320d-6 .......... 2, 5

42 U.S.C. § 1320d-6(a)(3) .... 4

42 U.S.C. § 1320d-6(b)(3) .... 4, 5

**REGULATIONS**

45 C.F.R. § 164.508 .... 2, 4, 5

**STATEMENT OF ISSUES TO BE DECIDED PER CIVIL L. R. 7-4(A)(3)**

1. Whether Plaintiff states a claim under the Electronic Communications Privacy Act (the "ECPA") where Defendant intercepted and disclosed Plaintiff's protected communications for the purpose of committing criminal and tortious acts, including violations of federal and state law, without her knowledge or consent.

2. Whether Plaintiff states a claim under the California Invasion of Privacy Act ("CIPA") Section 631 where Defendant assisted third parties, Meta Platforms Inc. ("Meta" or "Facebook") and LinkedIn Corporation ("LinkedIn") (together the "Third Parties") in intercepting Plaintiff's confidential communications without authorization or consent through Defendant's installation of the Meta Pixel and LinkedIn Insight Tag (the "Tracking Technologies") on its Website.

**INTRODUCTION**

Seeking fertility care is among the most private decisions an individual can make, implicating core expectations of confidentiality and bodily autonomy. Few categories of information carry greater privacy weight than a person's health status, reproductive choices, and related communications with a medical provider. *See Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269–70 (9th Cir. 1998). This case arises because Defendant treated sensitive information not as protected medical data, but as marketing fodder. This Court's May 27, 2026, Order (the "Order") granted Defendant's motion to dismiss Plaintiff's ECPA and CIPA § 631 claims on two discrete pleading grounds, with leave to amend, finding that: (i) the First Amended Complaint did not adequately plead that the crime-tort exception applies to Plaintiff's ECPA claim because it alleged only a financial motive, and (ii) it did not adequately pled the "in transit" requirement under CIPA § 631 because it failed to allege specific facts about when the interceptions occurred. Order, at 5–9 & n.4. Plaintiff's Second Amended Complaint ("SAC") cures both of deficiencies identified by the Court. *See* SAC ¶¶ 107–113, 149.

Plaintiff alleges that Defendant, a healthcare provider, quietly embedded the Meta Pixel and LinkedIn Insight Tag on its Website and used those tools to duplicate and transmit patients' appointment and treatment-related communications to Meta and LinkedIn in real time. SAC ¶¶ 10–

13, 75–122, 107–113; Figs. 13–15; Order at 2. The data Defendant enabled Meta and LinkedIn to receive was not generic web analytics; it included personally identifiable information ("PII") and medical information revealing, among other things, that the user was seeking fertility services, the nature of the treatment requested, and related highly sensitive inferences (i.e. protected health information ("PHI") and individually identifiable health information ("IIHI")). *Id.* Defendant did not deploy these tracking technologies to provide medical care. It deployed them for its own commercial gain, without receiving its patients' express authorization. SAC ¶¶ 7–13, 23–24, 30, 75–106, 122, 149. Such conduct is unlawful under 45 C.F.R. § 164.508 and 42 U.S.C. § 1320d-6. *See e.g.* SAC ¶¶ 30, 149. Simply put, the commercial purpose Defendant identifies is the HIPAA violation Plaintiff pleads, not a defense to it.

On the "in transit" requirement, the SAC now pleads exactly what the Order found missing: specific, technical facts establishing when and how the interception occurred, in real time, as Plaintiff's communications moved from her browser and Defendant's server. *See* Order at 8–9 (requiring facts about "when the interception occurs" and "how the interception took place"). The SAC explains that the Meta Pixel and LinkedIn Insight Tag are Source Code embedded on Defendant's Website that command a patient's browser, the instant a page loads or a button is clicked, to duplicate her communications and fire them off to Meta and LinkedIn in HTTP Requests "quietly executed in the background" — without her knowledge. SAC ¶¶ 111–112. This is not a generic allegation that tracking begins "the moment" a user visits a page; it identifies the precise mechanism, Source Code triggered by page-load and click events, that intercepts the communication mid-transmission, before it ever reaches storage.

Figures 13 through 15 make this concrete. They reproduce the actual, contemporaneous transmissions Defendant's Website sent the instant Plaintiff attempted to book fertility treatment: event names ("PageView," "SubscribedButtonClick," "CLICK") fired in real time as she navigated the site; full-string URLs containing the terms "springfertility," "book-a-consult," and "IVF," disclosing not just that she visited the site but what she was there to do; and identifying cookies (Facebook's fr, _fbp, and c_user; LinkedIn's li_sugr and lms_ads) transmitted alongside that data and used to link the interception directly to Plaintiff's identity. SAC ¶¶ 87–89, 99, 102–104, 108–113.

Each of these data points was captured in the moment of transmission, not extracted after the fact from storage, exactly the temporal specificity the Order held the FAC lacked. Order at 9.

This is not a case about ordinary, anonymous, website analytics. It is a case about a fertility provider that turned its patients' treatment inquiries into advertising inventory for commercial gain and now asks this Court to hold that the profit motive which made the disclosures criminal is what immunizes them. Accepting the Second Amended Complaint's well-pled allegations as true, Plaintiff plausibly states claims under both the ECPA and CIPA § 631. Accordingly, Defendant's Motion to Dismiss ("MTD") (ECF No. 90) should be denied.

## LEGAL STANDARD

Under a Rule 12(b)(6) analysis, a motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Somers v. Apple*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 960. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 678.

"In deciding whether the plaintiff has stated a claim upon which relief has been granted, the court accepts her allegations as true and draws all reasonable inferences in her favor." *Humphrey v. J.M. Smucker Company*, 2023 WL 3592093, at *4 (N.D. Cal. May 22, 2023). Finally, "[i]f the court dismisses the complaint, it 'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id*. (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## ARGUMENT

### I. PLAINTIFF STATES A CLAIM UNDER THE ECPA

"The [ECPA] creates criminal liability for 'any person who . . . intentionally intercepts . . . any wire, oral, or electronic communication,' or who 'intentionally uses' such content 'knowing or having reason to know that the information was obtained through' interception." *Smith v. Rack Room*

*Shoes*, 2025 WL 2210002, *4 (N.D. Cal. Aug. 4, 2025) (citing 18 U.S.C. § 2511(1)(a), (d)). "Any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, . . . which engaged in that violation." *Id.* (citing 18 U.S.C. § 2520(a)) (cleaned up). Defendant's arguments center around whether "crime-or-tort" exception applies and whether Plaintiff pleads an interception separate from the disclosure. MTD at 4–6. As detailed *infra*, Plaintiff alleges (a) the crime-tort exception applies and (b) a distinct interception and disclosure such that Defendant is liable under the ECPA.

### A. Defendant's Disclosure of Protected Health Information for Commerical Advantage Independently Satisfies the Crime-Tort Exception

Defendant argues Plaintiff's ECPA claim must be dismissed because the "Amended Complaint 'insufficiently [pleads]' the crime-tort exception." MTD at 5. That is wrong.

The Court's prior Order dismissed the FAC's ECPA claim because the only "purpose" alleged throughout was generic financial gain "for advertising purposes" and the like, which, standing alone does not show the "primary motivation or a determining factor" in Defendant's conduct was to injure Plaintiff tortiously. Order at 5–6 (citing *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880 (S.D. Cal. 2025); *In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022)). The SAC does not repeat that error. Instead, it identifies a specific federal crime whose commercial-advantage element is itself what the Order found missing.

Relevant here, Plaintiff alleges an independent federal crime. Under 45 C.F.R. § 164.508, "a covered entity ***must*** obtain an authorization for any use or disclosure of protected health information for marketing." Likewise, 42 U.S.C. § 1320d-6(a)(3) prohibits the disclosure of "individually identifiable health information to another person." Where "the offense is committed with intent to sell, transfer, or use individually identifiable health information for ***commercial advantage, personal gain,*** or malicious harm, be fined not more than $250,000, imprisoned not more than 10 years, or both." 42 U.S.C. § 1320d-6(b)(3). Defendant is a provider of health care and a covered entity to which those penalties apply directly. SAC ¶¶ 10, 24, 26, 28, 30–36, 149. Defendant's disclosure of Plaintiff's patient status, the fact that she was booking a fertility consultation, the specific treatment

sought, and persistent identifiers naming her is individually identifiable health information. SAC ¶¶ 10, 24, 33–34, 88–89, 103–104, 150, 160–162. By failing to receive the requisite authorization HIPAA requires in advance of disclosing protected health information for marketing purposes Defendant's conduct is precisely the kind the Department of Health and Human Services has warned against. SAC ¶¶ 23–37, 75–106, 149; *see* 45 C.F.R. § 164.508; 42 U.S.C. § 1320d-6.

This distinguishes the general rule that advertising motive cannot satisfy crime-tort. That rule rests on the premise that a defendant's profit motive is incidental to conduct that is not independently a crime. Here, Congress made commercial advantage an element of the offense itself: § 1320d-6(b)(3) does not merely tolerate a commercial motive alongside an unlawful disclosure, it specifically criminalizes disclosing IIHI *because* it was done for commercial advantage or personal gain. Plaintiff's allegation that Defendant disclosed her IIHI to Meta and LinkedIn for financial gain, SAC ¶ 150, is accordingly not evidence of an incidental business purpose of the kind rejected in *In re Meta Pixel Healthcare Litig*. — it is the specific statutory violation alleged. Order at 6 (citing *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022)). Put differently, Defendant cannot invoke its profit motive as a shield when that same motive is the aggravating element of the federal crime Plaintiff pleads.

*Doe v. Talkiatry Management Services, LLC* ("*Talkiatry*") does not compel dismissal. 816 F. Supp. 3d 1206 (C.D. Cal. 2026). The *Talkiatry* court found the crime-tort exception unavailable because "nowhere in the [complaint] do the facts suggest that Defendant intercepted and/or disclosed this information with violations of HIPAA as the 'primary motivation or a determining factor.'" *Id.* at 1210. Unlike that complaint, the SAC expressly identifies the statute violated, its commercial-advantage element, and the specific category of protected information disclosed to satisfy it. SAC ¶¶ 149–150. That is the causal link between HIPAA and Defendant's motive that *Talkiatry* found lacking.

Plaintiff also alleges a second basis for the crime-tort exception. A number of courts have recognized that "[t]he association of Plaintiffs' data with preexisting user profiles is a further use of Plaintiffs' data that satisfies [the crime-tort] exception," because it "violate[s] state law, including the CDAFA, intrusion upon seclusion, and invasion of privacy." *Brown*, 525 F. Supp. 3d at 1067;

*Smith v. Rack Room Shoes*, 2025 WL 2210002, *5 (N.D. Cal. Aug. 4, 2025) ("Given Rack Room's alleged active role in the act of intercepting, the interception was not done just by . . . the other third parties, but also alleged to have been actively done by Rack Room. As such, Rack Room's purpose . . . is sufficient to satisfy the crime-tort exception."); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901–02 (C.D. Cal. 2024) (finding the crime-tort exception applies "if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims").

In *Rack Room Shoes*, the defendant allegedly installed third party tracking software, including software from Meta and Attentive, on its website despite representing to consumers that it would not disclose personal information. *Smith v. Rack Room Shoes*, 2025 WL 2210002 at *1. The court denied the defendant's motion to dismiss the wiretapping claims, holding that defendant's disclosure of "Plaintiff's personally identifiable information for advertising, in contradiction to the commitments it made in its privacy policy, can plausibly constitute a further invasion of privacy beyond the act of intercepting the information alone." *Id*. at *5; *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) ("Plaintiffs have adequately alleged that Google's association of their data with preexisting user profiles [without consent] violated state law, including CDAFA, intrusion upon seclusion, and invasion of privacy.").

Similarly, here Plaintiff alleges Defendant's privacy policy warrants "it will not assist a third party with intercepting communications that are paired with personally identifiable information." SAC ¶¶ 115, 117–118, Fig. 16. Indeed, this Court acknowledged Plaintiff J.S. alleged she "had a reasonable expectation in *anonymized* data sharing." Order, ECF No. 84 at 4. A number of courts have found "tortious intent sufficiently pled where . . . 'Plaintiffs have alleged that [technology companies] intercepted their communications for the purpose of associating their data with preexisting user profiles'[,] that this 'association of their data with preexisting user profiles [allegedly] violated state law,'" and that third parties "benefited from this interception by using the information to sell ads to other third-party advertisers." *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024) (cleaned up); *see also Shah v. Capital One Fin. Corp.*, 768 F.Supp.3d 1033, 1053 (N.D. Cal. 2025) ("However, Plaintiffs also allege that Defendant intercepted the contents of the electronic communications for an unauthorized purpose, which resulted in tortious

acts. Because Defendant's actions are allegedly tortious, the one- party exemption does not apply."); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090–91 (N.D. Cal. 2025).

### B. Plaintiff Adequately Alleges Both Interception And Disclosure

Defendant separately argues Plaintiff fails to a tortious or criminal purpose "independent of the intentional act of recording or interception itself." MTD at 5 (citing *Doe v. Talkiatry Mgmt. Svcs., LLC*, 816 F. Supp. 3d 1206 at 1210). That is wrong.

The SAC alleges two analytically and temporally distinct acts: first, the browser-side interception (Facebook's and LinkedIn's code causing Plaintiff's browser to duplicate and transmit her communication in real time, SAC ¶¶ 52, 111–113), and second, Defendant's and the third parties' subsequent, unauthorized use of that intercepted data to build advertising audiences and profiles (SAC ¶¶ 53, 89, 99, 104, 146–47). This second act, knowingly facilitating disclosure of IIHI to build advertising profiles without authorization, is the independent "further impropriety" the crime-tort exception requires. *See Doe v. Tenet Healthcare Corp*., 789 F. Supp. 3d 814, 849 (E.D. Cal. 2025). Notably, the Court has not yet foreclosed this theory: it expressly reserved "whether the purpose of violating HIPAA or invading privacy qualifies under the crime-tort exception" because the FAC did not sufficiently plead it. Order at 6 n.4. The SAC now does. *See Castillo v. Costco Wholesale Corp*., 2024 WL 4785136, at *5 (W.D. Wash. Nov. 14, 2024); *B.K. v. Eisenhower Med. Ctr*., 2024 WL 2037404, at *4 (C.D. Cal. Apr. 11, 2024) (HIPAA violation can constitute independent conduct satisfying the crime-tort exception).

## II. PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 631

Defendant argues that "Plaintiff failed to sufficiently allege that communications were intercepted and read in real time" despite the addition of seven paragraphs in the Second Amended Complaint detailing precisely how the interceptions and disclosures occurred in transit. MTD at 7. To establish a claim under Section 631(a) of CIPA, "a defendant must have read or learned the contents of a communication while the communication was in transit, or in the process of being sent or received." *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1036 (S.D. Cal. 2024). The allegations need only "demonstrate a party intercepted the communication during its transmission, rather than once it was placed in electronic storage." *Heiting v. Taro Pharmaceuticals USA, Inc.*, 728 F. Supp.

3d 1112, 1125 (C.D. Cal. 2024). Plaintiff's Second Amended Complaint is replete with allegations sufficient to satisfy the "in transit" element. *See e.g.* SAC. ¶¶ 75–113, Figs. 13–15. At the motion to dismiss stage, courts agree that allegations that transmissions are "instantaneous" and "simultaneous" are sufficient. *Doe v. Eating Recovery Ctr. LLC*, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024) (denying motion to dismiss finding Plaintiff's allegations that "transmission of information through the Pixel is instantaneous" and that the code redirects "communications simultaneously as the actions and communications on the website take place" sufficient). At this stage, "a plaintiff is not expected to prove or even know how and when [her] communications were captured." *Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 2023 WL 5837492, at *6 (S.D. Cal. Sept. 8, 2023).

Even so, Plaintiff's "allegations are far more specific than the conclusory allegations regularly held to fail to plead an interception 'in transit' under CIPA and the Wiretap Act." *Hazel v. Prudential Financial, Inc.*, 2023 WL 3933073, at *3 (N.D. Cal. June 9, 2023) (collecting cases); *see e.g.* SAC ¶¶ 75–113, Figs. 13–15.

Plaintiff's Second Amended Complaint clears that bar by a wide margin. The SAC alleges that "two sets of code were . . . automatically run as part of the browser's attempt to load and read Defendant's Website" (SAC ¶ 44); that when a "link was clicked, the individual's browser sent a GET request to Defendant's server requesting that server to load the particular webpage . . . [and] Facebook's embedded code, written in JavaScript, sent secret instructions back to the individual's browser, without alerting the individual that this was happening" (SAC ¶ 52); and that Defendant sends LinkedIn "HTTP request[s] . . . which include[] information about the user's actions on the website" (SAC ¶ 63). Read together with Plaintiff's allegations that the Meta Pixel and LinkedIn Tag are Source Code that send HTTP requests and receive HTTP responses (SAC ¶ 111), and bolstered by Figures 13 through 15 reproducing the actual, contemporaneous transmissions themselves, these allegations plead the reading of in-transit communications with a level of technical specificity "far more specific than the conclusory allegations regularly held to fail to plead an interception 'in transit.'" *Hazel v. Prudential Financial, Inc.*, 2023 WL 3933073, at *3 (N.D. Cal. June 9, 2023) (collecting cases); *see also St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *6 (N.D.

Cal. Oct. 1, 2024) (finding similar allegations sufficient); *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 608 (9th Cir. 2020) ("simultaneous, unknown duplication and communication . . . do[es] not exempt a defendant from liability"); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 862 (C.D. Cal. 2024) (search terms "replicated and sent in parallel to the tracking entities" were "intercepted in transit") (cleaned up). At a minimum, these allegations give rise to a plausible inference of in-transit interception sufficient to survive dismissal; to require anything further would reinstate "the hypertechnical, code-pleading regime" Rule 8 is designed to displace. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendant's case law does not compel a different result. *Licea v. Cinmar, LLC* involved a dissimilar transcript technology supported only by threadbare allegations. 659 F. Supp. 3d 1096, 1110 (C.D. Cal. 2023) ("Bare allegations of recording and creating transcripts do not specifically allege that Plaintiff's messages were intercepted while in transit."). *NovelPoster v. Javitch Canfield Group* is similarly inapposite as it involved the access of emails in accounts after they were already received. *NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 938, 953–54 (N.D. Cal. 2014); *accord Krzyzek v. OpenX Techs., Inc.,* 817 F. Supp. 3d 857, 868 (N.D. Cal. 2026) ("unlike in NovelPoster where emails were accessed in accounts after they were received, here the complaint alleges that OpenX's 'interceptions' occurred while users communicated with websites through their browsing activities.").

Nor does *Dellasala v. Samba TV, Inc.* help Defendant. There, the court dismissed plaintiffs' CIPA claim precisely because their allegations of "real time" interception "merely parrot[ed] the statute's language" — the plaintiffs offered no factual account of any interception mechanism beyond the bare assertion that Samba "processe[d] and store[d]" data "to create audiences, panels, and otherwise service advertising needs." *Id.* at *6. That barebones allegation was the plaintiffs' entire theory of Samba's data handling, with no separate, antecedent act of contemporaneous duplication pled apart from it — which is why the court could infer the "reading" happened only once the data reached Samba's servers, not before.

Plaintiff's SAC pleads exactly what *Dellasala's* did not. SAC ¶ 52 describes a specific, technical interception event distinct from and prior to any subsequent use of the data: the browser's

real-time, JavaScript-triggered duplication and transmission of Plaintiff's communication to Facebook, occurring the instant the browser requests Defendant's webpage. Paragraph 53's reference to Facebook later "processing" and "assimilat[ing]" that data into advertising audiences describes what Facebook does with the information after the interception already alleged in the preceding paragraph — not Plaintiff's theory of when or how the interception itself occurred. Unlike *Dellasala*, the SAC supplies an independent factual basis for contemporaneous reading (the duplication mechanism, plus the Figures 13–15 transmissions themselves) that does not depend on, and is not undermined by, the subsequent-processing allegation Defendant seizes on.

At a minimum, "Defendant's arguments regarding what constitutes 'in transit' are best left for resolution at the summary judgment stage." *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1131 (S.D. Cal. 2023); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1092 ("whether communications are 'read' in transit or only after storage is a fact-intensive question that depends on how the challenged technology and processes actually work—a question *Torres* decided only after a full evidentiary record at summary judgment").

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint.

Dated: August 14, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *_/s/ Sarah N. Westcot_*
Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave., Suite 2100
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

*Counsel for Plaintiff*